## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated, <br><br>     Plaintiffs, <br><br> v. <br><br> U.S. XPRESS ENTERPRISES, INC., *et al.*, <br><br>     Defendants. | Civil Action No. 1:19-cv-00098 <br> Judge Travis R. McDonough <br> Magistrate Judge Christopher H. Steger |

## REPLY MEMORANDUM IN SUPPORT OF USX DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Dated: April 23, 2020

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

Philip B. Whitaker, Jr. (BPR # 013999)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
pwhitaker@bakerdonelson.com

*Counsel for USX Defendants*

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

STANDARD OF REVIEW............................................................................................................3

ARGUMENT..................................................................................................................................5

I.     THE COMPLAINT FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT.........5

  A. The Forward-Looking Statements Are Protected By The Bespeaks Caution Doctrine And The Reform Act's Safe Harbor.......................................................5

  B. The Challenged Statements Of Opinion Are Not Actionable. .............................11

  C. The Challenged Statements Of Corporate Optimism Are Not Actionable. ..........12

  D. Plaintiffs Do Not State A Violation Of Item 303. ................................................14

  E. Plaintiffs' Mischaracterizations Do Not State A Claim. .......................................15

  F. The Confidential Witness Allegations Do Not Support A Claim.........................18

II.    THE COMPLAINT FAILS TO ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER FOR THE SECTION 10(b) CLAIM. ..............................20

CONCLUSION.............................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................4

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000)................................................................24

*Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*,
No. 07 Civ. 10528, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010)........................14

*Brecher v. Citigroup Inc.*,
797 F. Supp. 2d 354 (S.D.N.Y. 2011) ................................................................23

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ..................................................................................4

*City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ............................................................. 13, 21, 22, 24

*Cozzarelli v. Inspire Pharm. Inc.*,
549 F.3d 618 (4th Cir. 2008) .................................................................................4

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*,
7 F.3d 357 (3d Cir. 1993) .................................................................................8, 10

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) .............................................................................20

*Dougherty v. Esperion Therapeutics, Inc.*,
905 F.3d 971 (6th Cir. 2018) ............................................................. 6, 7, 20, 21

*In re Envision Healthcare Corp. Sec. Litig.*,
No. 3:17-CV-01112, 2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019) ...............21

*In re EveryWare Glob., Inc. Sec. Litig.*,
175 F. Supp. 3d 837 (S.D. Ohio 2016)............................................................21, 22

*Fidel v. AK Steel Holding Corp.*,
No. C-1-00-320, 2002 WL 31545952 (S.D. Ohio Sept. 19, 2002).......................10

*In re FirstEnergy Corp. Sec. Litig.*,
316 F. Supp. 2d 581 (N.D. Ohio 2004) .................................................................4

Case 1:19-cv-00098-TRM-CHS    Document 89    Filed 04/23/20    Page 3 of 32    PageID #: 1430

*In re Ford Motor Co.*,
381 F.3d 563 (6th Cir. 2004) ...................................................................................13

*Freedman v. Value Health, Inc.*,
135 F. Supp. 2d 317 (D. Conn. 2001) .......................................................................7

*Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*,
No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011) .........................21

*Grae v. Corr. Corp. of Am.*,
No. 3:16-cv-2267, 2017 U.S. Dist. LEXIS 207475 (M.D. TN. Dec. 18, 2017) ...............13, 21

*Grossman v. Novell, Inc.*,
120 F.3d 1112 (10th Cir. 1997).................................................................................10

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) ....................................................................................24

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) ...................................................................................8

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.*
*Omnicare, Inc.*,
719 F.3d 498 (6th Cir. 2013) .........................................................................4, 11, 12

*J&R Mktg., SEP v. General Motors Corp*,
549 F.3d 384 (6th Cir. 2008) ...................................................................................14

*Johnson v. Sequans Commc'ns S.A.*,
No. 11 CIV. 6341 PAC, 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) .....................6

*Knurr v. Orbital ATK Inc.*,
272 F. Supp. 3d 784 (E.D. Va. 2017).......................................................................24

*Konkol v. Diebold, Inc.*,
590 F.3d 390 (6th Cir. 2009) .............................................................................20, 21

*Ley v. Visteon Corp.*,
543 F.3d 801 (6th Cir. 2008) ...................................................................................21

*In re Miller Energy Res. Sec. Litig.*,
No. 3:11-CV-386-TAV-CCS, 2014 WL 415730 (E.D. Tenn. Feb. 4, 2014) ..........21

*Miyahira v. Vitacost.com, Inc.*,
No. 10-80644-CIV, 2012 WL 12895513 (S.D. Fla. June 28, 2012)........................6

*In re No. Nine Visual Tech. Corp. Sec. Litig.*,
51 F. Supp. 2d 1 (D. Mass. 1999) .............................................................................4

Case 1:19-cv-00098-TRM-CHS    Document 89    Filed 04/23/20    Page 4 of 32    PageID
#: 1431

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ................................................................................25

*Olkey v. Hyperion 1999 Term Tr., Inc.*,
98 F.3d 2 (2d Cir. 1996) ................................................................................. 10, 17

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ................................................................................21

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ................................................................................................11

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ............................................................................21, 24

*Primo v. Pacific Biosciences of Cal., Inc.*,
940 F. Supp. 2d 1105 (N.D. Cal. 2013)....................................................................1

*In re Read-Rite Corp.*,
335 F.3d 843 (9th Cir. 2003) ................................................................................23

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*,
743 F. Supp. 2d 744 (W.D. Tenn. 2010) ................................................................21

*In re Rigel Pharms.*,
697 F.3d at 882 n.12................................................................................................7

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ............................................................................... 4, 17

*In re Royal Appliance Sec. Litig.*,
64 F.3d 663, 1995 WL 490131 (6th Cir. 1995) ................................................. 8, 10

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009) ................................................................................17

*Schuh v. HCA Holdings, Inc.*,
947 F. Supp. 2d 882 (M.D. Tenn. 2013) ................................................................14

*Sinay v. Lamson & Sessions Co.*,
948 F.2d 1037 (6th Cir. 1991) ................................................................................10

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ..................................................................................4

*Tyler v. Liz Claiborne, Inc.*,
814 F. Supp. 2d 323 (S.D.N.Y. 2011)....................................................................23

iv

*Winslow v. BancorpSouth, Inc.*,
   No. 3:10-00463, 2011 WL 7090820 (M.D. Tenn. Apr. 26, 2011)..........................................21

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ...............................................................................................10

**Statutes**

15 U.S.C. § 78u-5(i)(1) .............................................................................................................6

15 U.S.C. § 78u-5(e) ...............................................................................................................10

## INTRODUCTION

The USX Defendants demonstrated in their opening brief that dismissal is warranted because this putative securities class action, prompted by nothing more than a drop in USX's stock price, falls well short of stating a viable claim.[1] The Complaint attempts to state a claim by quoting lengthy passages from USX's Registration Statement and concluding that the statements were false or misleading. As previously explained, this tactic alone warrants dismissal under any pleading standard, as the Complaint "fail[s] 'to set forth a "short and plain" statement of [the] claims'" that explains, among other things, which statements are challenged and why. *See Primo v. Pacific Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013). And even if the Court were to ignore that failure and review the quoted excerpts in the Complaint, it should still be dismissed because Plaintiffs challenge statements that are protected as a matter of law as (i) forward-looking statements accompanied by meaningful cautionary language; (ii) statements of opinion; or (iii) vague statements of corporate optimism. USX Br. at 14-21. Further, Plaintiffs' Section 10(b) claim fails for the additional reason that the Complaint does not plead facts giving rise to a strong inference of scienter, as it must to avoid dismissal. *Id.* at 26-35.

