# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

## CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. XPRESS ENTERPRISES, INC. *et al.*,<br><br>Defendants. | Civil Action No. 1:19-cv-00098<br><br>CLASS ACTION<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Christopher H. Steger |

## THE UNDERWRITERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT'S SECTION 11 CLAIM (COUNT I)

Of Counsel

Jonathan Rosenberg (*pro hac vice*)
William J. Sushon (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000

Crews Townsend
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, Tennessee 37402
Telephone:  (423) 785-8297
Fax:  (423) 785-8480

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.      THE COMPLAINT FAILS TO PLEAD AN ACTIONABLE OMISSION. ........ 2

          A.      Plaintiffs Identify No Statement Rendered Misleading by Any Alleged Omission........................................................................................ 2

                1.      Driver Retention and Transformation (Alleged Omissions (a), (b), (c))................................................................................... 2

                2.      Changes in Shipping Patterns (Alleged Omission (e)). ................ 6

                3.      Prioritizing Growth in Dedicated Services (Alleged Omission (d)). ...................................................................................... 6

                4.      Cost-Per-Mile (Alleged Omission (f)). ......................................... 7

                5.      USX's Insurance (Alleged Omission (g))....................................... 8

          B.      Plaintiffs Have No Claim Under Item 303 of Regulation S-K. ................. 8

    II.     THE CHALLENGED STATEMENTS ARE OTHERWISE NOT ACTIONABLE. ............................................................................................... 10

CONCLUSION................................................................................................................ 10

Case 1:19-cv-00098-TRM-CHS   Document 90   Filed 04/23/20   Page 2 of 16   PageID #: 1461

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burges v. Bancorpsouth Inc.,*
Case No. 3:14-cv-1564, 2017 WL 4640462 (M.D. Tenn. Oct. 12, 2017) .................................. 5

*Carver v. Swing,*
Case No. 4:16-CV-35-HSM-CHS, 2018 WL 1177469 (E.D. Tenn. Mar. 6,
2018) ......................................................................................................................... 7

*In re EveryWare Global Inc. Sec. Litig.,*
175 F. Supp. 3d 837 (S.D. Ohio 2019) ...................................................................... 2

*Hellmuth v. Hood,*
Case No. 19-3198, 2019 WL 8219511 (6th Cir. 2019) ............................................. 7

*Inst. Inv. Grp. v. Avaya Inc.,*
564 F.3d 242 (3d Cir. 2009) ...................................................................................... 5

*J&R Mktg. v. GMC,*
549 F.3d 384 (6th Cir. 2008) ..................................................................................... 9

*In re Keyspan Corp. Sec. Litig.,*
383 F. Supp. 2d 358 (E.D.N.Y. 2003) ....................................................................... 3

*McKnelly v. Wyndham Destinations, Inc.,*
Case No. 3:19-CV-103-TAV-DCP, 2020 WL 1518624 (E.D. Tenn. Mar. 30,
2020) ......................................................................................................................... 7

*Nielsen v. Greenwood,*
849 F. Supp. 1233 (N.D. Ill. 1994) ............................................................................ 3

*In re Obalon Therapeutics, Inc. Sec. Litig.,*
Case No. 3:18-cv-0352-AJB-WVG, 2019 WL 4729461 (S.D. Cal. Sept. 25,
2019) ......................................................................................................................... 3

*In re Omnicare, Inc. Sec. Litig.,*
769 F.3d 455 (6th Cir. 2014) ..................................................................................... 6

*Plymouth Cnty. Ret. Sys. v. Carter's Inc.,*
Case No. 1:08-cv-02940-JOF, 2011 WL 13124501 (N.D. Ga. Mar. 17, 2011) ......... 9

*Rhodes v. Omega Rsch., Inc.,*
38 F. Supp. 2d 1353 (S.D. Fla. 1999) ....................................................................... 5

*In re Scholastic Corp. Sec. Litig.,*
252 F.3d 63 (2d Cir. 2001) ........................................................................................ 5

**Page(s)**

*Schuh v. HCA Holdings, Inc.*,
  947 F. Supp. 2d 882 (M.D. Tenn. 2013)........................................................................... 9

*Scott v. State of Tenn.*,
  878 F.2d 382, 1989 WL 72470 (6th Cir. 1989) ............................................................ 7

*Singh v. Schikan*,
  106 F. Supp. 3d 439 (S.D.N.Y. 2015) ........................................................................... 2

*In re Stac Electronics, Inc. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ..................................................................................... 5, 6

