UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. XPRESS ENTERPRISES, INC., *et al.*, <br><br> Defendants. | Civil Action No. 1:19-cv-00098 <br><br> Judge Travis R. McDonough <br> Magistrate Judge Christopher H. Steger |

**MEMORANDUM OF LAW IN SUPPORT OF U.S. XPRESS ENTERPRISES, INC.'S MOTION TO QUASH PLAINTIFFS' RULE 45 SUBPOENAS TO NON-PARTIES AND REQUEST FOR EXPEDITED HEARING**

Comes U.S. Xpress Enterprises, Inc. ("USX" or the "Company"), by counsel, and files this Memorandum of Law in support of its Motion to Quash Plaintiffs' Rule 45 Subpoenas to Non-Parties and Request for Expedited Hearing ("the Motion") filed simultaneously herewith.

**INTRODUCTION**

Three months ago, on June 30, 2020, the Court entered an order substantially narrowing Plaintiffs' claims in this putative securities class action arising out of USX's June 2018 initial public offering ("IPO"). *See* Dkt. No. 91. The Court dismissed Plaintiffs' claims under the Securities Exchange Act in their entirety and dismissed the Securities Act claims with respect to nearly every statement challenged in the Complaint. The Court held that Plaintiffs stated a Securities Act claim for just two discrete statements contained in the Company's Registration Statement for the IPO, on the theory that those statements were false or misleading because USX did not have a sufficient number of drivers at the time of the IPO and was being forced to shift drivers from its allegedly more profitable over-the-road ("OTR") division to support its less profitable Dedicated division. *Id.* at 32-34, 38-39, 45-46.

Plaintiffs have now made clear, however, that they intend to ignore this Court's order for the purposes of discovery. On August 18, 2020, Plaintiffs served sixty-eight requests for production on the USX Defendants[1] seeking, among other things, every document "related to the IPO" and a host of other information that has no bearing on the remaining claims. *See* Att. 1 hereto, Pls.' RFPs to USX Defs. Worse yet, on September 22, 2020, Plaintiffs notified USX that they would be serving Rule 45 subpoenas on ten of USX's largest customers. *See* Coll. Ex. 1 to the Motion, Pls.' Notice of Issuance of Subpoenas *Duces Tecum* to Non-Parties dated September 22, 2020 attaching Pls.' Rule 45 Subpoenas. Each subpoena demands the production of all documents falling within an incredibly broad list of twenty categories, which includes all documents and communications relating to the customers' contracts with USX. *See id.*

These subpoenas are entirely improper and violate the Federal Rules of Civil Procedure. Rule 45 provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(b)(1). Plaintiffs cannot possibly show that they have complied with this requirement. The subpoenas demand USX's customers to search for, collect, and produce an overbroad and unduly burdensome amount of documents that are irrelevant to the claims or defenses at issue in this case. For example, if applied literally, the subpoenas require production of every bill of lading for every load delivered by USX to these customers from January 1, 2017 to the present, a simply unfathomable request. Moreover, to the extent that the subpoenas seek any relevant documents, those materials could more easily be obtained from USX itself, instead of burdening these non-parties. Indeed, the relevant documents relating to Plaintiffs' allegation that

---

[1] The USX Defendants are USX, Eric Fuller, Eric Peterson, Jason Grear, Max Fuller, and Lisa Quinn Pate.

USX was shifting drivers from one internal division to another would obviously exist within USX, not its customers.

It is therefore apparent that these subpoenas were served not for the purpose of obtaining relevant documents that would uniquely exist in the possession of these non-parties, but rather to burden and harass USX's customers, with the hopes of obtaining some beneficial pressure in the case. In fact, the same law firm representing Plaintiffs in this case has followed the same tactic in at least one prior matter—serving unnecessary and overbroad subpoenas on the defendant's customers. *See, e.g.*, *City of Ann Arbor Employees Retirement Sys. v. Sonoco Prods. Co.*, No. 4:08-cv-2348, Dkt. No. 97 (D.S.C. Oct. 19, 2010) (Att. 2). In that prior instance, the court rightly quashed the improper subpoenas. For the reasons explained below, the Court should do the same here.

