# ATTACHMENT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

| | | |
|---|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:19-cv-00098 |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | Judge Travis R. McDonough |
| vs. | ) | Magistrate Judge Christopher H. Steger |
| | ) | |
| U.S. XPRESS ENTERPRISES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
TO THE USX DEFENDANTS

TO:          ALL PARTIES AND THEIR COUNSEL OF RECORD

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Deirdre Terry, Charles Clowdis, and Bryan K. Robbins (collectively, "Plaintiffs"), by their counsel, hereby requests that defendants U.S. Xpress Enterprises, Inc., Eric Fuller, Eric Peterson, Jason Grear, Max Fuller, and Lisa Quinn Pate (collectively, the "USX Defendants"), identify, produce, and permit Plaintiffs' counsel to inspect and copy all the documents requested below in their possession, custody or control that are responsive to the Requests herein within 30 days, to the law offices of Robbins Geller Rudman & Dowd LLP, Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, CA 94104.  The documents shall be produced as they are kept in the usual course of business and shall be organized and labeled to correspond to the categories in these Requests.  The responding party is further required to supplement the responses.

## I.    DEFINITIONS

The following definitions shall apply to each of the document Requests set forth and are deemed to be incorporated in each Request:

1.      "Action" refers to *Stein v. U.S. Xpress Enterprises, Inc., et al.*, No. 1:19-cv-00098, pending in the United States District Court for the Eastern District of Tennessee.

2.      "All" shall include the term "each," and vice-versa, as necessary to bring within the scope of the Request. All responses that might otherwise be construed to be outside the scope of the Request.

3.      "Board" means the Board of Directors of USX, as constituted at any time during the Relevant Period, as well as any of the Directors and/or Employees reporting directly to the Board or the Directors, or any internal or external legal, financial, or regulatory advisors to the Board or the Directors.

4.      "Communication" or "Communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), or attempt to transmit information, whether written, oral, electronic or by any other means.

5.      "Complaint" refers to the Lead Plaintiff's Complaint for Violation of the Federal Securities Laws in this Action (ECF. No. 57).

6.      "Concerning" means constituting, evidencing, reflecting, referring to, incorporating, effecting, including, or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request.

7.      "Correspondence" means any letter, memorandum, note, e-mail, facsimile, text message, instant message, internet message board posting, or any other writing containing a communication from one Person or Persons to another or others.

8.      "Defendants" refers collectively to U.S. Xpress Enterprises, Inc., the Individual Defendants (defined below), the Underwriter Defendants (defined below), and All of their corporate parents, subsidiaries, attorneys, accountants, officers, directors, employees, partners, agents, representatives or other persons occupying similar positions or performing similar functions.

9.      "Director" means any current or former member of the Board.

10.      "Document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include without limitation the original (or a copy when the original is not available), each non-identical copy (including those which are non-identical by reason of annotation or markings, or by appearing in the files of a separate person) and electronic documents and record, and each specific request for documents shall be deemed to specifically request

- 3 -

electronic documents and records. "Documents" include "Communications," "Contracts," "Correspondence," and "Electronic data."

11. "Due Diligence Investigation" means any investigation, review or analysis undertaken by any person or defendant in connection with determining the accuracy and completeness of, and absence of any material omissions from the Offering Documents or any portion thereof.

12. "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment. Electronic Data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data. The term

- 4 -

"electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

13. "Employee" means, without limitation, current and former officers, directors, executives, managers, supervisors, department heads, sales personnel, employees, secretaries, clerical staff, messengers, agents, attorneys, representatives, or any person acting or authorized to act on behalf of USX or any division, subsidiary or entity of USX, individually or collectively.

14. "Identify," when used in reference to a Document, means to state its formal and informal title(s), subject matter or nature, date(s) of preparation, and date(s) of use, and to identify the person(s) who signed it or under whose name the Document was issued, the author(s), addressee(s), and recipient(s) of the Document, and its present or last known custodian.

15. "Identify" when used in reference to a natural person, means to state the person's full name, present or last known business or home address and phone numbers, and that person's employment title(s) or position(s) at the relevant time.

16. "Identify" when used in reference to an entity other than a natural person, means to state the full name of the entity, the type of entity, and the address and phone number of the entity's principal place of business.

