| | |
|---|---|
| LEWIS STEIN, et al., Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 1:19-cv-00098-TRM-CHS |
| Plaintiffs, ) | CLASS ACTION |
| ) | |
| vs. ) | Judge Travis R. McDonough |
| ) | Magistrate Judge Christopher H. Steger |
| U.S. XPRESS ENTERPRISES, INC., et al., ) ) | |
| Defendants. ) ) ) | |

**PLAINTIFFS' OPPOSITION TO U.S. XPRESS ENTERPRISES, INC.'S
MOTION TO QUASH RULE 45 SUBPOENAS**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    PROCEDURAL HISTORY....................................................................................4

IV.     ARGUMENT..........................................................................................................5

        A.      This Court Lacks Jurisdiction to Adjudicate This Motion......................6

        B.      USX Lacks Standing to Intervene............................................................7

        C.      The Customer Subpoenas Are Facially Relevant to Plaintiffs' Claims.................10

        D.      The Customer Subpoenas Are Proportional to the Needs of This Case ................13

        E.      USX's Vague Accusations Do Not Satisfy Its Burden on Moving to Quash
                the Customer Subpoenas........................................................................15

V.      CONCLUSION.....................................................................................................17

Cases\4853-0991-6621.v1-10/6/20

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abundes v. Athens Food Servs. LLC*,
No. 3:14-1278, 2015 WL 13664280
(M.D. Tenn. Sept. 18, 2015) ...................................................................................................9

*B.L. v. Schuhmann*,
No. 3:18-CV-151-RGJ-CHL, 2020 WL 3145692
(W.D. Ky. June 12, 2020) ..............................................................................................13, 15

*Bickford v. Lifecare Ctr. of Am.*,
No. 1:07-CV-295, 2008 WL 11342527
(E.D. Tenn. Aug. 7, 2008) .......................................................................................................7

*Chamberlain v. Farmington Sav. Bank*,
No. 3:06CV01437 (CFD), 2007 WL 2786421
(D. Conn. Sept. 25, 2007) .......................................................................................................8

*Donahoo v. Ohio Dep't of Youth Servs.*,
211 F.R.D. 303 (N.D. Ohio 2002) ...........................................................................................7

*Farmer v. Senior Home Companions of Ind., Inc.*,
No. 1:08-cv-0379-DFH-JMS, 2009 WL 564193
(S.D. Ind. Mar. 5, 2009)..........................................................................................................9

*FDIC v. Butcher*,
No. CIV-3-84-1020, 1987 U.S. Dist. LEXIS 10513
(E.D. Tenn. Apr. 1, 1987) ......................................................................................................13

*Griffiths v. Ohio Farmers Ins. Co.*,
No. 1:09-CV-1011, 2010 WL 2639918
(N.D. Ohio June 29, 2010).......................................................................................................7

*Hackmann v. Auto Owners Ins. Co.*,
No. 2:05-cv-876, 2009 WL 330314
(S.D. Ohio Feb. 6, 2009)...............................................................................................8, 9, 10

*Hamm v. Cunningham*,
No. 1:12-CV-124, 2012 WL 13027079
(N.D. Ohio May 16, 2012).......................................................................................................8

*In re Caterpillar Inc.*,
No. 3:19-mc-0031, 2020 WL 1923227
(M.D. Tenn. Apr. 21, 2020) ...................................................................................................15

Cases\4853-0991-6621.v1-10/6/20

*In re Subpoena Duces Tecum Served Upon Capito*,
No. 2:10-CV-1588-GLL, 2013 WL 499244
(E.D. Tenn. Feb. 7, 2013) ...................................................................................................9

*Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*,
No. 3:15-290, 2017 WL 4310221
(M.D. Pa. Sept. 28, 2017) ..................................................................................................9

*Lewis Envtl., Inc. v. Emergency Response & Training Sols., Inc.*,
No. 1:17-cv-674, 2019 WL 285641
(S.D. Ohio Jan. 22, 2019) ................................................................................................11

*Lewis v. ACB Bus. Servs., Inc.*,
135 F.3d 389 (6th Cir. 1998) ...........................................................................................11

*Little Traverse Bay Bands of Odawa Indians v. Snyder*,
No. 1:15-cv-00850-PLM-PJG, 2018 WL 7958929
(W.D. Mich. Apr. 23, 2018)................................................................................................6

*Mann v. Univ. of Cincinnati*,
114 F.3d 1188, 1997 WL 280188
(6th Cir. May 27, 1997) ...............................................................................................8, 10

*McKenna v. CDC Software, Inc.*,
No. 08-cv-00110-EWN-MEH, 2008 WL 4097464
(D. Colo. Sept. 4, 2008) .....................................................................................................8

*Mellon v. Cooper-Jarrett, Inc.*,
424 F.2d 499 (6th Cir. 1970) ...........................................................................................11

*Miller v. Ghirardelli Chocolate Co.*,
No. C 12-4936 LB, 2013 WL 6774072
(N.D. Cal. Dec. 20, 2013) ................................................................................................10

*Nucorp, Inc. v. Does*,
No. 2:11-CV-15222, 2012 WL 12961115
(E.D. Mich. Oct. 18, 2012) .................................................................................................8

*Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*,
No. 18-cv-2104-JTF-TMP, 2018 WL 6528192
(W.D. Tenn. Sept. 10, 2018)............................................................................................15

*Ret. Sys. v. Sonoco Prods. Co.*,
No. 4:08-2348-TLW-SVH, 2010 WL 11534402
(D.S.C. Oct. 19, 2010) ...............................................................................................16, 17

*Riding Films, Inc. v. John Does 129-193*,
No. 2:13-cv-46, 2013 WL 3322221
(S.D. Ohio July 1, 2013) ...................................................................................................9

