# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Civil Action No. 1:19-cv-00098 |
| v. | Judge Travis R. McDonough |
| | Magistrate Judge Christopher H. Steger |
| U.S. XPRESS ENTERPRISES, INC., *et al.*, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Dated: October 30, 2020

Jonathan Rosenberg (*pro hac vice*)
William J. Sushon (*pro hac vice*)
Redwan Saleh (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
jrosenberg@omm.com
wsushon@omm.com
rsaleh@omm.com

C. Crews Townsend (BPR # 12274)
MILLER & MARTIN, PLLC 832
Georgia Avenue, Suite 1200
Chattanooga, TN 37402
Tel: (423)785-8297
crews.townsend@millermartin.com

*Counsel for Underwriter Defendants*

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

K. Stephen Powers (BPR # 007088)
Philip B. Whitaker, Jr. (BPR # 013999)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
spowers@bakerdonelson.com
pwhitaker@bakerdonelson.com

*Counsel for USX Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................... ii

INTRODUCTION ........................................................................................................................1

BACKGROUND ...........................................................................................................................4

ARGUMENT.................................................................................................................................6

I.       PLAINTIFFS CANNOT JUSTIFY CERTIFICATION OF A CLASS THAT INCLUDES
         SHAREHOLDERS WHO PURCHASED AFTER AUGUST 2, 2018. ...........................6

         A.       USX's August 2, 2018 Earnings Release Disclosed The Allegedly Misrepresented
                  Or Omitted Information. ....................................................................................7

         B.       Any Class Extending Beyond August 2, 2018 Cannot Satisfy Rule 23's Typicality
                  And Predominance Requirements.......................................................................10

II.      PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE FIT TO SERVE AS CLASS
         REPRESENTATIVES..........................................................................................................15

CONCLUSION............................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BancorpSouth, Inc.*,
No. 16-0505, 2016 WL 5714755 (6th Cir. Sept. 6, 2016) ........................................................6

*Burke v. Ruttenberg*,
102 F. Supp. 2d 1280 (N.D. Ala. 2000) ................................................................................17

*In re Donnkenny Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) ..........................................................................................21

*Eslava v. Gulf Tele. Co.*,
No. 04-00297-KD-B, 2007 WL 2298222 (S.D. Ala. Aug. 7, 2007) ......................................20

*Food Lion, LLC v. Dean Foods Co.*,
312 F.R.D. 472 (E.D. Tenn. 2016) ........................................................................................12

*Gen. Tel. Co. v. EEOC*,
446 U.S. 318 (1980) ..............................................................................................................10

*In re Goldchip Funding Co.*,
61 F.R.D. 592 (M.D. Pa. 1974) ............................................................................................21

*Griffin v. GK Intelligent Sys. Inc.*,
196 F.R.D. 298 (S.D. Tex. 2000) ..........................................................................................20

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006) ......................................................................................................1

*Klein v. A.G. Becker Paribas Inc.*,
109 F.R.D. 646 (S.D.N.Y. 1986) ............................................................................... 2, 11, 12

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014) ...................................................................................*passim*

*Kovaleff v. Piano*,
142 F.R.D. 406 (S.D.N.Y. 1992) ..........................................................................................15

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
No. 19-CV-8204 (VSB), 2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ..................................17

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
148 F. Supp. 2d 1141 (D. Kan. 2001) .....................................................................................7

*Micholle v. Ophthotech Corp.*,
No. 17-CV-1758 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...............................17

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd sub nom. New Jersey Carpenters*
*Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809 (2d Cir. 2012).......... 1, 2, 13, 14

*Rocco v. Nam Tai Elecs., Inc.*,
245 F.R.D. 131 (S.D.N.Y. 2007) ....................................................................................15

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.*,
136 F.R.D. 658 (D. Or. 1991) .........................................................................................20

*Savino v. Computer Credit, Inc.*,
164 F.3d 81 (2d Cir. 1998) ..............................................................................................17

*Shockley v. Adams Golf, Inc.*,
No. Civ. A. 99-371, 2005 WL 3654346 (D. Del. June 27, 2005)...................................11, 12

*In re Smart Techs., Inc. S'holder Litig.*,
295 F.R.D. 50 (S.D.N.Y. 2013) .......................................................................... 2, 9, 11, 12

*In re Sonus Networks, Inc. Sec. Litig.*,
229 F.R.D. 339 (D. Mass. 2005).....................................................................................17

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) ............................................................................ 9, 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ......................................................................................................1, 6

*Welling v. Alexy*,
155 F.R.D. 654 (N.D. Cal. 1994).....................................................................................20

*Yi Xiang v. Inovalon Holdings, Inc.*,
327 F.R.D. 510 (S.D.N.Y. 2018) .....................................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 23...........................................................................................................*passim*

# INTRODUCTION

Contrary to Plaintiffs' suggestion, class certification is not warranted merely because this case involves alleged violations of the federal securities laws. The Supreme Court has made clear that a class may be certified only if the Court concludes, after a "rigorous analysis" of the evidence, that Plaintiffs have met their burden of proving each prerequisite for certification under Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And courts have not hesitated to deny certification where plaintiffs failed to meet this burden in securities cases, including those involving alleged violations of Section 11 of the Securities Act of 1933 ("Securities Act"). *See, e.g.*, *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 154 (N.D. Tex. 2014) (denying class certification in Section 11 case); *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 171 (S.D.N.Y. 2011), *aff'd sub nom. New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809 (2d Cir. 2012) (same); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006) (same). Here, Plaintiffs have not met their burden under Rule 23, and their request to certify a class of "[a]ll persons or entities who purchased or otherwise acquired" stock in U.S. Xpress Enterprises, Inc. ("USX" or the "Company") pursuant or traceable to the Company's June 2018 initial public offering ("IPO") should be rejected for two reasons.

