# Exhibit 12

UNITED STATES DISTRICT COURT

EASTERN DIVISION OF TENNESSEE

CHATTANOOGA DIVISION

_____

LEWIS STEIN, Individually and    )

on Behalf of All Others          )

Similarly Situated,              )

        Plaintiff,              )

   vs.                           ) Case No.

U.S. XPRESS ENTERPRISES, INC.,   ) 1:19-cv-00098

et al.,                          )

       Defendants.            )

_____)

REMOTE VIDEOTAPED DEPOSITION OF BRYAN KEITH ROBBINS

Winterhaven, Florida

Wednesday, October 21, 2020

Volume I

Reported by:

CHRIS TE SELLE

CSR No. 10836

Job No. 4305302

PAGES 1 - 61

Page 1

And so I inquired about it to see what was going on, and one thing led to another, and here we are.

Q. Okay. And who are you suing in this case?

A. USX.

Q. Anyone else?

A. No.

Q. What are the claims that you've alleged in the case?

A. That the financial standings that the company was on were misrepresented prior to the IPO, and that the true nature and reason they did the IPO were not exactly explained clearly to everyone who bought in, and, afterwards, the company's financial standing went down instead of up, dramatically.

Q. And what do you contend is the true reason the company did the IPO?

MR. HOLLEMAN: Objection.

BY MS. CORLEY:

Q. You can answer.

A. In my own opinion in layman's terms, they needed money for something other than what they told the public.

Q. And do you know what, do you have an opinion about what they needed money for, other than

Veritext Legal Solutions
866 299-5127

what they told the public? 11:56:01

MR. HOLLEMAN: Objection.

THE WITNESS: No, not really.

BY MS. CORLEY:

Q. What is your current role in the case? 11:56:14

MR. HOLLEMAN: Objection.

THE WITNESS: As stated, plaintiff.

BY MS. CORLEY:

Q. And do you know if you've been appointed as lead plaintiff in the litigation? 11:56:31

A. I think so. I'd have to go back and look at all of the notes, the e-mails with the lawyer.

Q. Is your counsel currently seeking any change in your role for this litigation?

MR. HOLLEMAN: Objection. 11:56:49

THE WITNESS: None that I'm aware of.

BY MS. CORLEY:

Q. Okay. What is your understanding of what it means to be a class representative?

MR. HOLLEMAN: Objection. 11:57:06

THE WITNESS: Representative of a large body of people who were affected by the actions of another company.

BY MS. CORLEY:

Q. And what would your responsibilities be as 11:57:16

Page 16

THE WITNESS:  Yes.                                   11:59:46

BY MS. CORLEY:

Q.   Do you know if you reviewed the amended complaint before it was filed?

A.   No.                                             11:59:58

Q.   Did you authorize the amended complaint to be filed?

A.   Yes, I believe so.

Q.   So, when you reviewed the amended complaint some point in this year, did you have any      12:00:15 questions about it?

MR. HOLLEMAN:  Objection.

THE WITNESS:  No, I don't recall.

BY MS. CORLEY:

Q.   Do you recall whether you provided any      12:00:28 feedback on the amended complaint?

A.   No, I don't believe I did.

Q.   And without revealing any discussions with your counsel, have you discussed the amended complaint with anyone?                                  12:00:45

A.   No.

Q.   Do you know whether you have any obligation to determine that the allegations in the complaint were accurate before it was filed?

MR. HOLLEMAN:  Could you restate the question,      12:01:07

Page 19

A. I'm not sure I understand the question. 12:02:34

Q. Have you reviewed anything, any documents, any court orders, anything issued by the court?

A. Just the ones that have been provided to me by my attorney, I guess, maybe the original 12:02:47 finding, and then their response to the appeal. That's about it, that I can recall.

Q. Do you know what court this case is pending in?

A. Federal court in Chattanooga. 12:03:06

Q. And what relief are you seeking in this litigation?

MR. HOLLEMAN: Objection.

THE WITNESS: I, basically, want my money back.

BY MS. CORLEY: 12:03:27

Q. Break that down for me. What money?

MR. HOLLEMAN: Objection.

THE WITNESS: I would like all the money that I invested in them in good faith. I want that back, at least. 12:03:53

BY MS. CORLEY:

Q. Okay. Have you filed any lawsuits against U.S. Xpress in any other court?

A. No.

Q. All right. I'm going to introduce a 12:04:23

Page 21

Case 1:19-cv-00098-TRM-CHS    Document 122-12    Filed 10/30/20    Page 6 of 12
PageID #: 2583

right with you, Mr. Robbins.                        12:37:34

THE WITNESS:  I'm okay.

MS. CORLEY:  That's fine.

BY MS. CORLEY:

Q.   Okay, I'm going to introduce another        12:37:43
exhibit.  Mr. Robbins, I'm showing you what's been
previously marked as Exhibit 1.

Do you see the document?

A.   Yes.

Q.   Have you seen this document before?          12:38:29

A.   I think so.

Q.   Do you recall when you saw it?

A.   No, I do not.

Q.   Do you know if you saw this document prior
to June 15, 2018, when you made your purchases?    12:38:52

A.   No.  No, I did not.

Q.   Do you contend that Exhibit 1 was false or
misleading in any respect at the time it was issued
on June 11, 2018?

MR. HOLLEMAN:  Objection.                        12:39:16

THE WITNESS:  Yeah, I couldn't answer that, not
having studied that document, certainly not prior to
that date.

