UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

| | | |
|---|---|---|
| LEWIS STEIN, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:19-cv-00098-TRM-CHS |
| Plaintiffs, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | Judge Travis R. McDonough<br>Magistrate Judge Christopher H. Steger |
| U.S. XPRESS ENTERPRISES, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT..................................................................................................................1

    A. Defendants' Speculation Over Class Members' Knowledge Cannot Defeat Class Certification or Improperly Limit the Class Definition ..................................1

        1. Defendants' "Knowledge" Defense Does Not Defeat Predominance..........................................................................................2

        2. The Effect of the August 2, 2018 Statements Is a Factual Dispute that Is Inappropriate to Resolve at Class Certification ...............................3

        3. Defendants' Own Case Law Rejects an August 2, 2018 Cutoff..................4

        4. USX's August 2, 2018 Statements Do Not Constitute Sufficient Evidence of Differing Knowledge Among Investors .................................4

    B. Plaintiffs Are More than Adequate to Serve as Class Representatives ...................7

        1. Terry Has and Will Continue to Adequately Represent the Class...............8

        2. Charles Clowdis and Bryan Robbins Have and Will Continue to Adequately Represent the Class..................................................................12

III. CONCLUSION.............................................................................................................15

4811-5889-1732.v1

# TABLE OF AUTHORITIES

<strong>Page</strong>

**CASES**

*Almendares v. Palmer*,
222 F.R.D. 324 (N.D. Ohio 2004) ...................................................................................7

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................................................3

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007) ..........................................................................................7

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) .............................................................................14, 15

*Bridging Cmtys. v. Top Flite Fin. Inc.*,
843 F.3d 1119 (6th Cir. 2016) .....................................................................................2, 6

*Burges v. Bancorpsouth, Inc.*,
2017 WL 2772122 (M.D. Tenn. June 26, 2017).............................................................15

*Burke v. Ruttenberg*,
102 F. Supp. 2d 1280 (N.D. Ala. 2000) .........................................................................11

*Cosby v. KPMG, LLP*,
2020 WL 3548379 (E.D. Tenn. June 29, 2020)............................................................2, 9

*Dougherty v. Esperion Therapeutics*,
2020 WL 6793326 (E.D. Mich. Nov. 19, 2020) .............................................................15

*Gaynor v. Miller*,
2018 WL 3751606 (E.D. Tenn. Aug. 6, 2018) ...........................................................2, 4, 6

*Griffin v. GK Intelligent Sys.*,
196 F.R.D. 298 (S.D. Tex. 2000)....................................................................................13

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019).......................................................................3

*Hansen v. Ferrellgas Partners, L.P.*,
2017 WL 281742 (S.D.N.Y. Jan 19, 2017) ......................................................................9

*In re Acclaim Ent., Inc. Sec. Litig.*,
2006 WL 8441288 (E.D.N.Y. Sept. 25, 2006) .................................................................3

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) .....................................................................................3

4811-5889-1732.v1

*In re Constar Int'l, Inc. Sec. Litig.*,
585 F.3d 774 (3d. Cir. 2009) ................................................................................................... 13

*In re Foundry Resins Antitrust Litig.*,
242 F.R.D. 393 (S.D. Ohio 2007) ........................................................................................... 12

*In re HCA Holdings, Inc.*,
2015 WL 10575861 (6th Cir. Feb. 26, 2015) ........................................................................... 2

*In re IndyMac Mortg.-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ............................................................................................. 3

*In re Interpublic Sec. Litig.*,
2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003) ........................................................................... 3

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014) ....................................................................................... 4, 13

*In re Nortel Networks Corp. ERISA Litig.*,
2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) ........................................................................ 7

*In re Silver Wheaton Corp. Sec. Litig.*,
2017 WL 2039171 (C.D. Cal. May 11, 2017) ........................................................... 9, 11, 12, 13

*In re SLM Corp. Sec. Litig.*,
2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ............................................................................. 9

*In re Smart Techs., Inc. S'holder Litig.*,
295 F.R.D. 50 (S.D.N.Y. 2013) ............................................................................................... 4

*In re Sonus Networks, Inc. Sec. Litig.*,
229 F.R.D. 339 (D. Mass. 2005) ............................................................................................ 11

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) ............................................................................................. 4

*In re Tivity Health, Inc.*,
2020 WL 4218743 (6th Cir. July 23, 2020) .............................................................................. 6

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
2017 WL 2062985 (S.D.N.Y. May 15, 2017) ........................................................................... 3

*Kendrick v. Standard Fire Ins. Co.*,
2010 WL 11488487 (E.D. Ky. Oct. 1, 2010) ........................................................................... 14

4811-5889-1732.v1

*Li Hong Cheng v. Can. Goose Holdings Inc.*,
2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ...........................................................11

*Micholle v. Opthtotech Corp.*,
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ..........................................................11

