# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DIVISION OF TENNESSEE
CHATTANOOGA DIVISION

_____
                                )
                                )
LEWIS STEIN, Individually and   )
on Behalf of All Others         )
Similarly Situated,             )
                                )
            Plaintiff,           )
                                )
    vs.                          ) Case No.
                                ) 1:19-cv-00098
U.S. XPRESS ENTERPRISES, INC.,   )
et al.,                          )
                                )
            Defendants.          )
                                )
_____)

CONFIDENTIAL
REMOTE VIDEOTAPED DEPOSITION OF DEIRDRE TERRY
Oakland, California
Wednesday, October 14, 2020
Volume I

Reported by:
CHRIS TE SELLE
CSR No. 10836
Job No. 4287741

PAGES 1 - 71

Page 1

Case 1:19-cv-00098-TRM-CHS   Document 128-1   Filed 12/10/20   Page 2 of 87
PageID #: 2650

UNITED STATES DISTRICT COURT
EASTERN DIVISION OF TENNESSEE
CHATTANOOGA DIVISION

_____
                                   )
                                   )
LEWIS STEIN, Individually and      )
on Behalf of All Others            )
Similarly Situated,                )
                                   )
            Plaintiff,             )
                                   )
      vs.                          ) Case No.
                                   ) 1:19-cv-00098
U.S. XPRESS ENTERPRISES, INC.,     )
et al.,                            )
                                   )
            Defendants.            )
                                   )
_____)

        Confidential Videorecorded Deposition of
DEIRDRE TERRY, Volume I, Oakland, California, taken
remotely via videoconference, beginning at 9:32 a.m.
and ending at 11:05 a.m., on Wednesday, October 14,
2020, before Chris Te Selle, Certified Shorthand
Reporter No. 10836, present via videoconference.

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 3 of 87
PageID #: 2651

APPEARANCES (via remote conferencing):

For Plaintiff and the Witness:
LEVI & KORSINSKY LLP
BY:  SEBASTIAN TORNATORE, ESQ.
1111 Summer Street, Suite 401-403
Stamford, Connecticut 06901
(203) 992-4523
stornatore@zlk.com

LEVI & KORSINSKY LLP
BY:  SHANNON  HOPKINS, ESQ.
55 Broadway, 10th Floor
New York, New York 10006
(203) 992-4523
shopkins@zlk.com

ROBBINS GELLER RUDMAN & DOWD LLP
BY:  DEBASHISH BAKSHI, ESQ.
     WILLOW E. RADCLIFFE, ESQ.
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058
dbakshi@rgrdlaw.com
willowr@rgrdlaw.com

Page 3

Case 1:19-cv-00098-TRM-CHS     Document 128-1     Filed 12/10/20     Page 4 of 87
PageID #: 2652

APPEARANCES CONT'D (via remote conferencing):

For the Underwriter Defendants:

   O'MELVENY & MYERS LLP

   BY:  WILLIAM J. SUSHON, ESQ.

       REDWAN SALEH, ESQ.

   7 Times Square, Times Square Tower

   New York, NY 10036

   (212) 326-2000

   wsushon@omm.com

   rsaleh@omm.com

For the USX Defendants:
   KING & SPALDING LLP
   BY:  LISA R. BUGNI, ESQ.
      JESSICA PERRY CORLEY, ESQ.
      BRANDON R. KEEL, ESQ.
   1180 Peachtree Street, NE
   Atlanta, Georgia 30309
   (404) 572-4717
   lbugni@kslaw.com
   jpcorley@kslaw.com
   bkeel@kslaw.com

Also Present (via remote conferencing):
David West, videographer

Veritext Legal Solutions
866 299-5127

```
                        INDEX

WITNESS                EXAMINATION                    PAGE

DEIRDRE TERRY

 (present via videoconference)

Volume I

                        BY MS. BUGNI          8,   67

                        BY MR. SUSHON              63

                        BY MR. TORNATORE           67


          PRIOR MARKED EXHIBITS REFERENCED

EXHIBIT NUMBER                                  PAGE

Exhibit 7                                         18

Exhibit 8                                         24

Exhibit 9                                         25

Exhibit 14                                        30

Exhibit 15                                        26


            INSTRUCTION NOT TO ANSWER

                 PAGE LINE

                    18    4

                    40    8

                    49    9

                    51    6

                    52    7


                                        Page  5
```

Veritext Legal Solutions
866 299-5127

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 6 of 87
PageID #: 2654

Oakland, California, Wednesday, October 14, 2020

9:32 a.m.


THE VIDEOGRAPHER:  Good morning.  We are on the record.  The time is 9:32 a.m.  The date today is October 14, 2020.                                09:32:29

Please note the microphones are sensitive and may pick up whispering and private conversations.  Audio and video recording will continue to take place unless all parties agree to go off the record.    09:32:45

This is media unit 1 of the video-recorded deposition of Deirdre Terry, taken by counsel for defendant, in the matter of Lewis Stein, et al., versus U.S. Xpress Enterprises, Inc., et al., filed in United States District Court, Eastern District of    09:33:05
Tennessee, Chattanooga Division.  Case number is 1:19-cv-00098.

The deposition is being conducted using Remote Counsel technology, and all participants are attending remotely.                                  09:33:22

My name is David West.  I am the videographer.  The court reporter is Chris Te Selle.  We represent Veritext Legal Solutions.

I'm not related to any party in this action, nor am I financially interested in the outcome.    09:33:34

Page 6

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 7 of 87
PageID #: 2655

Counsel will now state their appearances and 09:33:37 affiliations for the record. If there are any objections to proceeding, please, state them at the time of your appearance, beginning with the noticing attorney. 09:33:45

MS. BUGNI: Lisa Bugni, with King & Spalding, for the U.S. Xpress defendants, and I am joined with Brandon Keel and Jessica Corley.

MR. SUSHON: This is Bill Sushon, from O'Melveny & Myers LLP, for the underwriter 09:34:01 defendants, and with us is, well, now, was my colleague, Redwan Saleh, who may join us later. Oh, there he is.

MR. TORNATORE: Good morning. This is Sebastiano Tornatore, with Levi & Korsinsky LLP, on 09:34:15 behalf of the plaintiff and deponent, Deirdre Terry. With me is Shannon Hopkins of Levi & Korsinsky and Willow Radcliffe and Debashish Bakshi of Robbins Geller, also on behalf of the deponent and plaintiff. 09:34:29

THE VIDEOGRAPHER: Okay, thank you. The court reporter may now swear the witness in, and we will continue.

//

// 09:34:34

Page 7

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 8 of 87
PageID #: 2656

DEIRDRE TERRY, 09:34:34
having stated to tell the truth under penalty of
perjury, was examined and testified as follows:

EXAMINATION
BY MS. BUGNI:

Q. Would you please state your full name for
the record.

A. Deirdre Terry.

Q. Ms. Terry, have you ever been deposed 09:34:51
before?

A. No, I have not.

Q. So, I'm going to go over some ground rules
for today. I'm going to be asking you a series of
questions. The court reporter can only take down 09:35:02
one person at a time, so I'd ask that you please let
me finish, and then answer, to make it a little
easier for the court reporter.

Does that make sense?

A. Yes. 09:35:13

Q. You must give verbal responses, because
the court reporter cannot take down a shake of the
head, and things of that nature.

Does that make sense?

A. Yes. 09:35:22

Page 8

Q. If I ask a question that you do not understand, please, ask me to rephrase, because, if you answer the question, I'm going to assume you understood what I meant, is that fair? 09:35:23

A. Yes. 09:35:34

Q. Are you represented by counsel today?

A. I am, yeah.

Q. And who is your counsel?

A. I believe Sebastian is here, and Shannon Hopkins is here, and Willow, also, was calling in. 09:35:45

Q. Your lawyer may object to a question that I have at some point, but, unless he instructs you not to answer, you will still need to answer the question.

Do you understand that? 09:36:01

A. Yes.

Q. Please, let me know if you need a break at any time. We can take one as long as there is not a question pending, okay?

A. Okay. 09:36:12

Q. Are you currently employed?

A. I'm not.

Q. Do you have an undergraduate degree?

A. I do, yes.

Q. From where? 09:36:23

Page 9

A.   From the University of Chicago.

Q.   And what year did you obtain that degree?

A.   In 1992.

Q.   And what was your major in?

A.   English.  Medieval English.

Q.   Do you have any graduate degrees?

A.   I don't.

Q.   If you could provide for me your employment history since college.

A.   I worked for American Lawyer Media.  My first job out of college was as editorial assistant there, and, eventually, I became the managing editor of the Law News Network, which was the, a legal news and community website.

I left there to start Street Mail, which was a dotcom startup that did local news, along with my former boss from American Lawyer Media, and, then, when that imploded, I went to Time Warner, and started as the managing editor of Money.com, which was their, Money Magazine's website, and eventually became the managing producer of CNN Money, which is, was CNN's financial news website, and also the managing producer of Fortune.com, which was Fortune Magazine's website.

And then I, in 2009, I retired and moved

Page 10

out to here, here to Oakland. 09:37:51

Q. Starting with Money.com, and then becoming the managing producer of, refresh my recollection, CNN's Money; what was the name of it?

A. Right. CNN Money.com. 09:38:11

Q. Did you have any, what was your, your skill set to be the managing producer of that?

A. I was an editor, basically, so, because it was a TV, a TV company, my title was producer, but, basically, I ran the news desk and edited, assigned 09:38:31 and edited stories for the website.

Q. Where do you currently live?

A. Oakland, California.

Q. And in your role as managing producer of Money.com, did you stay up-to-date on financial news 09:38:53 and other investment news?

A. Yes, I did.

Q. And what types of sources would you stay up-to-date on?

A. Well, we had a couple of terminals, 09:39:04 newswire terminals, so we were, kind of, constantly, as things were coming through. I also read, you know, The Wall Street Journal, you know, New York Observer, all the newspapers in the morning before, before work started. 09:39:19

Page 11

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 12 of 87
PageID #: 2660

Q. Who are you suing in this case? 09:39:26

A. We are suing USX, we're suing the five executives who signed off on their registration statement, and the underwriters of the IPO.

Q. And what are the claims alleged? 09:39:46

A. That they, that the IPO documents were missing some crucial information and were misleading.

Q. And on what basis are they alleged to be misleading? 09:40:05

MR. TORNATORE: Objection to form.

You can answer.

THE WITNESS: I think you, you need to rephrase the question.

BY MS. BUGNI: 09:40:14

Q. Sure. So, you testified that the claim in the case is related to statements in the IPO registration statement being misleading. If you could please explain to me what in the registration statement was misleading. 09:40:26

A. Oh.

MR. TORNATORE: Objection to the extent it calls for a legal conclusion. You can answer, if you can, Deirdre.

THE WITNESS: Okay. You know, the core issue 09:40:35

Page 12

that remains there has to do with the availability 09:40:40
of drivers, USX's ability to attract and retain
drivers, given its business offices was, they had,
they didn't have very much ability to attract and
retain drivers, and that was not clear in their -- 09:41:02
    (Witness volume dropped, reporter clarification.)
        A.    -- in their, in their IPO filings.
        Q.    Ms. Terry, what is your current role in
the case?
        A.    I'm the lead plaintiff. 09:41:29
        Q.    What is your understanding of what it
means to be lead plaintiff?
        A.    I represent all the other members of the
class who have a similar loss as me, for similar
reasons, and my role is to kind of oversee the 09:41:46
litigation, to make sure, maximize the return for
all those, all those plaintiffs.
        Q.    Did you review the amended complaint
before it was filed?
        A.    Yes. 09:42:04
        Q.    Did you have any questions about the
amended complaint?
        A.    That was back in the fall, right, of '19?
So, you know, I probably did, but I don't recall
specifically what questions I asked. 09:42:26

Page 13

Q. Do you recall if you gave any feedback 09:42:29 about the amended complaint?

MR. TORNATORE: And I advise the witness not to respond with the contents of any communications with counsel. 09:42:37

THE WITNESS: Okay. And, actually, I would say that I'm, I, I have to be, I often say things like, I'm sure I did, and it's like, well -- I believe that I did, but I don't recall any specifics.

BY MS. BUGNI: 09:42:54

Q. Did you authorize the use of an investigator to find confidential witnesses for the amended complaint?

MR. TORNATORE: Objection to form. You can answer, if you know. 09:43:07

THE WITNESS: Yeah, I don't recall a conversation about investigators.

BY MS. BUGNI:

Q. Did you know that your counsel served subpoenas on 10 of U.S. XPress's customers? 09:43:18

MR. TORNATORE: Objection. And I caution the witness not to divulge any communications with counsel.

THE WITNESS: So, I should not answer, is that -- 09:43:32

Page 14

MR. TORNATORE: If you know. I would advise 09:43:36 you not to give any communications with us. To the extent that your knowledge is based only on communications with counsel, I would instruct you not to answer. 09:43:43

THE WITNESS: I don't recall anything specific.

BY MS. BUGNI:

Q. Have you reviewed any orders that have been entered in this case?

A. Yeah. I've looked at all the, all the 09:43:54 sort of documents that have been produced out of it.

Q. Which orders do you, which orders from the court do you recall reviewing?

A. The only one I recall was, we talked about the one they, that, where they -- 09:44:14

MR. TORNATORE: I would, sorry, I'm going to advise the deponent not to discuss communications, what we spoke about with counsel.

THE WITNESS: Okay. So --

BY MS. BUGNI: 09:44:30

Q. So, I'll ask the question again.

Which orders do you, from the court do you recall reviewing?

A. I believe, but am not certain, that I reviewed one that, that had to do with some, some 09:44:45

Page 15

claims being dismissed, and some being upheld, if     09:44:52
that makes sense.

Q.   Any other orders that you can recall?

A.   There's, I mean, there's a whole bunch of
paper.  No, I don't recall specifically, yeah.  You     09:45:08
know, I -- yeah.

Q.   Is it your understanding that your counsel
is now proposing a role change for you in the case?

MR. TORNATORE:  Objection.

THE WITNESS:  This, I believe what's going on     09:45:26
now is that they're asking that I be, although I'm
already appointed lead plaintiff, but that I be
appointed lead plaintiff, that it's some process.
Yes.  So, it's not a change, but it is a change?  I,
I know, I'm not sure what the distinction is.     09:45:44

BY MS. BUGNI:

Q.   Fair enough.  Have you filed lawsuits
against U.S. XPress in any other court other than
the one in which the case is currently pending?

A.   We did.  We first filed a suit in state     09:45:58
court in Tennessee.

Q.   Did you review that state court complaint
before it was filed?

A.   Yes.

Q.   And did you authorize that complaint to be     09:46:11

Page 16

filed?                                          09:46:14

    A.   Yes.

    Q.   What happened with that lawsuit --

    MR. TORNATORE:  I advise --

BY MS. BUGNI:                                    09:46:20

    Q.   -- in state court?

    MR. TORNATORE:  I'm going to caution the

witness not to divulge any communications with

counsel related to the question.

