# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DIVISION OF TENNESSEE

CHATTANOOGA DIVISION

_____

LEWIS STEIN, Individually and   )

on Behalf of All Others         )

Similarly Situated,           )

        Plaintiff,         )

    vs.                   ) Case No.

U.S. XPRESS ENTERPRISES, INC.,   ) 1:19-cv-00098

et al.,                    )

        Defendants.        )

_____)

REMOTE VIDEOTAPED DEPOSITION OF BRYAN KEITH ROBBINS

Winterhaven, Florida

Wednesday, October 21, 2020

Volume I

Reported by:

CHRIS TE SELLE

CSR No. 10836

Job No. 4305302

PAGES 1 - 61

Page 1

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 2 of 76
PageID #: 3585

```
                UNITED STATES DISTRICT COURT

              EASTERN DIVISION OF TENNESSEE

                   CHATTANOOGA DIVISION


     _____

LEWIS STEIN, Individually and   )

on Behalf of All Others         )

Similarly Situated,             )

            Plaintiff,          )

       vs.                      ) Case No.

U.S. XPRESS ENTERPRISES, INC.,  ) 1:19-cv-00098

et al.,                         )

            Defendants.         )

     _____)




     Videorecorded Deposition of BRYAN KEITH

ROBBINS, Volume I, Winterhaven, Florida, taken

remotely via videoconference, beginning at

11:40 a.m. and ending at 1:24 p.m., on Wednesday,

October 21, 2020, before Chris Te Selle, Certified

Shorthand Reporter No. 10836, present via

videoconference.
```

Veritext Legal Solutions
866 299-5127

APPEARANCES (via remote conferencing):

For Plaintiff and the witness:
 BRAGAR EAGEL & SQUIRE
   BY:  W. SCOTT HOLLEMAN, ESQ.
   101 California Street, Suite 2710
   San Francisco, California 94111
   (646) 860-9449
   holleman@bespc.com

   BRAGAR EAGEL & SQUIRE
   BY:  MARION PASSMORE, ESQ.
   885 Third Avenue, Suite 3040
   New York, New York 10022
   (212) 308-5858
   passmore@bespc.com

For Plaintiff:
   ROBBINS GELLER RUDMAN & DOWD LLP
   BY:  CHRISTOPHER M. WOOD, ESQ
   414 Union Street, Suite 900,
   Nashville, Tennessee 37219
   (615) 244-2203
   cwood@rgrdlaw.com

Veritext Legal Solutions
866 299-5127

APPEARANCES CONT'D (via remote conferencing):

For Plaintiff:
  ROBBINS GELLER RUDMAN & DOWD LLP
  BY:  DEBASHISH BAKSHI, ESQ.
  655 West Broadway Suite 1900,
  San Diego, California 92101
  (619) 231-1058
  dbakshi@rgrdlaw.com

For the Underwriter Defendants:
  O'MELVENY & MYERS LLP
  BY:  REDWAN SALEH, ESQ.
  7 Times Square, Times Square Tower
  New York, NY 10036
  (212) 728-5897
  rsaleh@omm.com

Page 4

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 5 of 76
PageID #: 3588

APPEARANCES CONT'D (via remote conferencing):

For the USX Defendants:
   KING & SPALDING LLP
   BY:  JESSICA PERRY CORLEY, ESQ.
        LISA R. BUGNI, ESQ.
   1180 Peachtree Street, NE
   Atlanta, Georgia 30309
   (404) 572-4717
   jpcorley@kslaw.com
   lbugni@kslaw.com

Also Present (via remote conferencing):
Jonathan Pearl, Veritext
David West, videographer

Page 5

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 6 of 76
PageID #: 3589

                            INDEX

WITNESS                 EXAMINATION                    PAGE

BRYAN KEITH ROBBINS

(present via videoconference)

Volume I

                        BY MS. CORLEY                       8

                        BY MR. SALEH                       53

                        BY MR. HOLLEMAN                    56




                            EXHIBITS

EXHIBIT NUMBER                                          PAGE


Exhibit 17   Declaration of Bryan K. Robbins in     28

                 Support of Plaintiffs' Motion for

                 Class Certification, 7 pp.




            PRIOR MARKED EXHIBITS REFERENCED

EXHIBIT NUMBER                                          PAGE


Exhibit 1                                              37


Exhibit 5                                              22


                                              Page 6

Veritext Legal Solutions
866 299-5127

Winterhaven, Florida, Wednesday, October 21, 2020

11:40 a.m.

THE VIDEOGRAPHER:  Good morning.  We are on the record.  The time is 11:40 a.m.  The date today is October 21, 2020.  Please note the microphones are sensitive and may pick up whispering and private conversations.  Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit 1 of the video-recorded deposition of Keith Robbins, taken by counsel for defendants, in the matter of Lewis Stein, et al., versus U.S. Xpress Enterprises, Inc., et al., filed in the United States District Court, Eastern District of Tennessee, Chattanooga Division, case number 1:19-cv-00098.

The deposition is being conducted using Remote Counsel technology, and all participants are attending remotely.

My name is David West.  I am the videographer.  The court reporter is Chris Te Selle.  We represent Veritext Legal Solutions.

I am not related to any party in this action, nor am I financially interested in the outcome.

11:40:00

11:40:20

11:40:39

11:40:56

11:41:09

Page 7

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 8 of 76
PageID #: 3591

Counsel will now state their appearances and affiliations for the record. If there are any objections to proceeding, please, state them at the time of your appearance, beginning with the noticing attorney.

MS. CORLEY: Good morning. Jessica Corley, with King & Spalding, on behalf of the USX defendants. Also with me is my partner Lisa Bugni.

MR. HOLLEMAN: Good morning. Scott Holleman, from Bragar, Eagel & Squire, on behalf of --

MR. SALEH: This is Redwan Saleh, from O'Melveny & Myers, on behalf of the underwriter defendants.

THE VIDEOGRAPHER: Is that everybody? Okay. The court reporter may now swear the witness in, and we will continue.

BRYAN KEITH ROBBINS, having stated to tell the truth under penalty of perjury, was examined and testified as follows:

EXAMINATION

BY MS. CORLEY:

Q. Good morning, Mr. Robbins. Please, state your full name for the record.

11:41:13
11:41:21
11:41:36
11:42:02
11:42:05
11:42:23

Veritext Legal Solutions
866 299-5127

A.    Bryan Keith Robbins.                    11:42:26

Q.    Have you ever had your deposition taken before, Mr. Robbins?

A.    No.

Q.    I'm just going to go through a few ground    11:42:34
rules for the deposition today.  I'm going to be asking you a series of questions about your background, and matters related to this litigation, okay?

A.    Okay.                                    11:42:44

Q.    And we have a court reporter here who is going to take down all of my questions and all of your answers as we go through the deposition today.

Because everything is being recorded, it's important that all of your answers be verbal.  So,    11:42:57
you just nodded your head right there, for example. If you could, and especially with the Zoom environment, it's important that you give verbal answers of yes or no, not nods of the head.

Does that make sense?                    11:43:11

A.    Yes.

Q.    Okay.  It's also important for us not to talk over each other, because the court reporter can only take down one of us at a time, so, please, wait until I finish my question before you give your    11:43:26

Page 9

answer, okay?  And I'll try to do --                 11:43:29

A.   Okay.

Q.   -- my best to wait until after you have finished your answer before I ask my next question.

Your counsel or other lawyers may object        11:43:40
to my questions at times during the day, but, please, unless your lawyer instructs you not to answer any question, please, just go ahead and answer the question after the objection is stated.

Does that make sense?                    11:43:54

A.   Yes, it does.

Q.   Okay.  And if at any point today you do not understand my questions, will you please let me know?

A.   Okay, I will.                       11:44:07

Q.   And if you answer a question without telling me that you do not understand something about it, we will assume that you understood the question, is that fair?

A.   Yes, it is.                         11:44:19

Q.   Okay.  Finally, if you need a break at any time today, just let me know.  I only ask that if you answer any, that you answer any pending questions before we take a break.  Understood?

A.   Okay.                               11:44:33

Page 10

Q. Okay, great. Are you represented by counsel today? 11:44:35

A. Yes.

Q. And who is representing you?

A. Scott Holleman. 11:44:43

Q. And what firm is Mr. Holleman with?

A. Bragar and -- I can't remember all the names on it.

Q. That's okay. Are you represented by any other attorneys in connection with this litigation? 11:44:58

A. No, just the ones on his team.

Q. Okay. We're going to go through a little bit of your background for a few minutes.

Where do you currently live?

A. I live in Winterhaven, Florida. 11:45:16

Q. And do you have any other residences?

A. No, I do not.

Q. Do you have a college degree?

A. Yes, I do.

Q. And where is that, what college? 11:45:30

A. I have a bachelor's degree from the University of Georgia.

Q. And when did you obtain that degree?

A. 1987.

Q. Any other degrees? 11:45:44

Page 11

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 12 of 76
PageID #: 3595

A.   Yes.  I have a master's degree from

University of Northern Colorado, and a master's

degree from American Military University.

Q.   And what was your undergraduate degree in?

You said from Georgia.  What was the, you said a

bachelor.  What was the focus?

A.   It was a bachelor of arts in history.

Q.   And what are your master's degrees?

A.   A master of arts in sports administration,

from the University of Northern Colorado, and a

master of arts in American history, from American

Military University.

Q.   Do you hold any professional

certifications?

A.   Yes, I do.

Q.   What are those?

A.   I hold a active project management

professional credential, a active professional

designation in logistics and supply chain, and

active maritime port executive.

Q.   Are you currently employed?

A.   Yes, I am.

Q.   Where are you currently employed?

A.   I work for the Florida Department of

Transportation.

Page 12

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 13 of 76
PageID #: 3596

Q. What is your title? 11:47:13

A. I am the District 1 Freight and Seaport Coordinator.

Q. And what are your responsibilities in that role? 11:47:31

MS. CORLEY: I think he froze. Is he frozen for you all?

(Videoconference connection terminated.)

(Recess: 11:47 a.m. to 11:52 a.m.)

THE VIDEOGRAPHER: We are back on the record. 11:52:03 The time is 11:52 a.m.

(The pending question was read.)

THE WITNESS: As the seaport coordinator, I manage all federal and state grant funding for capital infrastructure projects at Fort Manatee, in 11:52:39 Manatee County, and on the freight side I'm basically the liaison between the freight and logistics industry, the department of transportation, and local agency planners, to ensure that all matters relating to efficient and safe 11:52:55 mobility of freight and goods are maintained on our transportation system.

BY MS. CORLEY:

Q. Thank you. How long have you held your current position? 11:53:10

Page 13

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 14 of 76
PageID #: 3597

A.    Just over six years.    11:53:12

Q.    And just briefly walk me through your professional work history prior to your current position.

A.    Prior to this position, I worked for a wholly-owned subsidiary of the Boeing Company in defense contracting and logistics command and control systems for the U.S. Military.  Prior to that, I was a Department of the Army civil servant for four years.  And prior to that, I was a regular Army officer in the U.S. Army for 20, a little over 20 years.    11:53:29 … 11:53:46

Q.    Thank you for your service to our country, sir.

A.    Thank you.    11:53:59

Q.    Okay.  Turning now to the lawsuit that we're here for today, Mr. Robbins, why did you decide to file the lawsuit that we're talking about today?

A.    After I bought my shares in the IPO, I noticed that the share price had been dropping, dramatically, and I saw a news press release from the law firm that Scott works for, Bragar and Eagel, or whatever, and saying that they were bringing up this suit in relation to the drop in price.    11:54:14 … 11:54:34

Page 14

And so I inquired about it to see what was 11:54:40 going on, and one thing led to another, and here we are.

Q. Okay. And who are you suing in this case?

A. USX. 11:54:53

Q. Anyone else?

A. No.

Q. What are the claims that you've alleged in the case?

A. That the financial standings that the 11:55:03 company was on were misrepresented prior to the IPO, and that the true nature and reason they did the IPO were not exactly explained clearly to everyone who bought in, and, afterwards, the company's financial standing went down instead of up, dramatically. 11:55:27

Q. And what do you contend is the true reason the company did the IPO?

MR. HOLLEMAN: Objection.

BY MS. CORLEY:

Q. You can answer. 11:55:42

A. In my own opinion in layman's terms, they needed money for something other than what they told the public.

Q. And do you know what, do you have an opinion about what they needed money for, other than 11:55:57

Page 15

what they told the public?    11:56:01

MR. HOLLEMAN:  Objection.

THE WITNESS:  No, not really.

BY MS. CORLEY:

Q.   What is your current role in the case?    11:56:14

MR. HOLLEMAN:  Objection.

THE WITNESS:  As stated, plaintiff.

BY MS. CORLEY:

Q.   And do you know if you've been appointed as lead plaintiff in the litigation?    11:56:31

A.   I think so.  I'd have to go back and look at all of the notes, the e-mails with the lawyer.

Q.   Is your counsel currently seeking any change in your role for this litigation?

MR. HOLLEMAN:  Objection.    11:56:49

THE WITNESS:  None that I'm aware of.

