# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated, *et al.*, | Case No. 1:19-cv-98 |
| *Plaintiffs*, | Judge Travis R. McDonough |
| v. | Magistrate Judge Christopher H. Steger |
| U.S. XPRESS ENTERPRISES, INC., *et al.*, | |
| *Defendants*. | |

# MEMORANDUM OPINION

Before the Court is a motion for class certification (Doc. 104) filed by Plaintiffs Deirdre Terry, Charles Clowdis, and Bryan Robbins. Plaintiffs seek an order certifying a class under Federal Rule of Civil Procedure 23(a) and (b)(3) consisting of:

> All persons or entities who purchased or otherwise acquired Class A common stock of USX pursuant to and/or traceable to the Offering Documents filed with the United States Securities and Exchange Commission ("SEC") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their immediate families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

(*Id.*) Plaintiffs also ask the Court to appoint them as class representatives and appoint their counsel as class counsel. (*Id.*) For the reasons set forth below, the motion will be **GRANTED**.

I.     BACKGROUND

U.S. Xpress Enterprises, Inc. ("USX") is a publicly traded trucking company headquartered in Chattanooga, Tennessee. (Doc. 91, at 1.)[1] On June 14, 2018, USX began an initial public offering ("IPO") of 16,668,000 shares of Class A common stock at a price of $16 per share. (*Id.* at 3.) Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Wells Fargo Securities, LLC, Stephens, Inc., WR Securities LLC, and Stifel Nicolaus & Company, Inc. served as underwriters. (*Id.*) The IPO yielded $245.2 million in net proceeds after underwriting discounts, commissions, and offering expenses. (*Id.*)

On June 15, 2018, named Plaintiff Bryan Robbins purchased 50 shares of USX common stock at a price of $16.392 per share. (Doc. 106-3, at 3.) On June 19, 2018,[2] named Plaintiff Charles Clowdis purchased 100 shares of USX common stock at a price of $16.51 per share. (Doc. 106-2, at 2.)

On August 2, 2018, USX filed a form 8-K with the Securities and Exchange Commission ("SEC"), which notified the SEC and shareholders that USX had "issued a press release announcing its financial and operating results for the second quarter ended June 30, 2018." (Doc. 122-1, at 3.) USX submitted the press release with its form 8-K. (*Id.*) The press release explained, among other things, that drivers from USX's over-the-road division ("OTR") were

---

[1] The general factual background underlying this case is mostly undisputed. The Court therefore draws general background from its order on Defendants' motions to dismiss. (*See* Doc. 91.)

[2] Although the declaration says "June 19, 2028," the Court reasonably surmises that this was almost certainly a typographical error and was intended to mean "June 19, 2018." In another filing, however, Clowdis provided the date of June 18, 2018. (*See* Doc. 106-2, at 7.)

2

being used to support its dedicated routes,[3] and that this "negatively impacted [OTR] utilization by approximately 150 basis points." (*Id.* at 8.)

Lead Plaintiff Deirdre Terry, along with accounts controlled by or assigned (for litigation purposes) to her, purchased shares of USX common stock in a series of transactions beginning on August 6, 2018, and then sold them in a series of transactions ending April 23, 2019. (Doc. 106-1, at 7–8.)

According to Plaintiffs, the amended registration statement and final prospectus (the "Offering Documents") that Defendants prepared for the IPO misrepresented or omitted several categories of material information. (Doc. 91, at 4.) This lawsuit commenced in April 2019, asserting that Defendants' alleged misrepresentations and omissions violated federal securities law. (*See* Doc. 1.) Plaintiffs' operative pleading (Doc. 57) asserts claims under § 11 of the Securities Act of 1933 (the "Securities Act"), § 15 of the Securities Act, § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and 17 C.F.R. § 240.10b-5, and § 20(a) of the Exchange Act.