Plaintiffs have no real response to these deficiencies. Their Opposition asserts, incorrectly, that (i) none of the challenged statements are forward-looking, (ii) the safe harbor and bespeaks caution doctrine do not apply to "omissions," and (iii) the Court cannot resolve these issues on a motion to dismiss. *See* Pls.' Mem. in Opp'n to Mot. to Dismiss, Dkt. No. 85 ("Opp.") at 20-23. Plaintiffs further contend that the opinions challenged in the Complaint are actionable because they were not "truly held" by the speakers when offered. *Id.* at 24. And Plaintiffs argue that they

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in the Memorandum of Law in Support of the USX Defendants' Motion to Dismiss, Dkt. No. 72-1 ("USX Br.").

1

challenge no corporate optimism. *Id.* at 25-26. The plain language of the Complaint, the Registration Statement, and the law, refute each of these contentions.

Having no meaningful response to the arguments the USX Defendants made, Plaintiffs spend the majority of their brief trying to distract the Court with two tactics.

*First*, because there are no actionable statements in the Registration Statement, Plaintiffs resort to attacking a straw man. They make up their own language for the Registration Statement and attack that as false or misleading. For example, Plaintiffs' Opposition suggests that USX assured investors that its operational "transformation" had eliminated the risk to USX's business from driver compensation, retention, and other issues. *See, e.g.*, Opp. at 10. Yet, no such assurance exists anywhere in the Registration Statement, and, indeed, the Registration Statement specifically warned in twenty-five detailed pages of all the risks attendant to the Company's transformation strategy. It is, of course, the language in the Registration Statement that determines whether a claim has been stated. As detailed below, that language is not actionable here.

*Second*, Plaintiffs attempt to imply some scheme with a heavy focus on Confidential Witness ("CW") allegations. But just because Plaintiffs were able to find a few former employees they nefariously refer to as "confidential witnesses" does not mean that a claim has been stated. As an initial matter, the CW allegations do not, and cannot, support any alleged misstatement in the Registration Statement because the CW allegations plainly do not conflict with any statements contained therein. Moreover, the CWs are not alleged to have had any contact with any of the USX executives named as Defendants. The CW allegations, therefore, demonstrate absolutely nothing about what the USX Defendants knew for purposes of undermining the challenged opinions, pleading a "known" trend, or alleging the requisite element of scienter for the Section 10(b) claim.

Despite what Plaintiffs suggest in their Opposition, USX did not hide the risks of investing

2

when it sought to become a public company. It expressly cautioned investors that USX had a "history of net losses," that it had "generated a profit in [only] one of the last five years," and that "[i]mproving profitability depend[ed] upon numerous factors, including [the Company's] ability to successfully execute . . . ongoing and planned strategic initiatives." Dkt. 72-5 at 24. USX's management was hopeful that these initiatives would improve operations—and it appears they did. When USX issued its financial results for the third quarter of 2018 (the first full quarter after the IPO), the Company announced that it "***generat[ed] the largest amount of net income during a single quarter in [the] Company's history***." USX Br. at 1. Plaintiffs ignored all this and sued anyway when the stock price declined. But neither the Registration Statement—nor anything else referenced in the Complaint—provides a basis for Plaintiffs' claims. Accordingly, the USX Defendants ask that the Court dismiss the Complaint with prejudice.

## STANDARD OF REVIEW

As a preliminary matter, Plaintiffs argue "[i]t is telling that Defendants largely seek dismissal of Plaintiffs' negligence-based Securities Act claims by erroneously advocating for a heightened pleading standard." Opp. at 3. That is incorrect on two levels.

***First***, the USX Defendants made clear in their opening brief that "even if only Rule 8 applies to the Securities Act claims, the Complaint should still be dismissed for failure to allege a plausible claim." USX Br. at 13.

***Second***, although the heightened pleading standards are not necessary, it is clear they apply. Plaintiffs acknowledge that their Section 10(b) claim is subject to the Reform Act's heightened pleading requirements, but contend that their Section 11 claim need satisfy only Rule 8 because the Complaint "carefully segregat[es] the § 11 claims from fraud claims," Opp. at 14. Plaintiffs, however, fail to address the undeniable fact that they "incorporate by reference and

3

reallege[]" for their Section 10(b) claim all of the same factual allegations relied upon for the Section 11 claim. *See* Compl. ¶ 204. Rule 9(b) applies to a Section 11 claim where, as here, "[t]he complaint also claims that the false statements in the prospectuses support plaintiffs' Exchange Act counts." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

Plaintiffs identify no law to the contrary. Instead, they rely on the one sentence disclaimer in the Complaint that the Section 11 claim does not sound in fraud. Opp. at 15. It is binding Sixth Circuit law, however, that "[t]his one-sentence disclaimer . . . does not achieve Plaintiffs' desired result" of avoiding Rule 9(b). *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 502 (6th Cir. 2013); *see also Cozzarelli*, 549 F.3d at 629 ("[a plaintiff] cannot escape the requirements of Rule 9(b) by adding a superficial label"); *Rombach v. Chang,* 355 F.3d 164, 172 (2d Cir. 2004) (applying Rule 9(b) to Section 11 claim despite fraud disclaimer); *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004) (same); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (same).[2]

Because the Complaint relies on the same statements from the Registration Statement to plead both the Section 11 and Section 10(b) claims, the Section 11 claim necessarily sounds in fraud and must satisfy Rule 9(b). In any event, even if only Rule 8 applied, the result is the same because the Complaint fails to plead facts that would permit the "court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[3]

---

[2] Against this weight of authority, Plaintiffs point to two inapposite district court cases—one where there is no indication that the Section 10 and 11 claims challenged the same statements, *see In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 602 (N.D. Ohio 2004), and one where the complaint did not rely on a mere one-sentence disclaimer, *see In re No. Nine Visual Tech. Corp. Sec. Litig.*, 51 F. Supp. 2d 1, 12 (D. Mass. 1999).