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
  222 F. Supp. 2d 216 (E.D.N.Y. 2002) ........................................................................... 5

**Statutes**

15 U.S.C. § 77k(a) ........................................................................................................ 6

Case 1:19-cv-00098-TRM-CHS    Document 90    Filed 04/23/20    Page 4 of 16    PageID #: 1463

# PRELIMINARY STATEMENT[1]

Plaintiffs fail in the Opposition to identify any material fact that the Defendants omitted from the RS and were duty-bound to disclose. As the Defendants showed, none of the Complaint's allegations—including from Plaintiffs' confidential witnesses—renders any of the RS's disclosures misleading. Plaintiffs' struggle to respond is reflected in their unavailing attempt to recast Defendants' showing as a "truth on the market" defense, which they say is ill-suited to a motion to dismiss. (Opp. 18–19.) But the "truth on the market" defense is not implicated where, as here, the defendant relies on the disclosures in the challenged document at issue—*i.e.*, the RS—as opposed to *other* disclosures and information available to investors. The RS's own disclosures, in contrast, are a common basis for pleading-stage dismissal.

Plaintiffs' struggle to articulate a disclosure duty is also reflected in their tortured argument that a district court somehow overruled the Sixth Circuit's requirement to plead a defendant's *actual knowledge* of a known trend to trigger Item 303's disclosure requirements. That, of course, cannot happen, and it didn't: the district court case Plaintiffs cite explicitly reiterated the Sixth Circuit's "actual knowledge" pleading obligation. Plaintiffs fail that pleading standard because they rely on an inference that the USX Defendants "must have known" the allegedly omitted trends concerning USX's "core operations." As the Sixth Circuit has squarely held, such "must have known" allegations are not enough to trigger Item 303.

---

[1] All capitalized terms have the meaning assigned to them in the Underwriters' Memorandum of Law in Support of Their Motion to Dismiss the Complaint's Section 11 Claim (Count I) ("UW Brief," cited as "UW Mem. __"), all emphasis is added, and quotations and citations are omitted. In addition, (i) "USX Reply" means the Reply Memorandum in Support of USX Defendants' Motion to Dismiss Plaintiffs' Amended Complaint; and (ii) "Opposition" means Plaintiffs' Omnibus Memorandum in Opposition to the USX Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and the Underwriter Defendants' Motion to Dismiss Plaintiffs' Section 11 Claim [Dkt. 85] (cited as "Opp. __").

As the USX Reply makes clear, Plaintiffs mischaracterize the law and the RS's disclosures in attempting to rebuff Defendants' showing that the challenged statements are inactionable under the bespeaks caution doctrine, as opinion statements, or as corporate puffery. (USX Reply 5–17.) Perhaps this explains Plaintiffs' misdirection in depicting the Defendants' primary argument as "erroneously advocating for a heightened pleading standard." (Opp. 3.) As the Defendants showed in their opening briefs and as is further demonstrated below, the Complaint fails under *any* applicable pleading standard.

## ARGUMENT

## I. THE COMPLAINT FAILS TO PLEAD AN ACTIONABLE OMISSION.

### A. Plaintiffs Identify No Statement Rendered Misleading by Any Alleged Omission.

#### 1. *Driver Retention and Transformation (Alleged Omissions (a), (b), (c)).*

**Disclosure:** The RS conspicuously and repeatedly disclosed that (i) USX had experienced, was experiencing, and risked continuing to experience, driver retention problems; (ii) increasing driver pay did not fully address these retention issues; (iii) additional increases could become necessary; and (iv) driver pay and retention issues had harmed, and could continue to harm, USX's profitability. (UW Mem. 5–8.) Plaintiffs do not explain how these sobering disclosures were inadequate. Instead, Plaintiffs reframe the Underwriters' showing as a "materiality" or "truth on the market" argument better suited to summary judgment. (Opp. 18–19.) The Underwriters have argued no such thing. Rather, the RS's disclosures show that there was no omission at all—which courts routinely hold warrants dismissal *on the pleadings*.[2] (UW

---

[2] *See, e.g., In re EveryWare Global Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 873 (S.D. Ohio 2019) (dismissing claim that registration statement omitted that issuer had been "stripped [] of $90 million in capital" because offering materials disclosed "a payout of between $90 million and $107.5 million in cash"); *Singh v. Schikan*, 106 F. Supp. 3d 439, 447 (S.D.N.Y. 2015) (dismissing Securities Act claims based on alleged omissions of study details where "key