## BACKGROUND

As the Court is aware from the recent motion to dismiss briefing, USX is a truckload carrier based in Chattanooga, Tennessee. The Company offers motor carrier transportation services through its "Truckload" operating segment that is divided into two divisions: the OTR division, which typically involves open-ended customer contracts without locked rates or volume guarantees, and the Dedicated division, which features multi-year contracts with committed rates and volumes. *See* First Am. Compl., Dkt. No. 57 ("Compl.") ¶¶ 44-49.

On October 8, 2019, Plaintiffs filed their now operative First Amended Complaint, alleging that the USX Defendants violated the Securities Act by issuing false or misleading statements in the Registration Statement for the Company's June 2018 IPO. *See id.* ¶¶ 102-124. Plaintiffs challenged a broad list of statements, including statements of opinion about the Company's prospects for the future, descriptions of its operating strengths, and even statements about USX's

3

insurance or claims exposure. *Id.* Plaintiffs also alleged that USX and certain other defendants violated the Securities Exchange Act by issuing false or misleading statements after the IPO. *Id.* ¶¶ 125-142.

The USX Defendants moved to dismiss the Complaint in its entirety, arguing that Plaintiffs failed to state a claim for a variety of reasons. *See* Dkt. Nos. 72, 89. On June 30, 2020, the Court entered an order mostly granting that motion. *See* Dkt. No. 91. The Court walked through each challenged statement in detail, explaining why Plaintiffs failed to allege an actionable claim. *Id.* at 21-49. But the Court held that, when accepting Plaintiffs' allegations as true, the Complaint stated a claim for violation of the Securities Act for two statements in the Registration Statement: (1) that USX planned to "expand its fleet in order to capitalize on the then-favorable trucking environment," and (2) "that USX at that time had 'a sufficient number of drivers' to meet shipper demand." *Id.* at 33, 38. The Court found that Plaintiffs stated a claim with respect to these statements on the theory that "USX could not take advantage of the favorable market, by expansion or otherwise, because it could not even cover its Dedicated contracts and, in fact, was shifting drivers away from high-margin OTR routes at significant cost to itself," *id.* at 34; and that USX "lacked sufficient drivers to meet then-present Dedicated demand prior to and during the IPO, requiring it to cannibalize the time of OTR drivers at higher cost and lower revenue." *Id.* at 38. The Court similarly found that Plaintiffs' stated a claim on an omission theory for the same reason—*i.e.*, a failure to disclose "the cannibalization of OTR drivers by the Dedicated division." *Id.* at 45-46.

As soon as this case proceeded to discovery on the narrow theory that survived dismissal, it became apparent that Plaintiffs had no intention of limiting discovery in accordance with the Court's order. This was first made clear when Plaintiffs served sixty-eight requests for production

4

on the USX Defendants, which broadly demanded information that has no bearing on the surviving claims. That includes requesting production of "[a]ll Documents and Communications related to the IPO"; "[a]ll Documents and Communications related to USX's monthly, quarterly, and annual financial results and forecasts for fiscal years 2017 and 2018"; "[a]ll appointment books, calendars, logs, or diaries" maintained by USX executive officers and directors, as well as the employees who reported to them; "[a]ll Documents concerning corporate governance policies and procedures applicable to the Board"; "[a]ll Documents and Communications related to USX's contracts with its customers"; and much more. *See* Att. 1. The USX Defendants rightly objected to these requests but made clear that they would produce non-privileged documents relating to the surviving claims, as described in the Court's Order. *See, e.g.*, Att. 3, USX Defs.' Resp. at 12 ("USX Defendants state that they will conduct a reasonable search for and produce non-privileged documents responsive to Request No. 2 to the extent that such documents relate to the two remaining challenged statements or Plaintiffs' alleged basis for why such statements were false and/or misleading, as described in the Court's Order, Dkt. No. 91 at 32-34, 38-39, 45-46.").

While the parties were still in the process of meeting and conferring on the sixty-eight requests for production served on the USX Defendants, Plaintiffs served notice on September 22, 2020 that they would be serving Rule 45 subpoenas on ten of USX's largest customers: Amazon, Inc.; Dollar General Corp.; Dollar Tree Stores, Inc.; FedEx Corporation; Home Depot U.S.A., Inc., The Kroger Company; The Proctor & Gamble Distributing Company; Target Corporation; Tractor Supply Co.; and Walmart, Inc. *See* Pls.' Notice, Part of Coll. Ex. 1 to the Motion. Each subpoena includes an identical list of twenty overbroad categories of documents. These include:

- "All Documents concerning any contracts between [the customer] and USX";
- "All Documents concerning money paid, payable, or to be paid to USX";

5

- "All Documents concerning USX's efforts to grow or solicit business for its dedicated segment";

- "All Documents concerning any cost-reduction initiatives at USX";

- "All Documents concerning age and condition of equipment to be utilized by USX";

- "All Documents concerning USX's compensation packages";

- "All Documents concerning the IPO"; and

- "All Documents created by You concerning any policy, procedure, or practice regarding the preservation or destruction of the Documents or Electronic Data . . . ."