17. "Identify," when used in reference to a discussion or other non-written Communication, means to: (a) state its date and its physical location (or to identify how the Communication or discussion took place if not in person, e.g., by telephone); (b) identify each person(s) who participated in, was in attendance for, was dialed in for, or otherwise participated in the discussion or Communication; and (c) state the substance of the discussion or Communication, and of any responses exchanged.

18. "Individual Defendants" refers to Eric Fuller, Eric Peterson, Jason Grear, Max Fuller and Lisa Quinn Pate.

- 5 -

19.     "IPO" refers to U.S. Xpress Enterprises, Inc.'s June 14, 2018 initial public offering.

20.     "Meeting" or "Meetings" means the contemporaneous presence, whether in person or through any means of Communication, of any natural persons, whether or not such presence was by chance or prearranged and whether or not the Meeting was formal, informal or occurred in connection with some other activity.

21.     "Offering Documents" refers to all Prospectuses, Registration Statements and Amendments filed in connection with U.S. Xpress Enterprises, Inc.'s June 11, 2018 final Amended Registration Statement, including, but not limited to, the June 11, 2018 final Amended Registration Statement on Form S-1/A; the May 7, 2018 Registration Statement on Form S-1; and the June 13, 2018 final Prospectus on Form 424B4.

22.     "Person" or "Persons" means any natural Person, public or private corporation, whether or not organized for profit, governmental entity, partnership, association, cooperative, joint venture, sole proprietorship or other legal entity.  With respect to a business entity, the term "Person" includes any natural Person acting formally or informally as a director, trustee, officer, agent, attorney or other representative of the business entity.

23.     "Plaintiffs" refers to Deirdre Terry, Charles Clowdis and Bryan K. Robbins.

24.     "Prospectus" means any Prospectus distributed by Defendants or used to conduct the IPO, including, without limitation, All previously filed or amended versions of the Prospectus and All drafts thereof.

25.     "Refer," "relate," "referring" or "relating" means All Documents that comprise, explicitly or implicitly refer to, were reviewed or received in conjunction with or were created, generated or maintained as a result of the subject matter of the Request, including, without limitation, all Documents that reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the Request.

- 6 -

26.    "Registration Statement" means the Registration Statement and Prospectus filed with the SEC in connection with the IPO, including All amendments thereto, whether filed with the SEC or not, and All drafts thereof.

27.    "Road Show" means any Meeting in which any Defendant(s) communicated with any current or potential investor concerning the IPO.

28.    "SEC" means the United States Securities and Exchange Commission.

29.    "Underwriter Defendants" means Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Wells Fargo Securities, LLC, Stephens Inc., WR Securities LLC and Stifel, Nicolaus & Company, Inc.

30.    "U.S. Xpress," "USX" or the "Company" means Defendant U.S. Xpress Enterprises, Inc., and its predecessors, successors, parents, subsidiaries, divisions or affiliates and their respective officers, directors, agents, attorneys, accountants, employees, partners or other Persons occupying similar positions or performing similar functions.

31.    "USX Defendants" refers to U.S. Xpress and the Individual Defendants, collectively.

32.    "You" and "Your" refers to the party to whom the following Requests are addressed and its agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including Persons or entities outside the United States or anyone acting on Your behalf.

## **RULES OF CONSTRUCTION**

The following rules of construction shall apply to all Requests:

1.     "All/any/each." The terms "all," "any," and "each" shall be construed as all, any, and each to bring within the scope of the Request all responses that might otherwise be construed to be outside the scope of the Request.

2.     "And/or." The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.     Singular/plural. The use of the singular form of any word includes the plural, and vice versa.

## II.     INSTRUCTIONS

1.     All Documents shall be produced as they are maintained in the ordinary course of business and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, i.e., Documents maintained electronically shall be produced in the manner in which such Documents are stored and retrieved.

2.     In responding to these Requests, You shall produce All responsive Documents (including those stored electronically) that are in Your possession, custody or control, or in the possession, custody or control of Your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of Your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives.  A Document shall be deemed to be within Your control if You have the right to secure the Document or a copy of the Document from another Person having possession or custody of the Document.