*S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*,
No. 3:15-CV-151-CRS, 2016 WL 11200224
(W.D. Ky. Jan. 13, 2016) ................................................................................................16

*Sandlin v. Citibank, N.A.*,
No. 15-2768-JTF-dkv, 2017 WL 9538516
(W.D. Tenn. Oct. 31, 2017) ..............................................................................................5

*Schaumleffel v. Muskingum Univ.*,
No. 2:17-cv-463, 2019 U.S. Dist. LEXIS 117210
(S.D. Ohio. July 15, 2019) ...............................................................................................9

*Schmulovich v. 1161 Rt. 9 LLC*,
No. 07-597 (FLW), 2008 WL 4572537
(D.N.J. Oct. 14, 2008)......................................................................................................8

*Shirley v. Smoky Mountain Prop. Mgmt., LLC*,
No. 3:18-CV-79-TAV-DCP, 2018 WL 3421831
(E.D. Tenn. July 13, 2018)................................................................................................7

*Singler v. ConAgra Foods, Inc.*,
No. 1:18-cv-271, 2020 WL 4705268
(S.D. Ohio Aug. 13, 2020)................................................................................................6

*Sony BMG Music Entm't v. Doe*,
No. 5:08-CV-109-H, 2009 WL 5252606
(E.D.N.C. Oct. 21, 2009) .................................................................................................8

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*,
255 F. Supp. 3d 700 (E.D. Mich. 2017)....................................................................14, 16

*Teal v. Coffee Cnty. Bank*,
No. 4:13-cv-19-CLC-SKL, 2013 WL 12043474
(E.D. Tenn. Nov. 13, 2013) ............................................................................................10

*Trier v. Genesee Cnty.*,
No. 2:17-cv-10236, 2017 WL 5897057
(E.D. Mich. Aug. 2, 2017) ..............................................................................................14

Cases\4853-0991-6621.v1-10/6/20

*Underwood v. Riverview of Ann Arbor*,
    No. 08-CV-11024-DT, 2008 WL 5235992
    (E.D. Mich. Dec. 15, 2008) .................................................................................................8

*Upton v. McKerrow*,
    No. 1:94-cv-353MHS, 1996 WL 193807
    (N.D. Ga. Feb. 20, 1996) ...............................................................................................13

*Voltage Pictures v. Does 1-64*,
    No. 3:13-CV-58, 2013 WL 2897977
    (E.D. Tenn. June 13, 2013) ..........................................................................................7, 10

*William Powell Co. v. Nat'l Indem. Co.*,
    No. 1:14-cv-00807, 2017 WL 1326504
    (S.D. Ohio Apr. 11, 2017), *aff'd sub nom.*
    *William Powell Co. v. OneBeacon Ins. Co.*,
    2017 WL 3927525 (S.D. Ohio June 21, 2017) ........................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k..............................................................................................................................2, 3
    §77o..............................................................................................................................2, 3

Federal Rules of Civil Procedure
    Rule 26 .......................................................................................................................10, 13
    Rule 26(a)(1)(A)(i)..............................................................................................................4
    Rule 26(b) .........................................................................................................................11
    Rule 26(b)(1)................................................................................................................11, 14
    Rule 45 .....................................................................................................................*passim*
    Rule 45(c)(1)(A) .................................................................................................................6
    Rule 45(d)(1)........................................................................................................................7
    Rule 45(d)(3)(A) .................................................................................................................6
    Rule 45(f) ............................................................................................................................6

Federal Rules of Evidence
    Rule 501 ..............................................................................................................................7

## I. INTRODUCTION

Defendant U.S. Xpress Enterprises, Inc. ("USX" or the "Company") seeks to quash – in their entirety – ten Customer Subpoenas served by Plaintiffs[1] upon the Company's ten largest customers for documents highly relevant to the core allegations in this action.[2]  But USX is the wrong party, bringing the wrong motion, before the wrong court, for the wrong reasons.  And the Customer Subpoenas were issued to large, sophisticated companies with robust legal teams that are more than able to respond for themselves if they believe the subpoenas are too burdensome.

This Court should not even address the merits of this motion for multiple reasons.  First, this Court does not have jurisdiction to hear this motion under Rule 45 of the Federal Rules of Civil Procedure, which requires this motion to be brought in the district in which compliance is required. Second, federal law is clear that, absent a claim of privilege, which USX does not assert here, a party has no standing to challenge a subpoena to a non-party.  USX therefore lacks standing to bring this motion.  Third, USX failed to conduct any meaningful meet and confer with Plaintiffs regarding the Customer Subpoenas.

But even if this Court did have proper jurisdiction, USX did have standing, and USX did attempt to confer with Plaintiffs in good faith, USX has failed to meet its heavy burden required of a party seeking to quash a subpoena.  Plaintiffs seek customer-related documents that are facially relevant and proportional to the needs of this case – and well within the broad scope permitted by the

---

[1]  Plaintiffs are Lead Plaintiff Deirdre Terry and Named Plaintiffs Charles Clowdis and Bryan K. Robbins.  All terms not otherwise defined herein have the same meaning as set forth in Lead Plaintiff's Complaint for Violation of the Federal Securities Laws, filed October 8, 2019 (ECF No. 57).

[2]  The USX customers are Amazon.com, Inc. ("Amazon"), Dollar General Corp. ("Dollar General"), Dollar Tree Stores, Inc. ("Dollar Tree"), FedEx Corporation ("FedEx"), Home Depot U.S.A., Inc. ("Home Depot"), The Kroger Co. ("Kroger"), The Procter & Gamble Distributing Company ("Procter & Gamble"), Target Corporation ("Target"), Tractor Supply Co. ("Tractor Supply") and Walmart, Inc. ("Walmart").