***First***, Plaintiffs cannot justify certification of a class that includes shareholders who purchased USX stock after August 2, 2018, the date that USX released its earnings for the second quarter of 2018. That is because USX's August 2, 2018 press release ***disclosed the very information that Plaintiffs claim was omitted*** from the Company's Registration Statement for the IPO and that forms the basis of their remaining claims. Specifically, the Court held that Plaintiffs stated a Section 11 claim with respect to only two discrete statements in the Registration Statement, on the theory that those statements were false or misleading because USX "lacked sufficient drivers to meet then-present Dedicated demand" and thus was "shifting drivers away from high-

margin OTR routes" to support its Dedicated accounts. *See* Dkt. No. 91 at 32-34, 38-39, 45-46. The August 2nd press release disclosed that very information—informing investors that USX was continuing to face a shortage of drivers and that it was using OTR drivers to support Dedicated accounts, negatively impacting utilization. *See, e.g.*, Ex. 1, Form 8-K, 8/2/18, at 3 ("[T]he over the road division's support of dedicated accounts . . . negatively impacted the over the road utilization by approximately 150 basis points."); *id.* ("[S]upporting the dedicated accounts with the Company's over the road fleet negatively affected our utilization in the second quarter . . . .").

It is settled law that a shareholder cannot recover on a Section 11 claim if he or she "knew of the untruth or omissions at the time of his or her acquisition of the security." *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 58 (S.D.N.Y. 2013). Thus, given that the August 2nd press release disclosed the information that Plaintiffs claim was omitted from the Registration Statement, no class could include those who purchased USX stock after that date.

Moreover, Plaintiffs cannot satisfy typicality under Rule 23(a) for a class period that includes shareholders who purchased after August 2nd. *See Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 652 (S.D.N.Y. 1986) (typicality cannot be met for a Section 11 claim where class members possessed varying levels of information about that which was allegedly misrepresented); *see also In re Smart Techs.*, 295 F.R.D. at 58-59 (cutting class period short due to concerns that post-disclosure purchasers would defeat typicality). Nor could Plaintiffs establish predominance under Rule 23(b)(3) because the disclosure of information revealing the "truth" of the alleged misrepresentations ***during*** the class period would necessitate individualized inquiries into class members' knowledge. *See, e.g.*, *Residential Capital*, 272 F.R.D. at 170 (denying class certification where "facts illustrate sufficient differences in the knowledge of putative class members for [the

court] to conclude that individual issues predominate"). Class members who purchased USX stock prior to August 2, 2018 simply cannot be treated the same as those who purchased after that date.

**Second**, Plaintiffs' motion should be denied in its entirety because Plaintiffs have not shown that any of the three proposed class representatives are fit to serve as fiduciaries for the class. Lead Plaintiff Deirdre Terry, for instance, purchased all her USX stock after the August 2, 2018 press release. As a result, she would be subject to unique defenses if she were a class representative, rendering her atypical. Beyond that, and perhaps more troubling, it has become clear that Terry submitted to the Court a false certification under the penalty of perjury when seeking to be appointed Lead Plaintiff and class representative. As shown below, courts have held that submitting a false certification renders a proposed representative inadequate under Rule 23(a). The Court should hold the same here.

As to proposed class representatives Charles Clowdis and Bryan Robbins, Plaintiffs have failed to "produce actual, credible evidence" that they "are informed, able individuals, who are themselves—not the lawyers—actually directing the litigation." *In re Kosmos*, 299 F.R.D. at 145. Instead, as detailed below, the record reveals that Clowdis and Robbins have little to no knowledge or understanding of the case and have no capacity or plan for supervising the multiple law firms involved with this litigation. Neither of them could explain the allegations that remain at issue in this case, let alone identify the challenged statements. And they have no idea how they would make decisions for this litigation going forward. They have turned over control of this case to their counsel and are inadequate under Rule 23. Thus, for the separate and independent reason that none of the proposed class representatives has demonstrated the ability to serve as a fiduciary for the class, Plaintiffs' motion should be denied.

## BACKGROUND

As the Court is aware, Plaintiffs filed their now-active Amended Complaint, Dkt. No. 57 ("Complaint"), on October 8, 2019, alleging violations of the federal securities laws arising from USX's June 2018 IPO. Plaintiffs alleged that Defendants[1] violated Section 11 of the Securities Act because the IPO Registration Statement contained various false and misleading statements. *See id.* ¶¶ 102-124. Plaintiffs cast a broad net in that regard, challenging a variety of statements, ranging from opinions about USX's future prospects, to the Company's strategies for improvement, and even to descriptions of USX's insurance claims exposure. *See id.* In addition, Plaintiffs alleged that USX, Eric Fuller, and Eric Peterson violated the Securities Exchange Act of 1934 ("Exchange Act") by issuing false or misleading statements after the IPO. *Id.* ¶¶ 125-142.