BY MS. CORLEY:

Q.   So, you don't know one way or another        12:39:31

Page 37

Case 1:19-cv-00098-TRM-CHS    Document 122-12    Filed 10/30/20    Page 7 of 12
PageID #: 2584

whether Exhibit 1 contains any false or misleading 12:39:33
statements?

MR. HOLLEMAN: Objection.

THE WITNESS: No, yeah, I don't know. I'm not an expert on that, like I said. 12:39:41

BY MS. CORLEY:

Q. Do you know how many times you've read this document?

A. No, I couldn't answer that.

Q. Do you know if you read it cover to cover? 12:39:58 It's a pretty long document.

Did you read the whole thing?

A. I think it would be safe to say, for over 300 pages, no.

Q. Do you recall the -- 12:40:09

A. Yeah --

Q. Go ahead. Sorry.

A. I was just going to say, again, I'm not an expert.

MS. BUGNI: Jessica got disconnected, so, if we 12:40:57 could go off the record, please.

THE VIDEOGRAPHER: Let's go off the record at 12:41.

(Recess: 12:41 p.m. to 12:54 p.m.)

THE VIDEOGRAPHER: We're back on the record. 12:54:29

Page 38

Case 1:19-cv-00098-TRM-CHS    Document 122-12    Filed 10/30/20    Page 8 of 12
PageID #: 2585

The time is 12:54 p.m.                                    12:54:30

          MS. CORLEY:  My apologies for the
disconnection, Mr. Robbins.

          May I ask the court reporter to read back the
last question and answer, because I believe I missed   12:54:40
the answer.

               (The requested portion was read.)

BY MS. CORLEY:

     Q.   Do you recall when the last time was that
you read this document, Exhibit 1?                      12:55:16

     A.   No, I don't.

          MR. HOLLEMAN:  Objection.

BY MS. CORLEY:

     Q.   Are you aware, sir, that the amended
complaint filed in this action alleges that this       12:55:28
document, Exhibit 1, contains false or misleading
statements?  Are you aware of that?

     A.   Yeah, I believe I remember reading
something about that in the document, yes.

     Q.   As you sit here today, can you identify      12:55:42
any false or misleading statement in Exhibit 1?

          MR. HOLLEMAN:  Objection.

          THE WITNESS:  No, I'm not an expert, and I'm
not an expert on that document, for sure.

BY MS. CORLEY:                                          12:55:57

                                              Page  39

THE WITNESS:  Periodic, you know, communications with them via e-mail, and, every once in a while, a phone call; more so recently, as we've been preparing, you know, for this, to coordinate schedules, and things like that, than before.

BY MS. CORLEY:

Q.  Have you ever met any of your lawyers in-person?

A.  No.  This is the first time I've seen Scott in live, virtual live, so --

Q.  Have you communicated with anyone other than your lawyers about this case?

A.  No.

Q.  Who is Deirdre Terry?

A.  Who is who?

Q.  Deirdre Terry.  Do you know who she is?

A.  No, I don't recall that name, I'm not familiar.

Q.  Do you know who John Terry is?

A.  He may be on the, one of the other plaintiffs on our case.  I think I've seen his name on the documents.

Q.  Do you know who Charles Clowdis is?

A.  He's one of the other plaintiffs on the case.

Page 43

Q. Have you ever spoken with any of those three, Deirdre Terry, John Terry, or Charles Clowdis?

A. I've never spoken with them personally. The only time that I've ever heard them is, we had a conference call with the lawyers so they could explain the process and the procedure to us, a little while back. That was about it.

Q. Was there anyone else on that phone call other than you, Deirdre Terry, John Terry, Charles Clowdis, and the lawyers?

A. Not that I'm aware of.

Q. Do you know how you came to be a named plaintiff in these cases, in this case with these other individuals?

MR. HOLLEMAN: Objection.

THE WITNESS: No, not really.

BY MS. CORLEY:

Q. Do you know how you and the other plaintiffs will go about making decisions for the litigation?

A. Wait and discuss with our lawyers on that on how to go about that.

Q. What if you and the other plaintiffs don't agree on the appropriate course of conduct for the

01:01:32

01:01:43

01:02:01

01:02:25

01:02:34

01:02:55

Page 44

case?    01:02:58

MR. HOLLEMAN:  Objection.

THE WITNESS:  I don't know the procedure in that case.

BY MS. CORLEY:    01:03:08

Q.    Do you know someone named Darren Robbins?

A.    No.

Q.    How about Robert Robbins?

A.    No.

Q.    Do you know anyone named Brian Robbins,    01:03:23 spelled B R I A N?

A.    No.

Q.    Not related to any of those individuals?

A.    No.  We spell Bryan in my family with a Y. So, I know three other Bryan Robbinses; my dad, my    01:03:36 son, and my grandson.

Q.    All with a Y.

A.    Yeah.

Q.    Do you know how your counsel is being compensated for work in this matter?    01:03:53

MR. HOLLEMAN:  Objection.

THE WITNESS:  My understanding is that any award that may come from the case, they would get paid through that process.

BY MS. CORLEY:    01:04:09

Page 45

Case 1:19-cv-00098-TRM-CHS    Document 122-12    Filed 10/30/20    Page 12 of 12
PageID #: 2589