*Niederklein v. PCS Edventures!.com, Inc.*,
2011 WL 759553 (D. Idaho Feb. 24, 2011)................................................................9

*Penn, LLC v. Prosper Bus. Dev. Corp.*,
2011 WL 2118072 (S.D. Ohio May 27, 2011) ..........................................................7

*Rao v. Quorum Health Corp.*,
221 F. Supp. 3d 987 (M.D. Tenn. 2016)..................................................................12

*Rocco v. Nam Tai Elecs., Inc.*,
245 F.R.D. 131 (S.D.N.Y 2007) (Opp. ).............................................................8, 9

*Rolex Emps. Ret. Tr. v. Mentor Graphics Corp.*,
136 F.R.D. 658 (D. Or. 1991) ................................................................................13

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009) ...........................................................................15

*S. Ferry LP #2 v. Killinger*,
271 F.R.D. 653 (W.D. Wash. 2011) ........................................................................12

*Savino v. Comput. Credit, Inc.*,
164 F.3d 81 (2d Cir. 1998).......................................................................................11

*Stanich v. Travelers Indem. Co.*,
259 F.R.D. 294 (N.D. Ohio 2009) .......................................................................7, 15

*Sudunagunta v. NantKwest, Inc.*,
2018 WL 3917865 (C.D. Cal. Aug. 13, 2018)..........................................................6

*Taylor v. CSX Transp., Inc.*,
264 F.R.D. 281 (N.D. Ohio 2007) ...................................................................7, 12, 14

*Weiner v. Tivity Health, Inc.*,
334 F.R.D. 123 (M.D. Tenn. 2020) .......................................................................8, 9

*Yi Xiang v. Inovalon Holdings, Inc.*,
327 F.R.D. 510 (S.D.N.Y. 2018) ..............................................................................4

4811-5889-1732.v1

Case 1:19-cv-00098-TRM-CHS   Document 127   Filed 12/10/20   Page 5 of 24
PageID #: 2626

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77k ............................................................................................................................. 1
  §77k(a) ........................................................................................................................ 1
  §77z-1 ................................................................................................................... *passim*

Federal Rules of Civil Procedure
  Rule 23 ..................................................................................................................... 9, 13
  Rule 23(a) ....................................................................................................... 9, 13, 14, 15
  Rule 23(a)(4) ........................................................................................................... 12, 15
  Rule 23(b)(3) ............................................................................................................. 6, 15

4811-5889-1732.v1

## I. INTRODUCTION[1]

Defendants' speculation concerning investors' knowledge following August 2, 2018 is a half-baked affirmative defense that fails to defeat predominance (or typicality), inappropriate to resolve at class certification, and undercut by their own authorities. Further, Defendants' attacks on Plaintiffs' adequacy to serve as class representatives, which rest entirely on cherry-picked snippets of testimony, are belied by Plaintiffs' sworn declarations and deposition transcripts demonstrating their clear willingness and ability to vigorously prosecute this action on behalf of other injured USX investors through qualified counsel. The Court should grant Plaintiffs' motion.

## II. ARGUMENT

### A. Defendants' Speculation Over Class Members' Knowledge Cannot Defeat Class Certification or Improperly Limit the Class Definition

Section 11 provides an affirmative defense whereby a defendant can try to establish that, at the time of the purchase of a security, an investor knew of the alleged untruth or omission. *See* 15 U.S.C. §77k(a). On the basis of this "investor knowledge" defense, Defendants now assert that a USX press release and earnings call on August 2, 2018 cured the alleged misstatements, and must have given purchasers after this date actual knowledge of the "untruth or omission." To that end, Defendants ask the Court, at minimum, to limit the Class to purchasers before August 2, 2018, or otherwise deny certification altogether. Opp. at 21.[2]

---

[1] All terms not otherwise defined herein have the same meaning as set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, and to Appoint Class Representatives and Class Counsel (ECF No. 105) ("Mot."). All "¶_" references are to Lead Plaintiff's Complaint for Violation of the Federal Securities Laws (ECF No 57) ("Complaint"). All "Opp." references are to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and exhibits thereto (ECF No. 122).

[2] Defendants improperly claim there are no temporal limitations to the Class. In fact, the proposed Class is defined to include only those "who were damaged" (Mot. at 1), and Section 11 damages are statutorily calculated as the difference between the amount paid at the time of the IPO on June 14, 2018 and (i) the price when a shareholder sold prior to the suit or (ii) the value when the suit was brought. 15 U.S.C. §77k. As a result, the proposed Class definition is indeed limited in time.

- 1 -

Defendants' contentions should be rejected.  ***First***, the Sixth Circuit has instructed that an affirmative defense, including an investor's knowledge, cannot alone defeat predominance.  ***Second***, Defendants' contentions concerning any curative effect of the August 2, 2018 statements cannot be properly resolved at class certification.  ***Third***, Defendants' own authorities militate against imposing an unpled corrective disclosure date.  ***Fourth***, the Company's August 2, 2018 "disclosures" cannot fairly be interpreted as informing investors of the true state of affairs at USX concerning driver shortages and OTR cannibalization.