    THE WITNESS:  Okay, let's see.  We, we        09:46:27

dismissed that and filed an action in federal court.

BY MS. BUGNI:

    Q.   And why did you dismiss the complaint in

state court?

    MR. TORNATORE:  I'm going to caution the       09:46:42

witness not to divulge any communications with

counsel.

    THE WITNESS:  Yeah, that was a, a litigation

strategy.

BY MS. BUGNI:                                     09:46:54

    Q.   And, just to be clear, was the litigation

strategy entirely from your counsel?

    MR. TORNATORE:  Objection.  I'm going to

caution the witness not to divulge any

communications with counsel.                      09:47:03

                                            Page 17

THE WITNESS: What do you mean by, entirely from counsel?

BY MS. BUGNI:

*DI Q. Was it your idea to dismiss the case?

MR. TORNATORE: Objection. Calls for the disclosure of attorney-client communications.

THE WITNESS: Yeah, I mean, it was, it was a discussion that --

MR. TORNATORE: I'm going to instruct the witness to not answer any further. She's made clear it was a litigation strategy in discussion with counsel.

BY MS. BUGNI:

Q. Ms. Terry, do you have access to the Exhibit Share platform?

A. I do, yeah.

Q. Okay, I am going to load for you what has previously been marked in this case as Exhibit 7, so, if you could let me know when that appears in your folder.

MS. BUGNI: And, Counsel, since this is the first one, please, let me know also that you guys all have access, so we can make sure we're all on the same page.

MR. TORNATORE: Yes. Thank you.

09:47:07
09:47:14
09:47:25
09:47:39
09:48:02
09:48:13

Page 18

THE WITNESS:  In the marked exhibits, Exhibit 09:48:14
7, certification, PDF.

BY MS. BUGNI:

Q.  Yes, ma'am.

A.  Open that up? 09:48:20

Q.  Yes, ma'am.  And if you want to take a
minute and look through the document, and then let
me know when you are ready.

A.  Okay, it's still -- oh, here it is
loading.  Exhibit B.  Certification of Plaintiff 09:48:30
pursuant --

MR. SUSHON:  Yeah, I'm still beachballing on
this.  I don't have the exhibit up yet.

MS. BUGNI:  Sebastian, do you have it?

MR. TORNATORE:  I have it, yeah.  Bill, that 09:48:45
happened to me a couple of days ago.  I think you've
just got to give it a second.  And I hit refresh a
few times two days ago, and it finally popped
through, so --

MR. SUSHON:  I don't have any objection to 09:48:55
proceeding without me having this in front of me,
so, go ahead and --

MS. BUGNI:  Sure.  It's also the same Exhibit 7
that we used with Mr. Terry, so, if you have that
copy handy, you could pull that up. 09:49:05

Page 19

MR. SUSHON: Yeah.

THE WITNESS: All right, I have it, and I just skimmed it.

BY MS. BUGNI:

Q. Have you seen this document before?

A. Yes.

Q. And on the second page of the PDFs, not the cover page that says Exhibit B, but, on the second page, is that your signature?

A. Let me -- yes.

Q. And when did you sign this document?

A. I don't recall.

Q. There is a date indicated in the document that it was executed this March 13th, 2019.

Would that have been the day that you signed it?

MR. TORNATORE: Objection. You can answer.

THE WITNESS: Okay. So, I just need to, so, March of 2019 is, let's see, that sounds right. I mean, I certainly can't say whether I signed it on that specific day.

BY MS. BUGNI:

Q. Looking at the certification above your signature, if you could please read the paragraph into the record that begins, I certify.

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 21 of 87
PageID #: 2669

A. I certify under penalty of perjury under 09:50:37 the laws of the United States of America that the foregoing is true and correct, executed this March 13th, 2019.

Q. Does that refresh your recollection as to 09:50:49 the day that you signed the certification?

A. Well, yes. I mean, I would not have signed it, something that said it was March 13, unless it actually was March 13.

Sorry. I was looking at the date on the 09:51:03 bottom, you know, the filing date.

Q. No problem. Yeah, that's the date it was filed.

Paragraph 4 of the certification that you signed indicates that your transactions in USX stock 09:51:16 are listed on the attached schedule, correct?

A. Yes.

MR. TORNATORE: Objection. That's fine. Sorry.

BY MS. BUGNI: 09:51:31

Q. Did you review the attached schedule before signing the certification?

A. Yes.

Q. So, if you signed, and if you would turn to the schedule -- 09:51:40

Page 21

A.   Okay.                                          09:51:43

Q.   If you signed the certification on
March 13, 2019, and reviewed the schedule before
signing, how is it that the schedule also reflects
sales dated after March 13, 2019?                   09:51:55

A.   I don't know.

Q.   Schedule A lists a bunch of different
accounts, correct?

A.   Yes.

Q.   Only one of these accounts was your       09:52:17
personal account; is that correct?

MR. TORNATORE:  Objection.

THE WITNESS:  Yes, one is, is my account, is my
account.

BY MS. BUGNI:                                        09:52:27

Q.   And only one is your personal account,
correct?

MR. TORNATORE:  Objection.

THE WITNESS:  Well, two of them would be my
kids' accounts, which I'm the custodian.  There's   09:52:38
also, I believe, accounts for Mardin and Comeragh,
which are corporations that my brother and I jointly
own, so, I guess, one is my, my personal money, and
one is the other, the other ones that I over-, the
others are ones that I oversee.                      09:53:00

Page 22

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 23 of 87
PageID #: 2671

BY MS. BUGNI:                                  09:53:06

Q.   And so as of March 13, 2019, when you signed the certification, only one of the accounts on schedule A had stock that you personally owned; is that correct?                      09:53:19

MR. TORNATORE:  Objection.

THE WITNESS:  Again, it's hard to, so, the, like, Mardin and Comeragh, my brother and I own those, so, I own them through Mardin and Comeragh, right?                                      09:53:37

You know, in the case of my children's, you know, I trade those accounts.  Those are, so, you know, I, I'm just not, I need to make sure I understand what, what it is that you want to know.

BY MS. BUGNI:                                  09:54:01

Q.   There are seven accounts listed on schedule A; is that correct?

A.   Yes.

Q.   One of those accounts you personally owned, correct?                                 09:54:16

MR. TORNATORE:  Objection.

THE WITNESS:  I -- yes.

BY MS. BUGNI:

Q.   One of those accounts is in the name of Mardin LLC, in which you and your brother hold     09:54:36

Page 23

membership interests; is that correct?

MR. TORNATORE: Objection. She's testified to this already, so, I think, twice already now, so I'm going to instruct --

BY MS. BUGNI:

Q. You can answer.

A. You know, I actually don't know the, the account numbers of the accounts, and so, you know, being as I'm trying to make sure I only say stuff that I know for certain, like, I can't tell you now which one of these is, is Mardin, and so I feel odd saying that one of them is Mardin, you know what I'm saying?

Q. Sure. I was trying to make this a little bit more efficient, but we can go through each of the accounts.

So, I am loading what has previously been marked as Exhibit 8. If you would please let me know when that appears in your queue.

A. Okay, let me go back in again, refresh it. There we go. Okay.

Q. So accounts that, document that's previously been introduced as Exhibit 8 is for an individual brokerage account ending in account number 38, and it is in the name of Deirdre A.

Page 24

Terry; is that correct?                          09:56:16

A.   That's right.

Q.   And so the account that ended in 38 on the certification, which was Exhibit 7, is for your personal account; is that correct?                  09:56:24

A.   Yes.

Q.   I have loaded what has previously been marked as Exhibit 9, if you could please let me know when that appears in your queue.

A.   Yes.                                         09:57:07

Q.   Exhibit 9 is an account statement for an account ending in 79, which is for the John J. Terry rollover IRA brokerage account, correct?

A.   That's right, yeah.

Q.   And as of March 13, 2019, when you signed   09:57:20
the certification, this account ending in account number 79 was not your account; is that correct?

MR. TORNATORE:  Objection.

THE WITNESS:  My father's assigned his interests in this lawsuit to me, and it is, it is   09:57:37
not my account, but I do, I am consulted on, on, on investments in that account.

BY MS. BUGNI:

Q.   When was the assignment given from your father to you, related to this account?         09:57:57

Page 25

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 26 of 87
PageID #: 2674

A.   I don't recall.                                    09:58:01

MR. TORNATORE:  Objection.

THE WITNESS:  I mean, that, you know, you could look on the document.  It has a date.

BY MS. BUGNI:                                           09:58:10

Q.   Was it before or after you signed the certification in March of 2019?

A.   The documents will have the date.  I don't recall.

Q.   I am loading what has previously been            09:58:40 marked as Exhibit 15.

Will you please let me know when that appears.

A.   Yes, I see it now.

Q.   Is Exhibit 15 the assignment that you           09:59:08 referenced in your testimony?

A.   Yes.

Q.   And the date of Exhibit 15 is May 3, 2019, correct?

MR. TORNATORE:  Objection.                             09:59:19

BY MS. BUGNI:

Q.   You may answer.

A.   Yes, that's the date on it.

Q.   Okay.  So, going back to Exhibit 9, for the John J. Terry rollover IRA account, as of       09:59:32

Page 26

866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 27 of 87
PageID #: 2675

March 2019, when you signed the certification, this    09:59:36

account was not your account, correct?

MR. TORNATORE:  Objection.

THE WITNESS:  So, again, based on what you've

told me, that the assignment hadn't been executed as    09:59:52

of that time, but it was an account that I have

interest in and say over and, and consulted on.

BY MS. BUGNI:

Q.   What interest do you have in the John J.

Terry rollover IRA account?                             10:00:07

A.   My, I may have used, interests, I used

interest in a nonlegal sense, not in, you know, but,

my father and I consult on investments for the whole

family that includes that rollover IRA account, as

well as, you know, the kids' accounts, and Mardin,     10:00:35

Comeragh, all, kind of, we think of them as one.

Q.   Did you consult with your father on the

U.S. XPress investment in the IRA rollover account?

MR. TORNATORE:  Objection.

THE WITNESS:  You mean the, when we originally   10:00:53

made it?

BY MS. BUGNI:

Q.   Yes, ma'am.

A.   The investment?  We talk about kind of all

the investments that we make, but I, I do not recall   10:01:03

Page 27

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 28 of 87
PageID #: 2676

our conversations about U.S. XPress for the, for the 10:01:08
investment.

Q. As of March 2019, did you have any legal interests in the John J. Terry rollover IRA account?

MR. TORNATORE: Objection. 10:01:25

THE WITNESS: Yeah, what is a legal interest?

BY MS. BUGNI:

Q. You had used that phrase earlier, so, what did you mean by that phrase?

A. When I used it, I meant I was interested 10:01:33 in it, in the nonlegal sense.

Q. Right. So, what would be the legal sense, in your understanding?

A. I don't know.

Q. Okay. 10:01:46

A. But you said, legal interest, so, that's what I'm, I'm asking you.

Q. Other than consultation that you had with your father about investments, but not the U.S. XPress investment, what other interests did you have 10:01:57 in the John J. Terry rollover IRA account?

MR. TORNATORE: Objection. Misstates her testimony.

THE WITNESS: On the whole, we try and make sure that our family's investments are balanced, so 10:02:15

Page 28

that, for example, we, we, you know, so that we're

not, you know, so it doesn't matter if, say, a

particular real estate investment is, is held by me

or my brother.  What matters is that, is that

overall, we're, we're balanced between various kinds

of investments.

So, in making that investment, or real estate

investment we have now, we consider the, the, the

whole picture.  So, I guess that's, in, in making

the U.S. XPress investment, my father would,

actually, I don't want to say for U.S. XPress,

because that, if, if my father had a stock right now

that he wanted us to buy, he would buy it in the

account that had either liquidity or some stock that

he wished to sell, which might be different at

different times.

Does that make sense?

BY MS. BUGNI:

Q.  As of March 2019, if you had called

Vanguard for instructions for the John J. Terry

rollover IRA account, is it your understanding that

they would have to follow your instructions?

MR. TORNATORE:  Objection.  Incomplete

hypothetical.

BY MS. BUGNI:

10:02:22

10:02:46

10:03:14

10:03:40

10:03:53

10:04:06

Page 29

Q. You can answer. 10:04:07

A. No. I think they would probably have to fax me something for him to sign, for them to take my instructions on this one, because this, I don't think this is one of the ones that appears on, I 10:04:20 know it's not one of the ones that appears on my access, you know, on my, on the website, when I log in.

So, they, when we, they just like send us a form, and we sign the form and send it back to 10:04:33 them when there's something like that comes up.

Q. So your, for the John J. Terry rollover account, as of March 2019, it would require your father's signature for Vanguard to take action?

MR. TORNATORE: Objection. Misstates the 10:04:50 testimony.

THE WITNESS: So, I don't know exactly what it would take in that hypothetical.

BY MS. BUGNI:

Q. Could you make the decision to buy stock 10:05:04 for the John J. Terry rollover IRA account with your signature only?

A. I do not believe so.

Q. I have loaded what has previously been marked as Exhibit 14. If you would please let me 10:05:50

Page 30

Veritext Legal Solutions
866 299-5127

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 31 of 87
PageID #: 2679

know when that appears in your marked exhibits.

A. Okay, I have Exhibit 14.

Q. And this is for an account statement that is in the name of the John J. Terry and Terese M. Terry trust; is that correct?

A. Yes.

Q. For the trust's account that is held at Vanguard, could you authorize purchase of stock as of March 2019?

MR. TORNATORE: Objection. Vague.

THE WITNESS: You mean directly with Vanguard?

BY MS. BUGNI:

Q. Yes, ma'am.

MR. TORNATORE: I caution the witness not to speculate. If you know the answer, you can answer it, but don't speculate.

THE WITNESS: Sorry. I'm trying to answer but not speculate. I don't believe so. I'm sorry, that's probably speculation.

BY MS. BUGNI:

Q. You mentioned when you log into Vanguard, you have access to certain accounts.

Is this account for the trust an account that you have access to?

A. It's not.

Page 31

MR. TORNATORE: Objection. 10:07:14

BY MS. BUGNI:

Q. Do you have access to Comeragh Corporation's account?

A. I easily could get it, but I don't have 10:07:25 that on the -- that would be a separate login.

Q. How about for Mardin LLC? Do you have access to that account when you log into Vanguard?

A. I have the login information for those, in the event that my father should become 10:07:45 incapacitated, or just ask me to do something, but I don't regularly log into it.

Q. Why did you decide to file a lawsuit against U.S. XPress and its officers and directors?

A. Well, the loss was quite substantial for 10:08:04 our family.

Q. Anything else?

A. No.

Q. Go ahead.

A. No. No. That was it. 10:08:19

Q. When did you decide to file a lawsuit against U.S. XPress and its officers and directors?

A. Let's see. The, it was the fall of 2018, maybe, verging on, I don't know, it was December, fall, or winter was when we started talking about 10:08:43

Page 32

that. 10:08:46

MR. TORNATORE: I caution the witness not to divulge any communications with counsel.