BY MS. CORLEY:

Q.   Okay.  What is your understanding of what it means to be a class representative?

MR. HOLLEMAN:  Objection.    11:57:06

THE WITNESS:  Representative of a large body of people who were affected by the actions of another company.

BY MS. CORLEY:

Q.   And what would your responsibilities be as    11:57:16

Page 16

a class representative?                          11:57:19

MR. HOLLEMAN:  Objection.

THE WITNESS:  I don't really have anything to
elaborate on further.

BY MS. CORLEY:                                  11:57:33

Q.  You don't understand what your
responsibilities would be as a class representative?

MR. HOLLEMAN:  Objection.

THE WITNESS:  I'll go with my lawyer on that
one.                                            11:57:46

BY MS. CORLEY:

Q.  You can answer the question if you have an
understanding of what your responsibilities are.  If
you don't, then you can say, I don't have an
understanding, or, I don't know.                11:57:54

MR. HOLLEMAN:  I was only objecting so far as
your not revealing any privileged attorney-client
communications.  If you can answer the question
without revealing that, then, do so.

THE WITNESS:  I don't fully understand it,     11:58:11
other than what my attorneys have explained to me in
our e-mail correspondence, in the discussion.
Basically, kind of what I'm doing now.

BY MS. CORLEY:

Q.  Okay.  Have you reviewed any documents      11:58:25

Page 17

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 18 of 76
PageID #: 3601

that have been filed in this litigation?                   11:58:27

A.    Just the documents that have been, the regular court documents that have been provided to me by my attorneys.

Q.    Which documents were those?                   11:58:42

A.    The claim file, the different court proceedings that have occurred so far, the rulings of the court so far, and the appeal, and all of those documents.

Q.    Have you reviewed the amended complaint?    11:59:01

A.    Yes, I believe I have.  That was the most recent one, yes.

Q.    About how many times have you reviewed the amended complaint?

A.    Just once.                   11:59:15

Q.    Do you recall when you first reviewed the amended complaint?

A.    No, I don't recall exactly.

Q.    Do you know if it was, the first time was within the last six months?                   11:59:31

MR. HOLLEMAN:  Objection.

THE WITNESS:  Yes.

BY MS. CORLEY:

Q.    Okay.  So it was in 2020, fair to say?

MR. HOLLEMAN:  Objection.                   11:59:45

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 19 of 76
PageID #: 3602

THE WITNESS: Yes. 11:59:46

BY MS. CORLEY:

Q. Do you know if you reviewed the amended complaint before it was filed?

A. No. 11:59:58

Q. Did you authorize the amended complaint to be filed?

A. Yes, I believe so.

Q. So, when you reviewed the amended complaint some point in this year, did you have any questions about it? 12:00:15

MR. HOLLEMAN: Objection.

THE WITNESS: No, I don't recall.

BY MS. CORLEY:

Q. Do you recall whether you provided any feedback on the amended complaint? 12:00:28

A. No, I don't believe I did.

Q. And without revealing any discussions with your counsel, have you discussed the amended complaint with anyone? 12:00:45

A. No.

Q. Do you know whether you have any obligation to determine that the allegations in the complaint were accurate before it was filed?

MR. HOLLEMAN: Could you restate the question, 12:01:07

Page 19

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 20 of 76
PageID #: 3603

please.

BY MS. CORLEY:

Q.  Do you know if you have any obligation to determine whether the allegations in the complaint were accurate when it was filed?

A.  No, I don't believe so.  I would refer to my attorney on that one.

Q.  Did you authorize the use of an investigator to find confidential witnesses in this case?

MR. HOLLEMAN:  Objection.

THE WITNESS:  I don't recall.

BY MS. CORLEY:

Q.  Have you authorized your counsel to serve subpoenas on anyone in connection with this litigation?

MR. HOLLEMAN:  Objection.

THE WITNESS:  I don't know that one.

BY MS. CORLEY:

Q.  Do you know whether your counsel has issued any subpoenas in connection with this litigation?

A.  I don't know.

Q.  Have you reviewed any orders entered by the court in this case?

Veritext Legal Solutions
866 299-5127

A. I'm not sure I understand the question. 12:02:34

Q. Have you reviewed anything, any documents, any court orders, anything issued by the court?

A. Just the ones that have been provided to me by my attorney, I guess, maybe the original 12:02:47 finding, and then their response to the appeal. That's about it, that I can recall.

Q. Do you know what court this case is pending in?

A. Federal court in Chattanooga. 12:03:06

Q. And what relief are you seeking in this litigation?

MR. HOLLEMAN: Objection.

THE WITNESS: I, basically, want my money back.

BY MS. CORLEY: 12:03:27

Q. Break that down for me. What money?

MR. HOLLEMAN: Objection.

THE WITNESS: I would like all the money that I invested in them in good faith. I want that back, at least. 12:03:53

BY MS. CORLEY:

Q. Okay. Have you filed any lawsuits against U.S. Xpress in any other court?

A. No.

Q. All right. I'm going to introduce a 12:04:23

Page 21

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 22 of 76
PageID #: 3605

document now into Exhibit Share.                          12:04:25

        Can you see the document, sir?

        I'm introducing what has been previously

marked as Exhibit 5.  Let me know when you can see

the document, please.                                    12:05:16

    A.   I can see it now.

    MR. HOLLEMAN:  Jessica, I'm not seeing any

documents for Mr. Robbins.  I'm only seeing the

documents for Mr. Clowdis and Mr. Terry.

    MS. CORLEY:  Have you tried to refresh?              12:06:11

    MR. HOLLEMAN:  Working on it right now.

    Yeah I just refreshed, and I still only have it

for Mr. Clowdis and Mr. Terry.

    MS. CORLEY:  Can we go off the record.

        (Discussion held off the record.)               12:06:45

    THE VIDEOGRAPHER:  Off the record.  The time is

12:08.

        (Recess:  12:08 p.m. to 12:11 p.m.)

    THE VIDEOGRAPHER:  We are back on the record at

12:11 p.m.                                               12:11:43

BY MS. CORLEY:

    Q.   Mr. Robbins, can you see the document that

has been introduced and marked as Exhibit 5?

    A.   Yes, I can.

    Q.   Do you recognize this document?                12:11:57

                                                         Page 22

A.   Looks like all the other documents that 12:12:02
I've seen, yes.

Q.   What do you recognize it to be?

A.   A document associated with this case.

Q.   Do you know when you first saw this 12:12:20
document?

MR. HOLLEMAN:  Objection.

THE WITNESS:  I don't recall.

BY MS. CORLEY:

Q.   Are you aware that we served requests on 12:12:30
your counsel asking you to produce documents in this
case?

A.   I think so.

Q.   What did you do to look for documents
responsive to those requests? 12:12:45

MR. HOLLEMAN:  And I'll object only insofar as
I'm going to instruct Mr. Robbins not to reveal any
privileged communications.  So far as you don't do
that, you can answer the question.

THE WITNESS:  What kind of documents are you 12:12:58
referring to?

BY MS. CORLEY:

Q.   Anything related to this lawsuit, related
to U.S. Xpress, related to your stock transactions
in U.S. Xpress, those types of documents. 12:13:11

Veritext Legal Solutions
866 299-5127

MR. HOLLEMAN: Objection. 12:13:14

THE WITNESS: I provided to Scott and the team the copies of my original stock transactions and my current holdings, and those are the only documents that I'm aware of being asked to provide, and I have 12:13:26 provided them.

BY MS. CORLEY:

Q. Where did you get those documents?

A. From my portfo-, the company, the trading company that I have an account with that holds them. 12:13:45

Q. What trading company is that?

A. Currently, it's E*TRADE. When I bought the shares originally, it was Shareholder. I think it was Shareholder. No. It was Capital One Investing. The companies had changed hands a number 12:13:59 of times over the years, so it was Capital One Investing when I made the initial purchase under the IPO.

Q. And how did you provide those documents to your counsel? Was it in hard copy, or e-mail? 12:14:12

A. My, when I gave the initial one, it was a copy of the initial transaction by e-mail. And here recently, it was, again, a scanned copy of my account statement provided by e-mail.

MS. CORLEY: Can we go off the record a minute, 12:14:39

Page 24

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 25 of 76
PageID #: 3608

please. 12:14:41

MR. HOLLEMAN: Sure.

THE VIDEOGRAPHER: Go off the record 12:14.

(Recess: 12:14 p.m. to 12:19 p.m.)

THE VIDEOGRAPHER: We are back on the record at 12:19:23 12:19 p.m.

BY MS. CORLEY:

Q. Mr. Robbins, do you use e-mail?

A. Yes.

Q. What is your e-mail address? 12:19:36

A. Kfalcon99@yahoo.com.

Q. Do you use any other e-mail addresses?

A. Yes.

Q. What are those?

A. I have work e-mail addresses, I have an 12:19:56 Army e-mail address, and I have a Gmail address for professional things.

I mean, how many e-mail addresses do you need?

Q. Okay. 12:20:10

A. I only used the kfalcon one associated with this case.

Q. Okay, that's helpful. That was going to be my next question.

Did you search your e-mail for documents 12:20:19

Page 25

related to U.S. Xpress or this litigation?                12:20:22

A.   Yes, I did.

Q.   And did you find any documents in your
e-mail related to U.S. Xpress or this litigation?

A.   Yes.  Just the documents that have been    12:20:36
provided to me by the attorneys.

Q.   Okay.  Do you use a computer at home?

A.   Yes.

Q.   And how many computers do you have at
home?                                            12:20:51

A.   Right now, I mean, we have more than one.

Q.   Did you search your computers for
documents related to U.S. Xpress or this litigation?

A.   I don't have any documents stored on my
computers.  The only correspondence that I have is    12:21:12
in my kfalcon Yahoo e-mail.

Q.   And you said that you contacted, was it
E*TRADE where your trading accounts were held?

A.   Yes.

Q.   And when did you do that?                   12:21:41

A.   Well, back when the case was first
started, and they asked me to, you know, produce
what number of shares I had, and when I bought them.
I went into E*TRADE then, and that's the information
that I provided, but it doesn't have all of the, my    12:22:00

Page 26

E*TRADE account statement that I have now has a 12:22:03 great deal of, you know, account information on it, but, since those shares were bought under Capital One, not all of that same information transferred over, so that's what Scott was referring to. 12:22:16

The only information that I provided to them back when this first started was the action items that were shown on my E*TRADE account for the USX holdings.

And, recently, they asked me to provide a 12:22:33 copy of my current holdings, so I could show them that I do still own those shares. And the number of shares has not changed. I've not bought any shares since the IPO, any additional shares.

Q. So, you mentioned that you contacted 12:22:58 E*TRADE when the case started.

How did you contact E*TRADE?

A. I went and logged into --

MR. HOLLEMAN: Objection.

THE WITNESS: -- my account online, and -- 12:23:07

BY MS. CORLEY:

Q. Okay, I'm going to introduce another document.

JONATHAN PEARL: You should be set up now. If you refresh, then, hopefully, it shows up. 12:23:52

Page 27

MR. HOLLEMAN: Got it. Thank you. 12:23:57

(Exhibit 17 was marked for identification by counsel.)

BY MS. CORLEY:

Q. Mr. Robbins, I've introduced what has been 12:24:05 marked as Exhibit 17. Do you see this document?

A. Yes.

Q. And do you recognize this document?

A. Looks like many of the other documents that we've looked at here, yeah. 12:24:28

Q. Do you recognize it to be your declaration in support of plaintiffs' motion for class certification?

A. Yes.

Q. If you would, please, turn to page 4 of 12:24:53 the PDF.

A. Okay.

Q. Do you see that there's a signature at the bottom?

A. Clarifying page, is it page 4 as on the 12:25:12 document, or the page 4 as in the number of pages total in the document?

Q. It's page 4 of the PDF. It has number 1 at the bottom. Actually, there's a couple with number 1 at the bottom, but it has your electronic 12:25:34

Page 28

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 29 of 76
PageID #: 3612

signature at the bottom.  Do you see that page?  12:25:38

A.  That page with my signature has a number 6, paragraph 6 at the top, and a number 2 at the bottom, and then there's another one --

Q.  You're --  12:25:51

A.  -- because that one said page 4 of 7 for the document.

Q.  That's the page.  That's the right one. It's got a 6 at the top and 2 at the bottom, right?

A.  Yeah.  12:26:04

Q.  Okay, we're on the same page.

Did you sign this document in September of 2020?

A.  Yes, I remember doing that.

Q.  And the paragraph immediately above your  12:26:15 name says, quote, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, executed this day of September 2020, at Winterhaven, Florida.

Do you see that?  12:26:32

A.  Yes.

Q.  Did you read this document before you signed it on September 11, 2020?

A.  Yes, I did.

Q.  You submitted this document in connection  12:26:47

Page 29

with your request to be appointed as a class 12:26:48 representative in this case; is that correct?