The Court dismissed Plaintiffs' Exchange Act claims and most of their Securities Act claims. (*See generally* Doc. 91.) The Court allowed the following Securities Act claims to proceed: (1) a misrepresentation claim regarding USX's statement that it would "[c]apitalize on" the then "favorable truckload environment" by "[s]trategically expand[ing] our fleet based on expected profitability, including through our company-sponsored independent contractor lease program," because, in fact, USX did not even have enough drivers to meet its dedicated

---

[3] "Dedicated" contracts are multi-year contracts that are shielded from market volatility, while OTR involves short-term contracts or one-time, spot-market transactions, meaning OTR revenue is unpredictable but tends to entail higher profit margins, especially during market upswings. (Doc. 91, at 2, 27.)

3

customers' then-present needs and was "cannibalizing" high-margin OTR drivers to cover lower-margin dedicated contracts; (2) a misrepresentation claim regarding the statement that "[i]f we are unable to continue to attract and retain a sufficient number of drivers," then USX would face growth and profitability problems, because, in fact, USX did not at that time have a sufficient number of drivers and consequently was sacrificing OTR profitability despite the ostensible conditionality of the projection; and (3) an omission claim regarding the cannibalization of OTR drivers. (Doc. 91, at 31–34, 45–46.) At bottom, Plaintiffs are proceeding on the theory that USX misrepresented and/or failed to disclose that it lacked the drivers necessary to serve its dedicated customers and cannibalized OTR drivers to ameliorate the problem, and that this cannibalization was especially costly because the OTR market was in an upswing at the time of the IPO.

Plaintiffs now move to certify a class comprised of "[a]ll persons or entities who purchased or otherwise acquired Class A common stock of USX pursuant to and/or traceable to the Offering Documents . . . and who were damaged thereby," but excluding "Defendants and their immediate families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest." (Doc. 104.) Defendants have responded in opposition (Doc. 122), and the motion is ready for adjudication.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 allows "members of a class" to sue or be sued "on behalf of all members" of the class. Fed. R. Civ. P. 23(a); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.") (citation and internal

quotation marks omitted)) [hereinafter *Dukes*]. To proceed as a class under Rule 23, the parties seeking class certification must show that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Dukes*, 564 U.S. at 349 (describing these requirements as "numerosity, commonality, typicality, and adequate representation").

After satisfying Rule 23(a), the parties seeking certification must also take one of three paths under Rule 23(b). Class certification under Rule 23(b)(3) requires (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"—predominance—and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"—superiority. Fed. R. Civ. P. 23(b)(3). In determining whether the named plaintiffs have satisfied the predominance and superiority requirements, the Court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350–52. Rather, the burden is on the party seeking certification to "affirmatively demonstrate his

compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* Often, the "rigorous analysis" required of courts at the class-certification stage "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. However, Rule 23 does not give courts "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citing *Dukes*, 564 U.S. at 351 n.6). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (citing *Dukes*, 564 U.S. at 351 n.6).

### III. ANALYSIS

#### A. Class Definition

The proposed class is comprised of:

> All persons or entities who purchased or otherwise acquired Class A common stock of USX pursuant to and/or traceable to the Offering Documents filed with the United States Securities and Exchange Commission ("SEC") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their immediate families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

(Doc. 104, at 2.)

#### B. Rule 23(a) Requirements

##### i. *Numerosity*

To be entitled to class certification, the plaintiff must first show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The number of prospective class member required to satisfy the numerosity requirement is case-specific and requires examination of the underlying facts. *Gen. Tel. Co. of the Nw. v. Equal Emp.*

6

*Opportunity Comm'n*, 446 U.S. 318, 330 (1980). The requirement imposes no "absolute limitations" on class size. *Id.*; *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) ("[T]here is no strict numerical test[.]"). The requirement is generally satisfied by "substantial" numbers. *Daffin*, 458 F.3d at 552. Furthermore, to establish numerosity, "impracticability of joinder must be positively shown, and cannot be speculative." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (quoting *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir.2005)).