[3] The underlying pleading deficiency is most evident in the Complaint's puzzle-pleading structure, USX Br. at 13-14, which Plaintiffs claim is an incorrect characterization because the Complaint "specifically identified" the misleading statements and "concisely alleged the basis" for each

4

**ARGUMENT**

**I.      THE COMPLAINT FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT.**

As explained in the USX Defendants' opening brief, the Complaint does not meet the initial hurdle of pleading a false or misleading statement that is actionable under the federal securities laws. USX Br. 13-26. Each of the arguments Plaintiffs raise in response fails to stave off dismissal.

**A.      The Forward-Looking Statements Are Protected By The Bespeaks Caution Doctrine And The Reform Act's Safe Harbor.**

Plaintiffs acknowledge that two separate but related protections—the bespeaks caution doctrine and the Reform Act's safe harbor—immunize from liability forward-looking statements that are accompanied by meaningful cautionary language. *See* USX Br. at 14; Opp. at 20-21.[4] Plaintiffs, however, seek to evade these clear protections with five misplaced arguments.

**1.      The Complaint Challenges Forward-Looking Statements.**

Plaintiffs begin by arguing that "the challenged statements are not forward-looking." Opp. at 20. But the Registration Statement, and Plaintiffs' own Complaint, make that argument untenable. Indeed, the Complaint challenges the Registration Statement's description of USX's "competitive strengths," "strategies," and transformation initiatives, all of which discussed what management hoped to achieve in the future. *See, e.g.*, Dkt. No. 72-5 at 7 ("*We believe* the following competitive strengths provide us with *a strong foundation to improve our profitability* and stakeholder value.") (emphasis added); Compl. ¶ 112 (challenging the description of USX's "strategies," which were premised with: "*We believe our opportunity for further improvement* is

---

challenged statement's falsity. Opp. at 6 n.5. Yet Plaintiffs do not offer a single example of any "specifically identified" allegedly false statement or "concisely alleged" basis for its falsity.

[4] The bespeaks caution doctrine applies to forward-looking statements in the Registration Statement and the safe harbor protects such statements in other filings. USX Br. at 14.

5

significant, and our strategies are ***designed to enhance stockholder value***.").

Descriptions of management's plans, initiatives, and hopes for the future are classically forward-looking, as courts have repeatedly recognized. *See* USX Br. at 17; *see also Johnson v. Sequans Commc'ns S.A.*, No. 11 CIV. 6341 PAC, 2013 WL 214297, at *15 (S.D.N.Y. Jan. 17, 2013) (finding that challenged statements in prospectus relating to "future expectations and strategy" were forward-looking and protected by the bespeaks caution doctrine); *Miyahira v. Vitacost.com, Inc.,* No. 10-80644-CIV, 2012 WL 12895513, at *9 (S.D. Fla. June 28, 2012) (same for statements about management's "belief and expectations regarding its future business and growth strategy"). The Reform Act even expressly defines a "forward looking statement" to include management's "plans and objectives" for future operations. *See* 15 U.S.C. § 78u-5(i)(1).

There can be no legitimate dispute on this issue. The Complaint challenges forward-looking statements, and nothing in the Opposition changes that fact.

### 2. The Complaint Does Not Challenge Actionable "Mixed" Statements.

Plaintiffs next contend that the challenged statements mix present facts and forward projections and so are not protected by the bespeaks caution doctrine or Reform Act safe harbor. Opp. at 21-22. But, as the Sixth Circuit has held, such mixed statements are protected where, as here, the "statements of fact [are not] easily separable from the forward-looking statements," or were "given merely as an assumption underlying future expectations." *Dougherty v. Esperion Therapeutics, Inc.,* 905 F.3d 971, 984 (6th Cir. 2018).

Plaintiffs identify no supposed "mixed" statements in the Registration Statement. Instead, the Opposition highlights one "mixed" post-IPO statement that actually demonstrates why the bespeaks caution doctrine and the Reform Act's safe harbor protect the forward-looking statements alleged in the Complaint. That statement is as follows:

6

> Overall, we remain optimistic as we continue to execute our strategy and market conditions remain strong. Of note, we experienced improving rates and volumes through the second quarter and expect no catalyst over the near term that would negatively impact current trends. That said, we continue to see an erosion of professional driver availability. As a result, we are continuing to focus on our driver centric initiatives to both retain the professional drivers who have chosen to partner with us and to attract new professional drivers to our team. We believe this focus allowed us to offset the difficult conditions, which have created a significant professional driver supply challenge for the broader industry as we slightly increased our tractor count during the second quarter of 2018 through an 11% reduction in our driver turnover percentage.

*See* Opp. at 22; Dkt. 72-6.

The factual statements in this quote (*e.g.*, that USX "experienced improving rates and volumes") are not separable, and are undoubtedly part of the stated assumption underlying why management "remain[ed] optimistic" about the future of USX following the second quarter of 2018. These statements, in fact, are similar to those that the Sixth Circuit noted are ***not*** separable in *Dougherty*. *See id.* at 983-84 (management seeing a "continuation of outstanding earnings growth and the successful implementation of" its strategy was protected as forward looking).

Moreover, even if the factual assumptions could be separated from the forward-looking statements, the Complaint nowhere pleads that those facts are false. The Complaint does not allege that USX was ***not*** "experiencing improving rates and volumes" in the second quarter of 2018, nor that management was not continuing to "focus" on "driver centric initiatives." At most, Plaintiffs allege that USX's initiatives later proved ineffective, which is insufficient. *In re Rigel Pharms.*, 697 F.3d at 882 n.12 ("The mere fact that stated expectations fail to come to pass does not make a statement concerning expectations or plans false."); *Freedman v. Value Health, Inc.*, 135 F. Supp. 2d 317, 338 (D. Conn. 2001) ("[The] strategies may have been unsuccessful and the plaintiffs might be unhappy about it, but that is not the basis of a section 11 or 12(a)(2) claim.").

### 3. The Bespeaks Caution Doctrine and Safe Harbor Apply to Omissions.

Next, Plaintiffs assert that the bespeaks caution doctrine and safe harbor are inapplicable

because their claims are based on omissions, not affirmative misstatements. *See* Opp. at 22.

The Sixth Circuit has flatly rejected that contention. *See In re Royal Appliance Sec. Litig.*, 64 F.3d 663 (unreported), 1995 WL 490131, *5 (6th Cir. 1995) (holding that because there were adequate cautionary disclosures "any specific omissions" would be "immaterial" under the bespeaks caution doctrine). This holding is in accord with law outside the Sixth Circuit both for the bespeaks caution doctrine and the safe harbor. *See Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999) ("[T]here is no question under the statute that a material and misleading omission can fall within the forward-looking safe harbor."); *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 371 (3d Cir. 1993) ("The bespeaks caution doctrine is, as an analytical matter, equally applicable to allegations of . . . omissions concerning soft information.").