Mem. 5–8.)  One court, in fact, recently rejected as "misplaced" a similar attempt by the law firm representing Plaintiffs here[3] to equate a registration statement's disclosure of the allegedly omitted facts with a "truth on the market" defense.[4]  As the court in *Obalon* correctly noted, the "truth on the market" doctrine requires that the allegedly omitted information "was made credibly available to the market by *other sources*," whereas a defendant's reliance on the disclosures in the registration statement itself does not.[5]

**Confidential Witnesses:**  Plaintiffs miss the point in contending that confidential witness statements concerning driver retention problems contradict the RS.  (Opp. 9–10.)  The RS disclosed that very driver-retention challenge.  (*See* UW Mem. 7–8; *see also* USX Reply 18–20.)  Thus, the confidential witnesses' statements on that issue do not reveal any material omission.

Plaintiffs also try to resurrect their half-hearted allegations that "truck maintenance problems" that exacerbated "poor load planning" contributed to USX's driver-retention issues.  (Opp. 10.)  But those were *historic* issues that USX had begun addressing before the June 2018 IPO:  the Complaint pegs these allegations to 2017, well before the IPO (*see* UW Mem. 9; *see also* Compl. ¶ 75 (failing to describe when alleged delays due to breakdowns occurred), ¶ 76

---

details" of studies "were disclosed in the Registration Statement"); *Nielsen v. Greenwood*, 849 F. Supp. 1233, 1241 (N.D. Ill. 1994) (dismissing Section 11 claims because, "where the facts and circumstances allegedly omitted or misrepresented have actually been disclosed in the relevant transaction document, there will be no liability under the securities laws"); *In re Obalon Therapeutics, Inc. Sec. Litig.*, Case No. 3:18-cv-0352-AJB-WVG, 2019 WL 4729461, at *6 (S.D. Cal. Sept. 25, 2019) ("Because . . . Defendants disclosed the allegedly omitted facts . . . Lead Plaintiff is unable to state a claim based on an omissions theory . . . ."); *see also In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.").

[3] Docket, *In re Obalon Ther., Inc. Sec. Litig.*, Case No. 3:18-cv-0352-AJB-WVG, Entry No. 10.

[4] *Obalon*, 2019 WL 4729461, at *6.

[5] *Id.*

3

(alleging that load-planning "bottlenecks" occurred "throughout 2017, *prior to the IPO*")), and CW5, the alleged source of the truck maintenance allegations, left USX months before the IPO (*see* UW Mem. 10; Compl. ¶ 71 (noting that CW5 left USX in April 2018)).  As the RS disclosed, much changed between the confidential witnesses' alleged observations and the IPO, rendering their accounts stale:

- Plaintiffs do not dispute that the RS disclosed that USX's load-planning "pilot program" only began in October 2017 (RS 3), and was not expected to be complete for the remainder of USX's full fleet until later in 2018 (RS 9, 94).  (*See* UW Mem. 8–9.)

- Plaintiffs do not contest that the RS explained that the company anticipated replacing a substantial number of aging tractors throughout 2018, which would help ameliorate maintenance issues.  (*See* RS 95; UW Mem. 9.)

In any event, CW5's allegations that drivers complained of maintenance-based delays (in isolated instances months before the IPO) do not reveal any material omission.  Plaintiffs identify no statement in the RS that conflicted with, or was rendered misleading by the omission of, these alleged confidential witness observations.  (UW Mem. 4–5.)  And no such omission could render the RS misleading in light of the RS's disclosures that USX suffered more severe driver retention and turnover issues than its peers, because of both pay and "working conditions," creating a risk of driver shortages:

- "[W]e suffer from a *high turnover rate* of drivers and our turnover rate is *higher than the industry average and compared to our peers*.  This high turnover rate . . . subjects us to a *higher degree of risk with respect to driver shortages than our competitors*."  (RS 23.)

- "[W]e may have difficulty recruiting and retaining drivers because our competitors offer better compensation or *working conditions*."  (RS 25.)

- "Since *our driver turnover is higher than the industry average*, any events that . . . increase the competition for drivers may have a disproportionately negative impact on us."  (RS 34.)