*See* each subpoena, part of Coll. Ex. 1 to the Motion at 10-12. On September 25, 2020, counsel for the USX Defendants informed Plaintiffs' counsel that USX would be moving to quash these overbroad and unduly burdensome subpoenas unless Plaintiffs agreed to withdraw them. Plaintiffs offered to consider a narrowing of the requests, but refused to withdraw the subpoenas, prompting this motion.

## ARGUMENT

The Federal Rules of Civil Procedure require all parties and their counsel to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a Rule 45] subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45 further provides that the court "***must*** enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply" with this requirement. *Id.* (emphasis added). Here, Plaintiffs have not complied with this obligation for the ten subpoenas they served on USX's customers and, accordingly, the Court should quash the subpoenas.

## I. USX HAS STANDING TO FILE THIS MOTION.

As a threshold matter, it is clear that USX has standing to file this motion. Courts have regularly recognized that a party has standing to move to quash a subpoena issued to a non-party

where the party has a personal right or privilege with respect to the documents or information sought. *See, e.g.*, *Underwood v. Riverview of Ann Arbor*, No. 08-CV-11024-DT, 2008 WL 5235992, at *1 (E.D. Mich. Dec. 15, 2008); *see also Sony BMG Entern't v. Doe*, No. 5:08-CV-109-H, 2009 WL 5252606, at *7 (E.D.N.C. Oct. 21, 2009); *McKenna v. CDC Software, Inc.*, No. 08-cv-00110-EWN-MEH, 2008 WL 4097464, at *1 (D. Colo. Sept. 4, 2008); *Schmulovich v. 1161 Rte. 6, LLC*, No. 07-597 (FLW), 2008 WL 4572537, at *4 (D.N.J. Oct. 14, 2008); *Chamberlain v. Farmington Sav. Bank*, No. 3:06CV01437 (CFD), 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007); *Palumbo v. Shulman*, No. 97 CIV 4314, 1998 WL 720668, at *1 (S.D.N.Y. Oct. 13, 1998).

Through the subpoenas at issue here, Plaintiffs seek to obtain communications and other documents between USX and its customers related to USX's contracts and business relationships with these non-parties, including information regarding USX's pricing and performance under those contracts. USX has an unequivocal proprietary interest in these documents, particularly where they concern confidential commercial information and trade secrets related to bids, pricing, and other aspects of USX's business. This situation is thus analogous to *McKenna*, where the defendant software company had standing to challenge a subpoena issued by the plaintiff for the deposition of a representative of one of the defendant's customers. 2008 WL 4097464, at *1. The *McKenna* court held that, "considering . . . confidential information exchanged between [the] Defendant and [its customer], the Defendant has made the requisite showing to demonstrate it has standing to move to quash Plaintiff's subpoena." *Id.*

USX also has a financial interest in preserving business relationships with these customers, which notably include some of the largest retailers in the United States. These relationships could be threatened by the significant burden Plaintiffs seek to impose on these non-parties. Indeed, at least one federal district court has held that "[i]nterference with Defendant's relationship with its

7

client is a legitimate interest" sufficient to provide the defendant with standing to move to quash a subpoena directed to the non-party client. *Farmer v. Senior Home Companions of Ind.*, Inc., No. 1:08-cv-0379-DFH-JMS, 2009 WL 564193, at *1 n.1 (S.D. Ind. Mar. 5, 2009).

Finally, even if USX did not have standing to file this motion (which it does), Rule 45 still requires the Court to quash the subpoenas for Plaintiffs' failure to take reasonable steps to avoid imposing an undue burden on these non-parties. Fed. R. Civ. P. 45(d)(1). The Court also "possesses the inherent authority to prevent parties from engaging in abusive or inappropriate discovery practices." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV298, 2009 WL 5892914, at *2 (W.D. Mich. Nov. 30, 2009). As demonstrated below, the subpoenas are inappropriate and violate the Federal Rules of Civil Procedure, and this Motion is properly before the Court to address that issue.