3.     Pursuant to the Federal Rules of Civil Procedure, You are to produce for inspection and copying by Plaintiffs original Documents, including those stored electronically, as they are kept in the usual course of business.  If the original is not in Your custody, then a copy thereof,

- 8 -

and All non-identical copies that differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.      If production of Documents is withheld on the grounds of privilege, as to each such withheld Document state the following information:

(a) which privilege is claimed;

(b) who is asserting the privilege;

(c) a precise statement of the facts upon which said claim of privilege is based; and

(d) the following information describing each purportedly privileged Document:

(i)   a brief description sufficient to identify its nature, i.e., agreement, letter, memorandum, type, etc.;

(ii)  a brief description sufficient to identify its subject matter and the purpose of the Document;

(iii) the date it was prepared;

(iv)  the date it bears;

(v)   the date it was sent;

(vi)  the date it was received;

(vii) the identity of the Person preparing it;

(viii) the identity of the Person sending it;

(ix)  the identity of each Person to whom it was sent or was to have been sent, including All addresses and All recipients of copies;

(x)   a statement as to whom each identified Person represented or purported to represent at All relevant times;

(xi)  All Persons to whom its contents have been disclosed; and

(xii) a precise description of the place where each copy of that Document is kept, including the title or description of the file in which said Document may be found and the location of such file.

5. If a portion of any Document responsive to these requests is withheld under claim of privilege pursuant to Instruction No. 4, any non-privileged portion of such Document must be produced with the portion claimed to be privileged redacted.

6. If You contend that responding to these Requests would impact a privilege claim by a third party, in addition to complying with Instruction No. 4 above, Defendants shall promptly inform such third party of these Requests so that it will have notice and the opportunity to intervene and protect any interests, arguments or concerns it may have.

7. You are to produce each Document requested herein in its entirety, without deletion or excision (except as qualified by Instruction Nos. 4-6 above), regardless of whether You consider the entire Document to be relevant or responsive to the Requests.

8. Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

9. If a Document responsive to these Requests was at any time in Your possession, custody or control but is no longer available for production, as to each such Document state the following information:

(a) whether the Document is missing or lost;

(b) whether the Document has been destroyed;

(c) whether the Document has been transferred or delivered to another Person and, if so, at whose request;

- 10 -

(d) whether the Document has been otherwise disposed of; and

(e) a precise statement of the circumstances surrounding the disposition of the Document and the date of disposition.

10. With respect to any category of Documents, the production of which You contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

## III. PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard copy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The Documents should be logically unitized (i.e., distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original Document contains color, and the color is necessary to understand the meaning or content of the Document, the Document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each Document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. PRODUCTION OF ESI

1. Format: Electronically Stored Information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, and Documents with tracked changes reflected in the metadata, which should be produced in native format. If an original Document contains color, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

- 11 -

TIFFs/JPGs should show any and All text and images that would be visible to the reader using the native software that created the Document.  For example, TIFFs/JPGs of e-mail messages should include the BCC line.

2.      Format – Native Files: If a Document is produced in native format, a single-page, bates stamped image slip sheet stating the Document has been produced in native format should also be provided, with the exception of PowerPoint presentations.  PowerPoint Documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes.  Each native file should be named according to the bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific Documents or classes of Documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      De-Duplication: Each party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and All attachments are also duplicates.  An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if All remaining content in the e-mail is identical.  Removal of near-duplicate Documents and e-mail thread suppression is not acceptable.  De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that Document and the FILEPATH field will list each file path, separated by a semicolon, which was a source of that Document.  Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing

All the custodians and file paths for the affected Documents should be produced prior to substantial completion of the Document production.

4. Technology Assisted Review: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the Documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5. Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the Documents' original language.

6. For ESI other than e-mail and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

7. Embedded Objects: Embedded files shall be produced as attachments to the Document that contained the embedded file, with the parent/child relationship preserved. The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree logos need not be extracted as separate Documents as long as they are displayed in the parent Document.

8. Attachments: If any part of an e-mail or its attachments is responsive, the entire e-mail and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege. The parties should meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent e-mail. The parties shall use their best efforts to collect and produce Documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft O365, etc. Documents extracted from

links shall be populated with the "BegAttach" and "EndAttach" metadata fields to show the family relationship.