Cases\4853-0991-6621.v1-10/6/20

Federal Rules of Civil Procedure. Furthermore, USX did not (because it cannot) provide any evidence of undue burden that it improperly raises on behalf of its customers.

USX's motion should be denied.

## II.   BACKGROUND

This case arises out of USX's June 14, 2018 IPO and false statements and omissions made in the Company's Registration Statement in violation of the Securities Act of 1933, 15 U.S.C. §§77k, 77o. USX is a Chattanooga-based trucking company that maintains a fleet of approximately 6,800 tractors and 16,000 trailers. ¶¶24, 45.[3] During the IPO, the Company made multiple misleading statements and omissions to investors touting the Company's ability to maintain a sufficient number of drivers to meet shippers' demands. ¶118. In reality, the Company was struggling to meet driver quotas and was required to shift drivers from the Company's generally pricier (and therefore, ideally, more profitable) OTR contracts to its multi-year fixed rate "dedicated" contracts. ¶¶66, 89.

First, the Offering Documents stated that USX was going to "'capitalize on [the] current favorable truckload environment.'" ¶112. In order to achieve this goal, the Offering Documents stated that USX would "'[s]trategically expand [its] fleet based on expected profitability and driver availability.'" *Id*. Judge McDonough found these statements misleading in light of the following:

- USX's compensation packages were insufficient to hire and retain quality truck drivers to meet the demand for the Company's services (¶122);

- USX drivers were not among the best paid in the industry (*id.*);

- USX failed to improve load planning or truck maintenance, which harmed trucker morale and worsened USX's poor driver retention rates (*id.*);

- USX was forcing OTR drivers to cover less desirable routes for the Dedicated segment (thus "cannibalizing" OTR) (*id.*);

- "USX was unable to '"prioritize[e] growth in dedicated contract services"'" because a shortage of drivers . . . was negatively impacting USX's dedicated division, which

---

[3]   All "¶_" and "¶¶_" references are to Lead Plaintiff's Complaint (ECF No. 57).

> forced USX to reallocate OTR drivers (at an increased cost) to drive dedicated routes – this was a common practice prior to the IPO, which caused underperformance in OTR and continued after the IPO" (*id.*);

- Certain account shipping patterns (*i.e.*, those of USX's largest account, Walmart) had already been negatively impacted, which adversely impacted utilization, as well as driver retention and hiring (*id.*); and

- USX's driver wages and independent contractors' costs exceeded the Company's internal expectations (*id.*).

MTD Order at 33.[4]

Second, as detailed in the Complaint, the District Court found actionable the Offering Documents' misleading representation that:

> [i]f we are unable to continue to attract and retain a sufficient number of drivers, we could be forced to, among other things, continue to adjust our compensation packages or operate with fewer tractors and face difficulty meeting shipper demands, either of which could materially adversely affect our growth and profitability.

¶118; MTD Order at 37-39. The District Court found this statement actionable because Plaintiffs had alleged that (1) USX actually lacked sufficient drivers to meet then-present dedicated demand, requiring the Company to shift OTR drivers to its dedicated routes, combined with Plaintiffs' allegation that (2) growth and profitability were already suffering due to the cannibalization. MTD Order at 37-39. Judge McDonough noted, "[i]ndeed, when a supplier says that it has 'sufficient' capacity to meet demand, a reasonable investor could take this to mean that it can meet demand without harm to itself." MTD Order at 38. Thus the District Court itself drew a direct link between tractor numbers, customer demands and the Company's overall growth and profitability.

Similarly, based on an omissions theory, Judge McDonough found that the Company's failure to disclose its costly shifting of OTR drivers also made the Offering Documents' statement that the Company was """"prioritizing growth in dedicated contract services"""" misleading. MTD Order at 34, 45. USX failed to disclose that, at the time it issued the statements, it was unable to

---

[4] "MTD Order" refers to the Memorandum Opinion, filed June 30, 2020 (ECF No. 91).

prioritize growth in the dedicated segment due to a shortage of drivers.  ¶¶113, 122(d).  In addition, the Company failed to disclose that, rather than prioritizing growth, its cannibalization of OTR drivers conflicted with cost-reduction efforts related to load planning and fleet optimization, negatively impacting growth.  ¶¶66, 122(d).

## III.  PROCEDURAL HISTORY

On October 8, 2019, Plaintiffs filed the operative complaint.  ECF No. 57.  On June 30, 2020, Judge McDonough issued an order denying in part and granting in part Defendants' motions to dismiss.  MTD Order.  On August 24, 2020, Plaintiffs served initial disclosures that included USX's ten largest customers, which Plaintiffs contend are likely to have discoverable information relevant to the claims and defenses in this action.  Ex. A; Fed. R. Civ. P. 26(a)(1)(A)(i).  On September 22, 2020, Plaintiffs served notices of issuance of subpoenas to be served on the same ten customers.

The Customer Subpoenas seek documents concerning: (i) the customers' contracts with USX, including any documents received during the solicitation process; (ii) the customers' expected demands for services; (iii) any representations USX made about its availability of drivers; (iv) payments made to USX; (v) USX's allocation of drivers to the dedicated or OTR segments; (vi) any cost-reduction initiatives at USX; (vii) representations USX made about the condition of its equipment; and (viii) USX's driver compensation.  *See* Customer Subpoenas.[5]

Three days after the notices of issuance of subpoenas were served on Defendants, the parties held an unrelated meet and confer concerning Plaintiffs' pending requests for production to the USX Defendants and Underwriter Defendants.  Toward the end of the call, without any advance notice, USX raised an objection to the Customer Subpoenas.  Counsel for USX stated that if Plaintiffs did

---

[5]  "Customer Subpoenas" refers to Plaintiffs' Notice of Issuance of Subpoenas *Duces Tecum* to Non-Parties ("Notice of Issuance"), dated September 22, 2020, and ten Rule 45 subpoenas with Requests for Production ("RFP") Nos. 1-20 each (ECF No. 111-1), collectively attached as Ex. 1 to USX's Motion to Quash Plaintiffs' Rule 45 Subpoenas to Non-Parties and Request for Expedited Hearing (ECF No. 111).