Plaintiffs alleged that the "truth" of the violations was revealed on November 1, 2018, when USX issued its earnings results for the third quarter of 2018—USX's first full quarter as a public company. *Id.* ¶ 15. Despite the Company's reports of record quarterly results on that date, Plaintiffs alleged that the November 1st press release revealed, among other things, that the market for hiring drivers "remained challenging" and that utilization in the OTR segment remained stagnant due to the "temporary support of [USX's] dedicated division." *Id.* ¶ 155; *see also* Ex. 2, Form 8-K, 11/1/18, at 3. Plaintiffs alleged that this corrective information revealed that the prior challenged statements were false or misleading and caused a decline in the Company's stock price. Dkt. No. 57 ¶¶ 154-162.

---

[1] As used herein, "Defendants" refers to the USX Defendants (USX, Eric Fuller, Eric Peterson, Jason Grear, Max Fuller, and Lisa Quinn Pate) and the Underwriter Defendants (Merrill Lynch, Pierce, Fenner & Smith Incorporated; Morgan Stanley & Co. LLC; J.P. Morgan Securities LLC; Wells Fargo Securities, LLC; Stephens Inc.; WR Securities LLC; and Stifel, Nicolaus & Company, Incorporated).

This Court, however, substantially narrowed Plaintiffs' claims when it issued its order on June 30, 2020, granting, in large part, Defendants' motions to dismiss. *See* Dkt. No. 91. The Court dismissed Plaintiffs' Exchange Act claims in their entirety and dismissed the Securities Act claims with respect to nearly every statement challenged in the Complaint. The Court found that Plaintiffs stated a Section 11 claim with respect to only two statements in the Registration Statement: (1) that USX planned to "expand its fleet in order to capitalize on the then-favorable trucking environment," and (2) "that USX at that time had 'a sufficient number of drivers' to meet shipper demand." *Id.* at 33, 38. The Court held that Plaintiffs adequately pled a claim with respect to these statements on the narrow grounds that "USX could not take advantage of the favorable market, by expansion or otherwise, because it could not even cover its Dedicated contracts and, in fact, was shifting drivers away from high-margin OTR routes at significant cost to itself," *id.* at 34; and that USX "lacked sufficient drivers to meet then-present Dedicated demand prior to and during the IPO, requiring it to cannibalize the time of OTR drivers at higher cost and lower revenue." *Id.* at 38. The Court also allowed Plaintiffs to proceed on an omission theory based on the same underlying allegation that USX failed to disclose "the cannibalization of OTR drivers by the Dedicated division." *Id.* at 45-46. In other words, the claims that remain in this case are based on the single theory that USX did not have a sufficient number of drivers at the time of the IPO and thus was shifting drivers from the OTR division to support Dedicated accounts. *See id.* at 32-34, 38-39, 45-46.

On September 11, 2020, Plaintiffs moved to certify a class defined as "[a]ll persons who purchased or otherwise acquired Class A common stock of USX pursuant and/or traceable to the Offering Documents" for the IPO, with no limitation on the class period (*see* Dkt. No. 105 at 1)—

5

not even November 1, 2018, the date Plaintiffs allege the so-called "truth" was "revealed."[2] *See* Dkt. No. 57 ¶¶ 15, 154-62. Defendants conducted discovery into that motion and the claims of the proposed class representatives, prompting this response. For the reasons discussed below, Plaintiffs' motion should be denied.

## ARGUMENT

Although Plaintiffs suggest that the class certification inquiry is perfunctory and that certification is inevitable in securities cases, *see* Dkt. No. 105 at 2, 5-7, that is not the law. To the contrary, and as the Supreme Court has held, "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. The "party seeking class certification must affirmatively demonstrate [its] compliance" with Rule 23, *id.*, meaning that it "must be prepared to prove" that the prerequisites to class certification are "in fact" met. *Id.* And "[i]n determining whether to certify a class, the district court must undertake a rigorous analysis to ensure that plaintiffs meet all certification requirements, which may require it 'to probe behind the pleadings before coming to rest on the certification question.'" *In re BancorpSouth, Inc.*, No. 16-0505, 2016 WL 5714755, at *1 (6th Cir. Sept. 6, 2016) (quoting *Dukes*, 564 U.S. at 350). In this case, Plaintiffs have not carried their burden under Rule 23.

## I. PLAINTIFFS CANNOT JUSTIFY CERTIFICATION OF A CLASS THAT INCLUDES SHAREHOLDERS WHO PURCHASED AFTER AUGUST 2, 2018.

Even if Plaintiffs could otherwise establish Rule 23's certification requirements (which they cannot), their request to certify a class with an open-ended class period must be rejected.[3] The class cannot include shareholders who purchased after August 2, 2018 because USX disclosed on that date the very information that Plaintiffs claim was omitted from the Registration Statement.

---

[2] The proposed class excludes Defendants and other individuals or entities affiliated with Defendants.

[3] The definition of the class for which Plaintiffs seek approval has no temporal limitation.