### 1. Defendants' "Knowledge" Defense Does Not Defeat Predominance

""""The fact that a defense may arise and may affect different class members differently ***does not*** compel a finding that individual issues predominate over common ones.""" *In re HCA Holdings, Inc.*, 2015 WL 10575861, at \*1-\*2 (6th Cir. Feb. 26, 2015)[3] (district court did not abuse its discretion in certifying class notwithstanding defendants' argument that "investor knowledge" defeated predominance); *Bridging Cmtys. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) ("Our precedent is clear that a possible defense, standing alone, does not automatically defeat predominance."); *accord Cosby v. KPMG, LLP*, 2020 WL 3548379, at \*29 (E.D. Tenn. June 29, 2020).

As an initial matter, Defendants offer no evidence whatsoever that any investor that purchased USX stock after August 2, 2018 had knowledge that differed from purchasers before that date.  For example, Defendants have not submitted any deposition testimony of Plaintiffs showing differing or actual knowledge.  *See Gaynor v. Miller*, 2018 WL 3751606, at \*16 (E.D. Tenn. Aug. 6, 2018) (predominance undefeated despite individual plaintiff's communications with issuer).

---

[3] All citations and footnotes are omitted and emphasis is added unless otherwise indicated.

Moreover, even if the August 2, 2018 statements had provided knowledge to investors, that would be a common inquiry to the entire class that predominates over individualized issues. *See id.*, at \*15 ("With respect to the publicly available news articles, the Court finds this insufficient to show that certain class members had differing levels of knowledge regarding the alleged misleading statements or omissions."); *accord In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 239 (S.D.N.Y. 2012).

### 2. The Effect of the August 2, 2018 Statements Is a Factual Dispute that Is Inappropriate to Resolve at Class Certification

Whether a disclosure is curative of an alleged misstatement is a question of fact that courts routinely decline to resolve at class certification even in cases that rely on market efficiency. *See, e.g.*, *Hall v. Johnson & Johnson*, 2019 WL 7207491, at \*29 (D.N.J. Dec. 27, 2019) ("At this juncture, the Court finds that there is sufficient doubt as to whether the true extent of the Company's alleged fraudulent scheme was revealed prior to [plaintiff's proposed class period end date]."); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 291 (S.D.N.Y. 2008) (same); *In re Acclaim Ent., Inc. Sec. Litig.*, 2006 WL 8441288, at \*4 (E.D.N.Y. Sept. 25, 2006) (same); *In re Interpublic Sec. Litig.*, 2003 WL 22509414, at \*5 (S.D.N.Y. Nov. 6, 2003) (same). Here, just as in the cases above, the question of whether the Company's August 2018 press release and earnings call was curative of the IPO misstatements (and put USX investors on notice) cannot be resolved at this juncture.

Defendants' attempt to cut short the class period at class certification is further unwarranted as it is a backdoor "truth on the market" materiality argument (that the market had learned the truth earlier than plaintiffs' have alleged) – an analysis that the Supreme Court has instructed must wait until adjudication on the merits. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at \*7 (S.D.N.Y. May 15, 2017) ("Here, Defendants' argument [for a shorter class period] is essentially the same as its 'truth-on-the-market' theory, which the Supreme Court counsels is an issue for summary judgment or trial.") (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S.

- 3 -

455, 481-82 (2013)).  In sum, Defendants' attacks on predominance and typicality are in fact merits-based arguments concerning liability that cannot (and should not) be adjudicated at class certification.

### 3.    Defendants' Own Case Law Rejects an August 2, 2018 Cutoff

Defendants' own case law demonstrates why their opposition to class certification should be rejected.  In every one of their Section 11 cases where a cutoff date was imposed, the courts did so *based solely on the fact that such dates were alleged as disclosures in the operative complaint*.  *See In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 58 (S.D.N.Y. 2013) (complaint alleged corrective disclosure at issue and did not dispute actual knowledge after that date); *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521-22 (S.D.N.Y. 2018) (complaint alleged a press release disclosed "the negative impact" of tax reforms on the Company); *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019) (complaint alleged the 10-Q was a disclosure and revealed the previously omitted and misstated information); *see also In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 153-54 (N.D. Tex. 2014) (not only did complaint allege revelations on certain dates, defendants submitted an unrefuted expert report to show "'individual knowledge inquiries might be necessary'").  In contrast, the Complaint alleges no corrective disclosure on August 2, 2018, and in fact alleges that Defendants ***misled*** investors on that very date.  ¶¶126-135.  Defendants' primary authorities therefore support Plaintiffs' Class definition, not Defendants'.