BY MS. BUGNI:

Q. When you say, we, who are you referring 10:08:52 to? Without divulging the conversations, I just want to know who the, we, is that you referred to.

A. Originally, I was talking to my father and my -- go ahead.

Q. And what did you discuss with your father 10:09:03 at the time?

MR. TORNATORE: To the extent those discussions relate to communications from counsel to both of you, I ask you not to, not to disclose.

THE WITNESS: He was, he was quite frustrated 10:09:17 with the investment. It had not, it, it was not what, you know, kind of we expected to happen with it. So, that, that's the substance of those, you know, and, and that it wasn't quite clear why that was the case. 10:09:41

BY MS. BUGNI:

Q. How did you first come into contact with a lawyer regarding this case?

MR. TORNATORE: Objection.

THE WITNESS: I believe my father communicated 10:09:55

Page 33

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 34 of 87
PageID #: 2682

with them first, and then he talked to me and asked 10:09:57
me to get in touch with them.

BY MS. BUGNI:

Q. When is the first time you spoke with a lawyer about this case? 10:10:07

A. It would have been, you know, sometime in that late summer fall period, but I don't recall the date.

Q. Did you sign an engagement letter with the Levi & Korsinsky firm? 10:10:31

A. I don't recall precisely.

Q. Did you sign an engagement letter with Robbins Geller?

A. I, I don't recall, and I don't believe I did. 10:10:50

Q. Other than Levi & Korsinsky and Robbins Geller, are there any other firms representing you in this case?

A. Yeah, there's a local firm, Barrett Johnston. 10:11:01

Q. Anybody else?

A. There are firms representing my, my co-plaintiffs, but I believe those are all the ones representing me.

Q. So, just to be clear, the firms that are 10:11:18

Page 34

representing the co-plaintiffs are not representing 10:11:21
you; is that right?

A. That's right.

Q. How did you decide on Levi & Korsinsky as
your counsel in this case? 10:11:34

A. Partly on consulting with my father,
because they had experience in this kind of
securities litigation, so --

Q. Did you research any other firms?

A. I did not, personally. 10:11:56

Q. How often have you been in contact with
either Levi & Korsinsky or Robbins Geller since this
case was filed?

A. Oh, often. I'm not good at estimating
times but every time, every time something is filed, 10:12:17
and then in between, they, they contact me to let me
know what's going on.

There's, there is a long chunk of time,
right, after the amended complaint was filed and
before the court ruled, where they just sort of 10:12:31
occasionally check in and say, we're still waiting,
you know, but --

Q. And how do you typically communicate with
them?

A. On the phone and by e-mail. Sorry. 10:12:44

Page 35

Q. Have you met with them in-person at any point?

A. No.

Q. Other than your father and the firms that we've talked about, have you communicated with anyone else about this case?

A. I've talked to my brother and sister-in-law, I've talked to my kids a little bit, and I think I told my friend yesterday that I had a deposition today.

Q. What else did you tell your friend yesterday?

A. That I was a little apprehensive about the deposition, because I haven't been --

Q. Anything else?

A. Nothing about the case.

Q. Who is Charles Clowdis?

A. He's one of the, my fellow plaintiffs.

Q. And have you spoken with him?

A. I have, on the phone.

Q. Were lawyers present?

A. Yes. Yeah.

Q. And how many times have you spoken with him?

A. You know, less than five times. I mean,

Page 36

more than once but less than five.

Q. Who is Byron Robbins?

A. Brian is the, one of the other plaintiffs.

Q. And the calls that you mentioned that you had with Mr. Clowdis and counsel, was Mr. Robbins also on those calls?

A. Been on calls, yeah.

Q. Did either Mr. Clowdis or Mr. Robbins have any influence over what is, what was alleged in the amended complaint that was filed in this case?

MR. TORNATORE: Objection.

THE WITNESS: I don't know.

BY MS. BUGNI:

Q. How did the three of you come to be named plaintiffs in this case?

MR. TORNATORE: Objection.

THE WITNESS: I can't speak for Mr. Clowdis and Mr. Robbins. I don't know their history with the case. I believe that I was the named the lead plaintiff because we had the largest loss that, pursuant to that IPO.

Q. At what point in time did you decide to retain Robbins Geller?

A. Levi & Korsinsky retained Robbins Geller for us, and --

Page 37

MR. TORNATORE: I caution the witness not to 10:15:45 divulge any communications with counsel.

THE WITNESS: I don't, I don't recall anything, I don't recall any time related to any decisions.

BY MS. BUGNI: 10:16:08

Q. You don't recall when you retained Robbins Geller?

A. Right.

MR. TORNATORE: Objection.

BY MS. BUGNI: 10:16:17

Q. Why is it that you decided to retain a second firm?

MR. TORNATORE: Objection.

THE WITNESS: Do I answer that, or --

MR. TORNATORE: You can answer to the extent it 10:16:27 doesn't draw on communications you've had with counsel.

THE WITNESS: Okay. We resigned, we -- sorry. We retained Robbins Geller because of their --

MR. TORNATORE: Object. I advise you not to 10:16:39 speak of, we, with respect to communications with counsel.

THE WITNESS: Got you. I'm -- you might have to rephrase the question for me.

BY MS. BUGNI: 10:16:58

Page 38

Q. Why is it that you decided to retain a second firm?

MR. TORNATORE: Objection.

THE WITNESS: Because they are local in Tennessee.

BY MS. BUGNI:

Q. Why is it that you decided to retain Robbins Geller?

MR. TORNATORE: Objection to the extent it calls for the disclosure of privileged communications with counsel.

THE WITNESS: I just said, because they were, they were local to Tennessee.

BY MS. BUGNI:

Q. So, it's your understanding that Robbins Geller is local to Tennessee.

MR. TORNATORE: Objection.

THE WITNESS: No. They, they have a presence in Tennessee, I should say.

BY MS. BUGNI:

Q. Any other reason why you decided to retain Robbins Geller?

MR. TORNATORE: Objection. Deirdre, you can answer to the extent you don't reveal any communications with counsel.

Page 39

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 40 of 87
PageID #: 2688

THE WITNESS: Yeah. 10:17:53

BY MS. BUGNI:

Q. If it's all based on what your counsel told you, just say it's all based on what my counsel told me, and we can move on. 10:18:01

A. Yeah. I mean, it all came out of discussions with Sebastian and Shannon, so --

*DI MR. TORNATORE: That's, I instruct you not to answer any further.

BY MS. BUGNI: 10:18:18

Q. Was it your idea to retain Robbins Geller to represent you in this case?

MR. TORNATORE: Objection. You can answer to the extent it doesn't reveal communications with counsel. We're just repeating the same line of 10:18:28 questions over and over again here --

THE WITNESS: So, no --

MR. TORNATORE: -- so --

MS. BUGNI: Court reporter, did you get her answer? 10:18:55

THE COURT REPORTER: No, I didn't.

THE WITNESS: I said, no.

BY MS. BUGNI:

Q. How will you and Mr. Clowdis and Mr. Robbins go about making decisions for this case? 10:19:04

Page 40

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 41 of 87
PageID #: 2689

MR. TORNATORE: Objection. Incomplete
hypothetical. You can answer, if you understand the
question.

THE WITNESS: Well, it's a really broad
question, right, so, I'll give a really broad
answer, is that we'll discuss it. Most likely, it
will be over conference calls or Zoom.

BY MS. BUGNI:

Q. Have you discussed how you will resolve
conflict between the three of you as to how the
litigation will proceed?

A. Have Mr. Clowdis and Mr. Robbins and I
discussed that?

Q. Yes, ma'am.

A. No.

Q. What is your understanding as to how
conflicts would be resolved between you,
Mr. Clowdis, and Mr. Robbins as to how the
litigation will proceed?

MR. TORNATORE: And I caution the witness not
to speculate. It's your current understanding.

THE WITNESS: Right. So, that's also a very
broad question. I would talk to them over the phone
or via Zoom, and, you know, more than that just
depends on what the conflict is.

Page 41

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 42 of 87
PageID #: 2690

BY MS. BUGNI: 10:20:09

Q. The three of you have not agreed on a formal structure to resolve any conflicts between the three of you; is that correct?

MR. TORNATORE: Objection. Misstates the testimony. 10:20:17

THE WITNESS: We've had no reason to do so.

BY MS. BUGNI:

Q. How is your counsel being compensated for their work on this case? 10:20:41

MR. TORNATORE: Objection.

THE WITNESS: At the, I believe, at the end, they submit to the court a request, depending on, you know, what has gone on up to that case, up to that time. 10:21:02

BY MS. BUGNI:

Q. And how is it that those fees would be split between Robbins Geller and Levi & Korsinsky?

MR. TORNATORE: Objection. Lacks foundation.

THE WITNESS: I believe that has yet to be determined. 10:21:13

BY MS. BUGNI:

Q. Are you being compensated to serve as lead plaintiff?

A. I'm not. 10:21:22

Page 42

Q. Have you been promised any compensation or benefits in the future for serving as lead plaintiff?

A. No.

MR. TORNATORE: Objection. You can answer, Deirdre.

THE WITNESS: Yeah. No.

BY MS. BUGNI:

Q. Have you ever communicated with anyone who works at U.S. XPress?

A. No.

Q. Have you ever communicated with anyone who previously worked at U.S. XPress?

A. Not to my knowledge.

Q. Do you know Max Fuller?

A. I don't.

Q. Do you know Eric Fuller?

A. No.

Q. Do you know Eric Peterson?

A. No. And I don't know Jason Grear or Lisa Quinn Pate either.

Q. How about Patrick Quinn?

A. No. I don't recognize that name.

Q. Are you aware that U.S. XPress served requests for you to produce documents in this case?

Page 43

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 44 of 87
PageID #: 2692

A.   Yes.                                          10:22:26

MR. TORNATORE:  Objection.

BY MS. BUGNI:

Q.   And what did you do to collect documents
that were requested?                               10:22:32

A.   Well, I don't keep the, the sort of
investment records, right, but I, kind of out of an
excess of caution, I first searched the computer
that I'm talking to you on.  I searched my e-mail
for U.S. XPress, USX, U.S. XPress spelled out, you  10:22:54
know, U.S. XPress with an X.  I didn't have any
e-mail, which didn't surprise me.

I looked in, I have a folder called family
business, where I stow stuff that it's like I
actually think, oh, I'm going to need to look at    10:23:17
this later.

Usually, that has to do with decisions
we're making about real estate, and stuff, but I
looked through there anyway.  There wasn't any U.S.
XPress in there.                                    10:23:29

I then looked through my paper files,
which are sort of the, the files that I keep is a
quite small one little box, and the financial
information in there would, would be statements that
I, I have a recent statement of every account in    10:23:53

Page 44

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 45 of 87
PageID #: 2693

there.  Not, all the information is available          10:23:56

online, so I don't, it's not the most recent, or,

and it's not complete, but it does, if I drop dead,

it would tell people where to look for the money.

There's one for each account.                          10:24:09

         And they did not date from when I had U.S.

XPress on, in my, in the things.

         Q.   And how many accounts are there?

         A.   Well, I have, like, 401(k) accounts from

each of the, 401(k), or pension, or, you know,        10:24:32

they're all structured differently, from each of the

three places I worked before I retired, in addition

to the Vanguard accounts.

         Q.   And did you hand, so, I believe you said

you didn't find any e-mail related to U.S. XPress;    10:24:56

is that right?

         A.   Yeah, apart from the e-mails, you know,

between me and my counsel that, where they sent me

the stuff, but nothing that predated the, the suit

being charged.                                         10:25:11

         Q.   And then other than the account

statements, did you find any other hard copy

documents that related to U.S. XPress?

         A.   I did not.

         MR. TORNATORE:  Objection to form.  Misstates  10:25:24

Page 45

866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 46 of 87
PageID #: 2694

her testimony.                                    10:25:25

BY MS. BUGNI:

Q.   Did you search anywhere else, other than the places you've already testified about, for documents relating to the investment in U.S. XPress?   10:25:35

A.   I actually also looked through the, the bag of things that I, that I need to get shredded, right, so, like, my account, my credit account statements and stuff.

Again, that would, the things in there are   10:25:56 more recent than this, you know what I mean, but, but just, just to be careful, I looked in there, and there was nothing, nothing U.S. XPress related.

Q.   Have you ever been a party to any other lawsuit?                                          10:26:19

MR. TORNATORE:  Objection.

THE WITNESS:  I'm, I'm not named in any other lawsuit.  An LLC that I'm a member of has a real estate partition action going on in Florida right now.                                              10:26:38

BY MS. BUGNI:

Q.   And which LLC is that?

A.   Mardin.  Actually, I want to, I am not absolutely sure I know it's Mardin or Comeragh.  I believe it's Mardin, but I, I'm not, I'm not        10:26:52

Page 46

positive. 10:26:57

Q. And other than that lawsuit in Florida related to real estate, have you ever been a party to any other lawsuits?

A. No. 10:27:07

Q. What did you do to prepare for your deposition today?

MR. TORNATORE: You can, I caution the witness not to discuss any communications with counsel.

THE WITNESS: I, I reviewed documents. 10:27:29

BY MS. BUGNI:

Q. You reviewed documents.

How did you select which documents to review?

A. Well, the ones, I mean, I looked at the 10:27:43 complaint. The ones that had the most information, I suppose. I, you know, I mean, there are some that are super-short, right, that are not --

Q. Were these documents that you selected yourself, or did your counsel send you a group of 10:28:01 documents?

A. They have sent me all the documents, you know, all along, and I had all of those, and I believe they have set up, I can't remember the thing, but it's like a drop box, but I don't know if 10:28:20

Page 47

it's that company's thing, with the documents.       10:28:23

So, no, they didn't, they did not select any, you know what I'm saying?

Q.   So, you reviewed, if I understand this correctly, you reviewed the documents that your       10:28:38 counsel put into the drop box for you?

A.   I reviewed documents that, that they have sent me and that were in the drop box.  In many cases, those are duplicates, right, they've sent me the ones that are in the drop box previously, but,       10:28:55 you know, I looked in the drop box, because I might have deleted one that actually would be helpful to look over again.

Q.   Were there any documents that you reviewed to prepare for today that were items other than       10:29:07 documents that had been filed with the court?

MR. TORNATORE:  Objection.  To the extent that those documents contain communications from counsel, I instruct the witness not to answer.

THE WITNESS:  Yeah, I, and I also, I, I'm not       10:29:23 sure that I, that I, I don't know which things.  I guess everything gets filed with the court.  I don't know.

BY MS. BUGNI:

Q.   Fair enough.  Let me ask it this way.       10:29:39

Page 48

To your understanding, did you review any 10:29:43
document to prepare for your deposition that was not
something that had been filed with the court?