A. Yes.

Q. And did you understand, sir, that the court in this case would rely on your certification? 12:27:09

A. I guess so, yeah.

Q. Do you understand that it was important for you to be truthful in your certification?

A. Yes.

Q. Turning back on page 3 of the PDF, the 12:27:25 prior page, please.

A. Okay.

Q. The second sentence of paragraph 1 at the top states, quote, on June 15, 2018, I purchased 50 shares of U.S. Xpress, Inc. class A common stock, 12:27:45 traceable to the offering at an average purchase price of 16.392 per share, as set forth in my certification previously filed with the court, end quote.

Do you see that? 12:28:00

A. Yes.

Q. Is that the total amount of U.S. stock that you ever purchased?

A. Yes, I believe so. As I said earlier, I made the shares purchase on the IPO, and I have not 12:28:12

Page 30

bought any additional shares since then. 12:28:16

Q. And when did you decide to purchase USX stock?

A. Probably, just in the matter of a couple of weeks prior to me making that purchase. 12:28:30

Q. Why did you decide to purchase U.S. Xpress stock?

A. I am a relatively low level investor, if you want to call it that. I don't have a tremendous amount of money in my stock portfolio, but I do it 12:28:48 more as a hobby, if you will. It's not a large sum of money, comparatively speaking, to others.

And, since I work around freight and logistics, I thought, well, let's take a look at some other transportation related stocks, and I 12:29:09 looked at trucking.

I know that, based on my job, I know that trucking is a rapidly growing large industry in the freight world, and so I thought, well, it might be interesting to own a few shares in a trucking 12:29:27 company.

I looked up a number of trucking companies that I was aware of, and the share price was a lot higher on those than I was willing to put into this investment, and I saw that USX was getting ready to 12:29:43

Page 31

do an IPO, and that their price was going to be much    12:29:48

lower.  And USX does, to my knowledge, does not have

a terminal here in my area, so there couldn't be any

perception of, I didn't want to buy shares in a

company that I work closely with, so, I looked at    12:30:05

these guys, and I saw that one of their primary

customers was Walmart.  I figure Walmart's a safe

bet, so it sounded like a safe bet, wasn't any

perception of a conflict with my current job, and

the price was low enough to make an initial    12:30:25

investment, and so I decided to go with that one.

        Q.   Okay, thank you.

            Any other reason that you can recall

making the investment in U.S. Xpress?

        A.   No, not really.    12:30:42

        Q.   And how did you go about purchasing the

stock?

        A.   I went on my Capital One Investing thing

online, and bought the stock, and I actually did the

two, the 50 shares, if I remember, I think I did    12:31:06

that in two transactions on the same day, and that's

what it was the average price there.  And, so I

bought it through Capital One Investing Online, and

that was it.

        Q.   Did you read any documents about U.S.    12:31:33

Page 32

Xpress prior to deciding to purchase U.S. Xpress 12:31:38 stock?

A. Not any documents. Just general, you know, articles and stuff that were available on, in Internet search, you know, reading about the 12:31:50 company, and what they were trying to do. Just, again, no real documents. Just whatever the news articles were being reported by different websites at the time.

Q. Had you heard of the company prior to -- 12:32:06 well, let me back up.

When is the first time you recall having learned of U.S. Xpress, or heard of the company?

A. I couldn't really tell you when I'd first learned about them. I mean, living in Florida, and 12:32:23 because of my job, when I see a truck on the road, I look at the truck, you know, to see who it is, just to see what other names of truck companies are out there, so, I'd seen them on the road periodically.

And then when I saw this, that general 12:32:41 Internet research that I explained, that was really the first time I'd learned about the company. Never really knew who they were prior to that.

Q. So, if you could, please, turn to the last page of this exhibit, schedule A. 12:33:09

Page 33

A. Okay. 12:33:16

Q. Do you see that this page has a listing of your transactions in U.S. Xpress stock?

A. Yes.

Q. Have you made any transactions other than 12:33:27 those set forth on this page?

A. No.

Q. And you mentioned earlier, I believe, sir, that you still hold the 50 shares of U.S. Xpress stock? 12:33:39

A. Yes.

Q. Why did you decide to hold onto the stock?

A. Well, I'm not one, I didn't want to, basically, bail out in all the money that I'd lost when the downturn in price, and so I didn't want to 12:33:59 just throw away that money.

Again, it wasn't a lot of money, but I didn't want to just throw it away, so, I figure, just let it sit there and not put any more money into it, but, you know, one day, maybe it will come 12:34:15 back. Unfortunately, it still hasn't.

Q. Do you have any current plans to sell your U.S. Xpress stock?

MR. HOLLEMAN: Objection.

THE WITNESS: I haven't really put much thought 12:34:34

Page 34

to that right now.

BY MS. CORLEY:

Q. I think you mentioned, but, just so I'm firm on this, all 50 shares of your U.S. Xpress stock were held in the same account; is that correct?

A. Yes.

Q. And is your name on the account? Are you the owner of that account?

A. Yes. I think my wife's name is on it, too. Our E*TRADE account is a joint account.

Q. Do you recall why you, why you made two separate purchases on the same day, instead of just one purchase for 50 shares?

A. No, not really. Probably -- I don't know. I don't really recall a specific reason why.

Q. If you would turn back to page 3 of Exhibit 17.

MR. HOLLEMAN: And, Lisa, you're referring to page 3 of the PDF?

MS. CORLEY: Jessica. Sorry.

MR. HOLLEMAN: I'm sorry.

MS. CORLEY: That's okay. Right.

BY MS. CORLEY:

Q. Paragraph 3, do you see paragraph --

Page 35

A.   Okay.                                      12:36:27

Q.   -- paragraph 3, where it says, as a result
of the conduct detailed and alleged in the
complaint, I suffered significant losses from my
purchases of U.S. Xpress, Inc. class A common stock    12:36:37
at artificially inflated prices.

Do you see that?

A.   Yes.

Q.   What significant losses have you suffered?

MR. HOLLEMAN:  Objection.                       12:36:50

THE WITNESS:  It's worth well below what I paid
for it.  I would call that significant.

BY MS. CORLEY:

Q.   Any other losses?

MR. HOLLEMAN:  Objection.                       12:37:05

THE WITNESS:  No.

BY MS. CORLEY:

Q.   Okay, I'm about to move into another area.

Do we want to take a quick comfort break?

MR. HOLLEMAN:  I'm okay to keep going.          12:37:22

How long is your next area going to take,
ballpark?

MS. CORLEY:  I don't know.  Maybe not too much
longer.

MR. HOLLEMAN:  Let's keep going, if that's all   12:37:32

Page 36

right with you, Mr. Robbins.                    12:37:34

THE WITNESS:  I'm okay.

MS. CORLEY:  That's fine.

BY MS. CORLEY:

Q.   Okay, I'm going to introduce another    12:37:43
exhibit.  Mr. Robbins, I'm showing you what's been
previously marked as Exhibit 1.

Do you see the document?

A.   Yes.

Q.   Have you seen this document before?      12:38:29

A.   I think so.

Q.   Do you recall when you saw it?

A.   No, I do not.

Q.   Do you know if you saw this document prior
to June 15, 2018, when you made your purchases?   12:38:52

A.   No.  No, I did not.

Q.   Do you contend that Exhibit 1 was false or
misleading in any respect at the time it was issued
on June 11, 2018?

MR. HOLLEMAN:  Objection.                    12:39:16

THE WITNESS:  Yeah, I couldn't answer that, not
having studied that document, certainly not prior to
that date.

BY MS. CORLEY:

Q.   So, you don't know one way or another    12:39:31

Page 37

whether Exhibit 1 contains any false or misleading 12:39:33
statements?

MR. HOLLEMAN: Objection.

THE WITNESS: No, yeah, I don't know. I'm not
an expert on that, like I said. 12:39:41

BY MS. CORLEY:

Q. Do you know how many times you've read
this document?

A. No, I couldn't answer that.

Q. Do you know if you read it cover to cover? 12:39:58
It's a pretty long document.

Did you read the whole thing?

A. I think it would be safe to say, for over
300 pages, no.

Q. Do you recall the -- 12:40:09

A. Yeah --

Q. Go ahead. Sorry.

A. I was just going to say, again, I'm not an
expert.

MS. BUGNI: Jessica got disconnected, so, if we 12:40:57
could go off the record, please.

THE VIDEOGRAPHER: Let's go off the record at
12:41.

(Recess: 12:41 p.m. to 12:54 p.m.)

THE VIDEOGRAPHER: We're back on the record. 12:54:29

Page 38

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 39 of 76
PageID #: 3622

The time is 12:54 p.m.                                  12:54:30

     MS. CORLEY:  My apologies for the

disconnection, Mr. Robbins.

     May I ask the court reporter to read back the

last question and answer, because I believe I missed    12:54:40

the answer.

               (The requested portion was read.)

BY MS. CORLEY:

     Q.   Do you recall when the last time was that

you read this document, Exhibit 1?                     12:55:16

     A.   No, I don't.

     MR. HOLLEMAN:  Objection.

BY MS. CORLEY:

     Q.   Are you aware, sir, that the amended

complaint filed in this action alleges that this       12:55:28

document, Exhibit 1, contains false or misleading

statements?  Are you aware of that?

     A.   Yeah, I believe I remember reading

something about that in the document, yes.

     Q.   As you sit here today, can you identify     12:55:42

any false or misleading statement in Exhibit 1?

     MR. HOLLEMAN:  Objection.

     THE WITNESS:  No, I'm not an expert, and I'm

not an expert on that document, for sure.

BY MS. CORLEY:                                         12:55:57

Page 39

Q. How did you first come into contact with a lawyer regarding this matter?

A. As I said earlier, I saw a press release, or, of some sort. I can't remember exactly where I saw it, online, or in a magazine, maybe, inquiring about this. And, at the time, I was like, huh, I'm curious, so, I reached out to Bragar and Eagel, and, to see what it was about, and that was probably in, I don't know, the fall, early fall of 2018, something like that.

Q. So, you contacted them first?

A. Yes.

Q. Did you e-mail, did you pick up the phone; how did you contact them?

A. I can't remember. It may have been an e-mail, whatever was in that press release or advertisement. I can't remember.

Q. And did you ultimately retain that firm as your counsel in this matter?

A. Yes.

Q. Do you recall when you retained counsel for the case?

A. Fall of 2018.

Q. Did you retain counsel after having initial discussions with counsel? Without revealing

Page 40

the substance of those conversations, did you retain 12:57:45
counsel before or after you spoke with them on the
phone?

A. It would have been after.

Q. Do you recall how long after your initial 12:57:57
discussion that you retained counsel?

A. No, I don't remember.

Q. Did you sign an engagement letter with
your counsel?

MR. HOLLEMAN: Objection. 12:58:09

THE WITNESS: I don't remember. Again, I'm not
familiar with some of the legal terms, so --

BY MS. CORLEY:

Q. You don't recall signing any letter that
would have set forth the scope of the representation 12:58:21
with your counsel, or the arrangement for them to
represent you in this matter?

A. Yeah, I probably, or something along those
lines, yeah.

Q. Do you still have a copy of that 12:58:35
engagement letter?

A. I don't know.

Q. Did you speak with any other lawyers prior
to retaining your current counsel?

A. No. 12:58:49

Page 41

Q. Did you research any other law firms prior to your retaining your current counsel?

A. No.

Q. How did you decide to retain your current counsel?

MR. HOLLEMAN: Objection. Mr. Robbins, I just want to caution you not to reveal any privileged attorney-client communications we might have been.

If you can answer the question without doing so, then you may go ahead.

THE WITNESS: Honestly, sounds kind of lame, but, I Googled the law firm to make sure they were a real live law firm, and this wasn't some, you know, goofy thing that I'd seen on the Internet, and I went on Google Maps to, to street view to see their address, to see, is this a legit building, and all that. And, when they looked legit, and they sounded legit on the conversations I had with them, I decided to go with them. Never researched anyone else.

BY MS. CORLEY:

Q. Okay. How often have you been in contact with your current counsel about this case, since retaining them as your counsel?

MR. HOLLEMAN: Objection.

Page 42

THE WITNESS: Periodic, you know, communications with them via e-mail, and, every once in a while, a phone call; more so recently, as we've been preparing, you know, for this, to coordinate schedules, and things like that, than before.

BY MS. CORLEY:

Q. Have you ever met any of your lawyers in-person?

A. No. This is the first time I've seen Scott in live, virtual live, so --

Q. Have you communicated with anyone other than your lawyers about this case?

A. No.

Q. Who is Deirdre Terry?

A. Who is who?

Q. Deirdre Terry. Do you know who she is?

A. No, I don't recall that name, I'm not familiar.

Q. Do you know who John Terry is?

A. He may be on the, one of the other plaintiffs on our case. I think I've seen his name on the documents.

Q. Do you know who Charles Clowdis is?

A. He's one of the other plaintiffs on the case.

Page 43

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 44 of 76
PageID #: 3627

Q. Have you ever spoken with any of those 01:01:32 three, Deirdre Terry, John Terry, or Charles Clowdis?

A. I've never spoken with them personally. The only time that I've ever heard them is, we had a 01:01:43 conference call with the lawyers so they could explain the process and the procedure to us, a little while back. That was about it.