While the exact number of proposed class members is unknown, Plaintiffs argue that the volume of USX shares offered—more than 16.6 million—during an IPO on a national exchange leads to the common-sense inference that the number of purchasers was in the thousands or more and that joinder would therefore be impracticable. (Doc. 105, at 15–16); *see, e.g.*, *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) ("'[T]he exact number of class members need not be pleaded or proved' for a class to be certified, as long as the class representatives can show that joinder would be impracticable." (quoting *Golden*, 404 F.3d at 965–66)); *Schuh v. HCA Holdings, Inc.*, No. 3:11-1033, 2014 WL 4716231, at *13 (M.D. Tenn. Sept. 22, 2014), *interlocutory review of class certification denied sub nom. In re HCA Holdings, Inc.*, No. 14-511, 2015 WL 10575861 (6th Cir. Feb. 26, 2015) (finding numerosity established where the case "involved millions of stock, and [the p]laintiff estimates that the number of purchasers is likely to be 'in the thousands' and that those purchasers reside in many states"). Indeed, despite opposing certification, Defendants do not contest this issue. (*See generally* Doc. 122.) Accordingly, numerosity is satisfied.

### ii. Commonality

Plaintiffs must next demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requires more than simply showing that all putative class members have "suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. Commonality demands that members of a prospective class "have suffered the same injury" and that "[t]heir claims . . . depend upon a common contention . . . that is capable of classwide resolution." *Id.* A common contention is capable of such resolution if the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

> What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)).

> Section 11 of the Securities Act states, in pertinent part:
>
> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue [persons or entities specified in § 77k(a)(1)–(5).]

15 U.S.C. § 77k(a). Section 11 liability requires that:

> (1) [the plaintiff] purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under [§] 11; and (3) the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

*Local 295/Local 281 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 704 (S.D. Ohio 2010) (citing *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358–59 (2d Cir. 2010)); *see also J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008) (explaining that an omission may be actionable in face of duty to disclose). If a material misstatement or omission can be established, "'[l]iability . . . is virtually absolute, even for innocent misstatements'" because § 11 does not require proof "that the defendant acted with scienter." *Local 295*, 731 F. Supp. 2d at 704 (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382–83 (1983)). Section 15 claims derive from § 11 claims. *See id.* at 714–15 (stating that § 15 claim requires "(1) a primary securities law violation; (2) power to control the specific transaction or activity upon which the primary violation is predicated; and (3) actual participation (i.e., exercise of control) in the operations of the primary violator in general").

Plaintiffs argue that the proposed class members' claims involve the following common questions of law and fact: (1) whether Defendants violated the Securities Act; (2) whether the Offering Documents were negligently prepared and contained inaccurate statements of material fact and/or omitted material information required to be stated therein; and (3) to what extent the proposed class members have sustained damages and the proper measure of damages. (Doc. 105, at 17.) Defendants do not argue that the proposed class lacks questions of fact or law susceptible of common resolution; they only assert that those questions do not predominate over individual questions. (*See generally* Doc. 122.) The Court will address that issue in the predominance analysis, and otherwise finds that the proposed class members' §§ 11 and 15 claims relating to the Offering Documents are comprised of common contentions that are capable of class-wide resolution and suited to drive class-wide litigation. *Cf. Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475, 2019 WL 1450546, at *16 (M.D. Tenn. Mar. 29,

2019) ("If those misstatements and omissions violated federal law, they violated federal law as to all potential class members. Therefore, answering those questions will generate common, class-wide answers concerning liability.").

### iii. Typicality

The named plaintiffs must also show that their claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct . . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Id.* The typicality requirement, like the commonality requirement, helps to determine "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 350 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)).

The Securities Act claims of named Plaintiffs Terry, Clowdis, and Robbins are driven by the same factual underpinnings as the Securities Act claims of the proposed class because they derive from the same alleged misrepresentations and/or omissions in the Offering Documents. Defendants argue, however, the August 2, 2018 form 8-K filing and press release—which explicitly disclosed the cannibalization of OTR drivers and related costs—support an affirmative defense against proposed class members who purchased USX shares after August 2, 2018, which

10

includes Plaintiff Terry. *See In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 58 (S.D.N.Y. 2013) ("Where 'the plaintiff knew of the untruth or omissions at the time of his or her acquisition of the security,' . . . the plaintiff may not maintain a section 11 . . . claim." (quoting *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 n.1 (2d Cir. 2007)).