### 4. The Cautionary Language Was Meaningful.

Plaintiffs also argue that these protections do not apply because the accompanying cautionary language was merely "boilerplate." Opp. at 22. The Sixth Circuit, however, has held that where, as here, the cautionary language put investors on notice of the issues about which Plaintiffs complain, the protections apply. *See, e.g.*, *Royal Appliance*, 1995 WL 490131, at *4.

The Registration Statement's twenty-five pages of risk disclosures warned of precisely the risks at issue in the Complaint—*e.g.*, that USX "experience[s] substantial difficulty in attracting and retaining sufficient numbers of qualified drivers"; and that its operations could be materially adversely affected by "[i]ncreases in driver compensation," "[a] shortage of qualified drivers," USX's inability to "attract and retain a sufficient number of qualified drivers," or by changes in customer shipping patterns or insurance expenses. USX Br. at 5-7. Ironically, despite generic allegations that the disclosures were "boilerplate," Plaintiffs do not identify a single Registration Statement warning that they argue was insufficiently tailored to USX or its business.

Seeking to evade the protection afforded, Plaintiffs further contend that USX failed to warn

8

of risks that had already occurred. *See* Opp. at 22-23. Specifically, Plaintiffs assert that warning of "an imbalance between our capacity and our customers' freight demand" was insufficient because Dedicated routes were already cannibalizing the OTR segment as of the IPO. *Id.* Plaintiffs' lone example highlights the fallacy in their argument for at least three reasons.

*First*, this cited warning related to changing freight patterns and supply chains (USX Br. at 5)—thus, it had nothing to do with USX's need to use drivers from the OTR division to support the Dedicated division. In fact, as the Complaint itself alleges, what forced the Company to shift drivers from OTR to Dedicated was USX's difficulty in hiring and retaining drivers—not shipping pattern changes. Compl. ¶ 10(d) ("a shortage of drivers for trucks was negatively impacting USX's dedicated division, which forced USX to reallocate OTR drivers . . . to drive dedicated routes").

*Second*, the Registration Statement undoubtedly warned of the risk that the Complaint alleges actually caused this shift of drivers: hiring and retention issues. *See* Dkt. No. 72-5 at 22 ("Increases in driver compensation or difficulties attracting and retaining qualified drivers could materially adversely affect our profitability and ability to maintain or grow our fleet.").

*Third*, to the extent that Plaintiffs argue this risk was already affecting USX's business before the IPO—that, too, was disclosed. USX informed investors:

> [W]e *experience substantial difficulty* in attracting and retaining sufficient numbers of qualified drivers. . . Our industry is subject to a shortage of qualified drivers. . . . A shortage of qualified drivers and intense competition for drivers from other trucking companies *will create* difficulties in maintaining or increasing the number of our drivers and may restrain our ability to engage independent contractors.

*Id.* at 23 (emphasis added). Indeed, as of the IPO, USX cautioned: "[W]e *suffer from a high turnover rate* of drivers and *our turnover rate is higher than the industry average and compared to our peers*," which "requires [USX] to spend significant resources recruiting a substantial number of drivers in order to operate existing revenue equipment and *subjects [USX] to a higher*

9

*degree of risk* with respect to driver shortages than [its] competitors." *Id.* (emphasis added).

The cautionary language was meaningful and invokes the protections of the bespeaks caution doctrine and the safe harbor. *Royal Appliance*, 1995 WL 490131, at \*4.

### 5. The Application of the Bespeaks Caution Doctrine and Safe Harbor Should Be Resolved at the Motion to Dismiss Stage.

Plaintiffs' last-ditch argument is that the determination of whether cautionary language is sufficiently meaningful "often raises 'questions of fact that are inappropriate for determination on [a] [m]otion to dismiss.'" Opp. at 23 (citation omitted). Not so. The Reform Act's safe harbor expressly provides that "*[o]n any motion to dismiss* based upon subsection (c)(1), the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement." 15 U.S.C. § 78u-5(e) (emphasis added). And as to the bespeaks caution doctrine, courts have repeatedly recognized that these issues should be addressed at the pleading stage. *See, e.g.*, *Royal Appliance*, 64 F.3d 663, 4 ("The district court properly dismissed the complaint based on [CEO's] use of cautionary language."); *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039 (6th Cir. 1991) (affirming dismissal of securities claims pursuant to the bespeaks caution doctrine); *Fidel v. AK Steel Holding Corp.*, No. C-1-00-320, 2002 WL 31545952, at \*5 (S.D. Ohio Sept. 19, 2002) ("The bespeaks caution doctrine properly may be applied in considering a motion to dismiss.").[5]

If the rule were otherwise (as Plaintiffs suggest), it would render these protections

---

[5] *See also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120 n.7 (10th Cir. 1997) ("The 'bespeaks caution' doctrine may properly be applied in considering a motion to dismiss."); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d at 372 (affirming dismissal of Securities Act claims based on bespeaks caution doctrine); *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 9 (2d Cir. 1996) (same); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994) ("The bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud.").

meaningless; Defendants would be forced to engage in discovery on the protected forward-looking statements. That is not the law.

**B.     The Challenged Statements Of Opinion Are Not Actionable.**

The USX Defendants established that many of the challenged statements are also inactionable opinions. USX Br. at 19-21. Plaintiffs' three contrary arguments fail.

***First***, Plaintiffs ignore Supreme Court precedent and assert that "we believe" statements are not necessarily statements of opinion. Opp. at 24. But, as the Supreme Court has held, the "we believe" language prefacing the statements at issue signals precisely that—these are statements of opinion, not fact. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) (statements starting with "We believe" are "pure statements of opinion").

***Second***, Plaintiffs argue that opinions are actionable where a complaint alleges that they were not truly held by the speaker at the time they were issued. Opp. at 24. But the Complaint here expressly disclaims any allegation of fraud, including any allegation that Defendants acted knowingly, for the Section 11 claim, Compl. ¶ 188, which the Supreme Court has held precludes Plaintiffs from arguing that the challenged opinions were not genuinely held. *Omnicare*, 575 U.S. at 186 (plaintiffs cannot claim that challenged opinions were not truly held where the "complaint explicitly 'exclude[s] and disclaim[s]' any allegation sounding in fraud").