Thus, the cases Plaintiffs cite in touting their inadequate confidential-witness allegations are inapposite.  None involved intervening events, like those here, that rendered the alleged

4

confidential witnesses' information stale.  The complaint in *In re Scholastic Corp. Sec. Litig.* relied on confidential witness statements concerning sales declines *both before and after* the alleged misleading statements.[6]  *Inst. Inv. Grp. v. Avaya Inc.* concerned a *post*-class-period *public* statement by one of the *defendants*, not pre-misrepresentation confidential witness allegations.[7]  And *Burges v. Bancorpsouth Inc.* involved a discovery motion concerning a bank examination that the defendants put at issue.[8]  Here, in contrast, Plaintiffs do not dispute that USX underwent fundamental changes between the alleged confidential witnesses' observations and the IPO, nullifying any inference that the challenged statements were false when made.

**Statements Outside the RS:**  Plaintiffs maintain that a USX Defendant's statement in a newspaper interview months before the IPO is somehow actionable under Section 11.  (Opp. 9 n.9.)  But Plaintiffs cite no case (because there is none) allowing a Section 11 claim to proceed based on a statement outside the challenged registration statement.  To the contrary, courts uniformly refuse to do so.[9]  The only case Plaintiffs cite concerns a duty to update statements

---

[6] 252 F.3d 63, 72 (2d Cir. 2001) (relying on allegations by confidential witness that defendant company's sales through one channel declined before alleged misstatements and by another confidential witness that sales through separate channel declined after challenged statement).

[7] 564 F.3d 242, 249 (3d Cir. 2009) (quoting post-class-period statements defendant made on conference call with Merrill Lynch).

[8] Case No. 3:14-cv-1564, 2017 WL 4640462, at *1 (M.D. Tenn. Oct. 12, 2017) ("[Plaintiffs] state that the Defendants have asserted a defense based upon examination of the company's operations during 2012 while refusing to produce documents relating to it.")

[9] *See, e.g., In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216, 267 (E.D.N.Y. 2002) ("The plain language of Section 11 limits claims brought pursuant to that section to those arising out of material omissions or misstatements in the written registration statement or prospectus itself. Thus, the defendants cannot be held liable for oral omissions under Section 11."); *Rhodes v. Omega Rsch., Inc.*, 38 F. Supp. 2d 1353, 1365 (S.D. Fla. 1999) ("Because section 11 gives rise to liability for false or misleading statements in 'any part of the registration statement, when such part became effective,' reports of analysts, roadshow statements or other information published by Defendants are not generally within the purview of section 11."); *see also In re Stac Electronics, Inc. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).

5

under Exchange Act Section 10(b), which covers statements made "not only in the registration statement or prospectus but also in other documents and in oral communications."[10]  Section 11, in contrast, titled "Civil Liabilities *on Account of False Registration Statement,*" is limited strictly to "any part of the registration statement."  15 U.S.C. § 77k(a).[11]

### 2.  Changes in Shipping Patterns (Alleged Omission (e)).

As the Underwriters have shown, any alleged change in USX's shipping patterns did not occur until the same quarter as the IPO, and there is no duty to disclose quarter-in-progress developments.  (UW Mem. 11–12.)  Plaintiffs do not contest the legal proposition that quarter-in-progress results need not be disclosed.  Rather, they protest that "this is not what [they] allege" (Opp. 7 n.6); but that is precisely what the Complaint alleges.  According to the Complaint, the shift in shipping patterns only began "in the second quarter of 2018," the same quarter as the IPO. (*See* Opp. 12 (quoting Compl. ¶ 156 (quoting Nov. 1, 2018 earnings call transcript)).)  Plaintiffs even acknowledge in the Opposition that the shift occurred "during the Company's 2Q18."  (Opp. 12.)  By their own admission, then, Plaintiffs have at most alleged a shipping-pattern shift in the same quarter as the IPO, negating any duty to disclose that alleged shift in the RS.  (*See* UW Mem. 11–12.)

### 3.  Prioritizing Growth in Dedicated Services (Alleged Omission (d)).

As the Underwrites have shown, Plaintiffs' allegations that USX was reallocating over-the-road drivers to the dedicated division (UW Mem. 10) contradicts the Complaint's claim that

---

[10] *In re Stac*, 89 F.3d at 1404; *see also In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 471 (6th Cir. 2014) (discussing disclosure duties under Section 10(b) "when a person or corporation comes into possession of information that makes a prior statement 'inaccurate, incomplete, or misleading'").