## II. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY ARE DISPROPORTIONATE TO THE NEEDS OF THE CASE AND IMPOSE AN UNDUE BURDEN ON USX'S CUSTOMERS.

The permissible "scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Rule 26(b) limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether a Rule 45 subpoena falls within this proper scope, courts consider whether (i) the "information sought is relevant, nonprivileged, and crucial to the moving party's case," (ii) "there are other viable means to obtain the same evidence," and (iii) "the subpoena was issued primarily for purposes of harassment." *Cleveland Clinic Health Sys.-E. Region v. Innovative Placements, Inc.*, No. 1:11-CV-2074, 2012 WL 187979, at *2 (N.D. Ohio Jan. 23, 2012) (citations omitted). "[T]he fact of nonparty status [also] may be considered by the court in weighing the burdens imposed in the circumstances." *Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2019 WL 2266800, at *1 (E.D. Mich. May 28, 2019) (citing *Katz v. Batavia Marine & Sporting*

8

*Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)); *see also Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 521 (W.D. Tenn. 1999) ("[A nonparty] is entitled to consideration of its nonparty status as one factor in the analysis of the burdens imposed upon it by compliance with [a] subpoena.").

Here, all of these considerations weigh in favor of quashing the subpoenas Plaintiffs issued to USX's customers.

***First***, the subpoenas on their face are overbroad and seek information that is disproportionate to the needs of this case. The Court allowed this case to proceed to discovery only as to the narrow theory of liability that survived the motions to dismiss. Specifically, Plaintiffs' only surviving claim is for an alleged violation of the Securities Act on the theory that the two statements from the Registration Statement referenced above were false or misleading because USX did not have a sufficient number of qualified drivers and thus was being forced to shift drivers from the OTR division to support Dedicated accounts. *See* Dkt. No. 91 at 32-34, 37-38, 45-46. The subpoenas are in no way limited to seeking information that is relevant to that surviving theory.

To the contrary, the subpoenas call for USX's customers to produce every single document relating to their contracts with USX. *See* subpoenas, part of Coll. Ex. 1 to the Motion. That includes, among other things, all correspondence negotiating the contracts, any communications about payments to USX under the contracts, and other information that would have no possible relevance to this case. Plaintiffs cannot explain why they need Amazon, Walmart, or anyone else to produce all communications relating to every single time they requested USX to ship product since January 1, 2017. The subpoenas surprisingly define the "relevant time period" as January 1, 2017 to the date that each customer produces documents in response to the subpoenas. *See* subpoenas, part of Coll. Ex. 1 to the Motion at 9. Plaintiffs are therefore asking these customers to

produce documents relating to their interactions with USX occurring to this day—despite the fact that Plaintiffs allege the "truth" of the alleged misleading statements was revealed to the public back in November 2018. *See* Compl. ¶¶ 13-16.

Plaintiffs cannot defend the scope of these subpoenas or explain how the requested information is relevant and proportionate to the needs of this case, particularly in light of the Court's dismissal order. Nor can Plaintiffs demonstrate that they have taken reasonable steps to avoid imposing an undue burden on these non-parties. For that reason alone, the subpoenas should be quashed.

***Second***, to the extent that the subpoenas seek any relevant information relating to USX's contracts with these non-parties, that information could be more easily obtained from USX, without burdening its customers. It is well-established that a third-party subpoena should not be used to obtain information that can be obtained from a party to the litigation. *See, e.g.*, *Vamplew v. Wayne State University Bd. Of Governors*, No. 12-14561, 2013 WL 3188879, at *4 (E.D. Mich. June 20, 2013) (subpoena to non-party quashed because information sought could be obtained from party to litigation); *Hansen*, 2009 WL 1543451, at *2 (same). Courts thus routinely quash subpoenas directed to non-parties on this basis. *See id.*; *see also Cleveland Clinic*, 2012 WL 187979, at *2 (granting motion to quash where defendants could obtain from the plaintiff many of the documents that they requested from non-party); *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *4-5 (N.D. Ohio Feb. 13, 2008) (granting, in part, a motion to quash subpoena where the majority of the relevant documents could have or had been produced by a party to the litigation).

The subpoenas at issue here expressly call for the production of information that would be within USX's possession, repeatedly demanding communications that were exchanged with USX.