9. Compressed File Types: Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted.

10. Structured Data: To the extent a response to discovery requires production of ESI stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether All relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

11. Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable Documents, their file type and the file location.

12. Encryption: To maximize the security of information in transit, any media on which Documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

13. Redactions: If Documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## V. RELEVANT PERIOD

All Requests herein refer to the period of January 1, 2017, through the date of Document production (the "Relevant Period"), unless otherwise specifically indicated, and shall include All Document(s) that relate, in whole or in part, to such period even though dated, prepared or received before or after that period. If a Document from before or after this period is necessary for a correct or complete understanding of any Document covered by a Request, You must produce the earlier

or subsequent Document as well. If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the production Request.

## VI. DOCUMENT REQUESTS

REQUEST FOR PRODUCTION NO. 1:

The current or most recent résumé or curriculum vitae for each Individual Defendant.

REQUEST FOR PRODUCTION NO. 2:

All Documents and Communications related to the IPO, any Offering Documents, USX's suitability for an IPO, and any Due Diligence Investigation, including working group lists, deal files, due diligence requests, due diligence interviews, due diligence findings, due diligence checklists or procedural manuals, commitment committee memorandums, drafts of the Registration Statement and Prospectus, internal or other presentations, Road Show materials, lists of invitees and attendees, comfort letters, and any other solicitation materials, Meeting minutes, reports, memoranda, analyses or notes used to sell, market, distribute, publicize or promote the IPO or otherwise concerning the purchase or sale of securities issued in connection with the Offering Documents.

REQUEST FOR PRODUCTION NO. 3:

All Documents, including organizational charts, sufficient to show the organizational and reporting structure for USX during the Relevant Period, including all organizational charts showing either formal or informal ("dotted line") reporting relationships between or among: (i) any officers, directors, board committees, or business units of USX; (ii) any Persons who owned (directly or indirectly), or represented Persons who owned (directly or indirectly), more than 25% of USX's common stock; and (iii) between or among any of the Persons or entities referenced in subsections (i) through (ii).

**REQUEST FOR PRODUCTION NO. 4:**

All Documents concerning the Offering Documents or USX's other public disclosures issued in connection with the IPO and drafts thereof; all documents concerning such drafts, including notes, summaries, and/or transcripts from any drafting sessions relating to the Offering Documents or other public disclosures issued in connection with the IPO; and any Communications to or from You or any Defendants and the Government or any other third party concerning the IPO or the Offering Documents or any actual or considered disclosures in the Offering Documents.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents related to any actual or considered disclosures in the Offering Documents, including but not limited to, any actual or considered disclosure of trends relating to the driver shortage, its impact on growing the dedicated segment and meeting the existing demand of dedicated customers.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications related to any valuation of USX or USX securities, including All Documents and Communications concerning USX's share price, market capitalization, or the market, perceived, inherent, actual, or other value of any USX security, common stock, or any of the assets or businesses of USX, including any market studies, market research reports, valuations, comparisons and analysts' reports concerning USX in relation to the IPO or in connection with any Offering Documents.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents concerning the number of shares (including any green shoe allocations) considered or issued in the IPO as well as the price per share (actual or contemplated).

- 16 -

<u>REQUEST FOR PRODUCTION NO. 8</u>:

All documents concerning the allocation of shares in the IPO.

<u>REQUEST FOR PRODUCTION NO. 9</u>:

All Documents concerning actual or anticipated investor demand for USX's shares in the IPO, including any orders for USX shares placed by investors prior to the IPO, or amendments to those orders.

<u>REQUEST FOR PRODUCTION NO. 10</u>:

All Documents sufficient to identify all Persons that You know purchased USX securities in the IPO or in connection with any Offering Documents and the number of shares purchased by such Persons.

<u>REQUEST FOR PRODUCTION NO. 11</u>:

All Documents concerning the timing of the IPO, including any Documents related to any consideration made regarding the specific timing of the IPO or consideration of any other potential IPO date, whether before or after the date of the IPO, or any request or effort by USX to accelerate or delay the effective date of the Registration Statement for the IPO.