- 4 -

not fully withdraw the Customer Subpoenas, it would move to quash them all.  In response, counsel for Plaintiffs questioned whether USX had standing to quash the Customer Subpoenas. Nevertheless, Plaintiffs offered to meet and confer separately to potentially narrow the scope of the Customer Subpoenas if there were real issues at hand.  Counsel for USX refused, in violation of your Honor's Judicial Preferences,[6] stating that USX objected to all the Customer Subpoenas in their entirety, and so narrowing the requests could never satisfy USX.  In other words, USX, by this motion, seeks to preclude any discovery, on any of its customers, despite refusing to discuss the scope of the Customer Subpoenas and ignoring their obvious relevance to this action.

Notably, in the last several days, Plaintiffs have already engaged with two of the customers subpoenaed, and both have been willing to meet and confer to discuss the scope of the requests and responses thereto.

## IV.    ARGUMENT

USX's motion to quash should be denied.  "[T]he party which seeks to quash the subpoena bears a heavy burden of proof."  *Sandlin v. Citibank, N.A.*, No. 15-2768-JTF-dkv, 2017 WL 9538516, at *1 (W.D. Tenn. Oct. 31, 2017).  And USX has not met its burden here.  As a threshold matter, this Court does not have jurisdiction under Rule 45 of the Federal Rules of Civil Procedure to quash out-of-jurisdiction subpoenas.  In addition, USX lacks the standing necessary to intervene in the Customer Subpoenas.  Regardless, even if this Court had jurisdiction to quash the Customer Subpoenas and USX had standing to interfere with them, the Customer Subpoenas seek documents facially relevant to the claims and defenses in this action, proportional to the needs of this case, and

---

[6]    *See* Judicial Preferences, Christopher H. Steger, https://www.tned.uscourts.gov/content/ christopher-h-steger-united-states-magistrate-judge ("Lawyers should: (1) confer with each other in a civil manner and use their ***best efforts*** to resolve discovery disputes promptly . . . .") (emphasis added).

there is no basis to conclude that the documents sought are unduly burdensome to the customers subpoenaed.

### A. This Court Lacks Jurisdiction to Adjudicate This Motion

Rule 45 of the Federal Rules of Civil Procedure, which governs disputes arising from subpoenas served on non-parties, "explicitly provides that motions to quash or modify subpoenas must be brought in 'the district where compliance is required.'" *Little Traverse Bay Bands of Odawa Indians v. Snyder*, No. 1:15-cv-00850-PLM-PJG, 2018 WL 7958929, at *1 (W.D. Mich. Apr. 23, 2018) (quoting Fed. R. Civ. P. 45(d)(3)(A) and noting the rule has been in force since 2013).[7] "Courts have interpreted this rule to deprive all courts, with the sole exception of the court where compliance is required, of jurisdiction to resolve the motion to quash." *Singler v. ConAgra Foods, Inc.*, No. 1:18-cv-271, 2020 WL 4705268, at *1 (S.D. Ohio Aug. 13, 2020) (denying motion to quash on jurisdictional grounds).

Here, Plaintiffs served ten Customer Subpoenas on ten different USX customers on September 24, 2020. In accordance with Fed. R. Civ. P. 45(c)(1)(A), Plaintiffs provided places of production within 100 miles of each customer's business.[8] Not a single one of those locations falls within the borders of the Eastern District of Tennessee. To date, not a single customer has moved to quash in its own court of compliance; nor has any court exercised its limited discretion to transfer the motion to this Court. *See* Fed. R. Civ. P. 45(f) (permitting transfer by consent of the non-party subject to the subpoena, or under "exceptional circumstances").

---

[7] All citations and footnotes are omitted and emphasis is added unless otherwise indicated.

[8] The places of production specified in the Customer Subpoenas are: Jenkintown, PA; Nashville, TN; New York, NY; San Francisco, CA; and Los Angeles, CA. *See* Customer Subpoenas, Notice of Issuance at 1-2.

There being no jurisdiction of this Court to quash the Customer Subpoenas issued, USX's motion to quash should be denied on this ground alone.[9]

**B.**     **USX Lacks Standing to Intervene**

Not only does this Court lack the jurisdiction to quash the Customer Subpoenas, USX lacks standing to interfere with subpoenas served on non-parties, including the Customer Subpoenas at issue. Unsurprisingly, USX has not asserted any recognizable claims of privilege or personal right over the documents sought by the Customer Subpoenas that might afford it standing.[10]

"Federal courts must inquire into the threshold issue of standing before deciding the merits of a party's challenge to a subpoena." *Griffiths v. Ohio Farmers Ins. Co.*, No. 1:09-CV-1011, 2010 WL 2639918, at *1 (N.D. Ohio June 29, 2010). "'[A]bsent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty. The person to whom a subpoena is directed is the only person with standing to oppose it.'" *Bickford v. Lifecare Ctr. of Am.*, No. 1:07-CV-295, 2008 WL 11342527, at *2 (E.D. Tenn. Aug. 7, 2008) (quoting *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002)).