### A. USX's August 2, 2018 Earnings Release Disclosed The Allegedly Misrepresented Or Omitted Information.

As discussed above, the Court allowed this case to proceed beyond the pleading stage on a narrow theory of liability. The Court held that Plaintiffs stated a Section 11 claim on the sole theory that the Registration Statement was misleading because USX did not have a sufficient number of drivers to meet the demand in its Dedicated division and thus was shifting drivers from the higher-margin OTR division to support Dedicated accounts. Dkt. No. 91 at 32-34, 38-39, 45-46. USX maintains that the Registration Statement was not false or misleading in any respect. Regardless, it is clear that the Company's August 2, 2018 disclosures revealed the information that forms the basis of Plaintiffs' remaining claims. Indeed, the Court recognized as much in granting the motion to dismiss Plaintiffs' Exchange Act claims, noting that USX disclosed "the OTR cannibalization in its August 2, 2018 press release and Form 8-K, (*see* Doc. No. 57, at 43), which was about seven weeks after the IPO and about . . . three months[] before the alleged 'truth' came out on November 1, 2018." Dkt. No. 91 at 70 n.31.

That August 2nd press release, which was filed with the U.S. Securities and Exchange Commission as an Exhibit to a USX Form 8-K,[4] disclosed the Company's financial results for the second quarter of 2018, ending in June 2018, following the IPO. *See* Ex. 1 at 1. The results were largely positive, with USX announcing year-over-year increases in quarterly revenue, operating income, and adjusted operating ratio—none of which is disputed in this case. *Id.* But USX also disclosed certain challenges that the Company faced during the second quarter. For one, in the release and subsequent earnings call, USX disclosed that the Company continued to face

---

[4] Courts have repeatedly recognized that SEC filings tend to demonstrate widespread public knowledge. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1144 (D. Kan. 2001) ("[T]he court deems any SEC filings distributed because all filings are readily available to the public both through the Internet and other media.").

challenges hiring qualified drivers and that a shortage of qualified drivers in the industry was impacting results. Ex. 1 at 3 ("[W]e continue to see an erosion of professional driver availability."); *id.* (noting the "difficult conditions" with respect to hiring drivers, which "created a significant professional driver supply challenge for the broader industry"); Ex. 3, Earnings Call Tr., 8/2/2018, at 11 ("We're just seeing less and less qualified, experienced drivers in the market. And so, it's leading to a little bit smaller numbers from an orientation perspective for the second quarter.").

In addition, USX disclosed—in no uncertain terms—that its results for the quarter were impacted by the Company shifting OTR drivers to support the Dedicated division:

- "[T]he over the road division's support of dedicated accounts . . . negatively impacted the over the road utilization by approximately 150 basis points." *See* Ex. 1 at 3;

- "[S]upporting the dedicated accounts with the Company's over the road fleet negatively affected our utilization in the second quarter . . . ." *Id.*

USX further warned that the negative impact on utilization would continue until the affected Dedicated accounts were "operationally established." *See id.* These disclosures are even more pointed than the later November 1, 2018 statements that Plaintiffs claim revealed the so-called "truth," such as the fact that USX's OTR division was experiencing "headwinds from temporary support of [the] dedicated division." *See* Ex. 2 at 3.

Market analysts acknowledged these August 2nd disclosures at the time in publicly available reports. For instance, on August 3, 2018, a Bank of America Merrill Lynch analyst issued a report on USX expressly noting that "[t]ruck capacity moved to dedicated to meet customer[] needs." Ex. 4, BOA Report, 8/3/18, at 4. The report also highlighted that "the tight market ha[d] eroded the driver pool, and [that] tractors may remain unseated" as a result of the driver shortage.

8

*Id.* at 1. This news was echoed elsewhere, with J.P. Morgan noting in its report on USX that USX's "[o]ver-the-road trucking supported dedicated during the quarter." Ex. 5, JPM Report, 8/3/18, at 1; *see also* Ex. 6, Stephens, Inc. Report, 8/3/18, at 1 (noting that "a couple of Dedicated contracts [were] causing utilization pressures/network disruptions").

These disclosures revealed precisely what Plaintiffs claim was omitted from the Registration Statement, leaving "no substantial doubt" that the disclosures would be "curative" of the alleged misrepresentations. *See In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019). Because the August 2, 2018 press release revealed the very information that Plaintiffs claim was omitted from the Registration Statement, the class definition cannot include shareholders who purchased after that date. *See In re Smart Techs.,* 295 F.R.D. at 58-59 (rejecting plaintiff's proposed open-ended class period and ending it on a date to "affirmatively exclude those individuals" who purchased shares after public disclosures revealing truth of alleged misrepresentations); *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521-22 (S.D.N.Y. 2018) (modifying class period for Securities Act claims to conform with date of corrective disclosures).

The reason the class period (if any) should be limited to those who purchased prior to August 2, 2018, is that "[w]here the plaintiff knew of the untruth or omissions at the time of his or her acquisition of the security, . . . the plaintiff may not maintain a section 11 (or 12(a)(2)) claim." *In re Smart Techs*., 295 F.R.D. at 58 (quotations omitted). In the words of the court in *Smart Technologies*, "[a]ny investor who purchased after the [August 2, 2018] corrective disclosure would have known of the alleged 'untruth or omission at the time of his or her acquisition of the security,' and, thus, that his or her claims would be incongruous with plaintiff's (who purchased prior to the [August 2, 2018] correction disclosure—*i.e.*, without such knowledge)." *Id.*

The court in *Xiang* applied similar reasoning in limiting a proposed class to purchasers who acquired their shares before a corrective disclosure, stating:

> The Court is persuaded that it is appropriate to temporally limit the class to: "All persons who purchased or acquired, **prior to August 5, 2015**, Inovalon common stock pursuant to or traceable to the Company's February 12, 2015 Initial Public Offering." On that date, according to the Consolidated Complaint, Inovalon issued a release which "finally disclosed the negative impact the State of New York and N.Y.C. corporate tax reforms had on Inovalon's FY15 earnings and lowered the Company's 2015 earnings forecast accordingly." Thus, even according to Plaintiff's own allegations, putative plaintiffs purchasing or acquiring Inovalon stock after that date would have actual knowledge of Inovalon's purported misrepresentations and omissions.