### 4.    USX's August 2, 2018 Statements Do Not Constitute Sufficient Evidence of Differing Knowledge Among Investors

"In order to defeat class certification based on investor knowledge, 'defendants must provide evidence that certain class members had differing levels of knowledge regarding the misleading nature of the statements or omissions when they invested sufficient to outweigh common issues.'" *Gaynor*, 2018 WL 3751606, at *15.  "Courts have explained that defendants 'must submit evidence showing the existence of individual investor knowledge sufficient to preclude a finding by the Court

- 4 -

that "common liability issues predominate over individual knowledge issues."'" *Id.* Defendants' reliance on USX's August 2, 2018 press release and earnings call as the sole basis for their investor knowledge defense (for those who purchased USX common stock after this date) entirely fails to meet this legal standard.

The August 2, 2018 statements in no way constitute a "corrective disclosure." ***First***, this Court found that misleading risk disclosures made in the Offering Documents continued to be false even as of August 9, 2018 – seven days ***after*** Defendants' claimed corrective disclosure – when the Company reaffirmed those statements in its Form 10-Q. ECF No. 91 at 61-62. As of at least August 9, 2018, the Court found that the Company still maintained that it could continue to employ enough drivers to meet demand without harming its growth and profitability. *Id*. at 38, 61-62. Nor is the Company's mere reference to shifting OTR drivers, ***couched with positive statements to reassure investors***, a meaningful disclosure regarding the magnitude of the impact on USX of its cannibalization of OTR drivers. For example, Defendants represented that the Company's focus on driver centric initiatives "allowed [the Company] to offset the difficult conditions . . . through [an] 11% reduction in our driver turnover percentage." Opp., Ex. 3 at 4; ¶127.

***Second***, Defendants pick a single statement from the August 2, 2018 conference call that the Company was "'seeing less and less qualified, experienced drivers in the market. And so, it's leading to a little bit smaller numbers . . . for the second quarter.'" Opp. at 8. But Defendant Fuller went on to state that although "[t]here have been some small offsets, ***but I would say still, net-net we're better off[,]***" which a Wells Fargo securities analyst perceived as "a good result." Opp., Ex. 3 at 12. The Company thus did not convey to investors the negative impact of its OTR shifting in the August 2, 2018 statements.

***Third***, Defendants similarly misrepresent analyst comments. The Bank of America Merrill Lynch analyst reported that the Company was moving truck capacity to dedicated, but also that

4811-5889-1732.v1

"CEO Eric Fuller noted its turnaround continues to improve profitability. . . ." Opp., Ex. 4 at 12. Likewise, while the JP Morgan analyst reported that USX's OTR supported dedicated during the quarter, the report did not perceive this as a negative, noting that OTR "managed to boost utilization and drive a strong margin." Opp., Ex. 5 at 12. And the Stephens analyst "believe[d] management [was] actively addressing these issues" related to the Dedicated contracts network disruptions and, in fact, believed its declined stock value was "unwarranted as the company continues to execute on . . . operational improvements." Opp., Ex. 6 at 12.

Defendants' speculation as to the actual knowledge of Lead Plaintiff Terry (or any other class member after August 2, 2018) does not come close to "'competent evidence that the named Plaintiffs actually knew' the truth behind what was allegedly misrepresented or omitted in the Registration Statement." *Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at \*6 (C.D. Cal. Aug. 13, 2018); *Gaynor*, 2018 WL 3751606, at \*15; *see also Bridging Cmtys.*, 843 F.3d at 1126 ("We hold that the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3). Holding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases 'wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.'").[4]

"Speculation alone does not defeat predominance," *In re Tivity Health, Inc.*, 2020 WL 4218743, at \*1 (6th Cir. July 23, 2020), and Defendants' speculation about what investors may or may not have known following August 2, 2018 does not defeat or curtail class certification here.

---

[4] Even assuming that certain investors had interpreted the August 2, 2018 statements as curative disclosures, which Defendants have not established, that would not defeat class certification here. *See Bridging Cmtys.*, 843 F.3d at 1126 ("Even where defendants point to some evidence that a defense will indeed apply to some class members, which is more than Top Flite did here, courts routinely grant certification because 'Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.'").

### B.  Plaintiffs Are More than Adequate to Serve as Class Representatives

"'Class representatives are adequate when it appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel, which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members.'"  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562-63 (6th Cir. 2007).  "When considering the named Plaintiffs' involvement in the case, 'the threshold for establishing adequacy is quite low.'"  *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *12 (M.D. Tenn. Sept. 2, 2009); *see also Stanich v. Travelers Indem. Co*., 259 F.R.D. 294, 316 (N.D. Ohio 2009) ("burden of showing adequacy" is "not high"); *Taylor v. CSX Transp., Inc.,* 264 F.R.D. 281, 291 (N.D. Ohio 2007) (plaintiff with "sufficient general knowledge, [and a] willingness and ability to participate in the case" is sufficient to be a class representative).