MR. TORNATORE: Objection. I instruct the
witness not to answer to the extent they were 10:29:52
communications with counsel.

THE WITNESS: So, I'm not answering.

BY MS. BUGNI:

*DI Q. No. He's just instructing you not to
answer to the extent it reveals communications with 10:30:03
counsel, but I think you can answer my question on
whether you reviewed anything that was not filed
with the court.

A. That was not a communication with counsel,
right? So, he said not to answer if it's a 10:30:13
communication with counsel, and you're saying --

MR. TORNATORE: Well, I instruct you, so, to
the extent that there were documents received from
counsel, and were communicated, based on
communications with counsel, I instruct the 10:30:25
plaintiff not to answer.

MS. BUGNI: So, you're not, you're not going to
let me inquire as to documents that she relied on to
prepare for today?

MR. TORNATORE: To the extent that they were 10:30:37

Page 49

documents outside of documents she received from counsel, you're free to rely on those, making that clear.

MS. BUGNI: Well, if you prepared a memo that you sent to her, and she relied on it to prepare for the deposition, we're entitled to that memo, so I think I'm entitled to inquire as to that.

MR. TORNATORE: You can inquire as to whether it refreshed her recollection and satisfies the burden under 612, but you're not entitled to it as a blanket.

MS. BUGNI: It's not just refreshing her recollection. If she relied on something to prepare for today, we're entitled to those materials.

MS. RADCLIFFE: We're going to object, and --

MR. TORNATORE: I'm going to object, yeah, I'm taking that --

MS. RADCLIFFE: -- you're actually not entitled to --

MR. TORNATORE: -- I'm going to --

MS. RADCLIFFE: -- memos that we sent to our clients. We'd like yours, as well, if you're going to turn them over. I think you just need to move on.

MR. TORNATORE: I'm standing on my objection,

Page 50

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 51 of 87
PageID #: 2699

and I'm instructing the witness not to answer.  And  10:31:28
if it's something you want to revisit between the
two of us, I'm going to continue to instruct the
witness not to answer.

BY MS. BUGNI:                                          10:31:35

*DI  Q.   Let me just ask this one question.

Did you rely on any memos prepared by your
counsel to get ready to testify today?

MR. TORNATORE:  Objection.  Instruct the
witness not to answer.                                 10:31:45

MR. SUSHON:  Sebastian, that's not a proper
instruction.  You know that.  We're entitled to know
yes or no whether she reviewed and relied on such a
document.  We're not seeking the substance of the
document.  We're not seeking anything more than you   10:31:58
would have to put on a privilege log for the
document.

MR. TORNATORE:  Go ahead, ask the question
again, or rephrase.  You can reread the question,
and I will lodge my objection, and then Ms. Terry,    10:32:09
if she can answer, she can answer.

BY MS. BUGNI:

Q.   Did you rely on any memos prepared by your
counsel to get ready to testify today?

MR. TORNATORE:  Objection, based on the               10:32:21

Page 51

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 52 of 87
PageID #: 2700

ambiguous term, relied. If the, if the deponent can 10:32:22
answer without divulging contents of communications,
she may.

THE WITNESS: I actually was just about to ask
you to clarify what you mean by, rely. 10:32:32
BY MS. BUGNI:
*DI Q. Did you review any memos prepared by your
counsel to get ready to testify today?
MR. TORNATORE: Objection, and I instruct the
witness not to answer. 10:32:43
BY MS. BUGNI:
Q. What is your understanding of, rely?
A. My understanding of rely would mean that I
was, was reliant on it, I guess.
Q. Okay. So, using your understanding, did 10:33:09
you review any memos, excuse me, did you rely on any
memos prepared by your counsel to get ready to
testify today?
THE WITNESS: Can I answer that?
MR. TORNATORE: Renew my objection. 10:33:21
THE WITNESS: No. I relied on the, the court
documents and the complaint.
BY MS. BUGNI:
Q. Did you meet with your lawyers to prepare
for the deposition? 10:33:37

Page 52

A.   Yes.                                                10:33:39

Q.   How long did you meet with them?

A.   Well, on, on, I mean, we met on the phone,
or over Zoom, right, so, not in-person.

Q.   How many times did you speak with your      10:33:52
lawyers to prepare for the deposition?

MR. TORNATORE:  Objection.

THE WITNESS:  Going back how far?

BY MS. BUGNI:

Q.   Any time you spoke with them or met with    10:34:04
them to prepare for your deposition.

A.   So, from, I mean, from when this started,
they told me that would, that depositions would be
kind of when I would --

MR. TORNATORE:  And I'd caution the witness not  10:34:17
to divulge what the communications from her counsel
were to her.

THE WITNESS:  Okay.  So, we, we spoke, I mean,
we've spoke about the, about depositions, generally,
and this deposition several times.                       10:34:35

BY MS. BUGNI:

Q.   How many times did you speak with them
about this deposition?

A.   Three times?

Q.   When was the first time?                       10:34:47

Page 53

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 54 of 87
PageID #: 2702

A. I'm sorry, I, I'm not, I'm not trying to be evasive here in saying I don't recall, like, time frames, right, so, I, I, I spoke to them last week in, in detail about this deposition.

MR. TORNATORE: I advise you not to give any details about those conversations.

THE WITNESS: They may have mentioned it before then.

BY MS. BUGNI:

Q. So you said that there were three times. You think there was one time before last week, there was last week, and then when was the third time?

MR. TORNATORE: Objection.

THE WITNESS: Well, we've talked a lot about --

MR. TORNATORE: I will caution the witness not to disclose what we spoke about or she spoke about with counsel.

THE WITNESS: You're, you're putting it in more detail than I recall. We have spoken about depositions, generally, that there would be one that I am obliged to appear, and, last week, and I guess this is Wednesday, so it would be early this week, we talked about this deposition, and the purpose of this deposition.

BY MS. BUGNI:

Page 54

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 55 of 87
PageID #: 2703

Q. Okay. So, you had previously testified that you thought there was three times when you talked about this deposition.

Is it, now that we've talked about it a little bit, do you think it was actually two times?

MR. TORNATORE: Objection. Misstates her testimony.

THE WITNESS: I, I think it was three. I mean, I'm, I, I'm going to sort of stick with I think it's three, but I'm not certain.

BY MS. BUGNI:

Q. And the times that you can recall of the three, there was one --

A. Because we have --

Q. I'm sorry, I didn't catch that.

A. We have conversations about other things, so, you know what I mean?

MR. TORNATORE: Advise the client not to divulge the contents of communications with counsel.

BY MS. BUGNI:

Q. I'm just trying to get a sense of what you did to prepare for today, and so I've asked you, you know, how many times you met with your counsel to prepare for today.

You said, I think it was three times. You

Page 55

identified last week as being one, and then early 10:37:33
this week as being another time.

Do you recall when the third time was?

A. I believe it was twice last week and once this week. 10:37:45

Q. And for the times last week, how many, how long did you meet with your lawyers?

A. One of those times was quite long, about an hour and a half. The other time was shorter than that. 10:38:14

Q. And then how about the, this week, how long was that meeting?

A. That was short. That was a short meeting.

Q. Less than an hour and a half?

A. Oh, yeah, yeah, yeah. I mean, well under 10:38:30 an hour.

Q. And who is it that you met with to prepare for your deposition?

A. Sebastian and Shannon, from Levi & Korsinsky, and, then, this week, Willow and another 10:38:46 attorney, I'm sorry, I've forgotten, from, was he on, from Robbins Geller? Just so I could see them, you know, in, I had not, I had not seen them in, in their faces before.

MS. BUGNI: Okay, if we could take a 10:39:18

Page 56

five-minute break, please. 10:39:19

MR. TORNATORE: Sure. Are the breakout rooms available for this session?

THE VIDEOGRAPHER: Let me get you off the record. The time is 10:39. We are off the record. 10:39:32

(Recess: 10:39 a.m. to 10:50 a.m.)

THE VIDEOGRAPHER: We are back on the record. The time is 10:50 a.m.

BY MS. BUGNI:

Q. Ms. Terry, you mentioned that you had 10:50:22 discussed this lawsuit with your sister-in-law.

What did you discuss with her?

A. The last time I saw her was we barbecued in my brother's backyard, and I don't think we discussed it in, in detail at that time, but just 10:50:44 that the deposition was coming up.

Q. Anything else that you recall discussing with your sister-in-law about this case?

A. No. I mean, as a family, we talk about, you know, every time we get together, we talk about 10:51:04 the various business things going on, so I, I would have discussed it with her before.

Q. And what would you have discussed with her before?

A. That the, that there was a lawsuit, that 10:51:25

Page 57

Case 1:19-cv-00098-TRM-CHS    Document 128-1    Filed 12/10/20    Page 58 of 87
PageID #: 2706

it was ongoing, you know, what we expected to happen.

Q.  And what is it that you expect to happen?

MR. TORNATORE:  To the extent that those expectations are based on communications with counsel, I advise the deponent not to answer.

THE WITNESS:  Yeah.  I, so, no, I don't think we've discussed what we expect to happen with the lawsuit.  It's, it's, in, in talking with her, it would have been more like what I expect to happen as far as my time or, or work on the lawsuit.

BY MS. BUGNI:

Q.  And what was that expectation?

A.  That, that we are coming up on a period, you know, after kind of a long trough of when there wasn't anything happening, when we were waiting for the court to rule, and that there was going to be more work coming up.

Q.  And what is your expectation in terms of your, your work for this case?

MR. TORNATORE:  Objection.

You can answer, if you understand the question.

THE WITNESS:  Yeah.  Maybe, elaborate your question.

BY MS. BUGNI:

Page 58

Q. You testified that there was going to be more work coming up.

What did you mean by that?

A. Well, at that time, I was talking about this deposition coming up, that it was going to take some, some time, and, also, you know, rearranging the, everyone's distance learning and work-at-home locations so that I had a private location to do this deposition. That's probably the, you know, the kinds of things we talked about.

Q. And other than the deposition that you discussed with her, what other work do you expect to have to do in this case?

A. Well, it depends on, on what happens in the case, right? So, the trial now is scheduled for 2022, so I'm sure between now and then there will be lots of periods of activity, as well as periods where there's not much going on, and we're waiting for somebody to rule on something.

Q. You mentioned that you also had discussed this lawsuit with your kids.

What did you discuss with them?

A. In, so, really, it was starting from the, the fact that, that today, I was going to be in a, in a deposition, and I needed my son to move his

Page 59

866 299-5127
Case 1:19-cv-00098-TRM-CHS   Document 128-1   Filed 12/10/20   Page 60 of 87
PageID #: 2708

school stuff upstairs so that I could have this more 10:54:24 private space, and my son was not very curious about the case.

My daughter was, was more curious about the, the case, and sort of shocked by the amount of 10:54:39 money that we had lost in the case, lost in the, in the, pursuant to the IPO, so, with her, I more explained what a class action is, and, you know, the stuff you talk about with an eighth grader who's just learned that there is such a thing. 10:55:05

Q. Anything else that you can recall discussing with your kids about this case?

A. You know, I don't think I, I discussed the sort of issues of the case with them, because I don't think that would be interesting to them, but 10:55:24 I, I would not testify that I'd never mentioned it, you know what I mean?

Q. What about your brother? What have you discussed with your brother about this case?

A. Well, my brother is not super interested 10:55:39 in it, but, whenever we're together, whenever we have all the members of the family together, we will, we'll kind of go over any kind of business matters that are, that are ongoing, and so I've, I've probably, on many of those occasions, as this 10:56:07

Page 60

has progressed, and we decided to do it, and then, 10:56:11 you know, oh, what's going on with that, and, you know, I've sort of updated him.

Q. Has your brother had any questions about the case? 10:56:23

A. No, I don't recall him asking any questions.

Q. Did you talk to your dad about his deposition?

A. No, I haven't talked to him. 10:56:31

Q. Did you read any testimony from this case?

A. No.

Q. Have you read any memos summarizing testimony from this case?

A. No. 10:56:44

Q. What do you know about the trucking industry?

MR. TORNATORE: Objection.

THE WITNESS: That's a really broad question. You know, my father worked in the trucking industry 10:56:56 for many years, and so it is an interest of his. It's something that he talks about a lot. He's quite passionate about, about it, so, I've probably heard more from, from him than I was interested in, but, outside of that, I, I mean, I have no special 10:57:21

Page 61

knowledge about the trucking industry. 10:57:25

BY MS. BUGNI:

Q. Did he discuss the investment in U.S. XPress with you prior to any of the purchases that were made in the accounts that were on, attached to 10:57:36 your certification that we looked at earlier as Exhibit 7?

A. I do not recall the conversations. All those investments, he would have. I'm sure that, that we did have a discussion a couple of years ago 10:57:54 now, right, when he was, when he was going to make that investment, but I don't recall the conversation specifically.

Q. Do you recall anything generally about the conversation? 10:58:13

A. No.

Q. Did you review anything about U.S. XPress before any of the purchases on your certification had been made?

A. I'm sorry. I, I, sorry, I spaced out a 10:58:28 little bit. Go, repeat the question.

Q. Yeah. Did you review any documents regarding U.S. XPress before any of the purchases that are on your certification had been made?

A. No. 10:58:41

Page 62

MS. BUGNI: I do not have anything else, but I 10:58:48
believe Mr. Sushon may have some questions, and I

reserve my right to ask additional questions for any

followup.

10:58:58

EXAMINATION

BY MR. SUSHON:

Q. Hi, Ms. Terry. I'm Bill Sushon, and I

represent the underwriter defendants in this case.

It's good to meet you. 10:59:07

A. Thank you.

Q. My first question for you is, do you

recall testifying that you believe that the

registration statement for USX's IPO was misleading?

A. Yes. Today? Yes. 10:59:22

Q. Yeah.

A. Yes.

Q. Have you ever read U.S. XPress's IPO

registration statement?

A. I have, yes. 10:59:32

Q. When did you do that?

A. Not, not at the time that we made the

investment, but it's one of the things my, my

attorneys gave me, or it was one of the things,

actually, I think my dad provided it in discovery, 10:59:51

Page 63

and it's in the documents there, and I looked at it there.

Q. Did you read the registration statement before the complaint in this case was filed?

A. No.

Q. Do any of your current business interests implicate the trucking industry?

A. Yes.

Q. Which ones?

A. We own some truck terminals, and Michael and I own interests in a company called Ballard Land and Livestock that owns terminals that, gosh, what is the name of the company? I think it's Mason and Western. There's a company that leases it. So, we own truck terminals that are leased to trucking companies.

Q. Do you have an understanding of what a dedicated trucking business is?

A. From the complaint, right, which laid out with respect to USX, I do.

Q. Do you have any understanding of it independent of the complaint?

A. I don't, no.

Q. Now, Ms. Bugni asked you if you had read any testimony in this case to prepare for your

Page 64


deposition, and you answered that.                    11:01:14

Separately, did anyone in the course of your preparation for the deposition read testimony to you?