Q. Was there anyone else on that phone call other than you, Deirdre Terry, John Terry, Charles 01:02:01 Clowdis, and the lawyers?

A. Not that I'm aware of.

Q. Do you know how you came to be a named plaintiff in these cases, in this case with these other individuals? 01:02:25

MR. HOLLEMAN: Objection.

THE WITNESS: No, not really.

BY MS. CORLEY:

Q. Do you know how you and the other plaintiffs will go about making decisions for the 01:02:34 litigation?

A. Wait and discuss with our lawyers on that on how to go about that.

Q. What if you and the other plaintiffs don't agree on the appropriate course of conduct for the 01:02:55

Page 44

case?

MR. HOLLEMAN: Objection.

THE WITNESS: I don't know the procedure in that case.

BY MS. CORLEY:

Q. Do you know someone named Darren Robbins?

A. No.

Q. How about Robert Robbins?

A. No.

Q. Do you know anyone named Brian Robbins, spelled B R I A N?

A. No.

Q. Not related to any of those individuals?

A. No. We spell Bryan in my family with a Y. So, I know three other Bryan Robbinses; my dad, my son, and my grandson.

Q. All with a Y.

A. Yeah.

Q. Do you know how your counsel is being compensated for work in this matter?

MR. HOLLEMAN: Objection.

THE WITNESS: My understanding is that any award that may come from the case, they would get paid through that process.

BY MS. CORLEY:

Page 45

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 46 of 76
PageID #: 3629

Q. Do you know how the other counsel involved 01:04:11
in this case are being compensated?

A. I have no idea.

MR. HOLLEMAN: Objection.

THE WITNESS: I have no idea. 01:04:17

BY MS. CORLEY:

Q. Have you ever been a party to a lawsuit
before this case?

MR. HOLLEMAN: Objection.

THE WITNESS: I have -- nothing like this, no. 01:04:28
The credit card companies put out those class
actions things, you know, did you use their credit
card for something. I think I've done something
like that before, but I've never been involved in it
like this. It was simply a matter of filling out a 01:04:45
piece of paper and wait the 10 years for an answer,
and I honestly couldn't tell you whatever happened
with them, to be truthful.

BY MS. CORLEY:

Q. Okay. Have you ever been a party to any 01:04:57
criminal proceeding?

MR. HOLLEMAN: Objection.

THE WITNESS: No, not that I'm aware of or
recall.

BY MS. CORLEY: 01:05:10

Page 46

Q. Have you ever been a party to any 01:05:11 administrative proceeding?

MR. HOLLEMAN: Objection.

THE WITNESS: Clarify, administrative.

BY MS. CORLEY: 01:05:18

Q. Any proceeding before an administrative body of the government.

MR. HOLLEMAN: Same objection.

THE WITNESS: Well, that could be kind of a loaded question. Being a government employee, I've 01:05:29 been involved in various administrative matters of the government, so, nothing --

BY MS. CORLEY:

Q. Not -- sorry, go ahead.

A. -- nothing in a legal matter, that I 01:05:40 recall, you know.

Q. Okay.

A. Policy, and stuff like that, obviously, but not legal.

Q. Understood. 01:05:50

Have you ever communicated with anyone who works at U.S. Xpress?

A. No, I have not.

Q. Have you communicated with anyone you understand previously worked at U.S. Xpress? 01:06:03

Page 47

Case 1:19-cv-00098-TRM-CHS   Document 131-4   Filed 12/18/20   Page 48 of 76
PageID #: 3631

A.   No, I have not.   01:06:06

Q.   Do you know Max Fuller?

A.   No.

Q.   Eric Fuller?

A.   No.   01:06:15

Q.   Eric Peterson?

A.   No.

Q.   Patrick Quinn?

A.   No.

Q.   How about Lisa Quinn Pate?   01:06:26

A.   No.

Q.   Finally, Jason Grear.

A.   No.

Q.   What did you do to prepare for your deposition today?   01:06:43

A.   I had a conversation with my lawyer on the process, how it works, and that's really about it.

Q.   How many times did you meet with your lawyers to prepare for the deposition?

A.   Several times for schedule coordination, 01:07:04 you know, by e-mail, but, because we've been trying to do this for weeks now, it seems like, but, to prepare, one time.

Q.   And who did you meet with?

A.   With Scott.  Scott Holleman.   01:07:19

Page 48

Q. When was that? 01:07:22

A. I think it was yesterday afternoon.

Q. Approximately, how long did you meet with Scott to prepare for the deposition?

A. It was maybe 20 minutes. 01:07:33

Q. Did you review any documents to prepare for your deposition?

A. No, not that I recall.

Q. Aside from meeting with your counsel yesterday and reviewing, you didn't review any 01:07:49 documents, but, aside from meeting with your counsel, did you do anything else to prepare for your deposition?

MR. HOLLEMAN: Objection.

THE WITNESS: No, I did not. 01:07:57

BY MS. CORLEY:

Q. Have you discussed this deposition with anyone other than your lawyers?

A. No, I have not.

Q. Okay, I think I'm close to being finished, 01:08:09 but, why don't we go off the record for a few minutes, and then we'll come back on, and I can tell you if I have any followup questions.

MS. CORLEY: Is that okay, Scott?

MR. HOLLEMAN: Yeah, that's fine. 01:08:28

Page 49

MS. CORLEY: Thank you. 01:08:30

THE VIDEOGRAPHER: Off the record, 1:08 p.m.

(Recess: 1:08 p.m. to 1:13 p.m.)

THE VIDEOGRAPHER: We are back on the record at

1:13 p.m. 01:13:11

BY MS. CORLEY:

Q. Thank you. Mr. Robbins, just a couple of

followup questions, and then I think I'm finished.

And I just want to be clear about the circumstances

around your trading records. 01:13:21

Am I correct that you have provided those

trading records to your counsel on two occasions?

MR. HOLLEMAN: Objection.

THE WITNESS: I've provided a, what I had on

the initial occasion last, the fall of 2018, and it 01:13:35

was just basically the transaction information,

similar to what you saw on that other document. And

then here, recently, I've provided an account

statement.

Excuse me. Marketer call. 01:14:06

Recently, I provided them a copy of my account

statement from E*TRADE showing that I still held

those same 50 shares, so, those would be the two

occasions.

And Scott and his team are working on my behalf 01:14:23

Page 50

to get an account statement, if you will, from 01:14:27
Capital One Investing that shows, reflects the
original purchase, more so than what I had from
E*TRADE.

BY MS. CORLEY: 01:14:41

Q. So, am I correct the first time you
provided the information, it was not in the form of
a trading record, it was just an e-mail saying, or
something, that I purchased 50 shares, or did you
actually give trading records at that time? 01:14:53

MR. HOLLEMAN: Objection.

THE WITNESS: It was not a trading record as in
an account statement, no. It was a line item of the
number of shares purchased, the date, the price, and
the quantity, those two lines, so, 20 and 30 shares 01:15:09
each, that I pulled from what my account holdings on
my E*TRADE account said at that time, because by
that time Capital One Investing had already closed
up shop.

BY MS. CORLEY: 01:15:29

Q. Okay. Is it your understanding that, just
considering the initial, the first trading
information that you provided to your counsel, is it
your understanding that those records were
incorrect, or that that information was incorrect? 01:15:42

Page 51

MR. HOLLEMAN: Objection.

THE WITNESS: No. The information was correct. It was just not in the form of a Capital One Investing account statement. It was simply the line items of what I purchased, when, the quantity, and the amount, or the dollar amount, the price per share.

So, the information was correct. It was the form of the information that was not in the form of a, an official Capital One Investing account statement, because, by that time, Capital One Investing didn't exist anymore.

BY MS. CORLEY:

Q. And is it your understanding that the second set of statements that you provided to your counsel contains incorrect information?

MR. HOLLEMAN: Objection.

THE WITNESS: No. It is correct. The E*TRADE account statement that I provided them shows that I still hold those same 50 shares, and that is a correct set of information.

MS. CORLEY: Okay. I don't have any further questions.

Do you have any?

MR. HOLLEMAN: I have a couple of followups,

01:15:45
01:15:54
01:16:10
01:16:21
01:16:35
01:16:57

Page 52

but I don't know if anybody else on, Jessica, your       01:16:59
side, has any.

MS. CORLEY:  Not on my side.

For the underwriters, any questions?

MR. SALEH:  I have a couple of questions.       01:17:08

                    EXAMINATION
BY MR. SALEH:

Q.   Mr. Robbins, my name is Redwan, I'm from
O'Melveny & Myers, and we represent the underwriter       01:17:11
defendants.  Just one quick followup, based on your
testimony just a little earlier.

In the course of your deposition
preparation, did anyone read or summarize testimony
to you?       01:17:28

A.   No.

MR. HOLLEMAN:  Objection.

THE WITNESS:  No.

BY MR. SALEH:

Q.   Are you familiar with Merrill Lynch Pierce       01:17:36
Fenner & Smith, Incorporated?

A.   I've heard the name, yes.

Q.   Do you know of any contact there?

MR. HOLLEMAN:  Objection.

THE WITNESS:  No, not aware.       01:17:51

                                              Page 53

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 54 of 76
PageID #: 3637

BY MR. SALEH:                                              01:17:51

Q.   Like any person, I mean.

A.   Sorry?

Q.   Do you know any person who works there?

MR. HOLLEMAN:  Objection.                         01:17:58

THE WITNESS:  No.

BY MR. SALEH:

Q.   And did you have any, I guess, so, you wouldn't have any communication with anybody at Merrill Lynch about USX.                                 01:18:08

MR. HOLLEMAN:  Objection.

THE WITNESS:  Not that I'm aware of, no.

BY MR. SALEH:

Q.   Same questions for Morgan Stanley & Co. LLC.                                                     01:18:20

Do you know anybody there, and did you have any communication with them about USX?

MR. HOLLEMAN:  Objection.

THE WITNESS:  I used to know some people at Morgan Stanley, because I had my IRAs with them for   01:18:31 a number of years, but I transferred over to Fidelity over a year ago, I think, maybe, I don't know, a while back, and, since then, I've not had any communication with anybody at Morgan Stanley.

And never did I have any communication with   01:18:49

Page 54

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 55 of 76
PageID #: 3638

those guys at Morgan Stanley about USX.  They had    01:18:53
nothing to do with USX.  They were the IRA account
guys.

BY MR. SALEH:

Q.   How about, are you familiar with J.P.    01:19:05
Morgan Securities LLC?

A.   I know the name.

Q.   But, again, no contact about, with anybody
from there.

A.   No, no contact.  Don't know anybody there.    01:19:17
No contact with anyone there.

Q.   How about WR Securities LLC?  Same
questions.

A.   No, I'm not familiar with that one.

Q.   And Stifel Nicolaus & Company,    01:19:31
Incorporated?

A.   Not familiar with that one.

MR. SALEH:  Scott, that's all the questions I
have.  Thank you, Mr. Robbins.

MR. HOLLEMAN:  Okay, I just have a couple.    01:19:45

Before I start, Jessica, did you have anything
else?

MS. CORLEY:  No.

//

//    01:19:50

Page 55

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 56 of 76
PageID #: 3639

EXAMINATION                                    01:19:50

BY MR. HOLLEMAN:

Q. Mr. Robbins, I'll be very quick. Thank you for your patience today.

A. I'm sorry. I've got a guy picking 01:19:58 something up.

I'm sorry. I have a guy picking something up from our house here, and he's coming in a few minutes.

Q. Then I'll be real quick, or, unless you 01:21:16 think we need to take five minutes for you to deal with that.

A. No, we got, I told him I needed about 10 more minutes.

Q. Great. So, like I said, I'll be prompt. 01:21:25

Earlier, you were asked a question about whether you were represented by anyone other than me and my firm.

Do you recall that?

A. Yes. 01:21:38

Q. Do you have an understanding as to whether any other law firms are involved in the representation of the plaintiffs in this case?

A. There may be other law firms involved, but I'm not really familiar with them. I've not dealt 01:21:51

Page 56

Veritext Legal Solutions
866 299-5127

with them.  I've only dealt with you guys.

Q.   Okay.  And, earlier, you had answered a question asked by Ms. Corley saying that this case is in Tennessee, or Knoxville Federal Court, do you remember that?

A.   Yes.

Q.   Do you recall whether you were involved in any other cases involving USX in any other court?

A.   There, it may have been a state court in Tennessee, because, a while back, I got a bill from, I guess, the state court, or whatever, for something.  I can't remember what it was.  And I reached out to you guys, and you all said, hey, send that to us, we'll take care of it.

Q.   Please, don't reveal specifics of what we might have said in our conversations.

A.   And I don't recall what it was for, but that, and I don't really understand what other courts may have been involved.  I haven't followed that closely.  I've relied on the lawyers to do that.