Defendant's intention to assert an affirmative defense based upon investor knowledge does not render the proposed representatives problematically atypical. *See, e.g.*, *Schuh*, 2014 WL 4716231, at *12 ("While there might not be cases that hold a class representative who is subject to a 'unique knowledge defense' is typical for purposes of a Section 11 or 12 case, there are cases that hold the mere fact that the representative may possess knowledge that other putative class members do not does not make that representative atypical or inadequate."). What Plaintiff Terry knew about USX and when has not yet been investigated. While Defendants invite the Court to presume that the form 8-K establishes a knowledge defense, (*see* Doc. 122, at 11 ("Courts have repeatedly recognized that SEC filings tend to demonstrate widespread public knowledge.")), they have offered no proof of any particular party's knowledge beyond the form 8-K itself and subsequent public analyst reports. (*Id.* at 12 (noting publicly available reports on August 3, 2018, by a Bank of America Merrill Lynch analyst and J.P. Morgan analyst which "acknowledged [USX's] August 2nd disclosures").) In other words, Defendants may well have a viable knowledge defense against individuals who purchased USX shares after August 2, 2018. But, even if Plaintiff Terry's claims may ultimately succumb to a knowledge defense, the *possible* existence of that defense does not render her otherwise typical claims atypical for purposes of the Rule 23 analysis. *See Schuh*, 2014 WL 4716231, at *12. Moreover, the possible defense is not even facially applicable to Plaintiffs Clowdis and Robbins, who both purchased USX shares in the days following the IPO. Accordingly, typicality is satisfied.

11

### iv. Adequate Representation

The adequate-representation requirement is two-pronged. It requires both that (1) "the representative . . . have common interests with unnamed members of the class," and (2) "it . . . appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543 (quoting *Am. Med. Sys.*, 75 F.3d at 1083). The requirement will only be satisfied if the proposed class representatives are "part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Thus, the requirement generally precludes the use of the class-action vehicle "where there is a conflict of interest between the named plaintiff and the members of the putative class." *Gen. Tel.*, 446 U.S. at 331.

As a general matter, Plaintiffs Terry, Clowdis, and Robbins possess common interests with the class and have already expended personal time and energy pursuing this litigation. (*See* Docs. 106-1, 106-2, 106-3.) Defendants, however, argue that Plaintiff Terry would be inadequate because (1) the possible knowledge defense would distract her, and (2) she submitted two false statements to the Court when seeking certification to serve as lead plaintiff. (*See* Doc. 22-2.) First, while a knowledge defense *might* apply to Plaintiff Terry, Defendants have submitted no evidence showing that it *does* apply to her. The Court cannot conclude that a proposed representative is inadequate only because a defense *might* apply. Indeed, to the extent that the defense might also apply to other class members, Terry's interest in defeating it very likely aligns with their interests, depending upon how she attempts to do so.

Next, the "false" statements that Defendants identify are essentially clerical, not substantive misrepresentations that could reasonably be interpreted as an attempt to mislead the

Court. Both "false" statements derive from Plaintiff Terry's May 10, 2019 motion seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act. (*See* Doc. 19.) In an attached certification, Plaintiff Terry swore "under penalty of perjury" in a document dated March 13, 2019, that "[m]y transaction(s) in U.S. Xpress Enterprises, Inc. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto." (Doc. 22-2, at 2.) The "chart attached hereto" listed transactions ranging from August 6, 2018, to April 23, 2019. (*Id.* at 3.) Though Terry testified that she "didn't know" how transactions that occurred after March 13, 2019, appeared on the schedule (Doc. 122-7, at 3), a supplemental affidavit explains that she provided an updated schedule of transactions after March 13, 2019, and before May 10, 2019, in order to "ensure [that the schedule] was up-to-date and current at the time" of filing the motion for appointment as lead plaintiff, and that she authorized her lawyers to file the updated schedule with her first certification even though it was dated March 13, 2019. (Doc. 121-1, at 3.) While clarity would have been served by updating the certification document, the Court cannot conclude that this is the kind of "false" statement that would show that Plaintiff Terry is dishonest and cannot be trusted to adequately represent the class. Indeed, the updated transaction schedule enhanced the accuracy of the record before the Court, clerical errors notwithstanding. Second, the certification swore that the attached schedule contained "[m]y transactions," but only one of the seven accounts was personally held by Plaintiff Terry while the other six were owned by various family members and entities co-owned with family members. (Doc. 122-7, at 3–13.) The litigation rights for the USX transactions for the accounts listed in the schedule, however, were assigned to Plaintiff Terry on May 3, 2019. (Doc. 122-10, at 2–4.) As before, simply updating the certification would have resolved the issue. Indeed, the statement "[m]y transactions"—though slightly imprecise—was