***Third***, Plaintiffs assert that the challenged opinions are actionable because USX failed to disclose the issues that the CWs allegedly observed. Opp. at 24. But this argument is just a variant of the one above, as Plaintiffs concede: "these allegations indicate that the speakers did not hold the opinion they expressed . . . and would make such an opinion baseless." *Id.* at 25. Under *Omnicare*, the fact that Plaintiffs have disclaimed allegations of fraud means that the Complaint cannot allege that the speakers did not truly hold the expressed beliefs—irrespective of the CW allegations. *Omnicare*, 575 U.S. at 186. And even if the Court were to cast aside this disclaimer

11

and *Omnicare*, Plaintiffs' argument fails because the Complaint does not plausibly plead that (i) the CW allegations contradict the challenged opinions, or (ii) even if they did, that Defendants knew of these alleged contradictory facts. *See infra.* Sec. I.F.

Apparently recognizing that failure, Plaintiffs try to fill the gap with the absurd argument that Defendants must have known the views of the CWs because (i) Defendant Fuller's website bio states that he is "'particularly attuned to the day-to-day challenges'" of USX employees, and (ii) Defendant Peterson's bio states that he "'plays a vital role in company transactions and all of [USX's] strategic initiatives." *See* Opp. at 35. From these generic references, Plaintiffs leap to the conclusion that these executives would have been aware of any issues identified by the CWs and that the challenged opinions are therefore baseless. *See id.* at 25, 35-36. There is absolutely no factual (or legal) basis for that assumption.

**C.      The Challenged Statements Of Corporate Optimism Are Not Actionable.**

Plaintiffs do not contest, as Defendants showed (USX. Br. 21-22), that vague statements of corporate optimism are inactionable under the securities laws. Instead, Plaintiffs assert that they challenge no such statement, and they criticize Defendants for "isolat[ing] statements" to show otherwise. Opp. at 25. Of course, the reality is that nobody can decipher from the Complaint which statements Plaintiffs are challenging and why, which alone warrants dismissal. USX Br. at 13-14.

In any event, as currently pled, the Complaint quotes statements that constitute puffery under the law. For example, the Complaint alleges the following statements were misrepresentations: (i) "USX claimed it would 'Focus on Front-Line Tactics' because 'tactical execution' is critical to [USX's] success," Compl. ¶ 105; (ii) USX claimed it had a "'complimentary mix of services to afford flexibility and stability,'" *id.* ¶ 107; (iii) "Our service offerings have unique characteristics and are subject to differing market forces, which we believe allows us to respond effectively through economic cycles"; and (iv) "We believe our scale,

management team and continued roll-out of tactical operational improvements . . . position us for long-term success in our industry," *id.* ¶ 111. Even the statement Plaintiffs highlight in their Opposition is puffery—*i.e.*, that part of USX's "growth strategy" was to "[g]row [its] revenue base prudently with a focus on dedicated contract services and brokerage by cross-selling [its] services with existing customers and pursuing new customer opportunities." Opp. at 26.

These are not, as Plaintiffs argue, "objectively verifiable facts," *see id.* at 27. Rather, these are the same type of vague statements that repeatedly have been deemed inactionable, as even Plaintiffs' cited case law demonstrates. *See, e.g.*, *In re Ford Motor Co.*, 381 F.3d 563, 570 (6th Cir. 2004) (inactionable puffery included: "At Ford, quality comes first"; Ford is "taking across-the-board actions to improve its quality"; and Ford has "dedicated itself to finding even better ways of delivering safer vehicles"); *City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651, 670-71 (6th Cir. 2005) (inactionable puffery included: "[Bridgestone's] [r]igorous testing under diverse conditions at our proving grounds around the world helps ensure reliable quality"; Bridgestone had "full confidence" in its ATX tires; and "[O]ur experience with Radial ATX indicates high consumer satisfaction with the quality and reliability of these tires").[6]

In the Sixth Circuit, a "corporation's self-praise about its business strategy is 'not considered seriously by the marketplace and investors assessing a potential investment,'" and is thus not actionable as a misstatement. *In re Ford*, 381 F.3d at 571. The statements of puffery that the USX Defendants identified in their motion should be dismissed. USX Br. at 21-22.

---

[6] The few cases Plaintiffs cite where the statements were sufficient to state a claim involved an objective, verifiable attribute that could be proven true or false. *Bridgestone*, 389 F.3d at 671 (the only challenged statement to survive was due to claiming that "objective data" supported claim); *Grae v. Corr. Corp. of Am.*, No. 3:16-cv-2267, 2017 U.S. Dist. LEXIS 207475, *45-56 (M.D. TN. Dec. 18, 2017) ("A company's general boasts of quality are typically insufficient to establish liability under Section 10(b) . . . . CoreCivic, however, did peg its claims to something concrete.").

In another attempt to avoid dismissal, Plaintiffs misrepresent the requirements for an Item 303 violation, contending that Item 303 requires disclosure of trends "that were known *or* reasonably expected to have a material impact." Opp. at 16 (emphasis added). That is not the test. As the case Plaintiffs cite makes clear, Item 303 "imposes a disclosure duty 'where a trend, demand, commitment, event or uncertainty is ***both*** [1] presently known to management ***and*** [2] reasonably likely to have material effects on the registrant's financial condition or results of operations.'" *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 888 (M.D. Tenn. 2013). *Schuh* did not dispense with the Sixth Circuit's requirement to plead actual knowledge of the undisclosed trend for an Item 303 violation. *J&R Mktg., SEP v. General Motors Corp*, 549 F.3d 384, 392 (6th Cir. 2008) ("[T]he duty of disclosure arising from Item 303 does require knowledge").[7]

And although Plaintiffs assert that they have alleged "specific details from which this Court can infer knowledge," Opp. at 18, the Complaint disclaims any such allegations, as discussed above. *See* Compl. ¶ 188.[8] Moreover, Plaintiffs' response makes clear that their claims depend on their CW allegations, *see* Opp. at 16-18, yet the statements attributed to those CWs do not show a negative undisclosed trend that was known by the USX Defendants at the time of the IPO. The Complaint does not even allege facts connecting the CWs to the Individual Defendants, such that the CW allegations could establish Defendants' actual knowledge. *See* USX Br. at 20-21.

---

[7] Plaintiffs' cited authorities recognize the same. *See, e.g.*, *Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*, No. 07 Civ. 10528, 2010 WL 148617, *9 (S.D.N.Y. Jan. 14, 2010) ("Item 303's requirement of knowledge requires that a plaintiff plead, with some specificity, facts establishing that the defendant had actual knowledge of the purported trend.").

[8] Even as to the Exchange Act Defendants, Plaintiffs do not allege actual knowledge. Instead, they allege that those Defendants recklessly disregarded whether the challenged statements were false or misleading, which is insufficient to state a violation of Item 303. USX Br. at 24.

Because the Complaint does not allege facts showing that Defendants had actual knowledge of any undisclosed trend required to be disclosed by Item 303, Plaintiffs have not stated a claim based on this statutory duty of disclosure.