[11] *In re Stac*, 89 F.3d at 1404 ("In contrast to Section 11, Section 10(b) requires scienter and covers statements made not only in the registration statement or prospectus but also in other documents and in oral communications.").

the RS omitted USX's inability to prioritize its dedicated services (*see* Compl. ¶122(d)). Plaintiffs do not address this argument in the Opposition, and therefore concede it.[12]

Plaintiffs instead argue that the RS obscured that USX was reassigning drivers from its over-the-road division to its dedicated business. (Opp. 11–13.) But the Complaint does not plead a half-truth claim on this basis (*see* Compl. ¶122 (specifying alleged omissions giving rise to half-truth claim)), and Plaintiffs cannot amend their complaint through their opposition brief.[13] The Complaint also fails to allege an undisclosed "known trend" that "OTR drivers were reallocated to support the dedicated division" (*id.* ¶ 124(iii)), because it pleads neither Defendants' actual knowledge nor the duration necessary to constitute a trend. (*See* UW Mem. 15–16; pp. 8–9, *infra*.) And Plaintiffs get nowhere in arguing that the driver reassignments stemmed from "changing account patterns" (Opp. 11), because there was no duty to disclose that quarter-in-progress shift or its consequences. (*See* UW Mem. 11-12; pp. 6, *supra*.)

### 4. Cost-Per-Mile (Alleged Omission (f)).

Plaintiffs' conclusory allegation that USX's cost-per-mile was exceeding expectations (*id.* ¶ 79) pleads no facts showing that this elevated cost-per-mile pre-dated the IPO. (UW Mem.

---

[12] *Scott v. State of Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (affirming dismissal and stating "if a plaintiff fails to respond or otherwise oppose a defendant's motion then the district court may deem the plaintiff to have waived opposition to the motion"); *Carver v. Swing*, Case No. 4:16-CV-35-HSM-CHS, 2018 WL 1177469, at *5 (E.D. Tenn. Mar. 6, 2018) ("Failure to respond or otherwise oppose a motion to dismiss operates as both a waiver of opposition to and an independent basis for granting the unopposed motion.").

[13] *Hellmuth v. Hood*, Case No. 19-3198, 2019 WL 8219511, at *2 (6th Cir. 2019) ("[T]he district court did not abuse its discretion by finding that the amended complaint was the operative complaint and by declining to address facts, arguments, or claims that were raised in additional filings."); *McKnelly v. Wyndham Destinations, Inc.*, Case No. 3:19-CV-103-TAV-DCP, 2020 WL 1518624, at *4 (E.D. Tenn. Mar. 30, 2020) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

12.)  Plaintiffs concede this argument, too, by failing to address it in the Opposition.[14]  And Plaintiffs discuss the cases the Underwriters cite on this point (*see* Opp. 13 n.11) only in the context of USX's alleged *shipping-pattern change* (which allegedly began in the same quarter as the IPO).  But those cases show that the *cost-per-mile allegations* fail because the Complaint alleges no facts showing that any cost-per-mile increase pre-dated the IPO (UW Mem. 12)— something Plaintiffs do not contest.

5.   *USX's Insurance (Alleged Omission (g)).*

The RS disclosed USX's insurance risks—including its responsibility for up to $5.0 million per occurrence and an additional $5.0 million in excess coverage (for a total of up to $10 million per liability event) (UW Mem. 12–14)—which "***could significantly increase the volatility of, and decrease the amount of, [USX's] earnings,***" and result in "*significant exposure to fluctuations in the number and severity of claims*."  (RS 25–26.)  Plaintiffs respond simply by repeating the Complaint's conclusory allegation that the RS "materially misstated" USX's liability exposure.  (Opp. 13.)  Elsewhere, Plaintiffs mischaracterize Defendants' argument as a "materiality" or "truth on the market" defense (Opp. 18), which fails (*see* pp. 2–3, *supra*).  And the recent conference call transcript on which Plaintiffs rely merely confirms what the RS predicted—that USX finished installing event recorders in 2018.  (*Compare* RS 8 *with* Ex. 1 [Feb. 6, 2020 Earnings Call Tr.] at 6 (noting that initiative to lower claims and insurance expense included "installation of event recorders across our fleet, which we completed in 2018").)

**B. Plaintiffs Have No Claim Under Item 303 of Regulation S-K.**

Binding Sixth Circuit authority requires "actual knowledge" allegations to trigger Plaintiffs' sole alleged statutory basis for a disclosure duty—Item 303.  (*See* UW Mem. 15; USX

---

[14] *See* n.12, *supra*.

Mem. 23–24.)  Unable to plead actual knowledge, Plaintiffs argue that (i) it is too exacting a standard, mischaracterizing a Middle District of Tennessee case; and (ii) pleading that driver retention and safety is "integral to USX" suffices.  Plaintiffs are wrong.