*See* subpoenas, part of Coll. Ex. 1 at 10-12. Plaintiffs further seek information related to truck driver hiring and retention at USX, including driving conditions, truck maintenance, compensation, and benefits. *See* subpoenas, part of Coll. Ex. 1 at 11-12. It is unclear how the customers would have access to this kind of information in the first place. But to the extent they do, such information could be more easily obtained from USX if it were relevant.

Moreover, the only information relating to these customers that would be relevant to the remaining claims would be documents shedding light on whether USX had a sufficient number of drivers to meet its customers' demands or whether it was shifting drivers from the OTR division to support Dedicated accounts at the time of the IPO. If USX was doing so, as Plaintiffs allege, that information would exist within USX's documents. There is no need to burden its customers for that information.

In fact, Plaintiffs are already seeking that information from USX. Although USX has objected to Plaintiffs' overbroad requests for production, it made clear that it would search for and produce documents relating to Plaintiffs' surviving claims. Plaintiffs cannot justify these non-party subpoenas when any relevant information could be obtained from, and will be produced by, USX itself. *See Hansen*, 2009 WL 2351769, at *2.

In short, the subpoenas on their face are not appropriately tailored to the claims and defenses that remain at issue in this case. Plaintiffs have made no effort to avoid imposing an undue burden on these non-parties. For those reasons, and given that any relevant information relating to USX's business with these customers could be obtained from USX itself, it is apparent that these subpoenas are intended to harass USX's customers rather than seek relevant information that is proportionate to the needs of this case. As a result, the subpoenas should be quashed.

## III. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY SEEK CONFIDENTIAL COMMERCIAL INFORMATION UNRELATED TO THIS LITIGATION.

The subpoenas are subject to being quashed for another, independent reason: they demand production of confidential commercial information that is not relevant to the claims at issue here. Namely, the subpoenas demand production of information related to contracts between the customers and USX. These contracts contain sensitive bid and pricing information that, if revealed, could have negative implications for both USX and its customers, many of whom compete with each other. What's more, this confidential pricing information has absolutely no bearing on the remaining claims and defenses in this case. The third-party subpoenas should be quashed accordingly. *See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, No. CV 3:15-290, 2017 WL 4310221, at *7 (M.D. Pa. Sept. 28, 2017) (granting motion to quash where "the subpoenaed Customer Contracts contain confidential information wholly unrelated to the underlying claims").

## IV. AN EXPEDITED HEARING ON THE MOTION IS NEEDED.

Plaintiffs' subpoenas demand production of the documents requested on October 13, 2020. Local Rule 7.1 (a) grants Plaintiffs fourteen days to file their answering brief after service of USX's opening brief for this Motion. Thus, absent an expedited hearing of the Motion, USX's customers will be required to produce the documents (or otherwise respond to the subpoenas) one day ***before*** Plaintiffs' answering brief is due. An expedited hearing is necessary, and this request is unavoidable due to the unreasonably short time Plaintiffs have given the customers to respond to the subpoenas.

## **CONCLUSION**

For the foregoing reasons, USX respectfully requests that the Court schedule an expedited hearing on the Motion and quash the subpoenas Plaintiffs issued to USX's customers.

Respectfully submitted this 30th day of September, 2020.

| | |
|---|---|
| */s/ K. Stephen Powers* | */s/ Jessica P. Corley* |
| K. Stephen Powers (BPR # 007088) | Jessica P. Corley (*pro hac vice*) |
| Philip B. Whitaker, Jr. (BPR # 013999) | Lisa R. Bugni (*pro hac vice*) |
| Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. | Brandon R. Keel (*pro hac vice*) |
| | Logan R. Hobson (*pro hac vice*) |
| 633 Chestnut Street, Suite 1900 | KING & SPALDING LLP |
| Chattanooga, TN 37450 | 1180 Peachtree Street, N.E. |
| Tel: (423) 209-4182 | Atlanta, GA 30309 |
| spowers@bakerdonelson.com | Tel: (404) 572-4600 |
| pwhitaker@bakerdonelson.com | jpcorley@kslaw.com |
| | lbugni@kslaw.com |
| *Counsel for USX Defendants* | bkeel@kslaw.com |
| | lhobson@kslaw.com |
| | *Counsel for USX Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

*/s/ K. Stephen Powers*
K. Stephen Powers (BPR # 007088)