<u>REQUEST FOR PRODUCTION NO. 12</u>:

All Documents or Communications provided to, or received from, the SEC or any government agency concerning the IPO, including any Documents relating to the Offering Documents, or any action considered or taken to correct, amend, supplement any Offering Documents or respond to any questions or requests from these entities.

<u>REQUEST FOR PRODUCTION NO. 13</u>:

All Documents or Communications between You or any of Your officers, directors, employees, consultants, accountants, or attorneys concerning any conclusion, statement, or

observation prepared in connection with the IPO, Road Show or any Meeting regarding whether to disclose any information.

REQUEST FOR PRODUCTION NO. 14:

All Communications with investors or potential investors concerning the IPO and all documents and Communications concerning investors or potential investors in the IPO.

REQUEST FOR PRODUCTION NO. 15:

All Documents concerning any Road Show and identifying the Road Show's participants and attendees, including, but not limited to, any Documents concerning Road Show materials, presentations, scripts or talking points created, reviewed or otherwise used in connection with the IPO or any Offering Documents.

REQUEST FOR PRODUCTION NO. 16:

All Documents concerning any in-person or telephonic Meeting with any investor or potential investor concerning the IPO or any Offering Documents, including any memoranda, agendas, presentations or slides, and handwritten notes.

REQUEST FOR PRODUCTION NO. 17:

All Documents or Communications, presentations, webcast or Meetings (including any presentations, videos, tapes, scripts, talking points or transcripts) prepared in connection with the IPO or any Offering Documents, Road Show, or any Meeting with or for the benefit of any prospective investor in the IPO, including individual shareholders, securities analysts, financial analysts, institutional investors, news media, journalists, investment bankers, brokerage firms, market makers, money managers, commercial banks, rating agencies, or stock markets or securities exchanges.

<u>REQUEST FOR PRODUCTION NO. 18</u>:

All Documents concerning press releases, published articles, financial analysts' reports, rating agencies' reports, and all drafts thereof, relating to the IPO or any Offering Documents.

<u>REQUEST FOR PRODUCTION NO. 19</u>:

All Documents and Communications that You or any Defendant sent to, or received from, any securities analysts concerning the IPO or USX, including, but not limited to, any: (1) correspondence or other Communications; (2) press releases; (3) financial statements or reports; (4) analyst reports; (5) Documents filed or to be filed with the SEC; and (6) newspaper articles.

<u>REQUEST FOR PRODUCTION NO. 20</u>:

All Documents concerning media reports of the IPO.

<u>REQUEST FOR PRODUCTION NO. 21</u>:

All Documents and Communications that You or any Defendant sent to or received from New York Stock Exchange concerning the IPO or any Offering Documents.

<u>REQUEST FOR PRODUCTION NO. 22</u>:

All Documents concerning the efforts made by You, the Underwriter Defendants, the USX Defendants, or any other person to sell, market, distribute, publicize, or promote the common stock sold in or traceable to the IPO or Offering Documents.

<u>REQUEST FOR PRODUCTION NO. 23</u>:

All Documents concerning any "comfort" or opinion letters from attorneys, auditors, accountants, or any other Person concerning the IPO or any Offering Documents.

<u>REQUEST FOR PRODUCTION NO. 24</u>:

All Documents concerning any compensation, fees, bonuses, expenses, reimbursements, costs, compensations, or other remuneration You paid and/or any Defendant received in connection with the IPO or other services provided to or on behalf of USX.

REQUEST FOR PRODUCTION NO. 25:

All Communications between You and any Defendant concerning the IPO or any Offering Documents.

REQUEST FOR PRODUCTION NO. 26:

All Documents and Communications related to USX's monthly, quarterly, and annual financial results and forecasts for fiscal years 2017 and 2018.

REQUEST FOR PRODUCTION NO. 27:

All Documents and Communications related to USX's projected profits and the basis for said projections.

REQUEST FOR PRODUCTION NO. 28:

All Documents prepared, distributed, concerning or used at, before or after any Meeting of the Board, including, without limitation, any minutes, including any exhibits or attachments thereto, agendas, presentations, handouts, board packets, itineraries, notes, invitations, updates, or attendance lists related to or concerning the IPO or any Offering Documents.