Indeed, here "Defendants do not claim any personal right or privilege that would provide them standing to challenge the subpoena on behalf of the nonparty." *Shirley v. Smoky Mountain Prop. Mgmt., LLC*, No. 3:18-CV-79-TAV-DCP, 2018 WL 3421831, at *2 (E.D. Tenn. July 13, 2018); *see also Voltage Pictures v. Does 1-64*, No. 3:13-CV-58, 2013 WL 2897977, at *1 (E.D.

---

[9]    Quoting Fed. R. Civ. P. 45(d)(1), USX states: "Rule 45 further provides that the court '***must*** enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply' with this requirement." Memorandum of Law in Support of U.S. Xpress Enterprises, Inc.'s Motion to Quash Plaintiffs' Rule 45 Subpoena to Non-parties and Request for Expedited Hearing (ECF No. 112) ("Mot.") at 6. The Company's quote, however, omits the nine preceding words of that very Rule: "***The court for the district where compliance is required*** . . . ." Fed. R. Civ. P. 45(d)(1). As discussed, for each and every one of the ten Customer Subpoenas, compliance is required outside of this District.

[10]    In federal question cases, such as the action at bar, enforceable privileges are those established by federal common law, federal statute or the United States Constitution. *See* Fed. R. Evid. 501.

Tenn. June 13, 2013) (same); *Mann v. Univ. of Cincinnati*, 114 F.3d 1188, 1997 WL 280188, at *4

(6th Cir. May 27, 1997) (quoting treatise for the proposition that "'[o]rdinarily, a party has no

standing to seek to quash a subpoena issued to someone who is not a party to the action unless the

party claims some personal right or privilege with regard to the documents sought'").

Ignoring that USX and its customers will have every opportunity to keep customer

information (likely stale from two to three years ago) confidential in this action (including filing

under seal if so approved by the Court), USX contends it has a "proprietary interest" in "confidential

commercial information and trade secrets related to bids, pricing, and other aspects of USX's

business." Mot. at 7. But USX's "argument that the information sought is confidential does not give

[it] standing to object, as 'confidentiality does not equate to privilege.'" *Nucorp, Inc. v. Does*, No.

2:11-CV-15222, 2012 WL 12961115, at *5 (E.D. Mich. Oct. 18, 2012); *Hamm v. Cunningham*, No.

1:12-CV-124, 2012 WL 13027079, at *1 (N.D. Ohio May 16, 2012) (finding that "conclusory"

assertions of confidentiality failed to satisfy heavy burden of proof required to intervene in non-party

subpoena); *Hackmann v. Auto Owners Ins. Co.*, No. 2:05-cv-876, 2009 WL 330314, at *2 (S.D.

Ohio Feb. 6, 2009) (rejecting movant's "bald statements" of privilege because the fact "[t]hat papers

are personal, or even confidential, is not in itself grounds for quashing a subpoena").[11]  Moreover,

---

[11]   The weight of USX's cited authorities supports the finding that USX has no standing to quash
the Customer Subpoenas because these authorities are either inapposite to the circumstances here or
recognize that where there is no privilege or personal right implicated, there is no standing.  Mot. at
6-7 (citing *Underwood v. Riverview of Ann Arbor*, No. 08-CV-11024-DT, 2008 WL 5235992, at *1
(E.D. Mich. Dec. 15, 2008) (where there was no claim of privilege or personal right claimed,
defendant lacked standing to quash); *Sony BMG Music Entm't v. Doe*, No. 5:08-CV-109-H, 2009
WL 5252606, at *7 (E.D.N.C. Oct. 21, 2009) (violation of First Amendments right to anonymous
free speech warranted a finding of standing to intervene); *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-
597 (FLW), 2008 WL 4572537, at *4 (D.N.J. Oct. 14, 2008) (standing established to intervene in
subpoena seeking movant's bank account records); *Chamberlain v. Farmington Sav. Bank*, No.
3:06CV01437 (CFD), 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007) (standing established to
intervene in subpoena seeking movant's employment records.  Further, the documents requested
here are not akin to the trade secrets and confidential agreement sought from defendants' former
customer at issue in *McKenna v. CDC Software*. *See* Mot. at 7 (citing *McKenna v. CDC Software,
Inc.*, No. 08-cv-00110-EWN-MEH, 2008 WL 4097464, at *1 (D. Colo. Sept. 4, 2008) (quashing

- 8 -

USX fails to "identify any specific threat of harm from disclosure of such information" to the Plaintiffs here – investors who purchased common stock in USX's IPO. *In re Subpoena Duces Tecum Served Upon Capito*, No. 2:10-CV-1588-GLL, 2013 WL 499244, at *4 (E.D. Tenn. Feb. 7, 2013); ¶¶21-23. USX here has only made "bald statements" of purported "negative implications" for both USX and its customers, with no evidentiary support whatsoever. Mot. at 12; *Hackmann*, 2009 WL 330314, at *2.

Likewise, USX's speculation that its relationships with its customers "***could*** be threatened by the significant burden Plaintiffs seek to impose on these non-parties" provides no actual basis to quash these Customer Subpoenas. USX simply cannot raise burden or relevance concerns on behalf of the customers. "The law is clear that only [the customer], the entity responding to the subpoena, has standing to argue undue burden or relevance." *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2019 U.S. Dist. LEXIS 117210, at *9 (S.D. Ohio. July 15, 2019); *Abundes v. Athens Food Servs. LLC*, No. 3:14-1278, 2015 WL 13664280, at *2 (M.D. Tenn. Sept. 18, 2015) ("[O]nly the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden.").[12] "Moreover, the moving defendants have not described how, and the Court is not persuaded that, the subpoenaed records, if disclosed, would harm the moving defendants or otherwise invade their privacy." *Riding Films, Inc. v. John Does 129-193*, No. 2:13-cv-46, 2013 WL

subpoena where subpoenas sought trade secrets and a confidential settlement agreement entered into by defendants and its former customer, which had no bearing on the instant litigation).