*Xiang*, 327 F.R.D. at 521 (emphasis in original; citations omitted).

Here, too, the class definition (if any) should be limited to those who purchased prior to the August 2, 2018 press release that clearly and indisputably disclosed that USX was using OTR drivers to support Dedicated accounts.

### B. Any Class Extending Beyond August 2, 2018 Cannot Satisfy Rule 23's Typicality And Predominance Requirements.

Because Plaintiffs seek certification of an open-ended class that includes shareholders who purchased USX stock after August 2, 2018, they cannot prove the requisite typicality or predominance under Rule 23.

*Typicality*. Rule 23(a)(2) requires a proposed class representative to establish that its claims and defenses are "typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(2). "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). Here, Plaintiffs cannot satisfy this requirement because class members (like Lead Plaintiff Terry) who purchased after August 2, 2018 cannot be treated the same as those (like Clowdis and Robbins) who purchased before that date.

On this point, *Shockley v. Adams Golf, Inc.*, No. Civ. A. 99-371, 2005 WL 3654346 (D. Del. June 27, 2005), is particularly instructive. In *Shockley*, plaintiffs brought a putative securities class action alleging that the company's offering documents for an IPO failed to disclose the risk that certain marketing practices posed to the company's business prospects. *Id.* at *1. In opposing plaintiffs' motion for class certification, defendants argued that plaintiffs' proposed class period was overbroad because it extended beyond a company press release that announced disappointing results caused, in part, by the marketing issue plaintiffs alleged that the offering documents failed to disclose. *Id.* Plaintiffs countered that the press release was "not a full disclosure" and that any decision on the adequacy of the disclosure was "in the nature of [a] decision on the merits and should await the completion of discovery." *Id.* at *2. The court ruled in favor of the defendants, setting the end point of the class period to the date of the company's press release. *Id.* In doing so, the court noted that it need not make a merits finding to deny class certification:

> This is not a determination that those who purchased pursuant to the allegedly false and misleading Registration Statement after [the date of the press release] do not have a claim. Rather, it recognizes that ***a section 11 . . . claim, which is based upon a lack of information, could not be typical of such a claim made by persons who possessed additional information***, . . . at least not when the information is, as was the case here, expressly directed to the risk that plaintiffs claim was wholly undisclosed in the Registration Statement and Prospectus.

*Id.* (quotations omitted; emphasis added).

Other courts have followed suit, refusing to certify a class that extended beyond the date when information correcting the alleged misrepresentations was disclosed, recognizing that typicality cannot be established in such circumstances. *See In re Smart Techs.*, 295 F.R.D. at 58-59 (narrowing class period to the date of a corrective disclosure because the presence of post-disclosure purchasers undermined any finding of typicality); *Klein*, 109 F.R.D. at 652 (same).

11

The same result is required here. Shareholders who purchased USX shares after August 2, 2018, had varying knowledge of the specific information that Plaintiffs claim to have been misrepresented or omitted from the Registration Statement—*i.e.*, that USX faced a shortage of qualified drivers and was being forced to shift OTR drivers to support the Dedicated division. *See* Exs. 1, 3. Lead Plaintiff Terry's claim is not typical of the claims of shareholders who purchased USX stock prior to August 2nd, and the claims of Clowdis and Robbins are not typical of those who purchased after August 2nd. Plaintiffs thus cannot establish Rule 23(a)'s typicality requirement for their open-ended class. *Shockley*, 2005 WL 3654346, at *2; *In re Smart Techs.*, 295 F.R.D. at 58-59; *Klein*, 109 F.R.D. at 652.

*Predominance*. Plaintiffs likewise cannot show that common issues will predominate over individualized issues, as required by Rule 23(b)(3), for a class extending beyond August 2, 2018. Although Plaintiffs make much of the fact that they need not prove reliance to establish the elements of their Section 11 claim (Dkt. No. 105 at 2, 6), they ignore that the predominance inquiry requires consideration not only of the elements of Plaintiffs' claims, but also Defendants' potential defenses. *Food Lion, LLC v. Dean Foods Co.*, 312 F.R.D. 472, 485 (E.D. Tenn. 2016) ("In conducting the predominance inquiry, courts must take into account the claims, *defenses*, relevant facts, and applicable substantive law . . . .") (quotations omitted; emphasis added). As shown above, *supra* I.A, a plaintiff cannot recover on a Section 11 claim where "the plaintiff knew of the untruth or omissions at the time of his or her acquisition of the security." *In re Smart Techs.*, 295 F.R.D. at 58. As such, the existence of varying degrees of knowledge among putative class members often precludes a finding of predominance in Section 11 cases. *See, e.g.*, *N.J. Carpenters Health Fund*, 477 F. App'x at 813. And a defendant need not prove the merits of such a defense to defeat certification on this basis. Rather, certification should be denied where the record

demonstrates that "individual knowledge inquiries *might* be necessary." *Id.* (emphasis added) (affirming denial of certification because "individual knowledge inquiries might be necessary" even though the evidence "surely would not have sufficed to prove each knowledge defense on the merits").