Plaintiffs in this Action have consistently demonstrated their willingness to represent absent Class members, including by: (1) retaining highly qualified counsel (Mot., §III.D); (2) overseeing and monitoring the status of the litigation by staying in contact with counsel (*id*. at 11); (3) working with counsel in responding to Defendants' document request and interrogatories (*see id*.); and (4) sitting for depositions.

Despite Plaintiffs' clear showing of adequacy, Defendants attempt to transform selected quotations divorced from context into a challenge to Plaintiffs' adequacy.[5]  Defendants improperly attack Ms. Terry's character, and incorrectly claim Messrs. Clowdis and Robbins "have virtually no knowledge about this case."  Opp. at 17, 19.  But Defendants' do nothing to contradict the fact that

---

[5]  "Arguments [from defendants] challenging the adequacy of class representatives should be viewed skeptically."  *Almendares v. Palmer*, 222 F.R.D. 324, 333 (N.D. Ohio 2004); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, 2011 WL 2118072, at *5 (S.D. Ohio May 27, 2011) ("'In reviewing [the] defendants' arguments, this Court "must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation."'").

- 7 -

Terry, Clowdis, and Robbins have each demonstrated through deposition testimony and signed declarations their commitment and ability to vigorously prosecute this litigation on behalf of the proposed Class, as well as their knowledge of, and involvement in, the prosecution of the litigation.

### 1. Terry Has and Will Continue to Adequately Represent the Class

During her deposition, Ms. Terry demonstrated knowledge about the facts of the case; her involvement to date, including her decision to seek appointment as lead plaintiff[6] and oversight of the litigation; and her willingness to see the action through trial if necessary. *See, e.g.*, Ex. A at 12:25-13:5 (describing "core issue" alleged to have been misleading in the Offering Materials); *id.* at 13:13-17 (describing duties as lead plaintiff and as a representative of the class); *id.* at 59:14-19 (describing willingness to carry out any duties related to case between deposition and trial).[7]

Unable to mount any credible challenge to Ms. Terry on the basis of her knowledge, Defendants: (1) manufacture a typicality argument on the basis of an (incorrect) premise related to the timing of her USX purchases; and (2) cast aspersions on Ms. Terry's duly amended PSLRA certification. These transparent attempts to discredit Ms. Terry are misguided.

*First*, as discussed above, the August 2, 2018 statements do not cut short the Class Period. *See supra* §II.A. Yet Defendants double down on this argument, claiming that, because Ms. Terry's purchases came after that date, she is subject to unique defenses rendering her claims atypical. *See* Opp. at 15. In support, Defendants rely on *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131 (S.D.N.Y 2007) (Opp. at 15), an out-of-circuit case that has been specifically *rejected* by other courts in this

---

[6] Defendants offer a passing reference to the fact that neither Messrs. Clowdis or Robbins sought appointment in the action and "merely joined Terry when the Complaint was filed." Opp. at 15. To the extent Defendants are asserting that Clowdis' and Robbins' involvement is somehow improper, their argument is misplaced where it is well-established that additional plaintiffs may join in a lead plaintiff's litigation of a securities action at either the pleading or class certification stages.

[7] All "Ex." references are to the Declaration of Christopher M. Wood in Support of Reply in Further Support of Plaintiffs' Motion for Class Certification, submitted herewith.

- 8 -

Circuit because it "is against 'the weight of authority,'" "'a deviat[ion] from th[e] general rule,'" and "'not generally accepted.'" *Weiner v. Tivity Health, Inc.,* 334 F.R.D. 123, 129-30 (M.D. Tenn. 2020); *Cosby*, 2020 WL 3548379, at *9 (citing *Weiner*, rejecting *Nam Tai,* and finding post-disclosure purchases did not defeat typicality).

"Indeed, 'courts routinely certify a class with representatives who purchased stock during and after a class period.'" *Weiner*, 334 F.R.D. at 130. "At a minimum, a proposed class representative 'is [not] at as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company's stock.'" *Id.*

***Second***, Defendants' attack on Ms. Terry's character is based on nothing more than a false narrative driven by speculation, mischaracterizing the events of Ms. Terry's PSLRA certification. Defendants take issue with (1) the decision to use a previously signed (but factually correct) PSLRA Certification with an updated Schedule of Transactions; and (2) the use of the phrase "my transactions" in that certification. In the face of substantial evidence showing Ms. Terry's adequacy to serve as a class representative, these arguments lack merit and should be rejected by the Court.

"Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012); *see, e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *10 (C.D. Cal. May 11, 2017) ("plaintiffs' errors in their trade certifications" were "not the types of errors that would normally preclude a finding of adequacy to represent the Class"); *Hansen v. Ferrellgas Partners, L.P.,* 2017 WL 281742, at *5 (S.D.N.Y. Jan 19, 2017) (movant's "correction of his certification [fell] well short of 'proof'" of inadequacy); *Niederklein v. PCS Edventures!.com, Inc.,* 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011); ("minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement").