A.   No.                                              11:01:24

Q.   Did anyone summarize testimony for you during the course of your preparation?

A.   No.

Q.   So, you may have answered this, and forgive me if you did, but did you provide any          11:01:46
documents to your lawyers in connection with the request for documents that you received?

A.   I didn't.  My father supplied all the documents.

Q.   Okay.  So, it's fair to say that any          11:02:00
documents that were produced by your lawyers to us in this case with the Terry Bates numbers came from your father; is that correct?

A.   Yes.

Q.   Are you familiar with an entity called          11:02:12
Merrill Lynch Pierce Fenner & Smith, Incorporated?

A.   I have certainly heard of Merrill Lynch, but I don't think I've heard the Fenner Smith part of it.

Q.   Fair enough.  Have you had any          11:02:28

Page 65

communications with anyone from Merrill Lynch -- we 11:02:29
can leave out Messrs. Pierce, Fenner, and Smith, if
you want -- concerning U.S. XPress?

A. No.

Q. Are you familiar with an entity Morgan 11:02:41
Stanley & Co. LLC?

A. Yes.

Q. Did you have any communications with
anyone from Morgan Stanley & Co. LLC about U.S.
XPress? 11:02:49

A. I did not. I haven't spoken to any of the
underwriters, anybody at any of the underwriters.

Q. I'll just rattle off the names so we have
a clean record.

How about J.P. Morgan Securities LLC, did 11:03:00
you have any communications with anyone from them
about U.S. XPress?

A. No.

Q. Wells Fargo Securities LLC, same question.

A. No. 11:03:10

Q. Stephens, Inc., same question?

A. No.

Q. WR Securities LLC, same question.

A. No.

Q. And, finally, Stifel, Nicolaus & Company, 11:03:19

Page 66

Incorporated, same question.                    11:03:22

A.   No.

MR. SUSHON:  Subject to any further recross

examination, I'm done with my questions.  Thank you

very much for your time.                        11:03:39


                    EXAMINATION

BY MR. TORNATORE:

Q.   Hi, Deirdre, I just had one question for

you.                                            11:03:45

A.   Yes.

Q.   At the time you agreed to be part of this

lawsuit, did you have an understanding that your

family members had agreed that you would represent

them and their accounts in this case?           11:03:52

A.   Yeah.  Yes.

MR. TORNATORE:  I have no --

THE WITNESS:  I'm the --

MR. TORNATORE:  -- further questions.

THE WITNESS:  -- one who had time to do that,  11:04:00

so --


                 FURTHER EXAMINATION

BY MS. BUGNI:

Q.   At what point in time did you discuss with  11:04:03

                                                Page 67

your family members that you could represent them in this case?

A. Back in, you know, 2018, I think, when my, when my father first talked to Levi & Korsinsky, that was, that was when we talked about it.

Q. And when did you talk about it with your brother?

A. Oh. You know, I don't recall the conversation, so it is likely that we talked about it all together.

Q. But you don't remember the conversation?

A. I don't remember the conversation, yeah.

MS. BUGNI: I don't have anything further.

MR. SUSHON: And I have nothing further.

MR. TORNATORE: And I have no additional.

MS. BUGNI: Thank you for your time, Ms. Terry.

MR. TORNATORE: Thank you, Deirdre.

THE WITNESS: All right, thanks.

MR. TORNATORE: And while we're still on the record, can we designate this confidential while the parties are still working out their protective order.

MS. BUGNI: Sure.

MR. SUSHON: Yes.

THE WITNESS: I don't know what that means,

Page 68

but --                                          11:05:13

MS. BUGNI:  That's okay.

THE WITNESS:  -- I won't tell anybody anything.

THE VIDEOGRAPHER:  This will conclude the
deposition of Deirdre Terry.  The total number of     11:05:16
media units used in today's deposition was two and
will be retained by Veritext Legal Solutions.  We
are going off the record.  The time is 11:05 a.m.
Thank you.

(Time noted:  11:05 a.m.)                  11:05:31

Page 69

Case 1:19-cv-00098-TRM-CHS     Document 128-1     Filed 12/10/20     Page 70 of 87
PageID #: 2718

I, DEIRDRE TERRY, do hereby declare under penalty of perjury that I have read the foregoing transcript, volume I; that I have made any corrections as appear noted, in ink, initialed by me; that my testimony as contained herein, as corrected, is true and correct.

EXECUTED this _____ day of _____, 202___, at _____, _____.
(City)                    (State)


_____
DEIRDRE TERRY

VOLUME I

Veritext Legal Solutions
866 299-5127

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me, via videoconference, at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [x] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.


Dated: October 28, 2020

CHRIS TE SELLE

CSR No. 10836

Page 71

**&**

**&** 3:4,11,18 4:3,13
7:6,10,15,17 34:10
34:16 35:4,12
37:24 42:18 56:19
65:21 66:6,9,25
68:4

**0**

**00098** 1:9 2:9 6:17
**06901** 3:7

**1**

**1** 1:25 6:11
**10** 14:20
**10006** 3:14
**10036** 4:7
**10836** 1:22 2:21
71:25
**10:39** 57:5,6
**10:50** 57:6,8
**10th** 3:13
**1111** 3:6
**1180** 4:17
**11:05** 2:19 69:8,10
**13** 21:8,9 22:3,5
23:2 25:15
**13th** 20:14 21:4
**14** 1:18 2:19 5:15
6:1,6 30:25 31:2
**15** 5:16 26:11,15
26:18
**18** 5:12,20
**19** 13:23
**1900** 3:21
**1992** 10:3
**1:19** 1:9 2:9 6:17

**2**

**2009** 10:25
**2018** 32:23 68:3
**2019** 20:14,19 21:4
22:3,5 23:2 25:15

26:7,18 27:1 28:3
29:19 30:13 31:9
**202** 70:8
**2020** 1:18 2:20 6:1
6:6 71:22
**2022** 59:16
**203** 3:8,15
**212** 4:8
**231-1058** 3:23
**24** 5:13
**25** 5:14
**26** 5:16
**28** 71:22

**3**

**3** 26:18
**30** 5:15
**30309** 4:18
**326-2000** 4:8
**38** 24:25 25:3

**4**

**4** 5:20 21:14
**40** 5:21
**401** 45:9,10
**401-403** 3:6
**404** 4:19
**4287741** 1:23
**49** 5:22

**5**

**51** 5:23
**52** 5:24
**55** 3:13
**572-4717** 4:19

**6**

**6** 5:23
**612** 50:10
**619** 3:23
**63** 5:7
**655** 3:21

**67** 5:6,8

**7**

**7** 4:6 5:12,24
18:18 19:2,23
25:4 62:7
**7040** 71:24
**71** 1:25
**79** 25:12,17

**8**

**8** 5:6,13,21 24:18
24:23

**9**

**9** 5:14,22 25:8,11
26:24
**92101** 3:22
**992-4523** 3:8,15
**9:32** 2:18 6:2,5

**a**

**a.m.** 2:18,19 6:2,5
57:6,6,8 69:8,10
**ability** 13:2,4
**absolutely** 46:24
**access** 18:14,23
30:7 31:22,24
32:3,8
**account** 22:11,13
22:14,16 24:8,24
24:24 25:3,5,11,12
25:13,16,16,17,21
25:22,25 26:25
27:2,2,6,10,14,18
28:4,21 29:14,21
30:13,21 31:3,7,23
31:23 32:4,8
44:25 45:5,21
46:8,8
**accounts** 22:8,10
22:20,21 23:3,12
23:16,19,24 24:8

24:16,22 27:15
31:22 45:8,9,13
62:5 67:15
**action** 6:24 17:11
30:14 46:19 60:8
71:18,19
**activity** 59:17
**addition** 45:12
**additional** 63:3
68:15
**advise** 14:3 15:1
15:17 17:4 38:20
54:5 55:18 58:6
**affiliations** 7:2
**ago** 19:16,18 62:10
**agree** 6:10
**agreed** 42:2 67:12
67:14
**ahead** 19:22 32:19
33:9 51:18
**al** 1:10 2:10 6:13
6:14
**alleged** 12:5,9 37:9
**ambiguous** 52:1
**amended** 13:18,22
14:2,13 35:19
37:10
**america** 21:2
**american** 10:10,17
**amount** 60:5
**answer** 5:18 8:17
9:3,13,13 12:12,23
14:15,24 15:5
18:10 20:17 24:6
26:22 30:1 31:15
31:15,17 38:14,15
39:24 40:9,13,20
41:2,6 43:5 48:19
49:5,10,11,15,21
51:1,4,10,21,21
52:2,10,19 58:6,22

| | | | |
|---|---|---|---|
| **answered** 65:1,9 | **aware** 43:24 | **boss** 10:17 | 57:9 58:12,25 |
| **answering** 49:7 | **b** | **bottom** 21:11 | 62:2 63:1 64:24 |
| **anybody** 34:21 | **b** 19:10 20:8 | **box** 44:23 47:25 | 67:24 68:13,16,23 |
| 66:12 69:3 | **back** 13:23 24:20 | 48:6,8,10,11 | 69:2 |
| **anyway** 44:19 | 26:24 30:10 53:8 | **brandon** 4:16 7:8 | **bunch** 16:4 22:7 |
| **apart** 45:17 | 57:7 68:3 | **break** 9:17 57:1 | **burden** 50:10 |
| **appear** 54:21 70:4 | **backyard** 57:14 | **breakout** 57:2 | **business** 13:3 |
| **appearance** 7:4 | **bag** 46:7 | **brian** 37:3 | 44:14 57:21 60:23 |
| **appearances** 3:1 | **bakshi** 3:19 7:18 | **broad** 41:4,5,23 | 64:6,18 |
| 4:1 7:1 | **balanced** 28:25 | 61:19 | **buy** 29:13,13 |
| **appears** 18:19 | 29:5 | **broadway** 3:13,21 | 30:20 |
| 24:19 25:9 26:13 | **ballard** 64:11 | **brokerage** 24:24 | **byron** 37:2 |
| 30:5,6 31:1 | **barbecued** 57:13 | 25:13 | **c** |
| **appointed** 16:12 | **barrett** 34:19 | **brother** 22:22 | **california** 1:17 |
| 16:13 | **based** 15:3 27:4 | 23:8,25 29:4 36:7 | 2:17 3:22 6:1 |
| **apprehensive** | 40:3,4 49:19 | 60:18,19,20 61:4 | 11:13 71:2 |
| 36:13 | 51:25 58:5 | 68:7 | **called** 29:19 44:13 |
| **asked** 13:25 34:1 | **basically** 11:8,10 | **brother's** 57:14 | 64:11 65:20 |
| 55:22 64:24 | **basis** 12:9 | **bugni** 4:14 5:6 7:6 | **calling** 9:10 |
| **asking** 8:14 16:11 | **bates** 65:17 | 7:6 8:6 12:15 | **calls** 12:23 18:5 |
| 28:17 61:6 | **beachballing** | 14:10,18 15:7,20 | 37:4,6,7 39:10 |
| **assigned** 11:10 | 19:12 | 16:16 17:5,12,20 | 41:7 |
| 25:19 | **becoming** 11:2 | 18:3,13,21 19:3,14 | **careful** 46:12 |
| **assignment** 25:24 | **beginning** 2:18 7:4 | 19:23 20:4,22 | **case** 1:9 2:9 6:16 |
| 26:15 27:5 | **begins** 20:25 | 21:20 22:15 23:1 | 12:1,17 13:9 15:9 |
| **assistant** 10:11 | **behalf** 1:6 2:6 7:16 | 23:15,23 24:5 | 16:8,19 18:4,18 |
| **assume** 9:3 | 7:19 | 25:23 26:5,21 | 23:11 33:20,23 |
| **atlanta** 4:18 | **believe** 9:9 14:8 | 27:8,22 28:7 | 34:5,18 35:5,13 |
| **attached** 21:16,21 | 15:24 16:10 22:21 | 29:18,25 30:19 | 36:6,16 37:10,15 |
| 62:5 | 30:23 31:18 33:25 | 31:12,20 32:2 | 37:19 40:12,25 |
| **attending** 6:20 | 34:14,23 37:19 | 33:4,21 34:3 | 42:10,14 43:25 |
| **attorney** 7:5 18:6 | 42:12,20 45:14 | 37:13 38:5,10,25 | 57:18 58:20 59:13 |
| 56:21 71:19 | 46:25 47:24 56:4 | 39:6,14,20 40:2,10 | 59:15 60:3,5,6,12 |
| **attorneys** 63:24 | 63:2,13 | 40:19,23 41:8 | 60:14,19 61:5,11 |
| **attract** 13:2,4 | **benefits** 43:2 | 42:1,8,16,22 43:8 | 61:14 63:9 64:4 |
| **audio** 6:9 | **bill** 7:9 19:15 63:8 | 44:3 46:2,21 | 64:25 65:17 67:15 |
| **authorize** 14:11 | **bit** 24:15 36:8 55:5 | 47:11 48:24 49:8 | 68:2 71:15 |
| 16:25 31:8 | 62:21 | 49:22 50:4,12 | **cases** 48:9 |
| **availability** 13:1 | **bkeel** 4:22 | 51:5,22 52:6,11,23 | **catch** 55:15 |
| **available** 45:1 | **blanket** 50:11 | 53:9,21 54:9,25 | **caution** 14:21 17:7 |
| 57:3 | | 55:11,20 56:25 | 17:15,24 31:14 |

Veritext Legal Solutions
866 299 5127

33:2 38:1 41:20 44:8 47:8 53:15 54:15
certain 15:24 24:10 31:22 55:10
certainly 20:20 65:22
certification 19:2 19:10 20:23 21:6 21:14,22 22:2 23:3 25:4,16 26:7 27:1 62:6,18,24
certified 2:20 71:1
certify 20:25 21:1 71:3,17
change 16:8,14,14
charged 45:20
charles 36:17
chattanooga 1:3 2:3 6:16
check 35:21
chicago 10:1
children's 23:11
chris 1:21 2:20 6:22 71:24
chunk 35:18
city 70:8
claim 12:16
claims 12:5 16:1
clarification 13:6
clarify 52:5
class 13:14 60:8
clean 66:14
clear 13:5 17:21 18:10 33:19 34:25 50:3
client 18:6 55:18
clients 50:22
clowdis 36:17 37:5 37:8,17 40:24 41:12,18

cnn 10:21 11:5
cnn's 10:22 11:4
colleague 7:12
collect 44:4
college 10:9,11
come 33:22 37:14
comeragh 22:21 23:8,9 27:16 32:3 46:24
comes 30:11
coming 11:22 57:16 58:14,18 59:2,5
communicate 35:23
communicated 33:25 36:5 43:9 43:12 49:19
communication 49:14,16
communications 14:4,22 15:2,4,17 17:8,16,25 18:6 33:3,13 38:2,16,21 39:11,25 40:14 47:9 48:18 49:6 49:10,20 52:2 53:16 55:19 58:5 66:1,8,16
community 10:14
companies 64:16
company 11:9 64:11,13,14 66:25
company's 48:1
compensated 42:9 42:23
compensation 43:1
complaint 13:18 13:22 14:2,13 16:22,25 17:13