Q.   Okay.  This is a case involving, principally, USX.

Do you know if any other people affiliated with USX, such as executives or directors, are

Page 57

involved in the case as a defendant?

A.   I've not followed that close enough.  When you say the company, the company would probably mean the company leadership.

Q.   Okay.  And Ms. Corley introduced an exhibit.  I believe it was the second exhibit today.  It was a declaration you signed in support of a motion for class certification.

Do you remember that exhibit?

A.   Yes.

Q.   And you remember signing that exhibit, right?

A.   Yes.

Q.   And that is in support of a motion for class certification, which seeks, among other things, for you to be one of the class representatives.

Do you understand that?

A.   Yes.

Q.   What is your understanding regarding what your duties might be as a class representative?

A.   My understanding of it is, basically, representing other people like me that may be in the similar circumstances, but yet I'm working with you guys to ensure that the case is heard, and represent

Page 58

all the other people at stake.                        01:24:13

MR. HOLLEMAN:  Mr. Robbins, I have no further
questions.  Thank you for your time.

MS. CORLEY:  Nothing further.  Thank you, Mr.
Robbins.                                              01:24:24

THE WITNESS:  Thank you.

THE VIDEOGRAPHER:  This will conclude the
deposition of Keith Robbins.  The total number of
media units used in today's deposition was six, and
will be retained by Veritext Legal Solutions.        01:24:37

We are off the record.  The time is 1:24 p.m.
Thank you.

                    (Time noted:  1:24 p.m.)

                                                      Page 59

Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 60 of 76
PageID #: 3643

I, BRYAN KEITH ROBBINS, do hereby declare under penalty of perjury that I have read the foregoing transcript, volume I; that I have made any corrections as appear noted, in ink, initialed by me; that my testimony as contained herein, as corrected, is true and correct.

     EXECUTED this \_\_\_\_\_ day of _____, 202\_\_\_, at _____, _____.

           (City)              (State)

_____

BRYAN KEITH ROBBINS

VOLUME I

Page 60

Case 1:19-cv-00098-TRM-CHS   Document 131-4   Filed 12/18/20   Page 61 of 76
PageID #: 3644

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me, via videoconference, at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name this 22nd day of October, 2020.

_____

CHRIS TE SELLE

CSR No. 10836

Veritext Legal Solutions
866 299-5127
Case 1:19-cv-00098-TRM-CHS    Document 131-4    Filed 12/18/20    Page 62 of 76
PageID #: 3645

| & | | | |
|---|---|---|---|
| **&** 3:4,10,18 4:4,12 5:4 8:7,10,12 53:10,21 54:14 55:15 | **1:24** 2:19 59:11,13 | **50** 30:14 32:20 34:9 35:4,14 50:23 51:9 52:20 | **actions** 16:22 46:12 |

**&**

**&** 3:4,10,18 4:4,12 5:4 8:7,10,12 53:10,21 54:14 55:15

**0**

**00098** 1:10 2:10 7:17

**1**

**1** 1:25 6:22 7:11 13:2 28:23,25 30:13 37:7,17 38:1 39:10,16,21
**10** 46:16 56:13
**10022** 3:13
**10036** 4:15
**101** 3:6
**10836** 1:22 2:21 61:25
**11** 29:23 37:19
**1180** 5:7
**11:40** 2:19 7:2,5
**11:47** 13:9
**11:52** 13:9,11
**12:08** 22:17,18
**12:11** 22:18,20
**12:14** 25:3,4
**12:19** 25:4,6
**12:41** 38:23,24
**12:54** 38:24 39:1
**15** 30:14 37:15
**16.392** 30:17
**17** 6:14 28:2,6 35:18
**1900** 4:6
**1987** 11:24
**1:08** 50:2,3
**1:13** 50:3,5
**1:19** 1:10 2:10 7:17

**2**

**2** 29:3,9
**20** 14:11,12 49:5 51:15
**2018** 30:14 37:15 37:19 40:9,23 50:15
**202** 60:8
**2020** 1:17 2:20 7:1 7:6 18:24 29:13 29:19,23 61:21
**21** 1:17 2:20 7:1,6
**212** 3:14 4:16
**22** 6:24
**22nd** 61:21
**231-1058** 4:8
**244-2203** 3:22
**2710** 3:6
**28** 6:14

**3**

**3** 30:10 35:17,20 35:25 36:2
**30** 51:15
**300** 38:14
**30309** 5:8
**3040** 3:12
**308-5858** 3:14
**37** 6:22
**37219** 3:21

**4**

**4** 28:15,20,21,23 29:6
**404** 5:9
**414** 3:20
**4305302** 1:23

**5**

**5** 6:24 22:4,23

**1:24** 2:19 59:11,13

**50** 30:14 32:20 34:9 35:4,14 50:23 51:9 52:20
**53** 6:7
**56** 6:8
**572-4717** 5:9

**6**

**6** 29:3,3,9
**61** 1:25
**615** 3:22
**619** 4:8
**646** 3:7
**655** 4:6

**7**

**7** 4:14 6:16 29:6
**7040** 61:23
**728-5897** 4:16

**8**

**8** 6:6
**860-9449** 3:7
**885** 3:12

**9**

**900** 3:20
**92101** 4:7
**94111** 3:7

**a**

**a.m.** 2:19 7:2,5 13:9,9,11
**account** 24:10,24 27:1,2,8,20 35:5,8 35:9,11,11 50:18 50:21 51:1,13,16 51:17 52:4,10,19 55:2
**accounts** 26:18
**accurate** 19:24 20:5
**action** 7:24 27:7 39:15 61:18,19

**actions** 16:22 46:12
**active** 12:17,18,20
**additional** 27:14 31:1
**address** 25:10,16 25:16 42:16
**addresses** 25:12 25:15,18
**administration** 12:9
**administrative** 47:2,4,6,11
**advertisement** 40:17
**affiliated** 57:24
**affiliations** 8:2
**afternoon** 49:2
**agency** 13:19
**ago** 54:22
**agree** 7:9 44:25
**ahead** 10:8 38:17 42:10 47:14
**al** 1:11 2:11 7:13 7:14
**allegations** 19:23 20:4
**alleged** 15:8 36:3
**alleges** 39:15
**amended** 18:10,14 18:17 19:3,6,9,16 19:19 39:14
**america** 29:17
**american** 12:3,11 12:11
**amount** 30:22 31:10 52:6,6
**answer** 10:1,4,8,9 10:16,23,23 15:20 17:12,18 23:19 37:21 38:9 39:5,6

Page 1

42:9 46:16
**answered** 57:2
**answers** 9:13,15
9:19
**anybody** 53:1 54:9
54:16,24 55:8,10
**anymore** 52:12
**apologies** 39:2
**appeal** 18:8 21:6
**appear** 60:4
**appearance** 8:4
**appearances** 3:1
4:1 5:1 8:1
**appointed** 16:9
30:1
**appropriate** 44:25
**approximately**
49:3
**area** 32:3 36:18,21
**army** 14:9,11,11
25:16
**arrangement**
41:16
**articles** 33:4,8
**artificially** 36:6
**arts** 12:7,9,11
**aside** 49:9,11
**asked** 24:5 26:22
27:10 56:16 57:3
**asking** 9:7 23:11
**associated** 23:4
25:21
**assume** 10:18
**atlanta** 5:8
**attending** 7:20
**attorney** 8:5 17:17
20:7 21:5 42:8
61:19
**attorneys** 11:10
17:21 18:4 26:6

**audio** 7:8
**authorize** 19:6
20:8
**authorized** 20:14
**available** 33:4
**avenue** 3:12
**average** 30:16
32:22
**award** 45:23
**aware** 16:16 23:10
24:5 31:23 39:14
39:17 44:12 46:23
53:25 54:12

**b**

**b** 45:11
**bachelor** 12:6,7
**bachelor's** 11:21
**back** 13:10 16:11
21:14,19 22:19
25:5 26:21 27:7
30:10 33:11 34:21
35:17 38:25 39:4
44:8 49:22 50:4
54:23 57:10
**background** 9:8
11:13
**bail** 34:14
**bakshi** 4:5
**ballpark** 36:22
**based** 31:17 53:11
**basically** 13:17
17:23 21:14 34:14
50:16 58:22
**beginning** 2:18 8:4
**behalf** 1:6 2:6 8:7
8:10,12 50:25
**believe** 18:11 19:8
19:17 20:6 30:24
34:8 39:5,18 58:6
**bespc.com** 3:8,15

**best** 10:3
**bet** 32:8,8
**bill** 57:10
**bit** 11:13
**body** 16:21 47:7
**boeing** 14:6
**bottom** 28:19,24
28:25 29:1,4,9
**bought** 14:20
15:14 24:12 26:23
27:3,13 31:1
32:19,23
**bragar** 3:4,10 8:10
11:7 14:23 40:7
**break** 10:21,24
21:16 36:19
**brian** 45:10
**briefly** 14:2
**bringing** 14:24
**broadway** 4:6
**bryan** 1:15 2:16
6:3,14 8:18 9:1
45:14,15 60:1,14
**bugni** 5:6 8:8
38:20
**building** 42:16
**buy** 32:4

**c**

**california** 3:6,7
4:7 61:2
**call** 31:9 36:12
43:3 44:6,9 50:20
**capital** 13:15
24:14,16 27:3
32:18,23 51:2,18
52:3,10,11
**card** 46:11,13
**care** 57:14
**case** 1:9 2:9 7:16
15:4,9 16:5 20:10
20:25 21:8 23:4

23:12 25:22 26:21
27:16 30:2,5
40:22 42:23 43:12
43:21,25 44:14
45:1,4,23 46:2,8
56:23 57:3,22
58:1,25 61:15
**cases** 44:14 57:8
**caution** 42:7
**certainly** 37:22
**certification** 6:16
28:13 30:5,8,18
58:8,15
**certifications**
12:14
**certified** 2:20 61:1
**certify** 61:3,17
**chain** 12:19
**change** 16:14
**changed** 24:15
27:13
**charles** 43:23 44:2
44:10
**chattanooga** 1:3
2:3 7:16 21:10
**chris** 1:21 2:20
7:22 61:24
**christopher** 3:19
**circumstances**
50:9 58:24
**city** 60:9
**civil** 14:9
**claim** 18:6
**claims** 15:8
**clarify** 47:4
**clarifying** 28:20
**class** 6:16 16:19
17:1,7 28:12 30:1
30:15 36:5 46:11
58:8,15,16,21

| | | | |
|---|---|---|---|
| **clear** 50:9 | **completion** 61:15 | **copies** 24:3 | **county** 13:16 |
| **clearly** 15:13 | **computer** 26:7 | **copy** 24:20,22,23 | **couple** 28:24 31:4 |
| **client** 17:17 42:8 | **computers** 26:9,12 | 27:11 41:20 50:21 | 50:7 52:25 53:5 |
| **close** 49:20 58:2 | 26:15 | **corley** 5:5 6:6 8:6 | 55:20 |
| **closed** 51:18 | **conclude** 59:7 | 8:6,23 13:6,23 | **course** 44:25 |
| **closely** 32:5 57:20 | **conduct** 36:3 | 15:19 16:4,8,17,24 | 53:13 |
| **clowdis** 22:9,13 | 44:25 | 17:5,11,24 18:23 | **court** 1:1 2:1 7:15 |
| 43:23 44:3,11 | **conducted** 7:18 | 19:2,14 20:2,13,19 | 7:22 8:15 9:11,23 |
| **college** 11:18,20 | **conference** 44:6 | 21:15,21 22:10,14 | 18:3,6,8 20:25 |
| **colorado** 12:2,10 | **conferencing** 3:1 | 22:21 23:9,22 | 21:3,3,8,10,23 |
| **come** 34:20 40:1 | 4:1 5:1,16 | 24:7,25 25:7 | 30:5,18 39:4 57:4 |
| 45:23 49:22 | **confidential** 20:9 | 27:21 28:4 35:2 | 57:8,9,11 |
| **comfort** 36:19 | **conflict** 32:9 | 35:21,23,24 36:13 | **courts** 57:19 |
| **coming** 56:8 | **connection** 11:10 | 36:17,23 37:3,4,24 | **cover** 38:10,10 |
| **command** 14:7 | 13:8 20:15,21 | 38:6 39:2,8,13,25 | **credential** 12:18 |
| **common** 30:15 | 29:25 | 41:13 42:21 43:6 | **credit** 46:11,12 |
| 36:5 | **considering** 51:22 | 44:18 45:5,25 | **criminal** 46:21 |
| **communicated** | **cont'd** 4:1 5:1 | 46:6,19,25 47:5,13 | **csr** 1:22 61:25 |
| 43:11 47:21,24 | **contact** 27:17 40:1 | 49:16,24 50:1,6 | **curious** 40:7 |
| **communication** | 40:14 42:22 53:23 | 51:5,20 52:13,22 | **current** 13:25 14:3 |
| 54:9,17,24,25 | 55:8,10,11 | 53:3 55:23 57:3 | 16:5 24:4 27:11 |
| **communications** | **contacted** 26:17 | 58:5 59:4 | 32:9 34:22 41:24 |
| 17:18 23:18 42:8 | 27:15 40:11 | **correct** 29:18 30:2 | 42:2,4,23 |
| 43:2 | **contained** 60:5 | 35:6 50:11 51:6 | **currently** 11:14 |
| **companies** 24:15 | **contains** 38:1 | 52:2,8,18,21 60:6 | 12:21,23 16:13 |
| 31:22 33:18 46:11 | 39:16 52:16 | **corrected** 60:6 | 24:12 |
| **company** 14:6 | **contend** 15:16 | **corrections** 60:4 | **customers** 32:7 |
| 15:11,17 16:23 | 37:17 | **correspondence** | **cv** 1:10 2:10 7:17 |
| 24:9,10,11 31:21 | **continue** 7:9 8:16 | 17:22 26:15 | **cwood** 3:23 |
| 32:5 33:6,10,13,22 | **contracting** 14:7 | **counsel** 7:12,19 | |
| 55:15 58:3,3,4 | **control** 14:8 | 8:1 10:5 11:2 | **d** |
| **company's** 15:14 | **conversation** | 16:13 19:19 20:14 | **dad** 45:15 |
| **comparatively** | 48:16 | 20:20 23:11 24:20 | **darren** 45:6 |
| 31:12 | **conversations** 7:8 | 28:3 40:19,21,24 | **date** 7:5 37:23 |
| **compensated** | 41:1 42:18 57:16 | 40:25 41:2,6,9,16 | 51:14 61:20 |
| 45:20 46:2 | **coordinate** 43:4 | 41:24 42:2,5,23,24 | **david** 5:18 7:21 |
| **complaint** 18:10 | **coordination** | 45:19 46:1 49:9 | **day** 10:6 29:18 |
| 18:14,17 19:4,6,10 | 48:20 | 49:12 50:12 51:23 | 32:21 34:20 35:13 |
| 19:16,20,24 20:4 | **coordinator** 13:3 | 52:16 | 60:7 61:21 |
| 36:4 39:15 | 13:13 | **country** 14:13 | **dbakshi** 4:9 |
| | | | **deal** 27:2 56:11 |