13

not the kind of "false" statement that suggests an intent to mislead the Court. And, while Defendants suggest that these errors could alternatively betray a lack of diligence on Plaintiff Terry's part, the errors neither truly misled the Court nor jeopardized the case. While diligence is important, clerical errors and imprecisions are a reality of life and not a basis for finding Plaintiff Terry inadequate to represent the class.

As for Plaintiffs Clowdis and Robbins, Defendants argue that their depositions show that they do not grasp this case well enough to represent the class adequately. For example, Clowdis at one point testified that he would "leave [] up to the attorneys" precisely which portions of the registration statement were false and misleading. (Doc. 122-11, at 9.) At another, Defense counsel asked if he "accuse[d] [Defendants] of committing fraud"—which the operative pleading (Doc. 57) does claims—to which Clowdis responded, "No. Fraud is a – that – I'm careful with that word[.]" (*Id.* at 24.) At other points in his deposition, however, Clowdis displayed a reasonable, if less-than-lawyerly, grasp of the alleged facts and claims at issue. (*See, e.g.*, *id.* at 8 (Clowdis testifying about USX's stated plans to "expand" in areas including "dedicated contract carriage"); *id.* at 10 (Clowdis testifying that he believed USX misrepresented "that dedicated was a target of growth" because "[a]s it turns out, they really weren't" "positioned to do that"); Doc. 131-3, at 111 (Clowdis testifying that he does not know the legal definition of fraud).) Similarly, Robbins testified that he did not review the operative pleading until after it was filed (Doc. 122-12, at 5), did not know Deirdre Terry (*Id.* at 10), did not know how the named Plaintiffs would make joint decisions other than by deferring to their attorneys (*Id.* at 11–12), and believed he had not filed any other lawsuits against USX (*Id.* at 6), although he apparently did file and then

voluntarily dismiss a state-court case against USX.[4]  On the other hand, Robbins also displayed a grasp of the alleged facts and claims in this case (Doc. 128-4, at 16), stated that he has read the claim file and court rulings (*Id.* at 19), noted that he has been in contact with his attorneys by phone and email while preparing for the case (*Id.* at 44), and explained that he seeks to "represent[] other people like me that may be in [] similar circumstances" and "ensure that the case is heard" (*Id.* at 59–60).  On balance, the Court concludes that Clowdis and Robbins sufficiently grasp the facts and claims in this case, intend to prosecute it vigorously, and are adequate to serve as class representatives.  This is a large and complex case (even if it has been simplified, in many respects, by the Court's ruling on the motions to dismiss).  Plaintiffs, as laypersons, cannot reasonably be expected to understand the deeper legal intricacies of this matter.  But they plainly understand that they are suing because the Offering Documents allegedly contained misrepresented or omitted material information.  They also plainly intend to see Defendants' alleged wrongs righted and have already expended considerable time and energy in service of that end.  Rule 23 requires no more.  Accordingly, the proposed class representatives are adequate.

Additionally, in determining whether the plaintiffs have established adequate representation, the Court considers whether the proposed class counsel are "qualified, experienced and generally able to conduct the litigation.'" *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir.2000)).  Proposed class counsel—Robbins Geller Rudman & Dowd LLP and Levi & Korsinsky, LLP—have extensive experience litigating

---

[4] Defendants assert this in their brief but provide no citation regarding Robbins's participation in a state-court case.

securities class actions, and Defendants do not argue that they are inadequate. (Docs. 106-4, 106-5.) Accordingly, the proposed class counsel are adequate.

### C. Rule 23(b)(3) Requirements

#### *i. Predominance*

To obtain class certification, Plaintiffs must also show that common questions of fact or law predominate over individual questions. Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citations omitted). To show predominance, "a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir.2011)). Predominance, however, does not require that each element of the plaintiffs' claims be evidenced by class-wide proof or that all common questions necessarily have common answers. *Amgen*, 568 U.S. at 469. Rather, Rule 23(b)(3) requires only that common questions "predominate" over individual ones. *Id.*; *see* Fed. R. Civ. P. 23(b)(3).