### E.      Plaintiffs' Mischaracterizations Do Not State A Claim.

Having no valid response to the asserted bases for dismissal, Plaintiffs try to sow confusion by suggesting that Defendants made statements that simply appear nowhere in the Registration Statement. Plaintiffs' primary mischaracterizations and the statements actually included in the Registration Statement are as follows:

Assurance of Future Success – Plaintiffs' claim: "In order to attract investors, USX's Offering Documents represented that the Company already had the tools to succeed long term . . . ." Opp. at 1.

Actual statements:

- "*We believe* our scale, management team and continued roll-out of tactical operational improvements, as well as our mix of over-the-road, dedicated and brokerage services, position us for long-term success in our industry." *Id.* (emphasis added).

- "We have a history of net losses. We have generated a profit in one of the last five years. *Improving profitability depends upon numerous factors*, including our ability to successfully execute both our ongoing and planned strategic initiatives, such as increasing our fleet efficiency and utilization, decreasing driver turnover and further refinement of our business mix profile." USX Br. at 7 (emphasis added).

USX "Transformation" Initiatives - Plaintiffs' claim: "Defendants also *assured investors* that three initiatives had already improved the Company's operating metrics: (i) load planning in order to maximize utilization of drivers' available hours; (ii) fleet management involving proactive interactions with drivers to anticipate and fix issues such as home time planning and load scheduling purportedly resulting in less driver turnover; and (iii) customer service to drive knowledge of specific markets to improve equipment utilization, driver satisfaction and network balance." Opp. at 1-2 (emphasis added).

Actual statements:

"Beginning in early 2017, *we started making* significant changes to our operational infrastructure in order to focus on and measure our frontline tactical execution. The initiatives below *are ongoing*, and *we believe* the *early results* of our load planning, fleet management and customer services initiatives *have begun to be reflected in our operating*

15

*metrics*.

- *Load Planning Initiative*. During 2017, we shifted from a load planning strategy based on minimizing empty miles to one that maximizes utilization of our drivers' available hours. *We believe* the focus on drivers' hours more effectively utilizes our scarcest resource and improves driver satisfaction. Following this change, miles per seated tractor per week and driver turnover rate both improved.

- *Fleet Management Initiative*. In October 2017, we initiated a fleet management pilot program on 250 tractors in which our fleet managers emphasize proactive interactions with drivers to anticipate and fix issues such as home time planning and load scheduling. Inbound driver calls declined and driver turnover decreased, resulting in more time for our managers to proactively solve problems, thereby improving our efficiency and utilization. We have seen similar results as *we continue to roll out this program* to the rest of our fleet, which *we expect to complete during 2018*.

- *Customer Service Initiative*. In January 2018, we redesigned our customer service around regional specialists to drive deeper knowledge of specific markets. Under this new structure, experts in managing freight flows in and out of their respective regions become key points of contact with customers and arrange load pickup and delivery to meet available service hours for our drivers. *We believe* this service model *will contribute to improved* equipment utilization, driver satisfaction and network balance." Dkt. 72-5 at 3 (emphasis added).

Maintenance Programs - Plaintiffs' claim: "[T]he Offering Documents *assured investors* that USX had maintenance programs in place *to reduce downtime for all tractors* and reduce maintenance costs for older tractors." Opp. at 2 (emphasis added).

Actual statements:

"In 2015*, we began* to redesign our fleet renewal and maintenance programs *with the goal* of improving reliability, reducing downtime for all tractors and reducing maintenance costs on the older tractors in our fleet. *These initiatives*, among others, *were intended to improve* the quality of our assets by purchasing, maintaining and trading our tractors in a manner designed to optimize life cycle costs." Dkt. No. 72-5 at 2.

Driver Shortages - Plaintiffs' claim: "[T]he Offering Documents represented that USX had 'implemented driver pay increases' to address the industry wide shortage . . . ." Opp. at 2.

Actual statements:

"A *shortage of qualified drivers and intense competition* for drivers from other trucking companies *will create difficulties* in maintaining or increasing the number of our drivers and may restrain our ability to engage independent contractors. We have implemented driver pay increases to address this shortage. The compensation we offer our drivers and independent contractor expenses are subject to market conditions, and *we may find it*

16

*necessary to further increase driver compensation, change the structure of our driver compensation and/or become subject to increased independent contractor expenses in future periods, which could materially adversely affect our growth and profitability*." Dkt. No. 72-5 at 23 (emphasis added).

This attempted mischaracterization is telling. Plaintiffs are trying to convince the Court that they have stated a claim based on representations USX never made. But the actual language in the Registration Statement, not Plaintiffs' mischaracterizations, governs. *See, e.g.*, *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009) (affirming dismissal of Securities Act claims where "allegations simply misconstrue[d] the language in the registration statement"). And in deciding a motion to dismiss, the Registration Statement's language must be evaluated as a whole, in context. *See, e.g.*, *Olkey*, 98 F.3d at 5.

What the actual language shows is that USX made no "assurances" that its problems were resolved, that its transformation initiatives would be a success, or that prior driver pay increases would be sufficient going forward. And to the extent that the statements above contained any factual representation, such as the minimal improvements the Company saw from early rollout of the initiatives, the Complaint includes no well-pled allegations to suggest those were false. Rather, Plaintiffs' Complaint is based on the hindsight allegation that these initiatives—which were still a work in progress as of the IPO—proved less successful than hoped by November 2018. *See, e.g.*, Opp. at 26 ("Given that USX was unable to prioritize growth in dedicated contract services because [of] a shortage of drivers . . . the underlying fact used to support the claimed corporate optimism was in fact, false and materially misleading."). That does not support a claim. *See, e.g.*, *Rombach*, 355 F.3d at 174 ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage.").

17

**F.      The Confidential Witness Allegations Do Not Support A Claim.**

Although the Complaint itself does not explain what statements Plaintiffs challenge or why, Plaintiffs clarify in the Opposition that they are relying on an omissions theory and argue that certain portions of the Registration Statement were misleading based on the CW allegations. Opp. at 9-12. To state a claim on this theory, Plaintiffs must allege facts showing "'a conflict between Defendants' statements and [the allegedly omitted material facts]'" that rendered the public statements misleading. USX Br. at 24 (quoting *Omnicare*). Here, that standard is not met because the CW allegations do not support any of Plaintiffs' three categories of alleged misstatements.

*First*, Plaintiffs assert that USX failed to disclose issues concerning driver retention and hiring. Opp. at 8. Plaintiffs point to (i) CW5, who "confirmed that driver turnover was a significant problem at USX in the years prior to the IPO" and "recall[ed] the widespread truck maintenance problems at USX that caused drivers to complain," (ii) CW1 and CW 2, who "similarly recalled the high turnover problem," and (iii) CW3, who "attributed the turnover problem to the Company's lower-than-average pay." Opp. at 9-10. In short, the CWs said there was a turnover problem and USX paid lower than average.