*First*, *Schuh v. HCA Holdings, Inc.*[15] did not, as Plaintiffs contend, dispense with the Sixth Circuit's requirement of actual knowledge allegations to trigger Item 303.  To the contrary, the court in *Schuh* reiterated the actual-knowledge requirement. [16]  *Schuh* merely held that Item 303 actual-knowledge allegations are not subject to Rule 9(b)'s heightened pleading requirements in cases that sound in negligence.[17]  But the Complaint fails to plead actual knowledge under *any* standard, because it lacks any allegation that any of the USX Defendants reviewed documents that provided information concerning any of the alleged undisclosed trends or spoke to individuals who conveyed it.  (USX Mem. 23–24.)  Plaintiffs do not argue otherwise.

*Second*, Plaintiffs' argument that "driver pay, retention, routes, and safety" were so "integral" to USX's business that management must have known about them (Opp. 18) is insufficient to plead "actual knowledge."  Plaintiffs use such "core operations" allegations "*not to show actual knowledge, but instead, to show what the defendant should have known* based upon their position with the company."[18]  By definition, this cannot satisfy the Sixth Circuit's "actual knowledge" requirement.[19]

---

[15] 947 F. Supp. 2d 882 (M.D. Tenn. 2013).

[16] *Id.* at 887 (noting that "pleading a trend was 'knowable' was not sufficient").

[17] *See id.* ("[T]he Court does not read *J & R Mktg.* as imposing a *heightened pleading standard* with regard to knowledge.").

[18] *Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, Case No. 1:08-cv-02940-JOF, 2011 WL 13124501, at *17 (N.D. Ga. Mar. 17, 2011).

[19] *See J&R Mktg. v. GMC*, 549 F.3d 384, 392 (6th Cir. 2008).

But even if Plaintiffs had pleaded actual knowledge, their Item 303 argument would still fail.  As for driver pay, retention, and safety, the RS fully disclosed the allegedly omitted information.  (*See* pp. 2–4, *supra.*)  And while Plaintiffs speculate that the shipping-pattern shift and consequent driver route changes may have "existed longer" than two months (Opp. 18), they elsewhere concede that this shift did not begin until the second quarter of 2018, the same quarter as the IPO.  (*See* pp. 6, *supra*.)  Plaintiffs cite no case holding that a trend could be discernable and disclosable in the same quarter as an offering.  Thus, Plaintiffs' attempt to distinguish the cases in the UW Brief on the grounds that they concerned other industries (Opp. 19 n.14) is unavailing, especially because Plaintiffs fail to explain how the trucking industry is somehow so unique as to warrant exempting it from the quarter-in-progress rule.

## II.     THE CHALLENGED STATEMENTS ARE OTHERWISE NOT ACTIONABLE.

As explained in the USX Defendants' reply brief, numerous challenged statements are not actionable because they (i) are forward-looking and accompanied by meaningful, targeted risk disclosures (USX Reply 5–11); (ii) express opinions as to which the Complaint does not allege a factual basis to challenge (*id.* 11–12); or (iii) are too vague to be actionable (*id.* 12–13).  While Plaintiffs' puzzle pleading may quote other registration statement disclosures, the Opposition identifies no allegedly misleading statement that Defendants have failed to address.  The Complaint should therefore be dismissed in its entirety.

### CONCLUSION

The RS fully disclosed all allegedly omitted information that was required to be disclosed.  For this reason, as well as those set forth in the Defendants' opening briefs, the USX Reply, and set forth above, the Complaint should be dismissed with prejudice.

10

Dated: April 23, 2020
Chattanooga, Tennessee

*/s/ Jonathan Rosenberg*

Jonathan Rosenberg (*pro hac vice*)
William J. Sushon (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: 212-326-2000
Fax: 212-236-2061
jrosenberg@omm.com
wsushon@omm.com

C. Crews Townsend (BPR # 12274)
MILLER & MARTIN, PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402
Telephone: 423-785-8297
Fax: 423-785-8480
Crews.townsend@millermartin.com

*Attorneys for Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Wells Fargo Securities, LLC, Stephens Inc.; WR Securities LLC, and Stifel, Nicolaus & Company, Incorporated*

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on April 23, 2020.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

Dated: Chattanooga, Tennessee
April 23, 2020

*/s/ Jonathan Rosenberg*
Jonathan Rosenberg (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: 212-326-2000
Fax: 212-236-2061
jrosenberg@omm.com

12