REQUEST FOR PRODUCTION NO. 29:

All Documents prepared, distributed, concerning, or used at, before, after or in connection with any Meeting involving USX management or executives, including, without limitation, any minutes, including any exhibits or attachments thereto, agendas, presentations, handouts, board packets, itineraries, notes, invitations, updates or attendance lists related to or concerning the IPO or any Offering Documents.

REQUEST FOR PRODUCTION NO. 30:

All Documents and Communications related to USX's contracts with its customers, including Documents showing: (a) the lengths and terms of those contracts; (b) sales, pricing, revenue and margin by customer; (c) whether those contracts were part of USX's over-the-road

segment or dedicated segment; (d) the performance of those contracts; (e) any terminations, amendments, or changes to those contracts made prior to the IPO; (f) any proposed contract that was not entered into; (g) difficulties in meeting existing and future customer demands as required by those contracts; and (h) customer complaints concerning any USX non-performance of those contracts.

REQUEST FOR PRODUCTION NO. 31:

All Documents and Communications concerning the impact of dedicated customers' changes in demand, shipping lanes/routes or distribution centers on USX's ability to service such changes.

REQUEST FOR PRODUCTION NO. 32:

All Documents and Communications related to USX's allocation of truck drivers to each of the Company's segments, including documents concerning the reallocation of drivers between the over-the-road segment and the dedicated segment.

REQUEST FOR PRODUCTION NO. 33:

All Documents and Communications concerning USX's truck utilization on a company-wide basis and for the over-the-road and dedicated segments.

REQUEST FOR PRODUCTION NO. 34:

All Documents and Communications concerning USX's: (a) cost-reduction initiatives; (b) flexibility to adapt to market conditions and market cycles; and (c) long-term enterprise planning.

REQUEST FOR PRODUCTION NO. 35:

All Documents and Communications related to USX's driver hiring and retention efforts, including: (a) hiring and retention rates; (b) safety practices; (c) driver compensation; (d) "driver centric initiatives" as described in the Offering Documents; (e) incentive programs; (f) any financial impact of these efforts; (g) any proposed or enacted changes to these efforts; (h) analysis

of the impact of these efforts on driver retention; and (i) analysis on USX's competitors' driver hiring and retention efforts.

REQUEST FOR PRODUCTION NO. 36:

All Documents and Communications concerning USX drivers' complaints relating to load planning, truck maintenance or compensation.

REQUEST FOR PRODUCTION NO. 37:

All Documents and Communications related to USX's over-the-road segment's and dedicated segment's operating ratios and revenues, including any such documents related to USX's Company-sponsored independent contractor lease program.

REQUEST FOR PRODUCTION NO. 38:

All Documents and Communications concerning variations in driver compensation and company expenses between USX's over-the-road segment and dedicated segment, including driver compensation and company expenses associated with using over-the-road drivers to service dedicated customers.

REQUEST FOR PRODUCTION NO. 39:

All Documents concerning any market studies, trend analyses, consumer perceptions, market research reports, valuations, comparisons, and analysts' reports relating to USX, its products and services, or its business.

REQUEST FOR PRODUCTION NO. 40:

All Documents and Communications concerning internal driver hiring and turnover statistics or analysis.

REQUEST FOR PRODUCTION NO. 41:

All Documents concerning USX's growth prospects and ability sustain such growth, including but not limited to, the potential addition of new customers, the ability to service new

customers, the potential loss of customers, and the potential increase or decrease in revenue, expenses and income.

REQUEST FOR PRODUCTION NO. 42:

All Documents and Communications concerning USX "prioritizing growth in dedicated contract services" as stated in the Offering Documents.

REQUEST FOR PRODUCTION NO. 43:

All Documents and Communications related to USX's November 1, 2018 press release and earnings call and the topics discussed therein.

REQUEST FOR PRODUCTION NO. 44:

All Documents concerning presentations to or Meetings with any USX shareholder or any investor, securities analyst, financial analyst, institutional investor, financial publication, reporter, journalist, or investment banker concerning USX, including, without limitation, any talking points, scripts, transcripts, tapes, presentations, handouts or video, or any other Document used at, prepared in connection with or as a result of, such Meetings related to or concerning the IPO or any Offering Documents.

REQUEST FOR PRODUCTION NO. 45:

All Documents concerning the periodic tracking of revenue, expenses, and income from the beginning of a reporting period through the reporting of results for that reporting period.