[12] *Farmer v. Senior Home Companions of Ind., Inc.*, No. 1:08-cv-0379-DFH-JMS, 2009 WL 564193, at *1 n.1 (S.D. Ind. Mar. 5, 2009), is inapposite. There, the highly sensitive nature of the relationship between the defendant in-home caregiver and its elderly and disabled clients (*see id.* at *1) implicated personal medical rights and would have imposed a far higher strain on the non-party clients compared to the large national and multinational corporations at issue here. And USX's reliance on *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, No. 3:15-290, 2017 WL 4310221, at *9 (M.D. Pa. Sept. 28, 2017), is unavailing because the court there quashed the subpoena not merely due to confidentiality, but because the plaintiff seeking the discovery was a business competitor of the defendant. *See id.* at *9 ("'disclosure to a competitor is more harmful than to a noncompetitor.'"). That, of course, is not true in this action.

3322221, at *5 (S.D. Ohio July 1, 2013). Furthermore, insofar as USX's perceived threat stems from its customers' apprehension of the Company's misconduct, that is both USX's own doing and is by now already public knowledge.

In short, none of USX's unfounded contentions implicates or establishes any valid claims of privilege. *See Hackmann*, 2009 WL 330314, at *2 (denying motion to quash where movant "[had] not asserted that he has any recognized privilege in the records sought"); *Voltage Pictures*, 2013 WL 2897977, at *2 ("The putative Defendants have not cited the Court to any privilege – *e.g.*, attorney-client, doctor-patient – that protects a person's name, address, or phone number from disclosure."). Additionally, there is simply no personal right at issue where, like here, the nonparty has not joined in the motion to quash. *See Miller v. Ghirardelli Chocolate Co.*, No. C 12-4936 LB, 2013 WL 6774072, at *2 (N.D. Cal. Dec. 20, 2013) (refusing to consider motion to quash as to nonparty retailers that did not join the motion). Nor has USX articulated (or could it, given the nature of the subpoenas and the fact it is a corporate entity) a recognized personal right in the materials requested, such as one's personal bank statements sought from a financial institution, personnel files from an employer, or medical records from a health provider. *See Hackmann*, 2009 WL 330314, at *1 (collecting cases); *Mann*, 114 F.3d at *4. Accordingly, USX lacks standing to quash the Customer Subpoenas, providing the Court a second, independent basis to deny USX's motion to quash. *See Hackmann*, 2009 WL 330314, at *2 (declining to reach the merits after finding movant lacked standing).

**C.      The Customer Subpoenas Are Facially Relevant to Plaintiffs' Claims**

Plaintiffs' Customer Subpoenas are plainly related and highly relevant to the claims and defenses in this action, and USX has not (and cannot) show otherwise. "Under Fed. R. Civ. P. 26, the parties may obtain discovery regarding any nonprivileged matter relevant to any party's claim or defense." *Teal v. Coffee Cnty. Bank*, No. 4:13-cv-19-CLC-SKL, 2013 WL 12043474, at *1 (E.D.

Tenn. Nov. 13, 2013) (citing Fed. R. Civ. P. 26(b)(1). "Relevance for discovery purposes is extremely broad." *Lewis Envtl., Inc. v. Emergency Response & Training Sols., Inc.*, No. 1:17-cv-674, 2019 WL 285641, at *2 (S.D. Ohio Jan. 22, 2019) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial." *Id.* (citing *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970)).

The Customer Subpoenas at issue seek documents concerning:

(i)      the customer's contracts with USX, including any documents received during the solicitation process (Customer Subpoenas at RFP Nos. 2-6);

(ii)     the customer's expected demands for services (*id.* at RFP Nos. 7-8);

(iii)    any representations USX made about its availability of drivers (*id.* at RFP No. 9);

(iv)    payments made to USX (*id.* at RFP No. 10);

(v)     USX's allocation of drivers to the dedicated or OTR segments (*id.* at RFP No. 12);

(vi)    any cost-reduction initiatives at USX (*id.* at RFP No. 14);

(vii)   representations USX made about the condition of its equipment (*id.* at RFP No. 16); and

(viii)  USX's driver compensation (*id.* at RFP No. 17).

At the outset, discovery related to the Company's practice of shifting OTR drivers to the dedicated routes is undoubtedly relevant because Plaintiffs have alleged that this practice was a direct result of a driver shortage, therefore rendering misleading the Company's statements that driver shortages ***could*** impact the Company's profitability losses. ¶118. The District Court found, "[i]ndeed, when a supplier says that it has 'sufficient' capacity to meet demand, a reasonable investor could take this to mean that it can meet demand without harm to itself." MTD Order at 38. As such, any documents bearing on the allocation of drivers (Customer Subpoenas at RFP No. 12) is undeniably relevant. Interfering with Plaintiffs' attempts to seek such discovery is highly prejudicial and can only amount to an effort by USX to evade liability for its misrepresentations.

- 11 -

The District Court upheld Plaintiffs' allegations that USX could not "'"prioritiz[e] growth in dedicated contract services"'"' and that "'certain account shipping patterns had already been negatively impacted'" in finding certain statements misleading. MTD Order at 33 (analyzing ¶¶112, 122). The District Court even specifically notes Plaintiffs' allegation that "'USX's largest account, Walmart . . . had already been negatively impacted.'" MTD Order at 33. For USX to assert that discovery from these very customers would be irrelevant strains credulity. Discovery from the dedicated contract customers – which includes Walmart and other subpoenaed customers as well – and any customers that had been negatively impacted by USX's driver shortages are directly probative of Plaintiffs' claims. Customer Subpoenas at RFP Nos. 6, 9, 12.