Here, investors who purchased USX stock after August 2, 2018, could not credibly claim that they were misled into believing that USX was not suffering from a shortage of drivers or that it was not shifting drivers from the OTR division to support Dedicated accounts—because USX publicly disclosed exactly that on that date. *See supra* I.A. If the class extended beyond August 2, 2018, common issues would be overwhelmed by individualized inquiries to determine which investors were aware of this allegedly misrepresented information at the time they acquired USX stock and which were not. *See In re SunEdison*, 329 F.R.D. at 135 (predominance not satisfied "given the individual issues of purchaser knowledge . . . that would arise" from corrective disclosure during the class period).

Denying class certification on this basis would be consistent with decisions courts have reached in similar circumstances. For instance, in *Residential Capital*, plaintiffs brought a putative securities class action alleging that defendants violated Section 11 because the offering documents for certain mortgage-backed securities were materially misleading "as to whether the underlying loans were originated in compliance with underwriting guidelines." 272 F.R.D. at 165. Defendants argued that predominance was not satisfied because information revealing the truth of the alleged misrepresentations was publicly available during the class period, and thus investors who purchased at different times would likely have varying levels of knowledge as to the allegedly misrepresented or withheld information. *Id.* at 168. The court agreed, finding that public information "cast increasing levels of doubt on whether the loans comprising mortgage backed

securities were originated in conformity with appropriate guidelines and risk analyses," necessitating individualized inquiries into investor knowledge that defeated predominance. *Id.* at 169-70.

Likewise, in *In re Kosmos*, another action involving alleged Section 11 violations, the court denied class certification because there were multiple "opportunities . . . for potential class members to have acquired varying levels of knowledge" regarding the alleged misstatements. 299 F.R.D. at 153. There, plaintiffs alleged that the registration statement issued in connection with the company's IPO contained misrepresentations concerning the productivity of a certain oil field. *Id.* at 135. But after finding that Kosmos, its drilling partners, and news sources had disclosed information about "production issues" at that oil field, the court concluded that plaintiff "failed to meet its burden of showing that common issues . . . predominate." *Id.* at 153-54. The court also correctly noted that the defendants did not need to prove that the information disclosed prior to the alleged corrective disclosure "r[o]se to the level of demonstrating that the Defendants w[ould] succeed on the merits." *Id.* at 153. Instead, certification was denied because the evidence was "adequate to show that individual knowledge inquiries might be necessary" to determine whether investors had knowledge of the allegedly misrepresented or withheld information. *Id.*

The same issues are present here. Extending the class beyond August 2, 2018 would prompt the need for individualized inquiries into the actual knowledge of putative class members, thus defeating predominance. *See In re SunEdison*, 329 F.R.D. at 135. And even if the Court were not convinced that the claims of putative class members would actually be precluded by their knowledge of the allegedly misrepresented or omitted information, Defendants have adequately demonstrated that "individual knowledge inquiries might be necessary" given the clear disclosure on August 2, 2018 of the information that Plaintiffs claim had been misrepresented or omitted. *See*

*In re Kosmos*, 299 F.R.D. at 153. Plaintiffs' motion should be denied, or the class should be limited to those who purchased prior to the disclosure on August 2, 2018.

## II. PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE FIT TO SERVE AS CLASS REPRESENTATIVES.

Plaintiffs' motion also should be denied in its entirety because they have not met their burden of proving that any of the named Plaintiffs are appropriate class representatives.

***Deirdre Terry***. The only proposed class representative that was actually appointed Lead Plaintiff in this case is Deirdre Terry. *See* Dkt. No. 44. The Court never appointed Clowdis or Robbins to serve in that role—they merely joined Terry when the Complaint was filed. *See* Dkt. No. 57. And Plaintiffs cannot show that their sole Lead Plaintiff is an appropriate class representative for two reasons.

First, Terry's claims are not typical of those of the putative class members because she purchased all her USX stock after the Company's August 2, 2018 press release. *See supra* I.B. Similarly, if the class was to proceed with Terry at the helm she would be subject to unique defenses based on the timing of her purchases that would not apply to those class members who purchased before August 2, 2018. *See Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (noting that a named plaintiff who purchases the securities at issue "after revelation of an alleged fraud" may be subject to a unique defense "that precludes him from serving as a class representative"). For this reason alone, Terry's claims are atypical and she is an inadequate representative. *See id.* (denying class certification based in part on plaintiff's post-disclosure stock purchases rendering the proposed class representative inadequate); *see also Kovaleff v. Piano*, 142 F.R.D. 406, 408 (S.D.N.Y. 1992) (denying class certification in Section 11 case because proposed class representative that purchased after the alleged corrective disclosure

15

was atypical due to "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it") (quotations omitted).

Second, although that issue alone disqualifies Terry, it is not the only (or even most troubling) concern. It has recently come to light that the certification Terry submitted to the Court, under the penalty of perjury, in her attempt to be appointed Lead Plaintiff and class representative was false in multiple regards. *See* Dkt. No. 22-2. As an initial matter, Terry stated that she reviewed the attached schedule reflecting her transactions in USX stock before signing the certification on March 13, 2019. *Id.* ¶ 6. But that cannot possibly be true because the attached schedule listed multiple transactions that occurred long ***after*** March 13, 2019. *Id.* at 3. When asked about this discrepancy in her deposition, Terry had no explanation:

> **Q:** If you signed the certification on March 13, 2019, and reviewed the schedule before signing, how is it that the schedule also reflects sales dated after March 13, 2019?
>
> **A:** I don't know.