- 9 -

Defendants have provided no evidence of Ms. Terry's bad faith or intent to deceive, because there is none. Instead, Defendants' argument is that Ms. Terry is inadequate for complying with her duty to provide full and accurate information in the PSLRA Certification accompanying her Motion for Appointment as Class Representative. Opp. at 16. But, as Ms. Terry made clear in her Supplemental Declaration in Further Support of Plaintiff's Motion for Class Certification (ECF No. 121-1), transactions post-dating the March 13, 2019 execution of the PSLRA Certification were provided to her counsel in advance of the filing of her lead plaintiff motion to ensure that her schedule of transactions was up-to-date (*see id.*, ¶5) – evidencing a strong commitment to litigating this action within the guidelines set forth in the PSLRA and a desire to be candid and complete with the Court. Ms. Terry then authorized counsel to use the previously executed PSLRA Certification along with an updated schedule (*id.*, ¶6). No other movant took issue with Ms. Terry's certification, and it is only Defendants, seeking to eliminate any class claims against them, who believe it is a problem.

Regarding the transactions listed on the PSLRA certification, Defendants claim that "[i]t is undisputed that, at the time her certification was signed **and filed with the Court**, the USX transactions reflected on her certification were not all hers." Opp. at 17. This is factually incorrect, and Plaintiffs concede no such thing. As Defendants are well aware, the litigation rights stemming from each of the transactions listed on Ms. Terry's PSLRA certification were assigned to Ms. Terry on May 3, 2019 – one week **prior** to the filing of Ms. Terry's PSLRA certification with the Court. *Compare* Opp., Ex. 10 *with* ECF No. 22.

Even still, the decision that Ms. Terry would represent her family's collective interest as the named Plaintiff in this Action was discussed and decided well before, with Ms. Terry testifying that those conversations with her father occurred "[b]ack in . . . 2018," around the same time that she discussed it with her entire family. Ex. A at 67:25-68:10; *id.* at 67:12-16 ("Q. At the time you

- 10 -

4811-5889-1732.v1

Case 1:19-cv-00098-TRM-CHS    Document 127    Filed 12/10/20    Page 16 of 24
PageID #: 2637

agreed to be part of this lawsuit, did you have an understanding that your family members had

agreed that you would represent them and their accounts in this case? A. Yeah, Yes."); *see also* Ex.

B at 48:11-14 ("A: I thought it would be better to have Deirdre do it on the basis of all the family

members. And I talked to her about it, and she thought about it and was agreeable to do it.").

Thus, Defendants' real argument is with the use of the phrase "my transaction(s)," to

describe transactions for which she had been assigned litigation rights. (Opp. at 16-17). The

testimony and documents produced to date each corroborate and validate that statement, showing

that it was facially true, both as of the date of Ms. Terry's execution in March and its filing in May,

where, at all times, Ms. Terry was acting on behalf of her family's interests.[8]

To be clear, no information related to the substance of the PSLRA certification was withheld

from Defendants, as Ms. Terry produced full trading history across each of the relevant accounts and

the written assignments, while also making her father available for deposition, showing that any

perceived error in her certification was done without any ulterior motive whatsoever. In any event,

---

[8] The cases Defendants offer in support of their position are inapposite, particularly where there is no "'admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Silver Wheaton*, 2017 WL 2039171, at \*10. In *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998), the court affirmed the denial of class certification because the proposed representative "offered differing accounts about the letters that form the very basis for his lawsuit," something that would "surely create serious concerns about his credibility at any trial." *Id*. In *Li Hong Cheng v. Can. Goose Holdings Inc.*, 2019 WL 6617981, at \*6 (S.D.N.Y. Dec. 5, 2019), the court noted in dicta (as the movant did not have the largest loss), and at the lead plaintiff stage, that the omission of information required by statute in a PSLRA certification militated against the movant's appointment. No such omission has occurred here, and the case is far afield from the instant facts. In *Micholle v. Opthtotech Corp.*, 2018 WL 1307285, at \*9 (S.D.N.Y. Mar. 13, 2018), the lead plaintiff was disqualified from consideration because "several" listed trades included incorrect information far exceeding minor clerical error. Any reliance on *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1337 (N.D. Ala. 2000) is plainly misplaced as, there, the court questioned whether the nearly three hundred individuals on whose behalf the motion for appointment was made were even aware that they were seeking such appointment. Finally, *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339 (D. Mass. 2005) has no bearing on this action, particularly where the class was decertified due to the absence of any class representatives following the withdrawal of the prior appointed representative (after it came to light that he had various undisclosed criminal convictions).