35:19 37:10 47:16 52:22 64:4,19,22
complete 45:3
completion 71:15
computer 44:8
concerning 66:3
conclude 69:4
conclusion 12:23
conducted 6:18
conference 41:7
conferencing 3:1 4:1,24
confidential 1:15 2:16 14:12 68:20
conflict 41:10,25
conflicts 41:17 42:3
connecticut 3:7
connection 65:11
consider 29:8
constantly 11:21
consult 27:13,17
consultation 28:18
consulted 25:21 27:7
consulting 35:6
cont'd 4:1
contact 33:22 35:11,16
contain 48:18
contained 70:5
contents 14:4 52:2 55:19
continue 6:9 7:23 51:3
conversation 14:17 62:12,15 68:9,11,12
conversations 6:8 28:1 33:6 54:6 55:16 62:8

copy 19:25 45:22
core 12:25
corley 4:15 7:8
corporation's 32:4
corporations 22:22
correct 21:3,16 22:8,11,17 23:5,17 23:20 24:1 25:1,5 25:13,17 26:19 27:2 31:5 42:4 65:18 70:6
corrected 70:6
corrections 70:4
correctly 48:5
counsel 6:12,19 7:1 9:6,8 14:5,19 14:23 15:4,18 16:7 17:9,17,22,25 18:2,12,21 33:3,13 35:5 37:5 38:2,17 38:22 39:11,25 40:3,4,15 42:9 45:18 47:9,20 48:6,18 49:6,11,14 49:16,19,20 50:2 51:8,24 52:8,17 53:16 54:17 55:19 55:23 58:6
couple 11:20 19:16 62:10
course 65:2,7
court 1:1 2:1 6:15 6:22 7:21 8:15,18 8:22 15:13,22 16:18,21,22 17:6 17:11,14 35:20 40:19,21 42:13 48:16,22 49:3,13 52:21 58:17

Veritext Legal Solutions
866.299.5127

**[cover - ended]**

| | | | |
|---|---|---|---|
| **cover** 20:8 | 63:9 | **direction** 71:10 | **documents** 12:6 |
| **credit** 46:8 | **degree** 9:23 10:2 | **directly** 31:11 | 15:11 26:8 43:25 |
| **crucial** 12:7 | **degrees** 10:6 | **directors** 32:14,22 | 44:4 45:23 46:5 |
| **csr** 1:22 71:25 | **deirdre** 1:16 2:17 | **disclose** 33:14 | 47:10,12,13,19,21 |
| **curious** 60:2,4 | 5:3 6:12 7:16 8:1 | 54:16 | 47:22 48:1,5,7,14 |
| **current** 13:8 41:21 | 8:9 12:24 24:25 | **disclosure** 18:6 | 48:16,18 49:18,23 |
| 64:6 | 39:23 43:6 67:9 | 39:10 | 50:1,1 52:22 |
| **currently** 9:21 | 68:17 69:5 70:1 | **discovery** 63:25 | 62:22 64:1 65:11 |
| 11:12 16:19 | 70:12 | **discuss** 15:17 | 65:12,14,16 |
| **custodian** 22:20 | **deleted** 48:12 | 33:10 41:6 47:9 | **dotcom** 10:16 |
| **customers** 14:20 | **depending** 42:13 | 57:12 59:22 62:3 | **dowd** 3:18 |
| **cv** 1:9 2:9 6:17 | **depends** 41:25 | 67:25 | **draw** 38:16 |

| | | | |
|---|---|---|---|
| **d** | 59:14 | **discussed** 41:9,13 | **drivers** 13:2,3,5 |
| **dad** 61:8 63:25 | **deponent** 7:16,19 | 57:11,15,22,23 | **drop** 45:3 47:25 |
| **date** 6:5 11:15,19 | 15:17 52:1 58:6 | 58:8 59:12,20 | 48:6,8,10,11 |
| 20:13 21:10,11,12 | **deposed** 8:10 | 60:13,19 | **dropped** 13:6 |
| 26:4,8,18,23 34:8 | **deposition** 1:16 | **discussing** 57:17 | **duly** 71:8 |
| 45:6 71:20 | 2:16 6:12,18 | 60:12 | **duplicates** 48:9 |
| **dated** 22:5 71:22 | 36:10,14 47:7 | **discussion** 18:8,11 | |
| **daughter** 60:4 | 49:2 50:6 52:25 | 62:10 | **e** |
| **david** 4:25 6:21 | 53:6,11,20,23 54:4 | **discussions** 33:12 | **e** 3:20 35:25 44:9 |
| **day** 20:15,21 21:6 | 54:23,24 55:3 | 40:7 | 44:12 45:15,17 |
| 70:7 | 56:18 57:16 59:5 | **dismiss** 17:13 18:4 | **earlier** 28:8 62:6 |
| **days** 19:16,18 | 59:9,11,25 61:9 | **dismissed** 16:1 | **early** 54:22 56:1 |
| **dbakshi** 3:24 | 65:1,3 69:5,6 | 17:11 | **easier** 8:18 |
| **dead** 45:3 | 71:14 | **distance** 59:7 | **easily** 32:5 |
| **debashish** 3:19 | **depositions** 53:13 | **distinction** 16:15 | **eastern** 1:2 2:2 |
| 7:18 | 53:19 54:20 | **district** 1:1 2:1 | 6:15 |
| **december** 32:24 | **designate** 68:20 | 6:15,15 | **edited** 11:10,11 |
| **decide** 32:13,21 | **desk** 11:10 | **division** 1:2,3 2:2 | **editor** 10:12,19 |
| 35:4 37:22 | **detail** 54:4,19 | 2:3 6:16 | 11:8 |
| **decided** 38:11 | 57:15 | **divulge** 14:22 17:8 | **editorial** 10:11 |
| 39:1,7,21 61:1 | **details** 54:6 | 17:16,24 33:3 | **efficient** 24:15 |
| **decision** 30:20 | **determined** 42:21 | 38:2 53:16 55:19 | **eighth** 60:9 |
| **decisions** 38:4 | **di** 18:4 40:8 49:9 | **divulging** 33:6 | **either** 29:14 35:12 |
| 40:25 44:17 | 51:6 52:7 | 52:2 | 37:8 43:21 |
| **declare** 70:1 | **diego** 3:22 | **document** 19:7 | **elaborate** 58:23 |
| **dedicated** 64:18 | **different** 22:7 | 20:5,11,13 24:22 | **employed** 9:21 |
| **defendant** 6:13 | 29:15,16 | 26:4 49:2 51:14 | **employee** 71:18 |
| **defendants** 1:11 | **differently** 45:11 | 51:15,17 | **employment** 10:9 |
| 2:11 4:2,12 7:7,11 | | | **ended** 25:3 |

Veritext Legal Solutions
866-299-5127

**engagement** 34:9 34:12
**english** 10:5,5
**entered** 15:9
**enterprises** 1:10 2:10 6:14
**entirely** 17:22 18:1
**entitled** 50:6,7,10 50:14,18 51:12
**entity** 65:20 66:5
**eric** 43:17,19
**esq** 3:5,12,19,20 4:4,5,14,15,16
**estate** 29:3,7 44:18 46:19 47:3
**estimating** 35:14
**et** 1:10 2:10 6:13 6:14
**evasive** 54:2
**event** 32:10
**eventually** 10:12 10:20
**everyone's** 59:7
**exactly** 30:17
**examination** 5:2 8:5 63:6 67:4,7,23
**examined** 8:3
**example** 29:1
**excess** 44:8
**excuse** 52:16
**executed** 20:14 21:3 27:5 70:7
**executives** 12:3
**exhibit** 5:11,12,13 5:14,15,16 18:15 18:18 19:1,10,13 19:23 20:8 24:18 24:23 25:4,8,11 26:11,15,18,24 30:25 31:2 62:7

**exhibits** 5:10 19:1 31:1
**expect** 58:3,8,10 59:12
**expectation** 58:13 58:19
**expectations** 58:5
**expected** 33:17 58:1
**experience** 35:7
**explain** 12:19
**explained** 60:8
**extent** 12:22 15:3 33:12 38:15 39:9 39:24 40:14 48:17 49:5,10,18,25 58:4

**f**

**faces** 56:24
**fact** 59:24
**fair** 9:4 16:17 48:25 65:15,25
**fall** 13:23 32:23,25 34:7
**familiar** 65:20 66:5
**family** 27:14 32:16 44:13 57:19 60:22 67:14 68:1
**family's** 28:25
**far** 53:8 58:11
**fargo** 66:19
**father** 25:25 27:13 27:17 28:19 29:10 29:12 32:10 33:8 33:10,25 35:6 36:4 61:20 65:13 65:18 68:4
**father's** 25:19 30:14
**fax** 30:3

**federal** 17:11 71:14
**feedback** 14:1
**feel** 24:11
**fees** 42:17
**fellow** 36:18
**fenner** 65:21,23 66:2
**file** 32:13,21
**filed** 6:14 13:19 16:17,20,23 17:1 17:11 21:13 35:13 35:15,19 37:10 48:16,22 49:3,12 64:4
**files** 44:21,22
**filing** 21:11
**filings** 13:7
**finally** 19:18 66:25
**financial** 10:22 11:15 44:23
**financially** 6:25 71:17
**find** 14:12 45:15 45:22
**fine** 21:18
**finish** 8:17
**firm** 34:10,19 38:12 39:2
**firms** 34:17,22,25 35:9 36:4
**first** 10:11 16:20 18:22 33:22 34:1 34:4 44:8 53:25 63:12 68:4
**five** 12:2 36:25 37:1 57:1
**floor** 3:13
**florida** 46:19 47:2
**folder** 18:20 44:13

**follow** 29:22
**follows** 8:3
**followup** 63:4
**foregoing** 21:3 70:2 71:4,7,11,13
**forgive** 65:10
**forgotten** 56:21
**form** 12:11 14:14 30:10,10 45:25
**formal** 42:3
**former** 10:17
**forth** 71:6
**fortune** 10:23
**fortune.com** 10:23
**foundation** 42:19
**frames** 54:3
**free** 50:2
**friend** 36:9,11
**front** 19:21
**frustrated** 33:15
**full** 8:7
**fuller** 43:15,17
**further** 18:10 40:9 67:3,19,23 68:13 68:14 71:13,17
**future** 43:2

**g**

**geller** 3:18 7:19 34:13,17 35:12 37:23,24 38:7,19 39:8,16,22 40:11 42:18 56:22
**generally** 53:19 54:20 62:14
**georgia** 4:18
**give** 8:21 15:2 19:17 41:5 54:5
**given** 13:3 25:24 71:12
**go** 6:10 8:13 19:22 24:15,20,21 32:19

Veritext Legal Solutions
866 299-5127

33:9 40:25 51:18
60:23 62:21
**going** 8:13,14 9:3
15:16 16:10 17:7
17:15,23 18:9,17
24:4 26:24 35:17
44:15 46:19 49:22
50:15,16,20,22
51:3 53:8 55:9
57:21 58:17 59:1
59:5,18,24 61:2
62:11 69:8
**good** 6:4 7:14
35:14 63:10
**gosh** 64:12
**grader** 60:9
**graduate** 10:6
**grear** 43:20
**ground** 8:13
**group** 47:20
**guess** 22:23 29:9
48:22 52:14 54:21
**guys** 18:22

**h**

**half** 56:9,14
**hand** 45:14
**handy** 19:25
**happen** 33:17 58:2
58:3,8,10
**happened** 17:3
19:16
**happening** 58:16
**happens** 59:14
**hard** 23:7 45:22
**head** 8:23
**heard** 61:24 65:22
65:23
**held** 29:3 31:7
**helpful** 48:12
**hi** 63:8 67:9

**history** 10:9 37:18
**hit** 19:17
**hold** 23:25
**home** 59:7
**hopkins** 3:12 7:17
9:10
**hour** 56:9,14,16
**hypothetical**
29:24 30:18 41:2

**i**

**idea** 18:4 40:11
**identified** 56:1
**implicate** 64:7
**imploded** 10:18
**incapacitated**
32:11
**includes** 27:14
**incomplete** 29:23
41:1
**incorporated**
65:21 67:1
**independent** 64:22
**index** 5:1
**indicated** 20:13
**indicates** 21:15
**individual** 24:24
**individually** 1:6
2:6
**industry** 61:17,20
62:1 64:7
**influence** 37:9
**information** 12:7
32:9 44:24 45:1
47:16
**initialed** 70:4
**ink** 70:4
**inquire** 49:23 50:7
50:8
**instruct** 15:4 18:9
24:4 40:8 48:19
49:4,17,20 51:3,9

52:9
**instructing** 49:9
51:1
**instruction** 5:18
51:12
**instructions** 29:20
29:22 30:4
**instructs** 9:12
**interest** 27:7,9,12
28:6,16 61:21
**interested** 6:25
28:10 60:20 61:24
71:18
**interesting** 60:15
**interests** 24:1
25:20 27:11 28:4
28:20 64:6,11
**introduced** 24:23
**investigator** 14:12
**investigators**
14:17
**investment** 11:16
27:18,24 28:2,20
29:3,7,8,10 33:16
44:7 46:5 62:3,12
63:23
**investments** 25:22
27:13,25 28:19,25
29:6 62:9
**ipo** 12:4,6,17 13:7
37:21 60:7 63:14
63:18
**ira** 25:13 26:25
27:10,14,18 28:4
28:21 29:21 30:21
**issue** 12:25
**issues** 60:14
**items** 48:15

**j**

**j** 4:4 25:12 26:25
27:9 28:4,21
29:20 30:12,21
31:4
**j.p.** 66:15
**jason** 43:20
**jessica** 4:15 7:8
**job** 1:23 10:11
**john** 25:12 26:25
27:9 28:4,21
29:20 30:12,21
31:4
**johnston** 34:20
**join** 7:12
**joined** 7:7
**jointly** 22:22
**journal** 11:23
**jpcorley** 4:21

**k**

**k** 45:9,10
**keel** 4:16 7:8
**keep** 44:6,22
**kids** 22:20 27:15
36:8 59:21 60:12
**kind** 11:21 13:15
27:16,24 33:17
35:7 44:7 53:14
58:15 60:23,23
**kinds** 29:5 59:10
**king** 4:13 7:6
**know** 9:17 11:23
11:23 12:25 13:24
14:15,19 15:1
16:6,15 18:19,22
19:8 21:11 22:6
23:11,12,13,14
24:7,7,8,10,12,19
25:8 26:3,12
27:12,15 28:14