Page 3

dealt  56:25 57:1
debashish  4:5
decide  14:18 31:2
  31:6 34:12 42:4
decided  32:11
  42:19
deciding  33:1
decisions  44:20
declaration  6:14
  28:11 58:7
declare  29:16 60:1
defendant  58:1
defendants  1:12
  2:12 4:11 5:3 7:13
  8:8,13 53:11
defense  14:7
degree  11:18,21
  11:23 12:1,3,4
degrees  11:25 12:8
deirdre  43:14,16
  44:2,10
department  12:24
  13:18 14:9
deposition  1:15
  2:16 7:12,18 9:2,6
  9:13 48:15,19
  49:4,7,13,17 53:13
  59:8,9 61:14
designation  12:19
detailed  36:3
determine  19:23
  20:4
diego  4:7
different  18:6 33:8
direction  61:10
directors  57:25
disconnected
  38:20
disconnection
  39:3

discuss  44:22
discussed  19:19
  49:17
discussion  17:22
  22:15 41:6
discussions  19:18
  40:25
district  1:1 2:1
  7:15,16 13:2
division  1:2,3 2:2
  2:3 7:16
document  22:1,2,5
  22:22,25 23:4,6
  27:23 28:6,8,21,22
  29:7,12,22,25 37:8
  37:10,14,22 38:8
  38:11 39:10,16,19
  39:24 50:17
documents  17:25
  18:2,3,5,9 21:2
  22:8,9 23:1,11,14
  23:20,25 24:4,8,19
  25:25 26:3,5,13,14
  28:9 32:25 33:3,7
  43:22 49:6,11
doing  17:23 29:14
  42:9
dollar  52:6
dowd  3:18 4:4
downturn  34:15
dramatically
  14:22 15:15
drop  14:25
dropping  14:21
duly  61:8
duties  58:21

e

e  16:12 17:22
  24:12,20,22,24
  25:8,10,12,15,16
  25:18,25 26:4,16

26:18,24 27:1,8,16
  27:17 35:11 40:13
  40:16 43:2 48:21
  50:22 51:4,8,17
  52:18
eagel  3:4,10 8:10
  14:23 40:7
earlier  30:24 34:8
  40:3 53:12 56:16
  57:2
early  40:9
eastern  1:2 2:2
  7:15
efficient  13:20
elaborate  17:4
electronic  28:25
employed  12:21
  12:23
employee  47:10
  61:18
engagement  41:8
  41:21
ensure  13:19
  58:25
entered  20:24
enterprises  1:10
  2:10 7:14
environment  9:18
eric  48:4,6
especially  9:17
esq  3:5,11,19 4:5
  4:13 5:5,6
et  1:11 2:11 7:13
  7:14
everybody  8:14
exactly  15:13
  18:18 40:4
examination  6:2
  8:22 53:7 56:1
examined  8:20

example  9:16
excuse  50:20
executed  29:18
  60:7
executive  12:20
executives  57:25
exhibit  6:12,14,20
  6:22,24 22:1,4,23
  28:2,6 33:25
  35:18 37:6,7,17
  38:1 39:10,16,21
  58:6,6,9,11
exhibits  6:11,19
exist  52:12
expert  38:5,19
  39:23,24
explain  44:7
explained  15:13
  17:21 33:21

f

fair  10:19 18:24
faith  21:19
fall  40:9,9,23
  50:15
false  37:17 38:1
  39:16,21
familiar  41:12
  43:18 53:20 55:5
  55:14,17 56:25
family  45:14
far  17:16 18:7,8
  23:18
federal  13:14
  21:10 57:4 61:14
feedback  19:16
fenner  53:21
fidelity  54:22
figure  32:7 34:18
file  14:18 18:6
filed  7:14 18:1
  19:4,7,24 20:5

**[filed - infrastructure]**

21:22 30:18 39:15
**filling** 46:15
**finally** 10:21 48:12
**financial** 15:10,14
**financially** 7:25
61:17
**find** 20:9 26:3
**finding** 21:6
**fine** 37:3 49:25
**finish** 9:25
**finished** 10:4
49:20 50:8
**firm** 11:6 14:23
35:4 40:18 42:12
42:13 56:18
**firms** 42:1 56:22
56:24
**first** 18:16,19 23:5
26:21 27:7 33:12
33:14,22 40:1,11
43:9 51:6,22
**five** 56:11
**florida** 1:16 2:17
7:1 11:15 12:24
29:19 33:15
**focus** 12:6
**followed** 57:19
58:2
**follows** 8:20
**followup** 49:23
50:8 53:11
**followups** 52:25
**foregoing** 29:18
60:2 61:4,7,11,13
**form** 51:7 52:3,9,9
**fort** 13:15
**forth** 30:17 34:6
41:15 61:6
**four** 14:10
**francisco** 3:7

**freight** 13:2,16,17
13:21 31:13,19
**froze** 13:6
**frozen** 13:6
**full** 8:25
**fuller** 48:2,4
**fully** 17:20
**funding** 13:14
**further** 17:4 52:22
59:2,4 61:13,17

**g**

**geller** 3:18 4:4
**general** 33:3,20
**georgia** 5:8 11:22
12:5
**getting** 31:25
**give** 9:18,25 51:10
**given** 61:12
**gmail** 25:16
**go** 7:10 9:5,13
10:8 11:12 16:11
17:9 22:14 24:25
25:3 32:11,16
38:17,21,22 42:10
42:19 44:20,23
47:14 49:21
**going** 9:5,6,12
11:12 15:2 21:25
23:17 25:23 27:22
32:1 36:20,21,25
37:5 38:18
**good** 7:4 8:6,9,24
21:19
**goods** 13:21
**goofy** 42:14
**google** 42:15
**googled** 42:12
**government** 47:7
47:10,12
**grandson** 45:16

**grant** 13:14
**grear** 48:12
**great** 11:1 27:2
56:15
**ground** 9:5
**growing** 31:18
**guess** 21:5 30:6
54:8 57:11
**guy** 56:5,7
**guys** 32:6 55:1,3
57:1,13 58:25

**h**

**hands** 24:15
**happened** 46:17
**hard** 24:20
**head** 9:16,19
**heard** 33:10,13
44:5 53:22 58:25
**held** 13:24 22:15
26:18 35:5 50:22
**helpful** 25:23
**hey** 57:13
**higher** 31:24
**history** 12:7,11
14:3
**hobby** 31:11
**hold** 12:13,17 34:9
34:12 52:20
**holdings** 24:4 27:9
27:11 51:16
**holds** 24:10
**holleman** 3:5,8 6:8
8:9,9 11:5,6 15:18
16:2,6,15,20 17:2
17:8,16 18:21,25
19:12,25 20:11,17
21:13,17 22:7,11
23:7,16 24:1 25:2
27:19 28:1 34:24
35:19,22 36:10,15
36:20,25 37:20

38:3 39:12,22
41:10 42:6,25
44:16 45:2,21
46:4,9,22 47:3,8
48:25 49:14,25
50:13 51:11 52:1
52:17,25 53:17,24
54:5,11,18 55:20
56:2 59:2
**home** 26:7,10
**honestly** 42:11
46:17
**hopefully** 27:25
**house** 56:8
**huh** 40:6

**i**

**idea** 46:3,5
**identification** 28:2
**identify** 39:20
**immediately** 29:15
**important** 9:15,18
9:22 30:7
**incorporated**
53:21 55:16
**incorrect** 51:25,25
52:16
**index** 6:1
**individually** 1:5
2:5
**individuals** 44:15
45:13
**industry** 13:18
31:18
**inflated** 36:6
**information** 26:24
27:2,4,6 50:16
51:7,23,25 52:2,8
52:9,16,21
**infrastructure**
13:15

Veritext Legal Solutions
866.299.5127

**initial** 24:17,21,22 32:10 40:25 41:5 50:15 51:22
**initialed** 60:4
**ink** 60:4
**inquired** 15:1
**inquiring** 40:5
**insofar** 23:16
**instruct** 23:17
**instructs** 10:7
**interested** 7:25 61:18
**interesting** 31:20
**internet** 33:5,21 42:14
**introduce** 21:25 27:22 37:5
**introduced** 22:23 28:5 58:5
**introducing** 22:3
**invested** 21:19
**investigator** 20:9
**investing** 24:15,17 32:18,23 51:2,18 52:4,10,12
**investment** 31:25 32:11,14
**investor** 31:8
**involved** 46:1,14 47:11 56:22,24 57:7,19 58:1
**involving** 57:8,22
**ipo** 14:20 15:11,12 15:17 24:18 27:14 30:25 32:1
**ira** 55:2
**iras** 54:20
**issued** 20:21 21:3 37:18
**item** 51:13

**items** 27:8 52:5

**j**

**j.p.** 55:5
**jason** 48:12
**jessica** 5:5 8:6 22:7 35:21 38:20 53:1 55:21
**job** 1:23 31:17 32:9 33:16
**john** 43:19 44:2,10
**joint** 35:11
**jonathan** 5:17 27:24
**jpcorley** 5:10
**june** 30:14 37:15 37:19

**k**

**k** 6:14
**keep** 36:20,25
**keith** 1:15 2:16 6:3 7:12 8:18 9:1 59:8 60:1,14
**kfalcon** 25:21 26:16
**kfalcon99** 25:11
**kind** 17:23 23:20 42:11 47:9
**king** 5:4 8:7
**knew** 33:23
**know** 10:14,22 15:24 16:9 17:15 18:19 19:3,22 20:3,18,20,23 21:8 22:4 23:5 26:22 27:2 31:17,17 33:4,5,17 34:20 35:15 36:23 37:14 37:25 38:4,7,10 40:9 41:22 42:13 43:1,4,16,19,23

44:13,19 45:3,6,10 45:15,19 46:1,12 47:16 48:2,21 53:1,23 54:4,16,19 54:23 55:7,10 57:24
**knowledge** 32:2
**knoxville** 57:4
**kslaw.com** 5:10,11

**l**

**lame** 42:11
**large** 16:21 31:11 31:18
**law** 14:23 42:1,12 42:13 56:22,24
**laws** 29:17
**lawsuit** 14:16,18 23:23 46:7
**lawsuits** 21:22
**lawyer** 10:7 16:12 17:9 40:2 48:16
**lawyers** 10:5 41:23 43:7,12 44:6,11,22 48:19 49:18 57:20
**layman's** 15:21
**lbugni** 5:11
**lead** 16:10
**leadership** 58:4
**learned** 33:13,15 33:22
**led** 15:2
**legal** 7:23 41:12 47:15,19 59:10
**legit** 42:16,17,18
**letter** 41:8,14,21
**level** 31:8
**lewis** 1:5 2:5 7:13
**liaison** 13:17
**line** 51:13 52:4