"In securities class action cases, the crucial requirement for class certification will usually be the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014). The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a)(2). *Amchem*, 521 U.S. at 623–24; *see Young*, 693 F.3d at 544 ("While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will predominate over individual ones."). Nevertheless, "the fact that a defense may arise and may

16

affect different class members differently" is not dispositive.  *Young*, 693 F.3d at 544 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir.2007)).

Plaintiffs assert that common questions predominate because (1) liability to all proposed class members turns on whether the Offering Documents contained material misrepresentations and omissions, (2) the method for calculating damages is statutorily prescribed, and (3) even if damages or affirmative defenses differ among class members, class-wide questions still outweigh individualized inquiries.  (Doc. 105, at 12–13); *see* 15 U.S.C. § 77k(e) (prescribing damages calculation for § 11 violations); *Schuh*, 2014 WL 4716231, at *7 (holding that predominance was satisfied in Securities Act case regarding alleged misrepresentations and omissions related to an IPO); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) (holding that predominance was satisfied in Securities Act case despite the defendant's assertion that damages differed because § 11 "provides a statutory formula for damages," meaning "the individual damages questions are sufficiently reduced that predominance of the common questions, answers, and facts remains").  Defendants argue that Plaintiffs "cannot show that common issues will predominate over individualized issues . . . for a class extending beyond August 2, 2018" because of USX's form 8-K disclosure on that date.  (Doc. 122, at 16.)

The availability of a knowledge defense based upon the August 2, 2018 disclosure and subsequent reporting is insufficient to defeat predominance.  *See, e.g.*, *Gaynor v. Miller*, No. 3:15-cv-545, 2018 WL 3751606, at *15 (E.D. Tenn. Aug. 6, 2018) (explaining that predominance was met for Securities Act claim despite a potential "affirmative defense of knowledge" and noting "publicly available news articles . . . [were] insufficient to show that certain class members had differing levels of knowledge regarding the alleged misleading statements or omissions").  Plaintiffs' case boils down to their claim that the Offering

Documents contained material misrepresentations and omissions, and resolving the factual and legal questions attendant to that claim for one class member will resolve it for all class members. Indeed, even if Defendants intend to assert a knowledge defense as to some individual class members, the potential applicability of a knowledge defense to some class members simply does not predominate over the core allegations in this case, which are comprised of common questions with common answers. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. at 349 (concluding that the "many common questions, answers, and facts" in a Securities Act case "predominate[d] over the individualized issue of knowledge"). Accordingly, predominance is satisfied.

### ii. Superiority

Finally, Plaintiffs must demonstrate that a class action is the superior method of adjudicating this case. Fed. R. Civ. P. 23(b)(3). "In considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider 'the difficulties likely to be encountered in the management of a class action.'" *Young*, 693 F.3d at 545 (quoting *Beattie*, 511 F.3d at 567). "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)). "[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification," and "where a threshold issue is common to all class members, class litigation is greatly preferred." *Id.* (quoting *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) and citing *Daffin*, 458 F.3d at 554). On the other hand, "[w]here many individual inquiries are necessary, a class action is not a superior form of adjudication." *Id.* (citations omitted).

Plaintiffs argue that the large number of dispersed investors alleging a singular course of wrongful conduct makes this case well-suited to class adjudication. (Doc. 105, at 22–23.) Indeed, class adjudication of this matter is undeniably superior to thousands of dispersed, small actions relating to the same Offering Documents, and no foreseeable management difficulties otherwise militate against a class action under these conditions. Moreover, Defendants do not oppose certification on superiority grounds. (*See generally* Doc. 122.) Accordingly, superiority is satisfied.

### IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification (Doc. 104) is **GRANTED**. Plaintiffs Deirdre Terry, Charles Clowdis, and Bryan Robbins are **APPOINTED** as class representatives. Robbins Geller Rudman & Dowd LLP and Levi & Korsinsky, LLP are **APPOINTED** as class counsel.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**