But the Registration Statement expressly disclosed those issues stating, among other things: (i) "we experience substantial difficulty in attracting and retaining sufficient numbers of qualified drivers"; (ii) "alternative employment opportunities, including in the construction and manufacturing industries, . . . may offer better compensation"; and (iii) "we suffer from a high turnover rate of drivers and our turnover rate is higher than the industry average and compared to our peers." Dkt. No. 72-5 at 22-23. And CW5's recollection that truck maintenance issues contributed to driver turnover is of no relevance—Plaintiffs do not explain how that renders anything misleading. In any event, USX disclosed that its driver turnover issue stemmed not just from lower pay, but also less desirable "working conditions." Dkt. 72-5 at 25.

18

*Second*, Plaintiffs assert that the Registration Statement was misleading because it omitted that USX shifted OTR drivers to the Dedicated division. Opp. at 11. Although Plaintiffs cite to purported CW statements regarding the shift in drivers for one customer, they fail to cite to any statement in the Registration Statement where USX guaranteed that OTR drivers would never support the Dedicated division, which renders the CW allegations on this issue irrelevant. In fact, the Registration Statement represented that USX intended to "prioritize growth in dedicated contract services." Dkt. No. 72-5 at 10. Moving drivers from OTR to Dedicated when there was a need is entirely consistent with the Registration Statement—the Company said it was going to prioritize growth in Dedicated. And if Plaintiffs have an issue with that strategy, their gripe is not with the Registration Statement, but the strategy itself. That disagreement, however, is not actionable as a securities claim. Underwriters' Br., Dkt. No. 73-1, at 11 n.12.

*Third*, Plaintiffs contend that the Registration Statement was misleading with respect to the Company's self-insurance risks. Opp. at 13. For this theory, Plaintiffs do not even have CW allegations in support. Instead, Plaintiffs describe the Company's liability insurance as of the IPO, like it was described in the Registration Statement. Then, in one sentence, Plaintiffs assert that the Registration Statement was misleading because during an investor call on November 1, 2018, Defendant Peterson said that the Company's liability insurance coverage was not "'symmetrical with [USX's] overall credit and earnings profile and leverage.'" *Id.*

But saying that the insurance program when the IPO occurred was not "symmetrical" does not mean the Registration Statement was misleading, especially because USX disclosed that its insurance program "could significantly increase the volatility of, and decrease the amount of, [USX's] earnings," and result in "significant exposure to fluctuations in the number and severity of claims." Dkt. No. 72-5 at 25-26. USX accurately disclosed the program as it existed at the time,

19

as well as its risks—and Plaintiffs do not allege otherwise.

Moreover, the November 2018 investor call transcript makes clear that this was Mr. Peterson's hindsight perspective based on information gathered after the IPO. He explained that after observing a post-IPO insurance expense increase, management "did a very data driven . . . risk-bearing capacity analysis," and "looked at risk adjusted discount rates when [they] were putting [a new insurance] program in place," which would be effective as of September 1, 2018. Dkt. 72-7 at 15. Through that process, he said: "I think we determined the risks that we were taking before with the $10 million on a claim probably wasn't really symmetrical with our overall credit and earnings profile and leverage. And so, with this new program in place we think it's much more prudent for predictability in earnings on a go forward basis." *Id.* In other words, the Company went through a process to get what it believed was a more predictable policy in place after the IPO, which comes nowhere near suggesting a false statement *when the IPO occurred*.

Plaintiffs' three theories of misstatements are unsupported by the Complaint's allegations and are contradicted by the Registration Statement. The Complaint should be dismissed.

## II. THE COMPLAINT FAILS TO ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER FOR THE SECTION 10(b) CLAIM.

Even if Plaintiffs had established an actionable misstatement or omission, their claim under Section 10(b) of the Exchange Act fails for the independent reason that the Complaint does not adequately plead scienter. None of the issues raised in Plaintiffs' response changes that result.

***First***, Plaintiffs suggest that the Sixth Circuit's instructive scienter factors from *Helwig* are no longer the law following *Tellabs*. Opp. at 30. That is incorrect. Since *Tellabs*, the Sixth Circuit has on multiple occasions referred to the *Helwig* factors when evaluating whether a complaint adequately pleads scienter. *See Dougherty*, 905 F.3d at 981 (applying *Helwig* factors for scienter); *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1041 (6th Cir. 2016) (same); *Konkol v. Diebold, Inc.*,

590 F.3d 390, 399 (6th Cir. 2009) (same). In fact, despite claiming *Helwig* is not the law, Plaintiffs' Opposition cites more than a dozen cases, including post *Tellabs*, relying on the *Helwig* factors.[9]

Moreover, contrary to Plaintiffs' suggestion, the USX Defendants are not arguing that the Court must "treat each paragraph of the complaint in isolation." Opp. at 31. The point is that the Sixth Circuit has identified nine relevant factors to consider in determining whether a strong inference of scienter is pled, and the Complaint here falls far short of meeting those, which goes a long way to establishing that scienter is not met. USX Br. at 27.

*Second*, Plaintiffs' scienter allegations rely primarily on the unidentified CWs, but those allegations provide no evidence as to the scienter of any Section 10(b) Defendant because those CWs "are not identified as having any contact or interaction with any of the Defendants." *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 852 (S.D. Ohio 2016); USX Br. at 29. Although USX noted this deficiency, Plaintiffs provide no response. They ignore it and ask the Court to accept vague allegations of unidentified CWs to show that these individuals committed securities fraud. The law does not permit such an inference. *See id.*

*Third*, as discussed below, Plaintiffs' identified factors in support of scienter do not give rise to the requisite strong inference.

*No Divergence Between Internal Reports and Public Statements.* Plaintiffs assert they have

---

[9] *Dougherty*, 905 F.3d at 981; *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 473 (6th Cir. 2014); *Konkol*, 590 F.3d at 404; *Ley v. Visteon Corp.*, 543 F.3d 801, 810 (6th Cir. 2008); *Bridgestone*, 399 F.3d at 685; *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 692-93 (6th Cir. 2004); *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2019 WL 6168254, at *22 (M.D. Tenn. Nov. 19, 2019); *Grae*, 2017 WL 6442145, at *20; *In re EveryWare*, 175 F. Supp. 3d at 860-61; *In re Miller Energy Res. Sec. Litig.*, No. 3:11-CV-386-TAV-CCS, 2014 WL 415730, at *17 (E.D. Tenn. Feb. 4, 2014); *Winslow v. BancorpSouth, Inc.*, No. 3:10-00463, 2011 WL 7090820, at *22 (M.D. Tenn. Apr. 26, 2011); *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-00882, 2011 WL 1335803, at *52 (M.D. Tenn. Mar. 31, 2011); *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, 743 F. Supp. 2d 744, 757 (W.D. Tenn. 2010).