REQUEST FOR PRODUCTION NO. 46:

All Documents concerning: (a) any analysis on the advisability or readiness of USX to conduct an IPO; or (b) any known risks, events or uncertainties that at the time of IPO that impacted or were reasonably likely to impact USX's disclosed financial information or future operating results; or (c) any business recommendations to USX to position itself for an IPO,

whether conducted by the Company, the Underwriter Defendants, individuals, the SEC, or other entities engaged by any Defendant to conduct such analysis.

REQUEST FOR PRODUCTION NO. 47:

All indemnification agreements, hold harmless agreements, or bylaws under which You may claim coverage to satisfy part or all of any possible liabilities as a result of the claims asserted in this Action.

REQUEST FOR PRODUCTION NO. 48:

All Documents concerning any proposed or actual agreements (verbal, written, or otherwise) related to the IPO between You and any Defendants, including but not limited, to, the underlying agreement and any proposed or actual indemnification agreement related to the IPO.

REQUEST FOR PRODUCTION NO. 49:

All Documents concerning Your investment in USX or involvement in the IPO. This request is not limited to the Relevant Period.

REQUEST FOR PRODUCTION NO. 50:

All Documents concerning any and all insurance policies covering You or any of Your employees, officers, directors, or agents, that may provide or have provided coverage during the Relevant Period, including any loss mitigation insurance or liability sharing arrangements, and options to purchase such insurance or sharing agreements. This request is intended to require production of all insurance policies You have or had in effect during or related to the Relevant Period, regardless of whether You believe they may afford coverage for the claims asserted in this case, and regardless of whether acquired before or after the initiation of this litigation.

REQUEST FOR PRODUCTION NO. 51:

All Documents concerning any lock-up of USX's common stock.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents concerning any USX common stock sold by You or any USX executive officer or director.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents concerning any issuance of USX common stock other than through the IPO, including but not limited to any employee incentive plan or the registration of USX common stock owned at any time by You but not registered in the IPO.

**REQUEST FOR PRODUCTION NO. 54:**

All appointment books, calendars, logs, or diaries created or maintained by on behalf of You, including Your executive offices or directors and those employees who report or reported to them.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents concerning corporate governance policies and procedures applicable to the Board that are currently in effect or that were in effect at any time during the Relevant Period, including charters, codes of ethics, bylaws, and any drafts or revisions thereto.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents created by You concerning any policy, procedure, or practice regarding the preservation or destruction of the Documents or electronic data, or the types of Documents or electronic data, sought herein, including any changes or modifications to such policies or practices during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents concerning any internal investigation by You or the Board concerning the IPO.

- 25 -

<u>REQUEST FOR PRODUCTION NO. 58</u>:

All Documents and Communications related to any valuation of USX or USX securities, including All Documents and Communications concerning USX's share price, market capitalization, or the market, perceived, inherent, actual, or other value of any USX security, common stock, or any of the assets or businesses of USX, including any market studies, market research reports, valuations, comparisons and analysts' reports concerning USX in relation to the IPO or in connection with any Offering Documents.

<u>REQUEST FOR PRODUCTION NO. 59</u>:

Documents sufficient to show any relationship (in addition to the IPO) between any Underwriter Defendant(s) and USX, any Individual Defendant, or any of USX's present and former officers and directors.

<u>REQUEST FOR PRODUCTION NO. 60</u>:

All Documents obtained or received by You from any Person, either in response to a subpoena issued by You or provided to You voluntarily concerning the claims asserted in this action.

<u>REQUEST FOR PRODUCTION NO. 61</u>:

All Documents concerning any Meeting between You and the Underwriter Defendants related to or concerning the IPO or any Offering Documents.

<u>REQUEST FOR PRODUCTION NO. 62</u>:

Documents sufficient to Identify any and all monetary payments, directly or indirectly, from USX to You.

<u>REQUEST FOR PRODUCTION NO. 63</u>:

All Documents concerning or supporting any affirmative defense asserted by any Defendant(s).

<u>REQUEST FOR PRODUCTION NO. 64</u>:

All Documents and Communications concerning compensation paid to any USX employee, director, related party or beneficiary thereof upon completion of the IPO.