Furthermore, shipper demands – *i.e.*, the customers' demands – are also explicitly raised by and highly relevant to the misleading statements. ¶118. Because USX represented to its customers the Company's availability of drivers and ability to meet shipper demands, any documents regarding those representations directly relate to Plaintiffs' claims and are discoverable. Customer Subpoenas at RFP Nos. 7-9, 12. And because the Company said it **could** be required to operate with fewer tractors, to evaluate the true state of affairs at the time of the IPO, Plaintiffs must be allowed to investigate which contracts the Company had booked with its customers and any of the customers' internal documents discussing or analyzing those contracts. *Id.* at RFP Nos. 2-6.

To the extent that the Company made representations to its customers regarding the measures the Company was taking to retain drivers – during an industrywide driver shortage – discovery regarding driver compensation packages is relevant. *Id.* at RFP No. 17. Likewise, if the Company touted any cost-reduction measures as a method of driving down rates charged to the customers, then such documents would directly affect the customers' decisions to contract with USX, thereby affecting the Company's statements concerning its growth and profitability. *Id.* at RFP No. 14.

The District Court found actionable the statement that USX would "*[s]trategically expand [its] fleet based on expected profitability and driver availability*." ¶112. The customer contracts evidence expected demands for services and payments made to USX, directly relating to the expected profitability of the Company. USX has not explained (because it cannot) how these documents are not relevant to Plaintiffs' claims. Customer Subpoenas at RFP Nos. 2-6, 7-8, 10. Further, this statement implicates discovery related to the Company's representations regarding its driver headcount, which directly affects the Company's ability to expand its fleet. *Id.* at RFP Nos. 9, 17. These documents are crucial to proving Plaintiffs' claims.

Lastly, even if the Customer Subpoenas "relate to alleged misstatements that the District Court has held are not actionable, this does not mean they are 'completely irrelevant' to the claims remaining in this action." *Upton v. McKerrow*, No. 1:94-cv-353MHS, 1996 WL 193807, at *3-*4 (N.D. Ga. Feb. 20, 1996); *FDIC v. Butcher*, No. CIV-3-84-1020, 1987 U.S. Dist. LEXIS 10513, at *5 (E.D. Tenn. Apr. 1, 1987) ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. . . . Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.").

D.    **The Customer Subpoenas Are Proportional to the Needs of This Case**

Given the critical value of the customers' documents concerning the Company's growth and profitability – which is central to Plaintiffs' claims – the discovery sought is appropriate and proportional to the needs of the case. "'Courts must "balance the need for discovery against the burden imposed on the person ordered to produce documents" and the status of that person as a non-party is a factor.'" *B.L. v. Schuhmann*, No. 3:18-CV-151-RGJ-CHL, 2020 WL 3145692, at *3 (W.D. Ky. June 12, 2020). In evaluating proportionality, Rule 26 considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

- 13 -

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

- **Importance of the issues**. The action concerns the violation of federal securities laws, impacting countless shareholders, regarding false and misleading statements filed with the SEC, in connection with a nine-figure IPO.

- **Amount in controversy**. USX's misstatements caused millions of dollars in damages to Plaintiffs and the proposed Class.

- **Access to information**. Plaintiffs do not have access to the documents requested. USX does not have access to the full scope of documents requested as the Customer Subpoenas also seek documents that exist internally at the customers' companies and, therefore, are outside USX's possession, custody or control (*e.g.*, the customers' own analyses or communications regarding USX's non-compliance with its contracts). Further, "there is no requirement that [Plaintiffs] refrain from first obtaining information directly from the customers[.]" *Trier v. Genesee Cnty.*, No. 2:17-cv-10236, 2017 WL 5897057, at *3 (E.D. Mich. Aug. 2, 2017) (rejecting argument subpoenas served on non-parties "could have obtained the same information via discovery" from parties).

- **Importance of discovery**. Discovery sought in the Customer Subpoenas is probative of the true state of USX's driver shortage and retention problems as of the June 2018 IPO. *Supra* at §IV.C.

- **Burden versus benefit**. As discussed above, USX has no standing to assert that the Customer Subpoenas impose an undue burden on the customers. *Supra* at §IV.B. Nor has USX set forth any facts that would allow the District Court to conclude that these large, publicly traded companies would suffer any extraordinary burden in responding to what are ordinary requests. In absence of burden, the benefit of such discovery clearly weighs in favor of a finding of proportionality.

USX not only disregards the District Court's reasoning in finding the alleged statements actionable, but also denies Plaintiffs the opportunity to explain why each request to the customers was relevant. Instead, it proposed an all-or-nothing demand that Plaintiffs withdraw the Customer Subpoenas entirely. Considered in totality, these factors, in addition to the highly relevant nature of the information at issue, weighs strongly against quashing the Customer Subpoenas. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 707-08, 710 (E.D. Mich. 2017) (finding subpoenas could go forward where, *inter alia*, plaintiffs provided multiple relevance

- 14 -

explanations for the documents requested, the importance of the documents in resolving the issues, non-party did not identify any concerns regarding resources, and potential multi-million-dollar verdict).

E. **USX's Vague Accusations Do Not Satisfy Its Burden on Moving to Quash the Customer Subpoenas**

"Federal Rule of Civil Procedure 45 contains the standard a court should apply when considering a motion to quash or modify a subpoena." *Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-cv-2104-JTF-TMP, 2018 WL 6528192, at \*1 (W.D. Tenn. Sept. 10, 2018). "'A court must protect a non-party subject to a subpoena if it "requires disclosure of privileged or other protected matter" or the subpoena "subjects a person to undue burden."'" *Id.* However, "Rule 45 only requires the Court to avoid imposing an 'undue burden' on a third party, it does not require the Court to avoid imposing any burden whatsoever." *Schuhmann*, 2020 WL 3145692, at \*4. Even assuming that USX brought this motion in the correct jurisdiction and assuming it has standing (it hasn't and it doesn't), USX's motion fails for a multitude of other reasons.