Ex. 7, Deirdre Terry Dep., at 22:2-6.

Terry also represented to the Court, under oath, that the transactions reflected on the schedule attached to her certification were her purchases of USX stock. Dkt. No. 22-2 at 1 ("***My transaction(s)*** in U.S. Xpress Enterprises, Inc., which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.") (emphasis added). That, again, was not true. Of the seven accounts reflected on that schedule, only one belonged to Terry. Ex. 7 at 22:7-32:12; Ex. 8, John Terry Dep., at 33:10-46:22; Ex. 9, Terry Account Statements. The other accounts were held in the name of, and belonged to, her family members and various entities, including the John J. Terry and Terese M. Terry Trust, Mardin LLC, the Comeragh Corporation, and the John Terry Rollover IRA Brokerage Account. *See id.* Although

Terry held some ownership interest in some of these entities, these were not her transactions in USX stock, as she falsely claimed in the certification. *See id.*

Moreover, while John Terry (and other family members) apparently later assigned their interests in USX stock to Deirdre Terry on May 3, 2019 for the purposes of her pursuit of this litigation, *see* Ex. 10, 5/3/2019 Terry Assignments, they had not done so at the time Deirdre Terry submitted the certification under penalty of perjury. It is undisputed that, at the time her certification was signed and filed with the Court, the USX transactions reflected on her certification were not all hers. Her certification was false.

As courts have regularly recognized, honesty and trustworthiness are pertinent factors in assessing a candidate's ability to serve as a fiduciary for a class. *See, e.g.*, *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Accordingly, courts have held that false certifications in an applicant's submission to the court renders them "inadequate to serve as lead plaintiff" or class representative. *See Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2019 WL 6617981, at *6 (S.D.N.Y. Dec. 5, 2019); *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018). Someone like Terry, who at this early stage of the litigation has already submitted false sworn testimony to the Court, cannot be charged with the important fiduciary role of class representative (or Lead Plaintiff). *See Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1337 (N.D. Ala. 2000) ("The Court has serious reservations about awarding the lead plaintiff mantle to an investor . . . where the veracity of the representations made in the certifications filed by that investor . . . can be questioned."). Her request to serve as class representative should be denied accordingly. *See In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 342-43, 348 (D. Mass. 2005) (decertifying class due, in part, to an inaccurate certification).

Just two days before the deadline for this response, Plaintiffs preemptively attempted to address Terry's falsehoods by submitting a supplemental declaration in support of her request to be appointed class representative. *See* Dkt. No. 121-1. That attempt falls well short of curing this issue. Terry explains in her supplemental declaration that her initial certification included transactions that post-dated her claimed review and execution of the certification because (i) she signed it "with the understanding that [her] counsel would file [it] at a later date," (ii) "[i]nformation related to these [subsequent] transactions was provided to her counsel for inclusion in the Schedule A . . . in order to ensure it was up-to-date," and (iii) on May 8, 2019, she "authorized [her] counsel to use the First PSLRA Certification dated March 13, 2019, to be submitted with a schedule of transactions that included the most up-to-date information." *Id.* ¶¶ 4-6. But that newly minted explanation flatly contradicts Terry's sworn deposition testimony. As noted above, when she was asked at her deposition why the schedule included transactions that post-dated when she claimed to have read and reviewed the certification, she had no explanation: "I don't know." Ex. 7 at 22:2-6.

In addition, Terry asserts in her supplemental declaration that, "[a]s of May 10, 2019, when the First PSLRA certification was filed as part of [her] Motion for Appointment, each of [sic] provisions of the First PSLRA Certification remained true and correct and I would have otherwise certified under penalty of perjury under the laws of the United States of America to their veracity on that date." *Id.* ¶ 7. She does not even attempt to explain—or correct—the misrepresentation in her initial certification that all of the transactions reflected on the schedule were hers. Instead, despite admitting in her deposition that all but one of the accounts on the schedule were held in the names of persons or entities other than Deirdre Terry (*see* Ex. 7 at 22:7-32:12), she falsely maintains under oath that this part of the certification was correct.

Thus, Terry's supplemental declaration does nothing to correct the deficiencies in her request to be appointed class representative. Rather, it worsens those deficiencies, with Terry again submitting sworn testimony to the Court that is false. What these certifications reveal is that Terry either knowingly submitted false information to the Court, or she has failed to meaningfully control and supervise class counsel. Either way, Terry has demonstrated that she cannot be trusted to serve as a fiduciary to the class.

***Charles Clowdis and Bryan Robbins***. The other two proposed class representatives, Clowdis and Robbins, are inadequate for a similar reason: Plaintiffs have failed to "produce actual, credible evidence" that they are "informed, able individuals," who are themselves, and not the lawyers, "actually directing the litigation." *In re Kosmos*, 299 F.R.D. at 145.

As was made clear in their depositions, Clowdis and Robbins have virtually no knowledge about this case. When shown USX's Registration Statement, for instance, neither Clowdis nor Robbins could identify any of the statements that are challenged in this case (even when directed to the specific sections where those statements are listed). Ex. 11, Clowdis Dep., at 11:22-15:17, 17:10-29:20; Ex. 12, Robbins Dep., at 37:17-39:25. More telling, neither could describe the general basis for their claims. Ex. 11 at 17:17 (responding: "I'll leave that up to the attorneys."); Ex. 12 at 15:4-16:3.