- 11 -

Ms. Terry filed the Amended Certification of Deirdre Terry Pursuant to the Federal Securities Laws (ECF No. 121-1) on October 28, 2020, even updating the schedule to include relevant USX transactions that post-dated her motion for appointment discovery related to which was provided to Defendants well in advance of her deposition.[9]

Ms. Terry's prompt correction of the PSLRA certification after it was brought to her attention (assuming *arguendo* the certification required correction) renders Defendants' argument moot, particularly where each of Defendants' raised "errors" were harmless. *See Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016) ("courts have allowed lead plaintiff movants to amend their certifications if issues arose"); *Silver Wheaton*, 2017 WL 2039171, at *10 ("[P]laintiffs have offered reasonable explanations for what amount to clerical errors in their prior certifications. Whatever the explanation for Brandow's errors, they appear to have been promptly corrected."); *S. Ferry LP #2 v. Killinger*, 271 F.R.D. 653, 660 (W.D. Wash. 2011) (rejecting attack on adequacy when errors in certification were corrected "as soon as they were brought to [plaintiff's] attention"). Ms. Terry is therefore more than adequate to serve as a class representative.

### 2. Charles Clowdis and Bryan Robbins Have and Will Continue to Adequately Represent the Class

Plaintiffs Charles Clowdis and Bryan Robbins have consistently demonstrated that they are adequate class representatives under Rule 23(a)(4). "Although it is true that a class representative must possess at least a minimal degree of knowledge regarding the case, it is not necessary that the class representative be so knowledgeable as to be able to assist counsel with the legal aspects in such a complex case." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 407 (S.D. Ohio 2007). Instead, a plaintiff with "sufficient general knowledge, [and a] willingness and ability to participate

---

[9] Defendants take umbrage with the Amended Certification and attempt to rehash their argument based on semantics. Opp. at 18-19. Again, the original PSLRA Certification was accurate, reflected all transactions in accounts Ms. Terry had authority to represent, and was subsequently expanded and clarified only in an effort to avoid this unnecessary and misplaced collateral attack, to no avail.

- 12 -

in the case" is an adequate class representative. *Taylor*, 264 F.R.D. at 291. Plaintiffs Clowdis and Robbins have more than met that standard here.

Defendants broadly claim that Clowdis and Robbins "do not possess even minimal knowledge about this case" and therefore "cannot be adequate class representatives." Opp. at 20.[10] In fact, during their depositions Clowdis and Robbins both demonstrated a good understanding of the facts and procedures of this litigation. Defendants initially point to both Clowdis' and Robbins' supposed inability to identify specific misstatements as a basis for being inadequate class representatives. Opp. at 19. Whether a plaintiff can identify a specific misstatement, however, is irrelevant as reliance is not an element of a Section 11 cause of action. *See In re Constar Int'l, Inc. Sec. Litig.,* 585 F.3d 774, 784-85 (3d. Cir. 2009).

As made clear from his testimony, Clowdis has been engaged in this litigation and seeks to obtain the best recovery possible for the proposed Class. In his deposition, Clowdis stated: (1) the remaining allegations were related to driver demand and the dedicated/OTR routes (Ex. C at 16:14-18; *id.* at 36:12-16); (2) he is in regular contact with his attorneys concerning the procedural posture of the case (*id.* at 40:15-16); (3) he is aware of the current status of the litigation (*id.* at 110:1-7); and (4) he is aware of his duties as a class representative (*id.* at 101:6-15; *id.* at 111:7-12). Faced with these myriad examples, Defendants grasp for any possible gap in knowledge, claiming Clowdis is

---

[10] Defendants' out-of-circuit cases all involved a lack of knowledge that is not present here. *See Griffin v. GK Intelligent Sys.*, 196 F.R.D. 298, 302 (S.D. Tex. 2000) (potential class representatives received no updates from counsel on the case, "[were] not aware of *any* of the substantive matters alleged" and were only interested in recovering their own investment); *Rolex Emps. Ret. Tr. v. Mentor Graphics Corp.,* 136 F.R.D. 658, 666 (D. Or. 1991) (plaintiff was "unfamiliar with the basic elements of the case" or "which allegations of the complaint pertain to which defendants"); *Kosmos Energy*, 299 F.R.D. at 146-47 (plaintiffs had no knowledge of whether the company's stock price dropped and did not know what could have caused the drop). In any event, *Kosmos* has been rightly criticized by other courts for erecting an unduly demanding Rule 23 standard. *See Silver Wheaton*, 2017 WL 2039171, at *8 ("While it is true that plaintiff must offer 'affirmative evidence' demonstrating that they satisfy the requirements of Rule 23(a), the evidentiary burden upon plaintiffs 'is low; a class representative will be deemed inadequate only if "'startlingly unfamiliar'" with the case.'").

- 13 -

unfit to serve as a class representative because he was unaware that the original allegations included allegations of "fraud" (Opp. at 19-20), a term that Clowdis admitted he did not know the legal definition of during his deposition. Ex. C at 110:11-13. Clowdis' understanding of the legal definition of "fraud," however, does not disqualify him, as class representatives "are not required to have a detailed and scholarly understanding of the case," *Taylor,* 264 F.R.D. at 291, and Mr. Clowdis readily admitted that he is not an attorney. Ex. C at 15:12.