Veritext Legal Solutions
866 299 5127

[know - meet]

| | | | |
|---|---|---|---|
| 29:1,2 30:6,7,17 31:1,15 32:24 33:7,17,19 34:6 35:17,22 36:25 37:12,18 41:24 42:14 43:15,17,19 43:20 44:11 45:10 45:17 46:11,24 47:17,23,25 48:3 48:11,21,23 51:12 51:12 55:17,23 56:23 57:20 58:1 58:15 59:6,9 60:8 60:13,17 61:2,3,16 61:20 68:3,8,25 **knowledge** 15:3 43:14 62:1 **korsinsky** 3:4,11 7:15,17 34:10,16 35:4,12 37:24 42:18 56:20 68:4 **kslaw.com** 4:20,21 4:22 | **lawyers** 36:21 52:24 53:6 56:7 65:11,16 **lbugni** 4:20 **lead** 13:10,12 16:12,13 37:19 42:23 43:2 **learned** 60:10 **learning** 59:7 **leased** 64:15 **leases** 64:14 **leave** 66:2 **left** 10:15 **legal** 6:23 10:13 12:23 28:3,6,12,16 69:7 **letter** 34:9,12 **levi** 3:4,11 7:15,17 34:10,16 35:4,12 37:24 42:18 56:19 68:4 **lewis** 1:6 2:6 6:13 **line** 5:19 40:15 | **load** 18:17 **loaded** 25:7 30:24 **loading** 19:10 24:17 26:10 **local** 10:16 34:19 39:4,13,16 **location** 59:8 **locations** 59:8 **lodge** 51:20 **log** 30:7 31:21 32:8,12 51:16 **login** 32:6,9 **long** 9:18 35:18 53:2 56:7,8,12 58:15 **look** 19:7 26:4 44:15 45:4 48:13 **looked** 15:10 44:13,19,21 46:6 46:12 47:15 48:11 62:6 64:1 **looking** 20:23 21:10 | **major** 10:4 **making** 29:7,9 40:25 44:18 50:2 **managing** 10:12 10:19,21,23 11:3,7 11:14 **march** 20:14,19 21:4,8,9 22:3,5 23:2 25:15 26:7 27:1 28:3 29:19 30:13 31:9 **mardin** 22:21 23:8 23:9,25 24:11,12 27:15 32:7 46:23 46:24,25 **marked** 5:10 18:18 19:1 24:18 25:8 26:11 30:25 31:1 **mason** 64:13 **materials** 50:14 **matter** 6:13 29:2 **matters** 29:4 60:24 |

| l | | | |
|---|---|---|---|
| **lacks** 42:19 **laid** 64:19 **land** 64:11 **largest** 37:20 **late** 34:7 **law** 10:13 36:8 57:11,18 **laws** 21:2 **lawsuit** 17:3 25:20 32:13,21 46:15,18 47:2 57:11,25 58:9,11 59:21 67:13 **lawsuits** 16:17 47:4 **lawyer** 9:11 10:10 10:17 33:23 34:5 | **liquidity** 29:14 **lisa** 4:14 7:6 43:20 **listed** 21:16 23:16 **lists** 22:7 **litigation** 13:16 17:18,21 18:11 35:8 41:11,19 **little** 8:17 24:14 36:8,13 44:23 55:5 62:21 **live** 11:12 **livestock** 64:12 **llc** 23:25 32:7 46:18,22 66:6,9,15 66:19,23 **llp** 3:4,11,18 4:3 4:13 7:10,15 | **loss** 13:14 32:15 37:20 **lost** 60:6,6 **lot** 54:14 61:22 **lots** 59:17 **lynch** 65:21,22 66:1 | **max** 43:15 **maximize** 13:16 **mean** 16:4 18:1,7 20:20 21:7 26:3 27:20 28:9 31:11 36:25 40:6 46:11 47:15,17 52:5,13 53:3,12,18 55:8,17 56:15 57:19 59:3 60:17 61:25 **means** 13:12 68:25 **meant** 9:4 28:10 **media** 6:11 10:10 10:17 69:6 **medieval** 10:5 **meet** 52:24 53:2 56:7 63:10 |

| | m |
|---|---|
| | **m** 31:4 **ma'am** 19:4,6 27:23 31:13 41:14 **machine** 71:9 **magazine's** 10:20 10:24 **mail** 10:15 35:25 44:9,12 45:15 **mails** 45:17 |

Page 7

Case 1:19-cv-00098-TRM-CHS   Document 128-1   Filed 12/10/20   Page 79 of 87   PageID #: 2727

| | | | |
|---|---|---|---|
| **meeting** 56:12,13 | **n** | **object** 9:11 38:20 | 65:15 69:2 |
| **member** 46:18 | | 50:15,16 | **omm.com** 4:9,10 |
| **members** 13:13 | **name** 6:21 8:7 | **objection** 12:11,22 | **once** 37:1 56:4 |
| 60:22 67:14 68:1 | 11:4 23:24 24:25 | 14:14,21 16:9 | **ones** 22:24,25 30:5 |
| **membership** 24:1 | 31:4 43:23 64:13 | 17:23 18:5 19:20 | 30:6 34:23 47:15 |
| **memo** 50:4,6 | 71:21 | 20:17 21:18 22:12 | 47:16 48:10 64:9 |
| **memos** 50:21 51:7 | **named** 37:14,19 | 22:18 23:6,21 | **ongoing** 58:1 |
| 51:23 52:7,16,17 | 46:17 | 24:2 25:18 26:2 | 60:24 |
| 61:13 | **names** 66:13 | 26:20 27:3,19 | **online** 45:2 |
| **mentioned** 31:21 | **nature** 8:23 | 28:5,22 29:23 | **open** 19:5 |
| 37:4 54:7 57:10 | **ne** 4:17 | 30:15 31:10 32:1 | **order** 68:22 |
| 59:20 60:16 | **need** 9:13,17 12:13 | 33:24 37:11,16 | **orders** 15:8,12,12 |
| **merrill** 65:21,22 | 20:18 23:13 44:15 | 38:9,13 39:3,9,17 | 15:22 16:3 |
| 66:1 | 46:7 50:23 | 39:23 40:13 41:1 | **original** 71:14 |
| **messrs** 66:2 | **needed** 59:25 | 42:5,11,19 43:5 | **originally** 27:20 |
| **met** 36:1 53:3,10 | **neither** 71:17 | 44:2 45:25 46:16 | 33:8 |
| 55:23 56:17 | **network** 10:13 | 48:17 49:4 50:25 | **outcome** 6:25 |
| **michael** 64:10 | **never** 60:16 | 51:9,20,25 52:9,20 | **outside** 50:1 61:25 |
| **microphones** 6:7 | **new** 3:14,14 4:7 | 53:7 54:13 55:6 | **overall** 29:5 |
| **minute** 19:7 57:1 | 11:23 | 58:21 61:18 | **oversee** 13:15 |
| **misleading** 12:8 | **news** 10:13,13,16 | **objections** 7:3 | 22:25 |
| 12:10,18,20 63:14 | 10:22 11:10,15,16 | **obliged** 54:21 | **owned** 23:4,20 |
| **missing** 12:7 | **newspapers** 11:24 | **observer** 11:24 | **owns** 64:12 |
| **misstates** 28:22 | **newswire** 11:21 | **obtain** 10:2 | |
| 30:15 42:5 45:25 | **nicolaus** 66:25 | **occasionally** 35:21 | **p** |
| 55:6 | **nonlegal** 27:12 | **occasions** 60:25 | **page** 5:2,11,19 |
| **money** 10:20,21 | 28:11 | **october** 1:18 2:19 | 18:24 20:7,8,9 |
| 11:4 22:23 45:4 | **note** 6:7 | 6:1,6 71:22 | **pages** 1:25 |
| 60:6 | **noted** 69:10 70:4 | **odd** 24:11 | **paper** 16:5 44:21 |
| **money.com** 10:19 | **noticing** 7:4 | **officers** 32:14,22 | **paragraph** 20:24 |
| 11:2,15 | **number** 5:11 6:16 | **offices** 13:3 | 21:14 |
| **money.com.** 11:5 | 24:25 25:17 69:5 | **oh** 7:12 12:21 19:9 | **part** 65:23 67:12 |
| **morgan** 66:5,9,15 | **numbers** 24:8 | 35:14 44:15 56:15 | **participants** 6:19 |
| **morning** 6:4 7:14 | 65:17 | 61:2 68:8 | **particular** 29:3 |
| 11:24 | **ny** 4:7 | **okay** 7:21 9:19,20 | **parties** 6:10 68:21 |
| **move** 40:5 50:23 | | 12:25 14:6 15:19 | **partition** 46:19 |
| 59:25 | **o** | 17:10 18:17 19:9 | **partly** 35:6 |
| **moved** 10:25 | **o'melveny** 4:3 | 20:18 22:1 24:20 | **party** 6:24 46:14 |
| **myers** 4:3 7:10 | 7:10 | 24:21 26:24 28:15 | 47:3 71:19 |
| | **oakland** 1:17 2:17 | 31:2 38:18 52:15 | **passionate** 61:23 |
| | 6:1 11:1,13 | 53:18 55:1 56:25 | **pate** 43:21 |

Case 1:19-cv-00098-TRM-CHS   Document 128-1   Filed 12/10/20   Page 80 of 87
PageID #: 2728

| | | | |
|---|---|---|---|
| **patrick** 43:22 | **please** 6:7 7:3 8:7 | **proceedings** 71:4 | **quite** 32:15 33:15 |
| **pdf** 19:2 | 8:16 9:2,17 12:19 | 71:7,8,15 | 33:19 44:23 56:8 |
| **pdfs** 20:7 | 18:22 20:24 24:18 | **process** 16:13 | 61:23 |
| **peachtree** 4:17 | 25:8 26:12 30:25 | **produce** 43:25 | |
| **penalty** 8:2 21:1 | 57:1 | **produced** 15:11 | **r** |
| 70:2 | **point** 9:12 36:2 | 65:16 | **r** 4:14,16 |
| **pending** 9:19 | 37:22 67:25 | **producer** 10:21,23 | **radcliffe** 3:20 7:18 |
| 16:19 | **popped** 19:18 | 11:3,7,9,14 | 50:15,18,21 |
| **pension** 45:10 | **positive** 47:1 | **progressed** 61:1 | **ran** 11:10 |
| **people** 45:4 | **precisely** 34:11 | **promised** 43:1 | **rattle** 66:13 |
| **period** 34:7 58:14 | **predated** 45:19 | **proper** 51:11 | **read** 11:22 20:24 |
| **periods** 59:17,17 | **preparation** 65:3 | **proposing** 16:8 | 61:11,13 63:18 |
| **perjury** 8:3 21:1 | 65:7 | **protective** 68:21 | 64:3,24 65:3 70:2 |
| 70:2 | **prepare** 47:6 | **provide** 10:8 | **ready** 19:8 51:8,24 |
| **perry** 4:15 | 48:15 49:2,24 | 65:10 | 52:8,17 |
| **person** 8:16 36:1 | 50:5,13 52:24 | **provided** 63:25 | **real** 29:3,7 44:18 |
| 53:4 | 53:6,11 55:22,24 | **pull** 19:25 | 46:18 47:3 |
| **personal** 22:11,16 | 56:17 64:25 | **purchase** 31:8 | **really** 41:4,5 59:23 |
| 22:23 25:5 | **prepared** 50:4 | **purchases** 62:4,18 | 61:19 |
| **personally** 23:4,19 | 51:7,23 52:7,17 | 62:23 | **rearranging** 59:6 |
| 35:10 | **presence** 39:18 | **purpose** 54:23 | **reason** 39:21 42:7 |
| **pertains** 71:13 | **present** 2:21 4:24 | **pursuant** 19:11 | **reasons** 13:15 |
| **peterson** 43:19 | 5:4 36:21 | 37:21 60:7 | **recall** 13:24 14:1,9 |
| **phone** 35:25 36:20 | **previously** 18:18 | **put** 48:6 51:16 | 14:16 15:6,13,14 |
| 41:23 53:3 | 24:17,23 25:7 | **putting** 54:18 | 15:23 16:3,5 |
| **phrase** 28:8,9 | 26:10 30:24 43:13 | | 20:12 26:1,9 |
| **pick** 6:8 | 48:10 55:1 | **q** | 27:25 34:7,11,14 |
| **picture** 29:9 | **prior** 5:10 62:4 | **question** 9:1,3,11 | 38:3,4,6 54:2,19 |
| **pierce** 65:21 66:2 | 71:7 | 9:14,19 12:14 | 55:12 56:3 57:17 |
| **place** 6:10 71:6 | **private** 6:8 59:8 | 15:21 17:9 38:24 | 60:11 61:6 62:8 |
| **places** 45:12 46:4 | 60:2 | 41:3,5,23 49:11 | 62:12,14 63:13 |
| **plaintiff** 1:8 2:8 | **privilege** 51:16 | 51:6,18,19 58:22 | 68:8 |
| 3:3 7:16,20 13:10 | **privileged** 39:10 | 58:24 61:19 62:21 | **received** 49:18 |
| 13:12 16:12,13 | **probably** 13:24 | 63:12 66:19,21,23 | 50:1 65:12 |
| 19:10 37:20 42:24 | 30:2 31:19 59:9 | 67:1,9 | **recess** 57:6 |
| 43:3 49:21 | 60:25 61:23 | **questions** 8:15 | **recognize** 43:23 |
| **plaintiffs** 13:17 | **problem** 21:12 | 13:21,25 40:16 | **recollection** 11:3 |
| 34:23 35:1 36:18 | **proceed** 41:11,19 | 61:4,7 63:2,3 67:4 | 21:5 50:9,13 |
| 37:3,15 | **proceeding** 7:3 | 67:19 | **record** 6:5,10 7:2 |
| **platform** 18:15 | 19:21 | **queue** 24:19 25:9 | 8:8 20:25 57:5,5,7 |
| | | **quinn** 43:21,22 | 66:14 68:20 69:8 |
| | | | 71:8,11 |