**lines** 41:19 51:15
**lisa** 5:6 8:8 35:19 48:10
**listing** 34:2
**litigation** 9:8 11:10 16:10,14 18:1 20:16,22 21:12 26:1,4,13 44:21
**little** 11:12 14:11 44:8 53:12
**live** 11:14,15 42:13 43:10,10
**living** 33:15
**llc** 54:15 55:6,12
**llp** 3:18 4:4,12 5:4
**loaded** 47:10
**local** 13:19
**logged** 27:18
**logistics** 12:19 13:18 14:7 31:14
**long** 13:24 36:21 38:11 41:5 49:3
**longer** 36:24
**look** 16:11 23:14 31:14 33:17
**looked** 28:10 31:16,22 32:5 42:17
**looks** 23:1 28:9
**losses** 36:4,9,14
**lost** 34:14
**lot** 31:23 34:17
**low** 31:8 32:10
**lower** 32:2
**lynch** 53:20 54:10

**m**

**m** 3:19
**machine** 61:9
**magazine** 40:5

Veritext Legal Solutions
866 299 5127

| | | | |
|---|---|---|---|
| **mail** 17:22 24:20 24:22,24 25:8,10 25:12,15,16,18,25 26:4,16 40:13,16 43:2 48:21 51:8 | **military** 12:3,12 14:8 | **neither** 61:17 | **obligation** 19:23 20:3 |
| **mails** 16:12 | **minute** 24:25 | **never** 33:22 42:19 44:4 46:14 54:25 | **obtain** 11:23 |
| **maintained** 13:21 | **minutes** 11:13 49:5,22 56:9,11,14 | **new** 3:13,13 4:15 | **obviously** 47:18 |
| **making** 31:5 32:14 44:20 | **misleading** 37:18 38:1 39:16,21 | **news** 14:22 33:7 | **occasion** 50:15 |
| **manage** 13:14 | **misrepresented** 15:11 | **nicolaus** 55:15 | **occasions** 50:12,24 |
| **management** 12:17 | **missed** 39:5 | **nodded** 9:16 | **occurred** 18:7 |
| **manatee** 13:15,16 | **mobility** 13:21 | **nods** 9:19 | **october** 1:17 2:20 7:1,6 61:21 |
| **maps** 42:15 | **money** 15:22,25 21:14,16,18 31:10 31:12 34:14,16,17 34:19 | **northern** 12:2,10 | **offering** 30:16 |
| **marion** 3:11 | **months** 18:20 | **note** 7:6 | **officer** 14:11 |
| **maritime** 12:20 | **morgan** 54:14,20 54:24 55:1,6 | **noted** 59:13 60:4 | **official** 52:10 |
| **marked** 6:19 22:4 22:23 28:2,6 37:7 | **morning** 7:4 8:6,9 8:24 | **notes** 16:12 | **okay** 8:14 9:9,10 9:22 10:1,2,12,15 10:21,25 11:1,9,12 14:16 15:4 16:18 17:25 18:24 21:22 25:20,23 26:7 27:22 28:17 29:11 30:12 32:12 34:1 35:23 36:1,18,20 37:2,5 42:22 46:20 47:17 49:20 49:24 51:21 52:22 55:20 57:2,22 58:5 |
| **marketer** 50:20 | **motion** 6:15 28:12 58:8,14 | **noticed** 14:21 | |
| **master** 12:9,11 | **move** 36:18 | **noticing** 8:4 | |
| **master's** 12:1,2,8 | **myers** 4:12 8:12 53:10 | **number** 6:12,20 7:17 24:15 26:23 27:12 28:21,23,25 29:2,3 31:22 51:14 54:21 59:8 | |
| **matter** 7:13 31:4 40:2,19 41:17 45:20 46:15 47:15 | | **ny** 4:15 | |
| **matters** 9:8 13:20 47:11 | **n** | **o** | |
| **max** 48:2 | **n** 45:11 | **o'melveny** 4:12 8:12 53:10 | **omm.com** 4:17 |
| **mean** 25:18 26:11 33:15 54:2 58:3 | **name** 7:21 8:25 29:16 35:8,10 43:17,21 53:9,22 55:7 61:21 | **object** 10:5 23:16 | **once** 18:15 43:2 |
| **means** 16:19 | **named** 44:13 45:6 45:10 | **objecting** 17:16 | **ones** 11:11 21:4 |
| **media** 7:11 59:9 | **names** 11:8 33:18 | **objection** 10:9 15:18 16:2,6,15,20 17:2,8 18:21,25 19:12 20:11,17 21:13,17 23:7 24:1 27:19 34:24 36:10,15 37:20 38:3 39:12,22 41:10 42:6,25 44:16 45:2,21 46:4,9,22 47:3,8 49:14 50:13 51:11 52:1,17 53:17,24 54:5,11,18 | **online** 27:20 32:19 32:23 40:5 |
| **meet** 48:18,24 49:3 | **nashville** 3:21 | | **opinion** 15:21,25 |
| **meeting** 49:9,11 | **nature** 15:12 | | **orders** 20:24 21:3 |
| **mentioned** 27:15 34:8 35:3 | **ne** 5:7 | | **original** 21:5 24:3 51:3 61:14 |
| **merrill** 53:20 54:10 | **need** 10:21 25:19 56:11 | | **originally** 24:13 |
| **met** 43:7 | **needed** 15:22,25 56:13 | **objections** 8:3 | **outcome** 7:25 |
| **microphones** 7:6 | | | **owned** 14:6 |
| | | | **owner** 35:9 |

Veritext Legal Solutions
866 299 5127

| p | | | |
|---|---|---|---|
| **p.m.** 2:19 22:18,18 22:20 25:4,4,6 38:24,24 39:1 50:2,3,3,5 59:11 59:13 | **periodically** 33:19 **perjury** 8:20 29:16 60:2 **perry** 5:5 **person** 43:8 54:2,4 | **preparing** 43:4 **present** 2:21 5:16 6:4 **press** 14:22 40:3 40:16 | **projects** 13:15 **prompt** 56:15 **provide** 24:5,19 27:10 **provided** 18:3 |
| **page** 6:2,12,20 28:15,20,20,21,23 29:1,2,6,8,11 30:10,11 33:25 34:2,6 35:17,20 | **personally** 44:4 **pertains** 61:13 **peterson** 48:6 **phone** 40:13 41:3 43:3 44:9 | **pretty** 38:11 **previously** 22:3 30:18 37:7 47:25 **price** 14:21,25 30:17 31:23 32:1 | 19:15 21:4 24:2,6 24:24 26:6,25 27:6 50:11,14,18 50:21 51:7,23 52:15,19 |
| **pages** 1:25 28:21 38:14 | **pick** 7:7 40:13 **picking** 56:5,7 | 32:10,22 34:15 51:14 52:6 | **public** 15:23 16:1 **pulled** 51:16 |
| **paid** 36:11 45:24 **paper** 46:16 | **piece** 46:16 **pierce** 53:20 | **prices** 36:6 **primary** 32:6 | **purchase** 24:17 30:16,25 31:2,5,6 |
| **paragraph** 29:3 29:15 30:13 35:25 35:25 36:2 | **place** 7:9 61:6 **plaintiff** 1:8 2:8 3:3,17 4:3 16:7,10 44:14 | **principally** 57:23 **prior** 6:19 14:3,5,8 14:10 15:11 30:11 31:5 33:1,10,23 | 33:1 35:14 51:3 **purchased** 30:14 30:23 51:9,14 52:5 |
| **participants** 7:19 **parties** 7:9 | **plaintiffs** 6:15 28:12 43:21,24 | 37:14,22 41:23 42:1 61:7 | **purchases** 35:13 36:5 37:15 |
| **partner** 8:8 **party** 7:24 46:7,20 47:1 61:19 | 44:20,24 56:23 **planners** 13:19 **plans** 34:22 | **private** 7:7 **privileged** 17:17 23:18 42:7 | **purchasing** 32:16 **put** 31:24 34:19,25 46:11 |
| **passmore** 3:11,15 **pate** 48:10 | **please** 7:6 8:3,24 9:24 10:7,8,13 | **probably** 31:4 35:15 40:8 41:18 | q |
| **patience** 56:4 **patrick** 48:8 | 20:1 22:5 25:1 28:15 30:11 33:24 | 58:3 **procedure** 44:7 | **quantity** 51:15 52:5 |
| **pdf** 28:16,23 30:10 35:20 | 38:21 57:15 **point** 10:12 19:10 | 45:3 **proceeding** 8:3 | **question** 9:25 10:4 10:8,9,16,19 13:12 |
| **peachtree** 5:7 **pearl** 5:17 27:24 | **policy** 47:18 **port** 12:20 | 46:21 47:2,6 **proceedings** 18:7 | 17:12,18 19:25 21:1 23:19 25:24 |
| **penalty** 8:19 29:16 60:2 | **portfo** 24:9 **portfolio** 31:10 | 61:4,7,8,15 **process** 44:7 45:24 | 39:5 42:9 47:10 56:16 57:3 |
| **pending** 10:23 13:12 21:9 | **portion** 39:7 **position** 13:25 14:4,5 | 48:17 **produce** 23:11 | **questions** 9:7,12 10:6,13,24 19:11 |
| **people** 16:22 54:19 57:24 58:23 | **pp** 6:16 **preparation** 53:14 | 26:22 **professional** 12:13 | 49:23 50:8 52:23 53:4,5 54:14 |
| 59:1 **perception** 32:4,9 | **prepare** 48:14,19 48:23 49:4,6,12 | 12:18,18 14:3 25:17 | 55:13,18 59:3 **quick** 36:19 53:11 |
| **periodic** 43:1 | | **project** 12:17 | 56:3,10 **quinn** 48:8,10 |

Veritext Legal Solutions
866 299 5127

**quote** 29:16 30:14 30:19

**r**

**r** 5:6 45:11
**rapidly** 31:18
**reached** 40:7 57:13
**read** 13:12 29:22 32:25 38:7,10,12 39:4,7,10 53:14 60:2
**reading** 33:5 39:18
**ready** 31:25
**real** 33:7 42:13 56:10
**really** 16:3 17:3 32:15 33:14,21,23 34:25 35:15,16 44:17 48:17 56:25 57:18
**reason** 15:12,16 32:13 35:16
**recall** 18:16,18 19:13,15 20:12 21:7 23:8 32:13 33:12 35:12,16 37:12 38:15 39:9 40:21 41:5,14 43:17 46:24 47:16 49:8 56:19 57:7 57:17
**recess** 13:9 22:18 25:4 38:24 50:3
**recognize** 22:25 23:3 28:8,11
**record** 7:5,10 8:2 8:25 13:10 22:14 22:15,16,19 24:25 25:3,5 38:21,22,25 49:21 50:2,4 51:8

51:12 59:11 61:8 61:11
**recorded** 7:11 9:14
**recording** 7:8
**records** 50:10,12 51:10,24
**redwan** 4:13 8:11 53:9
**refer** 20:6
**referenced** 6:19
**referring** 23:21 27:5 35:19
**reflects** 51:2
**refresh** 22:10 27:25
**refreshed** 22:12
**regarding** 40:2 58:20
**regular** 14:10 18:3
**related** 7:24 9:8 23:23,23,24 26:1,4 26:13 31:15 45:13
**relating** 13:20
**relation** 14:25
**relative** 61:18
**relatively** 31:8
**release** 14:22 40:3 40:16
**relied** 57:20
**relief** 21:11
**rely** 30:5
**remember** 11:7 29:14 32:20 39:18 40:4,15,17 41:7,11 57:5,12 58:9,11
**remote** 1:15 3:1 4:1 5:1,16 7:18
**remotely** 2:18 7:20

**reported** 1:20 33:8
**reporter** 2:21 7:22 8:15 9:11,23 39:4 61:2
**represent** 7:22 41:17 53:10 58:25
**representation** 41:15 56:23
**representative** 16:19,21 17:1,7 30:2 58:21
**representatives** 58:17
**represented** 11:1 11:9 56:17
**representing** 11:4 58:23
**request** 30:1
**requested** 39:7 61:16
**requests** 23:10,15
**research** 33:21 42:1
**researched** 42:19
**residences** 11:16
**respect** 37:18
**response** 21:6
**responsibilities** 13:4 16:25 17:7 17:13
**responsive** 23:15
**restate** 19:25
**result** 36:2
**retain** 40:18,24 41:1 42:4
**retained** 40:21 41:6 59:10
**retaining** 41:24 42:2,24
**reveal** 23:17 42:7 57:15

**revealing** 17:17,19 19:18 40:25
**review** 49:6,10 61:15
**reviewed** 17:25 18:10,13,16 19:3,9 20:24 21:2
**reviewing** 49:10
**rgrdlaw.com** 3:23 4:9
**right** 9:16 21:25 22:11 26:11 29:8 29:9 35:1,23 37:1 58:12
**road** 33:16,19
**robbins** 1:15 2:17 3:18 4:4 6:3,14 7:12 8:18,24 9:1,3 14:17 22:8,22 23:17 25:8 28:5 37:1,6 39:3 42:6 45:6,8,10 50:7 53:9 55:19 56:3 59:2,5,8 60:1,14
**robbinses** 45:15
**robert** 45:8
**role** 13:5 16:5,14
**rsaleh** 4:17
**rudman** 3:18 4:4
**rules** 9:6
**rulings** 18:7