shown a conflict between internal USX reports and public statements that demonstrates scienter. Opp. at 31. Plaintiffs, however, identify no such internal report. Rather, they rely on their CW allegations which, as discussed above, do not show a conflict with any challenged statement. And, even if these CWs disagreed with the challenged statements (which is not pled), that would not demonstrate a divergence between internal reports and public statements sufficient to support an inference of scienter. *See EveryWare Global*, 175 F. Supp. 3d at 860 (CW allegations are insufficient to support this factor where "the pleading [did] not indicate that this was anything more than an employee's disagreement with management").[10]

*Defendants Did Not Ignore Red Flags*. Plaintiffs next assert that the Section 10(b) Defendants ignored red flags raised when one of USX's customers, Walmart, "reallocat[ed] its distribution centers between USX and its competitors in early 2018." Opp. at 32-33. But what Plaintiffs allege in the Complaint—yet omit in their Opposition—is that while USX "lost a few of its Walmart dedicated contracts" in 2018, it simultaneously "won new dedicated business [from Walmart] in Virginia and Louisiana." Compl. ¶ 80. That is far from the "sweeping change in business" Plaintiffs portray in the Opposition. And Plaintiffs fail to explain how these changes with Walmart contracts—both gains and losses—raised a red flag as to a false statement.

Plaintiffs further argue that Defendant Fuller "misleadingly quelled investor concern over dedicated driver hiring problems by assuring investors that customer rate increases would allow USX to offer higher wages to phase out OTR's support of the dedicated routes" during a call in

---

[10] This is in contrast to cases where actual internal "reports" that conflicted with public statements were provided to defendants. *See, e.g.*, *Bridgestone Corp.*, 399 F.3d at 657-58, 684.

August 2018. Opp. at 33. But the Complaint paragraphs Plaintiffs cite contain no such assurance.[11]

*The Core Operations Doctrine Does Not Show Scienter.* Next, Plaintiffs assert that scienter is shown because the Section 10(b) Defendants would have been aware of the "adverse events" that occurred in core areas to USX operations. Opp. at 35. Plaintiffs then criticize Defendants for citing "no Sixth Circuit cases" for the proposition that the core operations doctrine has been implicitly repealed by the Reform Act. *Id.* at 36. But that is because "the Sixth Circuit has not addressed the viability of the doctrine post Reform Act," as the USX Defendants noted. USX Br. at 31. Courts that have done so, however, have rejected this doctrine, and the Court should do the same here. *Id.*; *see also Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) ("[T]he thrust of the case law indicates continued movement away from the doctrine."); *Brecher v. Citigroup Inc.*, 797 F. Supp. 2d 354, 371 (S.D.N.Y. 2011) ("In light of the PSLRA's heightened pleading standards, imputing knowledge based simply on the fact that the fraud concerned a firm's core operations is highly doubtful."); *In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003) (rejecting core operations inference post-PSLRA).

The strained connection Plaintiffs make to the Section 10(b) Defendants only confirms why these allegations do not plead scienter. Plaintiffs ask the Court to infer scienter based on the Section 10(b) Defendants' positions in the Company and their access to information. Compl. ¶ 32 ("Because of their positions, and their access to material non-public information available to them but not to the public, the Exchange Act Defendants knew or recklessly disregarded" whether the statements were false and or misleading). The Sixth Circuit has held that cannot establish scienter.

---

[11] Plaintiffs likewise contend that Defendants "disregarded key risk factors that its truck drivers were more likely to cause major accidents than its competitors" (Opp. at 34), but the Complaint contains no facts to support it and fails to identify any statement for which this was a "red flag."

*PR Diamonds*, 364 F.3d at 688 ("fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information").

*The Timing of the Alleged Corrective Disclosure Does Not Show Scienter*. Plaintiffs assert Defendants have conceded that one *Helwig* factor—which looks to the closeness in time of an allegedly fraudulent statement and corrective disclosure—is met here. Opp. at 37. But Defendants never conceded that factor—merely that it was the only factor the Complaint even tried to establish. USX Br. at 27. And, as Plaintiffs' cited authorities show, the gap in time between the June 2018 Registration Statement and the November 2018 disclosure does not support an inference of scienter. *Bridgestone Corp.*, 399 F.3d at 688 (four month gap is insufficient to support scienter).

*Financial Incentives of Fuller and Peterson Do Not Show Scienter*. Plaintiffs also contend that scienter is shown because the Section 10(b) Defendants were to receive bonuses in connection with the IPO. Opp. at 37-38. Even if true, that does not support any inference of scienter. *See* USX Br. at 32-33; *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (such allegations are inadequate because "[i]n every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction"); *Knurr v. Orbital ATK Inc.*, 272 F. Supp. 3d 784, 808 (E.D. Va. 2017) (finding that allegations of bonuses tied to completing transaction did not support scienter); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 843 (N.D. Cal. 2000) (same).[12]

*Motivation to Pay Off Debt Does Not Show Scienter.* The fact that proceeds from the IPO

---

[12] Plaintiffs likewise argue that Defendants Fuller and Quinn Pate were motivated to commit fraud because their fathers—the founders of the Company—would receive proceeds through the IPO. But Quinn Pate is not even a defendant for the Section 10(b) claim, so her motive is irrelevant. Moreover, these were not unusual benefits that would flow to the founders. They were to receive proceeds in exchange for property and loans to USX—as was disclosed. Dkt. No. 72-5 at 150-51 (disclosing "Certain Relationships and Related Party Transactions").

would be used, in part, to pay down debt (Opp. at 39), similarly does not show scienter. Like executive compensation, paying down debt is a common business interest, and it was disclosed in the Registration Statement. USX Br. at 33. Plaintiffs offer no response.

*Executive Departures of Non-Defendants Do Not Show Scienter*. Finally, Plaintiffs point to the departures of two former USX executives who are not Section 10(b) Defendants. As USX already explained, neither of those departures supports an inference of scienter. USX. Br. at 34-35. And with no other relevant factor supporting an inference of scienter, a strong inference is not pled merely because two non-Defendants left the Company months after the IPO. *See In re NVIDIA Corp. Sec. Litig*., 768 F.3d 1046, 1062-63 (9th Cir. 2014) (affirming dismissal where complaint failed to connect departures with issues alleged).

## **CONCLUSION**

For the foregoing reasons, and those explained in USX's opening brief, Plaintiffs have stated no claim for violation of the federal securities laws, and the Complaint should be dismissed.

Dated: April 23, 2020

Philip B. Whitaker, Jr. (BPR # 013999)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
pwhitaker@bakerdonelson.com

*Counsel for USX Defendants*

Respectfully submitted,

/s/ *Jessica P. Corley* _
Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

*Counsel for USX Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of April, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ *Jessica P. Corley* _____
Jessica P. Corley (*pro hac vice*)