<u>REQUEST FOR PRODUCTION NO. 65</u>:

All Documents concerning the employment and compensation for John W. White, Lisa Quinn Pate and any other USX employee or former USX employee involved in the IPO, including all documents related to:

(a) any severance package, termination agreement, consulting agreements, claw-back provisions or parachute payments;

(b) all bonuses and/or other compensation policies, terms and agreements;

(c) any performance reviews;

(d) the benchmarking of salaries against peer groups;

(e) all payments, loans or taxable benefits received from USX; and

(f) reasons for termination, resignation, retirement or separation from USX or its Board.

<u>REQUEST FOR PRODUCTION NO. 66</u>:

All Documents and Communications concerning the intended or actual use or disbursement of the net proceeds of the IPO by USX, the Individual Defendants or a related party/entity (including, the Patrick Quinn estate and Ray Harlin).

<u>REQUEST FOR PRODUCTION NO. 67</u>:

All Documents and Communications concerning any USX loan facility, credit facility or term note with USX's credit lenders or their representatives.

<u>REQUEST FOR PRODUCTION NO. 68</u>:

All Documents and Communications concerning any real estate leases or transactions with any related party, current or former USX executives, or beneficiary thereof, including but not limited to Anne Marie Quinn, Q&F Realty, and any Quinn or Fuller family trust.

DATED:  August 19, 2020

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS (*pro hac vice*)


<u>/s/Shannon L. Hopkins</u>
SHANNON L. HOPKINS

1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: 203/363-7500
Fax: 866/367-6510
shopkins@zlk.com

Lead Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
WILLOW E. RADCLIFFE (*pro hac vice*)
HADIYA K. DESHMUKH (*pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
KEVIN S. SCIARANI (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ksciarani@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Counsel for Plaintiffs

BARRETT JOHNSTON MARTIN
 & GARRISON, LLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com

Local Counsel

BRAGAR, EAGEL & SQUIRE, P.C.
MARION C. PASSMORE (*pro hac vice*)
885 Third Avenue, Suite 3040
New York, NY  10022
Telephone:  646/860-9449
212/214-0506 (fax)
holleman@bespc.com
passmore@bespc.com

Counsel for Plaintiffs Charles Clowdis and
Bryan K. Robbins

- 29 -

## DECLARATION OF SERVICE BY E-MAIL

I, SEBASTIANO TORNATORE, hereby declare that on August 19, 2020, I served the attached PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE USX DEFENDANTS on the parties in the within Action at the following email addresses:

| NAME | FIRM | EMAIL |
| --- | --- | --- |
| C. Crews Townsend<br>Meredith Lee<br>832 Georgia Avenue, Suite 1200<br>Chattanooga, TN 37402<br>Tel: (423) 785-8297 | MILLER & MARTIN, PLLC | crews.townsend@millermartin.com<br>meredeith.lee@millermartin.com |
| Jonathan Rosenberg<br>William J. Sushon<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Tel: (212) 326-2000 | O'MELVENY & MYERS LLP | jrosenberg@omm.com<br>wsushon@omm.com |
| Philip B. Whitaker, Jr.<br>633 Chestnut Street, Suite 1900<br>Chattanooga, TN 37450<br>Tel: (423) 209-4182 | BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C. | pwhitaker@bakerdonelson.com |
| Jessica P. Corley<br>Lisa R. Bugni<br>Brandon R. Keel<br>Logan R. Hobson<br>1180 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>Tel: (404) 572-4600 | KING & SPALDING LLP | jpcorley@kslaw.com<br>lbugni@kslaw.com<br>bkeel@kslaw.com<br>lhobson@kslaw.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 19, 2020 at Norwalk, Connecticut.

*/s/Sebastiano Tornatore*
SEBASTIANO TORNATORE

# TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| SENTTIME | HH:MM | The time the e-mail or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both e-mail and e-files. |
| FILEPATH-DUP | i.e.  /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business.  This field should be populated for both e-mail and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item. An e-mail address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address of the recipient(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail/calendar item.  An e-mail address should always be provided for every e-mail if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| SUBJECT | | The subject line of the e-mail/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | E-mail Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE**: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers.  **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1]For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.