First, USX only makes blanket assertions of burden, without any indication that it has carried out any investigation whatsoever, into what would be required by the requested production. *In re Caterpillar Inc.*, No. 3:19-mc-0031, 2020 WL 1923227, at \*13-\*14 (M.D. Tenn. Apr. 21, 2020) (a showing of burden requires demonstrating factors such as "particularized cost and time estimates that the court deemed 'plausible'"); *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at \*12 (S.D. Ohio Apr. 11, 2017), *aff'd sub nom. William Powell Co. v. OneBeacon Ins. Co.*, 2017 WL 3927525 (S.D. Ohio June 21, 2017) ("Without offering evidence explaining the nature of the alleged burden it faces in producing the proposed discovery, OneBeacon has not met its burden of showing that the burden or expense of complying with Powell's discovery requests . . . outweighs the likely benefit of such discovery[.]").

- 15 -

Second, USX has not indicated any attempt to find out (nor does it seem to care) what the customers actually think of Plaintiffs' requests. USX customers are sophisticated and represent corporations that are perfectly capable of protecting themselves if they believe the Customer Subpoenas are oppressive or harassing. As such, each customer is free to raise concerns or independently negotiate the scope of its particular subpoena with Plaintiffs' counsel. *See S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, No. 3:15-CV-151-CRS, 2016 WL 11200224, at \*3 (W.D. Ky. Jan. 13, 2016) (if "nonparty, considers compliance to be onerous, or the subpoena to be overbroad in its document requests so as to seek irrelevant evidence, he is entirely capable, indeed obligated, to make such arguments by way of his own motion to quash"). Indeed, two of the subpoenaed companies have already begun to do so.

Third, USX raises the overbreadth of the documents sought, yet it denied Plaintiffs the opportunity to discuss narrowing their requests and instead demanded that the requests be withdrawn in their entirety. USX even acknowledged that some information relating to these customers would be relevant to Plaintiffs' claims, yet it made no effort to confer with Plaintiffs on the breadth of the documents sought. Mot. at 11. Instead, it now argues that any relevant documents related to the customers can be obtained from USX. Mot. at 11. Even if duplicative of some documents possessed by the Company, documents from non-parties may be requested, especially when USX contests the scope of relevance of its own productions and has not produced a single document to date. *See State Farm*, 255 F. Supp. 3d at 707 (nonparty documents discoverable where defendants could not show documents requested from nonparties were wholly duplicative of what defendants had already produced, and recognized "there may be some duplication").[13]

---

[13]  USX's reliance on *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, No. 4:08-2348-TLW-SVH, 2010 WL 11534402 (D.S.C. Oct. 19, 2010), is entirely unavailing. Mot. at 3; *id.*, Attachment 2 (ECF No. 112-2). First, *Sonoco* supports denial because it began by ***dismissing*** a motion to quash a subpoena for lack of jurisdiction. *See Sonoco*, 2010 WL 11534402, at \*2. Second, neither standing nor confidentiality was ever litigated because plaintiffs there conceded

- 16 -

## V. CONCLUSION

By raising this motion without meeting and conferring in good faith (with either Plaintiffs or the customers), in the wrong court and without standing, USX has demonstrated a brazen disregard for this Court's Judicial Preferences, the Federal Rules of Civil Procedure, the Local Rules and the Rules of Professional Conduct. *See Turner v. Atl. Se. Airlines*, Inc., No. 3:08-mc-0002, 2008 WL 2115755, at *3 (M.D. Tenn. May 16, 2008) ("'Rule 45's objections were not designed to allow a non-party to assert baseless, vague objections and thereby impose on the subpoenaing party, for no valid or even apparent reason, the expensive and time-consuming burden of seeking court intervention.'").

Plaintiffs respectfully request that the Court deny USX's motion to quash in its entirety.

DATED: October 6, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977


       s/ Christopher M. Wood
      CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

---

those points. *See id.* Third, the requests there were duplicative of some of the 20,000 documents already produced. *See id.* at *3. Here USX has not produced anything and broadly resists Plaintiffs' RFPs, including customer-related discovery. Mot., Attachment 3 at 28-29 (RFP No. 30 Response) (ECF No. 112-3).

- 17 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
WILLOW E. RADCLIFFE (*pro hac vice*)
HADIYA K. DESHMUKH (*pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
KEVIN S. SCIARANI (*pro hac vice*)
DEBASHISH BAKSHI (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ksciarani@rgrdlaw.com
dbakshi@rgrdlaw.com

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS (*pro hac vice*)
SEBASTIANO TORNATORE (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT  06905
Telephone:  203/363-7500
866/367-6510 (fax)
shopkins@zlk.com
stornatore@zlk.com

*Co-Lead Counsel for Lead Plaintiff*

- 18 -

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com

*Local Counsel*

BRAGAR EAGEL & SQUIRE, P.C.
W. SCOTT HOLLEMAN (*pro hac vice*)
MARION C. PASSMORE (*pro hac vice*)
885 Third Avenue, Suite 3040
New York, NY  10022
Telephone:  646/860-9449
212/214-0506 (fax)
holleman@bespc.com
passmore@bespc.com

*Additional Counsel for Plaintiffs Charles Clowdis
and Bryan K. Robbins*

- 19 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 6, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses of the CM/ECF participants in this case.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
      & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com