It is also clear that Clowdis and Robbins have ceded control of this case to their counsel. Clowdis, for example, testified that he did not believe that he had any "obligation to determine if the allegations in the Complaint were accurate before [he] authorized that it be filed," Ex. 11 at 100:11-14, and he was told not to worry about reviewing the Complaint. *Id.* at 100:18-19. Perhaps unsurprisingly given his complete abdication of his duty, Clowdis was not aware that he had accused anyone of committing fraud in this case (as he did through his now dismissed Exchange

19

Act claim). *Id.* at 50:11-14 (Q. "Do you accuse [Defendants] of committing fraud?" A. "No. Fraud is a -- that -- I'm careful with that word . . . .").

Robbins went even further. He admitted that he did not even review the Complaint before it was filed. Ex. 12, Robbins Dep. at 19:3-5. And he was oblivious to the fact that he had previously filed a similar lawsuit against USX in Tennessee state court, before voluntarily dismissing that complaint and joining this matter. *Id.* at 21:22-24.

Clowdis and Robbins cannot be adequate class representatives when they do not possess even minimal knowledge about this case and have abdicated all responsibility to their attorneys. *See Griffin v. GK Intelligent Sys. Inc.*, 196 F.R.D. 298, 302 (S.D. Tex. 2000) (holding that plaintiffs were inadequate class representatives because they were not familiar with many of the substantive allegations in the complaint); *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 666 (D. Or. 1991) (holding that plaintiff was inadequate representative where he lacked knowledge about the allegations in the complaint and did not contribute to its drafting); *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (finding proposed representative inadequate because he had "ceded control to his lawyers"); *Eslava v. Gulf Tele. Co.*, No. 04-00297-KD-B, 2007 WL 2298222, at *3-4 (S.D. Ala. Aug. 7, 2007) (affirming magistrate judge's determination that three proposed plaintiffs were inadequate because they abdicated their representative role to their counsel).

Finally, Clowdis and Robbins have no idea how they and Terry would go about making decisions for this case moving forward. Instead, when asked how the group would proceed in making decisions, they merely defer to counsel. Ex. 11 at 47:19-22 ("I leave that up to the attorneys . . . and I'm assuming that Ms. Terry and Mr. Robbins are doing the same thing."); *id.* at 48:5-9 (Q. "Do you have any understanding of how decisions will be made if the three of you or your

counsel don't agree on a course of action for the case?" A. "No I don't."); Ex. 12 at 44:19-23 (Q. "Do you know how you and the other plaintiffs will go about making decisions for the litigation?" A. "Wait and discuss with our lawyers on that on how to go about that."); *id.* at 44:24-45:4 (Q. "What if you and the other plaintiffs don't agree on the appropriate course of conduct for the case?" . . . A. "I don't know the procedure in that case."). And their future expected coordination on this case would be especially difficult given that Robbins has never heard of Terry, nor has he ever spoken with Clowdis. *See id.* at 43:14-44:4. This is yet another deficiency in the proposed representatives that courts have acknowledged renders them inadequate under Rule 23. *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("To allow lawyers to designate unrelated plaintiffs as a 'group' . . . would allow and encourage lawyers to direct the litigation.").

The putative class members here deserve "more than blind reliance upon even competent counsel by uninterested and inexperienced representatives." *In re Goldchip Funding Co.*, 61 F.R.D. 592, 594 (M.D. Pa. 1974). But that is all the class would receive if any one (or more) of these representatives was appointed to represent the class.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for class certification or, at a minimum, temporally limit the class definition to those shareholders who purchased USX stock prior to USX's disclosure on August 2, 2018.

Dated: October 30, 2020                      Respectfully submitted,

| | |
|---|---|
| */s/ William J. Sushon* | /s/ *Jessica P. Corley* |
| Jonathan Rosenberg (*pro hac vice*) | Jessica P. Corley (*pro hac vice*) |
| William J. Sushon (*pro hac vice*) | Lisa R. Bugni (*pro hac vice*) |
| Redwan Saleh (*pro hac vice*) | Brandon R. Keel (*pro hac vice*) |
| O'MELVENY & MYERS LLP | Logan R. Hobson (*pro hac vice*) |
| 7 Times Square | KING & SPALDING LLP |
| New York, New York 10036 | 1180 Peachtree Street, N.E. |
| Tel: (212) 326-2000 | Atlanta, GA 30309 |

21

jrosenberg@omm.com
wsushon@omm.com
rsaleh@omm.com

C. Crews Townsend (BPR # 12274)
MILLER & MARTIN, PLLC 832
Georgia Avenue, Suite 1200
Chattanooga, TN 37402
Tel: (423)785-8297
crews.townsend@millermartin.com

*Counsel for Underwriter Defendants*

Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

K. Stephen Powers (BPR # 007088)
Philip B. Whitaker, Jr. (BPR # 013999)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
spowers@bakerdonelson.com
pwhitaker@bakerdonelson.com

*Counsel for USX Defendants*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of October, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ *Jessica P. Corley*
Jessica P. Corley (*pro hac vice*)

Case 1:19-cv-00098-TRM-CHS   Document 122   Filed 10/30/20   Page 27 of 27
PageID #: 2435