Similarly, Robbins's testimony shows he is actively involved in, and properly informed of, the litigation. Robbins detailed: (1) the claims of the case (Ex. D at 15:10-15); (2) his communication with counsel keeping him up informed on the case (*id.* at 43:1-5); (3) his review of documents pertaining to the proceedings and rulings so far (*id.* at 18:6-9); and (4) his role to represent all members of the Class (*id.* at 58:22-59:1). As such, Messrs. Clowdis and Robbins clearly possess the knowledge to vigorously represent the class (and, importantly, they have done so to date through well-qualified counsel) and Plaintiffs' adequacy is thus established. *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 615 (S.D. Ohio 2003).

Lastly, Defendants claim Clowdis and Robbins are inadequate class representatives because they have "ceded control of this case to their counsel." Opp. at 19.[11] But, particularly in complex securities cases, "hav[ing] an expectation of looking to counsel for guidance and advice are not deficiencies rendering their service as representatives suspect, particularly when they and their

---

[11] Similar to their cases on lack of knowledge, Defendants cite to extreme examples of plaintiffs ceding control of the case to counsel. In *Welling v. Alexy*, the proposed class representative had been represented by the same attorney in thirteen other securities class actions. 155 F.R.D. 654, 658 (N.D. Cal. 1994). There, movant stated, "his only role in deciding to file the case" was to tell his attorney "he 'ha[d] a case for him.'" *Id.* at 659. After that call, movant "was unaware that his lawyers had filed an amended complaint, and expressed an intention to not supervise the amount of time spent by his attorneys in prosecuting the case." *Id.* Similarly, in *Eslava v. Gulf Tel. Co.,* the court found the proposed representatives "failed to demonstrate 'a basic understanding'" of the alleged lawsuit. 2007 WL 2298222, at *3 (S.D. Ala. Aug. 7, 2007). No such circumstances exist here.

4811-5889-1732.v1

claims have fulfilled the other Rule 23(a) considerations." *Kendrick v. Standard Fire Ins. Co.*, 2010 WL 11488487, at *15 (E.D. Ky. Oct. 1, 2010). An "understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet the adequacy requirement of Rule 23(a)(4)." *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at *6 (M.D. Tenn. June 26, 2017); *see also Bovee*, 216 F.R.D. at 615 (plaintiff adequate as he produced documents and information, monitored litigation, and gave testimony); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 450-51 (S.D. Ohio 2009) (same).

Plaintiffs have not "abdicated control of this lawsuit to [their] attorneys to an unreasonable or unusual degree." *Stanich*, 259 F.R.D. at 317-18. Instead, Plaintiffs' interactions with their attorneys to date "ha[ve] been typical of the usual attorney-client relationship – [they] ha[ve] participated in discovery, reviewed the . . . complaint, and talked to [their] counsel about the duties of a class representative." *Id.*; *see also Dougherty v. Esperion Therapeutics*, 2020 WL 6793326, at *8 (E.D. Mich. Nov. 19, 2020) (certifying class "despite the fact that [p]laintiffs could be more informed as to certain details of the litigation"). Defendants' effort to paint Terry, Clowdis, and Robbins as inadequate class representatives falls far short and all three should be appointed Class Representatives.

## III. CONCLUSION

Plaintiffs have more than satisfied their burden to demonstrate that each of Rule 23(a) and (b)(3)'s requirements have been met, and Defendants have failed to show otherwise. Class certification is warranted, and Plaintiffs' motion should be granted.

DATED: December 10, 2020

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977

s/ CHRISTOPHER M. WOOD
CHRISTOPHER M. WOOD

- 15 -

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
WILLOW E. RADCLIFFE (*pro hac vice*)
HADIYA K. DESHMUKH (*pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
KEVIN S. SCIARANI (*pro hac vice*)
DEBASHISH BAKSHI (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ksciarani@rgrdlaw.com
dbakshi@rgrdlaw.com

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS (*pro hac vice*)
SEBASTIANO TORNATORE (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: 203/363-7500
866/367-6510 (fax)
shopkins@zlk.com
stornatore@zlk.com

*Co-Lead Counsel for Lead Plaintiff*

- 16 -

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com

*Local Counsel*

BRAGAR EAGEL & SQUIRE, P.C.
W. SCOTT HOLLEMAN (*pro hac vice*)
MARION C. PASSMORE (*pro hac vice*)
810 Seventh Avenue, Suite 620
New York, NY  10019
Telephone:  646/860-9449
212/214-0506 (fax)
holleman@bespc.com
passmore@bespc.com

*Additional Counsel for Plaintiffs Charles Clowdis
and Bryan K. Robbins*

- 17 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 10, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e- mail addresses of the CM/ECF participants in this case.

s/ CHRISTOPHER M. WOOD
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
     & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 800/449-4900
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com