Veritext Legal Solutions
866.299.5127

| | | | |
|---|---|---|---|
| recorded 6:11 | renew 52:20 | reveal 39:24 40:14 | rule 58:17 59:19 |
| recording 6:9 | repeat 62:21 | reveals 49:10 | ruled 35:20 |
| records 44:7 | repeating 40:15 | review 13:18 | rules 8:13 |
| recross 67:3 | rephrase 9:2 | 16:22 21:21 47:14 | **s** |
| redwan 4:5 7:12 | 12:13 38:24 51:19 | 49:1 52:7,16 | saleh 4:5 7:12 |
| referenced 5:10 | reported 1:21 | 62:17,22 71:15 | sales 22:5 |
| 26:16 | reporter 2:21 6:22 | reviewed 15:8,25 | san 3:22 |
| referred 33:7 | 7:22 8:15,18,22 | 22:3 47:10,12 | satisfies 50:9 |
| referring 33:5 | 13:6 40:19,21 | 48:4,5,7,14 49:12 | saw 57:13 |
| reflects 22:4 | 71:2 | 51:13 | saying 24:12,13 |
| refresh 11:3 19:17 | represent 6:22 | reviewing 15:13 | 48:3 49:16 54:2 |
| 21:5 24:20 | 13:13 40:12 63:9 | 15:23 | says 20:8 |
| refreshed 50:9 | 67:14 68:1 | revisit 51:2 | schedule 21:16,21 |
| refreshing 50:12 | represented 9:6 | rgrdlaw.com 3:24 | 21:25 22:3,4,7 |
| regarding 33:23 | representing | 3:25 | 23:4,17 |
| 62:23 | 34:17,22,24 35:1,1 | right 11:5 13:23 | scheduled 59:15 |
| registration 12:3 | request 42:13 | 20:2,19 23:10 | school 60:1 |
| 12:18,19 63:14,19 | 65:12 | 25:2,14 28:12 | search 46:3 |
| 64:3 | requested 44:5 | 29:12 35:2,3,19 | searched 44:8,9 |
| regularly 32:12 | 71:16 | 38:8 41:5,22 44:7 | sebastian 3:5 9:9 |
| relate 33:13 | requests 43:25 | 45:16 46:8,19 | 19:14 40:7 51:11 |
| related 6:24 12:17 | require 30:13 | 47:18 48:9 49:15 | 56:19 |
| 17:9 25:25 38:4 | reread 51:19 | 53:4 54:3 59:15 | sebastiano 7:15 |
| 45:15,23 46:13 | research 35:9 | 62:11 63:3 64:19 | second 19:17 20:7 |
| 47:3 | reserve 63:3 | 68:18 | 20:9 38:12 39:2 |
| relating 46:5 | resigned 38:18 | robbins 3:18 7:18 | securities 35:8 |
| relative 71:18 | resolve 41:9 42:3 | 34:13,16 35:12 | 66:15,19,23 |
| reliant 52:14 | resolved 41:17 | 37:2,5,8,18,23,24 | see 17:10 20:19 |
| relied 49:23 50:5 | respect 38:21 | 38:6,19 39:8,15,22 | 26:14 32:23 56:22 |
| 50:13 51:13 52:1 | 64:20 | 40:11,25 41:12,18 | seeking 51:14,15 |
| 52:21 | respond 14:4 | 42:18 56:22 | seen 20:5 56:23 |
| rely 50:2 51:7,23 | responses 8:21 | role 11:14 13:8,15 | select 47:13 48:2 |
| 52:5,12,13,16 | retain 13:2,5 | 16:8 | selected 47:19 |
| remains 13:1 | 37:23 38:11 39:1 | rollover 25:13 | sell 29:15 |
| remember 47:24 | 39:7,21 40:11 | 26:25 27:10,14,18 | selle 1:21 2:20 |
| 68:11,12 | retained 37:24 | 28:4,21 29:21 | 6:22 71:24 |
| remote 1:16 3:1 | 38:6,19 69:7 | 30:12,21 | send 30:9,10 47:20 |
| 4:1,24 6:18 | retired 10:25 | rooms 57:2 | sense 8:19,24 16:2 |
| remotely 2:18 | 45:12 | rsaleh 4:10 | 27:12 28:11,12 |
| 6:20 | return 13:16 | rudman 3:18 | 29:17 55:21 |

Veritext Legal Solutions
866.299.5127

sensitive 6:7
sent 45:18 47:22
  48:8,9 50:5,21
separate 32:6
separately 65:2
series 8:14
serve 42:23
served 14:19
  43:24
serving 43:2
session 57:3
set 11:7 47:24 71:6
seven 23:16
shake 8:22
shannon 3:12 7:17
  9:9 40:7 56:19
share 18:15
shocked 60:5
shopkins 3:16
short 47:18 56:13
  56:13
shorter 56:9
shorthand 2:20
  71:1,9
shredded 46:7
sign 20:11 30:3,10
  34:9,12
signature 20:9,24
  30:14,22 71:24
signed 12:3 20:16
  20:20 21:6,8,15,24
  22:2 23:3 25:15
  26:6 27:1
signing 21:22 22:4
similar 13:14,14
similarly 1:7 2:7
sister 36:8 57:11
  57:18
situated 1:7 2:7
skill 11:7

skimmed 20:3
small 44:23
smith 65:21,23
  66:2
solutions 6:23
  69:7
somebody 59:19
son 59:25 60:2
sorry 15:16 21:10
  21:19 31:17,18
  35:25 38:18 54:1
  55:15 56:21 62:20
  62:20
sort 15:11 35:20
  44:6,22 55:9 60:5
  60:14 61:3
sounds 20:19
sources 11:18
space 60:2
spaced 62:20
spalding 4:13 7:6
speak 37:17 38:21
  53:5,22
special 61:25
specific 15:6 20:21
specifically 13:25
  16:5 62:13
specifics 14:9
speculate 31:15,16
  31:18 41:21
speculation 31:19
spelled 44:10
split 42:18
spoke 15:18 34:4
  53:10,18,19 54:3
  54:16,16
spoken 36:19,23
  54:19 66:11
square 4:6,6
stamford 3:7

standing 50:25
stanley 66:6,9
start 10:15
started 10:19
  11:25 32:25 53:12
starting 11:2
  59:23
startup 10:16
state 7:1,3 8:7
  16:20,22 17:6,14
  70:8 71:2
stated 8:2
statement 12:4,18
  12:20 25:11 31:3
  44:25 63:14,19
  64:3
statements 12:17
  44:24 45:22 46:9
states 1:1 2:1 6:15
  21:2
stay 11:15,18
stein 1:6 2:6 6:13
stephens 66:21
stick 55:9
stifel 66:25
stock 21:15 23:4
  29:12,14 30:20
  31:8
stories 11:11
stornatore 3:9
stow 44:14
strategy 17:19,22
  18:11
street 3:6 4:17
  10:15 11:23
structure 42:3
structured 45:11
stuff 24:9 44:14,18
  45:19 46:9 60:1,9
subject 67:3

submit 42:13
subpoenas 14:20
subscribed 71:20
substance 33:18
  51:14
substantial 32:15
suing 12:1,2,2
suit 16:20 45:19
suite 3:6,21
summarize 65:6
summarizing
  61:13
summer 3:6 34:7
super 47:18 60:20
supplied 65:13
suppose 47:17
sure 12:16 13:16
  14:8 16:15 18:23
  19:23 23:13 24:9
  24:14 28:25 46:24
  48:21 57:2 59:16
  62:9 68:23
surprise 44:12
sushon 4:4 5:7 7:9
  7:9 19:12,20 20:1
  51:11 63:2,7,8
  67:3 68:14,24
swear 7:22
sworn 71:8

t

take 6:9 8:15,22
  9:18 19:6 30:3,14
  30:18 56:25 59:5
taken 2:17 6:12
  71:4
talk 27:24 41:23
  57:19,20 60:9
  61:8 68:6
talked 15:14 34:1
  36:5,7,8 54:14,23
  55:3,4 59:10

61:10 68:4,5,9

**talking** 32:25 33:8 44:9 58:9 59:4

**talks** 61:22

**te** 1:21 2:20 6:22 71:24

**technology** 6:19

**tell** 8:2 24:10 36:11 45:4 69:3

**tennessee** 1:2 2:2 6:16 16:21 39:5 39:13,16,19

**terese** 31:4

**term** 52:1

**terminals** 11:20 11:21 64:10,12,15

**terms** 58:19

**terry** 1:16 2:17 5:3 6:12 7:16 8:1,9,10 13:8 18:14 19:24 25:1,12 26:25 27:10 28:4,21 29:20 30:12,21 31:4,5 51:20 57:10 63:8 65:17 68:16 69:5 70:1 70:12

**testified** 8:3 12:16 24:2 46:4 55:1 59:1

**testify** 51:8,24 52:8,18 60:16

**testifying** 63:13 71:7

**testimony** 26:16 28:23 30:16 42:6 46:1 55:7 61:11 61:14 64:25 65:3 65:6 70:5 71:12

**thank** 7:21 18:25 63:11 67:4 68:16

68:17 69:9

**thanks** 68:18

**thing** 47:25 48:1 60:10

**things** 8:23 11:22 14:7 45:7 46:7,10 48:21 55:16 57:21 59:10 63:23,24

**think** 12:13 19:16 24:3 27:16 30:2,5 36:9 44:15 49:11 50:7,23 54:11 55:5,8,9,25 57:14 58:7 60:13,15 63:25 64:13 65:23 68:3

**third** 54:12 56:3

**thought** 55:2

**three** 37:14 41:10 42:2,4 45:12 53:24 54:10 55:2 55:8,10,13,25

**time** 6:5 7:4 8:16 9:18 10:18 27:6 33:11 34:4 35:15 35:15,18 37:22 38:4 42:15 53:10 53:25 54:2,11,12 56:2,3,9 57:5,8,13 57:15,20 58:11 59:4,6 63:22 67:5 67:12,20,25 68:16 69:8,10 71:5

**times** 4:6,6 19:18 29:16 35:15 36:23 36:25 53:5,20,22 53:24 54:10 55:2 55:5,12,23,25 56:6 56:8

**title** 11:9

**today** 6:5 8:14 9:6 36:10 47:7 48:15 49:24 50:14 51:8 51:24 52:8,18 55:22,24 59:24 63:15

**today's** 69:6

**told** 27:5 36:9 40:4 40:5 53:13

**tornatore** 3:5 5:8 7:14,15 12:11,22 14:3,14,21 15:1,16 16:9 17:4,7,15,23 18:5,9,25 19:15 20:17 21:18 22:12 22:18 23:6,21 24:2 25:18 26:2 26:20 27:3,19 28:5,22 29:23 30:15 31:10,14 32:1 33:2,12,24 37:11,16 38:1,9,13 38:15,20 39:3,9,17 39:23 40:8,13,18 41:1,20 42:5,11,19 43:5 44:2 45:25 46:16 47:8 48:17 49:4,17,25 50:8,16 50:20,25 51:9,18 51:25 52:9,20 53:7,15 54:5,13,15 55:6,18 57:2 58:4 58:21 61:18 67:8 67:17,19 68:15,17 68:19

**total** 69:5

**touch** 34:2

**tower** 4:6

**trade** 23:12

**transactions** 21:15

**transcribed** 71:10

**transcript** 70:3 71:11,14,16

**trial** 59:15

**trough** 58:15

**truck** 64:10,15

**trucking** 61:16,20 62:1 64:7,15,18

**true** 21:3 70:6 71:11

**trust** 31:5,23

**trust's** 31:7

**truth** 8:2

**try** 28:24

**trying** 24:9,14 31:17 54:1 55:21

**turn** 21:24 50:23

**tv** 11:9,9

**twice** 24:3 56:4

**two** 19:18 22:19 51:3 55:5 69:6

**types** 11:18

**typically** 35:23

**u**

**u.s.** 1:10 2:10 6:14 7:7 14:20 16:18 27:18 28:1,19 29:10,11 32:14,22 43:10,13,24 44:10 44:10,11,19 45:6 45:15,23 46:5,13 62:3,17,23 63:18 66:3,9,17

**undergraduate** 9:23

**undersigned** 71:1

**understand** 9:2,15 23:14 41:2 48:4 58:22

**understanding** 13:11 16:7 28:13

Page 12

29:21 39:15 41:16 41:21 49:1 52:12 52:13,15 64:17,21 67:13
**understood** 9:4
**underwriter** 4:2 7:10 63:9
**underwriters** 12:4 66:12,12
**unit** 6:11
**united** 1:1 2:1 6:15 21:2
**units** 69:6
**university** 10:1
**updated** 61:3
**upheld** 16:1
**upstairs** 60:1
**use** 14:11
**usually** 44:17
**usx** 4:12 12:2 21:15 44:10 64:20
**usx's** 13:2 63:14

**v**

**vague** 31:10
**vanguard** 29:20 30:14 31:8,11,21 32:8 45:13
**various** 29:5 57:21
**verbal** 8:21
**verging** 32:24
**veritext** 6:23 69:7
**versus** 6:14
**video** 6:9,11
**videoconference** 2:18,21 5:4 71:5
**videographer** 4:25 6:4,21 7:21 57:4,7 69:4
**videorecorded** 2:16

**videotaped** 1:16
**volume** 1:19 2:17 5:5 13:6 70:3,12
**vs** 1:9 2:9

**w**

**waiting** 35:21 58:16 59:18
**wall** 11:23
**want** 19:6 23:14 29:11 33:7 46:23 51:2 66:3
**wanted** 29:13
**warner** 10:18
**way** 48:25
**we've** 36:5 42:7 53:19 54:14 55:4 58:8
**website** 10:14,20 10:22,24 11:11 30:7
**wednesday** 1:18 2:19 6:1 54:22
**week** 54:3,11,12 54:21,22 56:1,2,4 56:5,6,11,20
**wells** 66:19
**went** 10:18
**west** 3:21 4:25 6:21
**western** 64:14
**whereof** 71:20
**whispering** 6:8
**william** 4:4
**willow** 3:20 7:18 9:10 56:20
**willowr** 3:25
**winter** 32:25
**wished** 29:15
**witness** 3:3 5:2 7:22 12:13,25 13:6 14:3,6,16,22

14:24 15:6,19 16:10 17:8,10,16 17:18,24 18:1,7,10 19:1 20:2,18 22:13,19 23:7,22 25:19 26:3 27:4 27:20 28:6,24 30:17 31:11,14,17 33:2,15,25 37:12 37:17 38:1,3,14,18 38:23 39:4,12,18 40:1,17,22 41:4,20 41:22 42:7,12,20 43:7 46:17 47:8 47:10 48:19,20 49:5,7 51:1,4,10 52:4,10,19,21 53:8 53:15,18 54:7,14 54:15,18 55:8 58:7,23 61:19 67:18,20 68:18,25 69:3 71:20
**witnesses** 14:12 71:6
**work** 11:25 42:10 58:11,18,20 59:2,7 59:12
**worked** 10:10 43:13 45:12 61:20
**working** 68:21
**works** 43:10
**wr** 66:23
**wsushon** 4:9

**x**

**x** 44:11 71:16
**xpress** 1:10 2:10 6:14 7:7 16:18 27:18 28:1,20 29:10,11 32:14,22 43:10,13,24 44:10 44:10,11,20 45:7

45:15,23 46:5,13 62:4,17,23 66:3,10 66:17
**xpress's** 14:20 63:18

**y**

**yeah** 9:7 14:16 15:10 16:5,6 17:18 18:7,16 19:12,15 20:1 21:12 25:14 28:6 34:19 36:22 37:7 40:1,6 43:7 45:17 48:20 50:16 56:15 56:15,15 58:7,23 62:22 63:16 67:16 68:12
**year** 10:2
**years** 61:21 62:10
**yesterday** 36:9,12
**york** 3:14,14 4:7 11:23

**z**

**zlk.com** 3:9,16
**zoom** 41:7,24 53:4

Page 13

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.