**s**

**safe** 13:20 32:7,8 38:13
**saleh** 4:13 6:7 8:11 8:11 53:5,8,19 54:1,7,13 55:4,18
**san** 3:7 4:7
**saw** 14:22 23:5 31:25 32:6 33:20 37:12,14 40:3,5

Veritext Legal Solutions
866-299-5127

| | | | |
|---|---|---|---|
| 50:17 | **separate** 35:13 | **similar** 50:17 | **state** 8:1,3,24 |
| **saying** 14:24 51:8 | **september** 29:12 | 58:24 | 13:14 57:9,11 |
| 57:3 | 29:19,23 | **similarly** 1:7 2:7 | 60:9 61:2 |
| **says** 29:16 36:2 | **series** 9:7 | **simply** 46:15 52:4 | **stated** 8:19 10:9 |
| **scanned** 24:23 | **servant** 14:9 | **sir** 14:14 22:2 30:4 | 16:7 |
| **schedule** 33:25 | **serve** 20:14 | 34:8 39:14 | **statement** 24:24 |
| 48:20 | **served** 23:10 | **sit** 34:19 39:20 | 27:1 39:21 50:19 |
| **schedules** 43:5 | **service** 14:13 | **situated** 1:7 2:7 | 50:22 51:1,13 |
| **scope** 41:15 | **set** 27:24 30:17 | **six** 14:1 18:20 59:9 | 52:4,11,19 |
| **scott** 3:5 8:9 11:5 | 34:6 41:15 52:15 | **smith** 53:21 | **statements** 38:2 |
| 14:23 24:2 27:5 | 52:21 61:6 | **solutions** 7:23 | 39:17 52:15 |
| 43:10 48:25,25 | **share** 14:21 22:1 | 59:10 | **states** 1:1 2:1 7:15 |
| 49:4,24 50:25 | 30:17 31:23 52:7 | **son** 45:16 | 29:17 30:14 |
| 55:18 | **shareholder** 24:13 | **sorry** 35:21,22 | **stein** 1:5 2:5 7:13 |
| **seaport** 13:2,13 | 24:14 | 38:17 47:14 54:3 | **stifel** 55:15 |
| **search** 25:25 | **shares** 14:20 24:13 | 56:5,7 | **stock** 23:24 24:3 |
| 26:12 33:5 | 26:23 27:3,12,13 | **sort** 40:4 | 30:15,22 31:3,7,10 |
| **second** 30:13 | 27:13,14 30:15,25 | **sounded** 32:8 | 32:17,19 33:2 |
| 52:15 58:6 | 31:1,20 32:4,20 | 42:17 | 34:3,10,12,23 35:5 |
| **securities** 55:6,12 | 34:9 35:4,14 | **sounds** 42:11 | 36:5 |
| **see** 15:1 22:2,4,6 | 50:23 51:9,14,15 | **spalding** 5:4 8:7 | **stocks** 31:15 |
| 22:22 28:6,18 | 52:20 | **speak** 41:23 | **stored** 26:14 |
| 29:1,20 30:20 | **shop** 51:19 | **speaking** 31:12 | **street** 3:6,20 5:7 |
| 33:16,17,18 34:2 | **shorthand** 2:21 | **specific** 35:16 | 42:15 |
| 35:25 36:7 37:8 | 61:1,9 | **specifics** 57:15 | **studied** 37:22 |
| 40:8 42:15,16 | **show** 27:11 | **spell** 45:14 | **stuff** 33:4 47:18 |
| **seeing** 22:7,8 | **showing** 37:6 | **spelled** 45:11 | **submitted** 29:25 |
| **seeking** 16:13 | 50:22 | **spoke** 41:2 | **subpoenas** 20:15 |
| 21:11 | **shown** 27:8 | **spoken** 44:1,4 | 20:21 |
| **seeks** 58:15 | **shows** 27:25 51:2 | **sports** 12:9 | **subscribed** 61:20 |
| **seen** 23:2 33:19 | 52:19 | **square** 4:14,14 | **subsidiary** 14:6 |
| 37:10 42:14 43:9 | **side** 13:16 53:2,3 | **squire** 3:4,10 8:10 | **substance** 41:1 |
| 43:21 | **sign** 29:12 41:8 | **stake** 59:1 | **suffered** 36:4,9 |
| **sell** 34:22 | **signature** 28:18 | **standing** 15:15 | **suing** 15:4 |
| **selle** 1:21 2:20 | 29:1,2 61:23 | **standings** 15:10 | **suit** 14:25 |
| 7:22 61:24 | **signed** 29:23 58:7 | **stanley** 54:14,20 | **suite** 3:6,12,20 4:6 |
| **send** 57:13 | **significant** 36:4,9 | 54:24 55:1 | **sum** 31:11 |
| **sense** 9:20 10:10 | 36:12 | **start** 55:21 | **summarize** 53:14 |
| **sensitive** 7:7 | **signing** 41:14 | **started** 26:22 27:7 | **supply** 12:19 |
| **sentence** 30:13 | 58:11 | 27:16 | **support** 6:15 |
| | | | 28:12 58:7,14 |

Veritext Legal Solutions
866 299-5127

| | | | |
|---|---|---|---|
| **sure** 21:1 25:2 39:24 42:12 | **things** 25:17 43:5 46:12 58:16 | **trading** 24:9,11 26:18 50:10,12 51:8,10,12,22 | 34:3,9,23 35:4 36:5 47:22,25 |
| **swear** 8:15 | **think** 13:6 16:11 23:13 24:13 32:20 | **transaction** 24:22 50:16 | **ultimately** 40:18 |
| **sworn** 61:8 | 35:3,10 37:11 | **transactions** 23:24 | **undergraduate** 12:4 |
| **system** 13:22 | 38:13 43:21 46:13 | 24:3 32:21 34:3,5 | **undersigned** 61:1 |
| **systems** 14:8 | 49:2,20 50:8 | **transcribed** 61:10 | **understand** 10:13 |

**t**

| | | | |
|---|---|---|---|
| **take** 7:9 9:12,24 10:24 31:14 36:19 36:21 56:11 57:14 | 54:22 56:11 | **transcript** 60:3 61:11,14,16 | 10:17 17:6,20 21:1 30:4,7 47:25 57:18 58:18 |
| **taken** 2:17 7:12 9:2 61:4 | **third** 3:12 | **transferred** 27:4 54:21 | **understanding** 16:18 17:13,15 |
| **talk** 9:23 | **thought** 31:14,19 34:25 | **transportation** 12:25 13:19,22 | 45:22 51:21,24 52:14 56:21 58:20 |
| **talking** 14:18 | **three** 44:2 45:15 | 31:15 | 58:22 |
| **te** 1:21 2:20 7:22 61:24 | **throw** 34:16,18 | **tremendous** 31:9 | **understood** 10:18 10:24 47:20 |
| **team** 11:11 24:2 50:25 | **time** 7:5 8:4 9:24 10:22 13:11 18:19 | **tried** 22:10 | **underwriter** 4:11 8:12 53:10 |
| **technology** 7:19 | 22:16 33:9,12,22 37:18 39:1,9 40:6 | **truck** 33:16,17,18 | **underwriters** 53:4 |
| **tell** 8:19 33:14 46:17 49:22 | 43:9 44:5 48:23 51:6,10,17,18 | **trucking** 31:16,18 31:20,22 | **unfortunately** 34:21 |
| **telling** 10:17 | 52:11 59:3,11,13 61:5 | **true** 15:12,16 29:18 60:6 61:11 | **union** 3:20 |
| **tennessee** 1:2 2:2 3:21 7:16 57:4,10 | **times** 4:14,14 10:6 18:13 24:16 38:7 | **truth** 8:19 | **unit** 7:11 |
| **terminal** 32:3 | 48:18,20 | **truthful** 30:8 46:18 | **united** 1:1 2:1 7:15 29:17 |
| **terminated** 13:8 | **title** 13:1 | **try** 10:1 | **units** 59:9 |
| **terms** 15:21 41:12 | **today** 7:5 9:6,13 10:12,22 11:2 | **trying** 33:6 48:21 | **university** 11:22 12:2,3,10,12 |
| **terry** 22:9,13 43:14,16,19 44:2,2 44:10,10 | 14:17,19 39:20 48:15 56:4 58:6 | **turn** 28:15 33:24 35:17 | **use** 20:8 25:8,12 26:7 46:12 |
| **testified** 8:20 | **today's** 59:9 | **turning** 14:16 30:10 | **usx** 5:3 8:7 15:5 27:9 31:2,25 32:2 |
| **testifying** 61:7 | **told** 15:22 16:1 56:13 | **two** 32:20,21 35:12 50:12,23 | 54:10,17 55:1,2 57:8,23,25 |
| **testimony** 53:12 53:14 60:5 61:12 | **top** 29:3,9 30:14 | 51:15 | |
| **thank** 13:24 14:13 14:15 28:1 32:12 | **total** 28:22 30:22 59:8 | **types** 23:25 | |

| | | **u** | **v** |
|---|---|---|---|
| 50:1,7 55:19 56:3 59:3,4,6,12 | **tower** 4:14 | **u.s.** 1:10 2:10 7:14 14:8,11 21:23 | **various** 47:11 |
| **thing** 15:2 32:18 38:12 42:14 | **traceable** 30:16 | 23:24,25 26:1,4,13 30:15,22 31:6 32:14,25 33:1,13 | **verbal** 9:15,18 |
| | **trade** 24:12 26:18 26:24 27:1,8,16,17 35:11 50:22 51:4 51:17 52:18 | | **veritext** 5:17 7:23 59:10 |

Veritext Legal Solutions
866 299 5127

| | | |
|---|---|---|
| **versus** 7:14<br>**video** 7:8,11<br>**videoconference**<br>  2:18,22 6:4 13:8<br>  61:5<br>**videographer** 5:18<br>  7:4,21 8:14 13:10<br>  22:16,19 25:3,5<br>  38:22,25 50:2,4<br>  59:7<br>**videorecorded**<br>  2:16<br>**videotaped** 1:15<br>**view** 42:15<br>**virtual** 43:10<br>**volume** 1:18 2:17<br>  6:5 60:3,15<br>**vs** 1:9 2:9 | **whispering** 7:7<br>**wholly** 14:6<br>**wife's** 35:10<br>**willing** 31:24<br>**winterhaven** 1:16<br>  2:17 7:1 11:15<br>  29:19<br>**witness** 3:3 6:2<br>  8:15 13:13 16:3,7<br>  16:16,21 17:3,9,20<br>  18:22 19:1,13<br>  20:12,18 21:14,18<br>  23:8,20 24:2<br>  27:20 34:25 36:11<br>  36:16 37:2,21<br>  38:4 39:23 41:11<br>  42:11 43:1 44:17<br>  45:3,22 46:5,10,23<br>  47:4,9 49:15<br>  50:14 51:12 52:2<br>  52:18 53:18,25<br>  54:6,12,19 59:6<br>  61:20 | 30:15 31:6 32:14<br>  33:1,1,13 34:3,9<br>  34:23 35:4 36:5<br>  47:22,25 |
| **w** | **witnesses** 20:9<br>  61:6 | **y** |
| **w** 3:5<br>**wait** 9:24 10:3<br>  44:22 46:16<br>**walk** 14:2<br>**walmart** 32:7<br>**walmart's** 32:7<br>**want** 21:14,19<br>  31:9 32:4 34:13<br>  34:15,18 36:19<br>  42:7 50:9<br>**way** 37:25<br>**we've** 28:10 43:3<br>  48:21<br>**websites** 33:8<br>**wednesday** 1:17<br>  2:19 7:1<br>**weeks** 31:5 48:22<br>**went** 15:15 26:24<br>  27:18 32:18 42:15<br>**west** 4:6 5:18 7:21<br>**whereof** 61:20 | **wood** 3:19<br>**work** 12:24 14:3<br>  25:15 31:13 32:5<br>  45:20<br>**worked** 14:5 47:25<br>**working** 22:11<br>  50:25 58:24<br>**works** 14:23 47:22<br>  48:17 54:4<br>**world** 31:19<br>**worth** 36:11<br>**wr** 55:12 | **y** 45:14,17<br>**yahoo** 26:16<br>**yahoo.com.** 25:11<br>**yeah** 22:12 28:10<br>  29:10 30:6 37:21<br>  38:4,16 39:18<br>  41:18,19 45:18<br>  49:25<br>**year** 19:10 54:22<br>**years** 14:1,10,12<br>  24:16 46:16 54:21<br>**yesterday** 49:2,10<br>**york** 3:13,13 4:15 |
| | **x** | **z** |
| | **xpress** 1:10 2:10<br>  7:14 21:23 23:24<br>  23:25 26:1,4,13 | **zoom** 9:17 |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.