|  |  |
|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. XPRESS ENTERPRISES, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 1:19-cv-00098<br><br>Judge Travis R. McDonough<br>Magistrate Judge Christopher H. Steger |

**USX DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE USX DEFENDANTS TO PRODUCE TEXT MESSAGES AND RELEVANT DOCUMENTS FROM SIX KEY PERCIPIENT WITNESSES AND <u>DESIGNATE A RULE 30(b)(6) WITNESS</u>**

# TABLE OF CONTENTS

Introduction.................................................................................................................1

Argument ....................................................................................................................3

    I.      Plaintiffs Are Not Entitled to Text Messages ...........................................3

    II.    Plaintiffs Are Not Entitled to Additional Custodians ...............................7

        A.     The Additional Custodians Are Not Relevant ..............................8

            i.     The Pricing Custodians......................................................8

            ii.    The Load Planner Custodians ..........................................10

        B.     Production of Documents from the Additional Custodians Would Not Be Proportional to the Needs of the Case.........................................11

    III.   Plaintiffs Are Not Entitled to a Rule 30(b)(6) Deposition on Discovery About Discovery .....................................................................................................14

Conclusion ................................................................................................................16

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Counts v. Gen. Motors, LLC,*
    16-cv-12541 (E.D. Mich. Sept. 13, 2019)............................................................15

*Edwards v. Scripps Media, Inc.,*
    331 F.R.D. 116, 125 (E.D. Mich. 2019) ......................................................14, 15

*In re Envision Healthcare Corp. Sec. Litig.,*
    3:17-cv-01112, 2020 WL 6750397 (M.D. Tenn. Nov. 16, 2020)................................7, 16

*Handloser v. HCL America, Inc.,*
    19-cv-01242, 2020 WL 7405686 (N.D. Cal. Dec. 17, 2020) .............................................10

*Halabu Holdings, LLC v. Old National Bancorp.,*
    20-10427, 2020 WL 12676263 (E.D. Mich. June 9, 2020) ..................................................6

*Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC,*
    988 F.3d 260 (6th Cir. 2021) ....................................................................................1

*Moore v. Westgate Resorts, Ltd.,*
    3:18-DV-410, 2020 WL 7017740 (E.D. Tenn. Jan. 24, 2020) ................................... 14, 15

*Sugg v. Virtusa,*
    18-8036, 2020 WL 6585872 (D.N.J. Nov. 10, 2020) .............................................7, 10, 13

**RULES**

Fed. R. Civ. P. 26 ...........................................................................................................1, 3, 7

Fed. R. Civ. P. 30 ....................................................................................................... *passim*

Fed. R. Civ. P. 34 ...............................................................................................................3

**OTHER AUTHORITIES**

The Sedona Conference, *Commentary on Legal Holds, Second Edition: The Trigger & The Process*, 20 SEDONA CONF. J. 341 (2019)...........................................................................4

The Sedona Principles, *Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1 (2018) .............2, 14

Case 1:19-cv-00098-TRM-CHS   Document 157   Filed 01/19/22   Page 3 of 21
PageID #: 4161

## INTRODUCTION

The claims at issue in this case relate to **two sentences** out of 250 pages in U.S. Xpress Enterprises, Inc.'s ("USX") registration statement that Plaintiffs contend are misleading. *See* ECF 91. Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to matters that are relevant to those **two sentences** and proportional to the needs of the case. Plaintiffs' requests in their Motion to Compel ("Mot.") far exceed the scope of discovery the Federal Rules mandate.

USX Defendants[1] have engaged in a diligent process that complied with their discovery obligations in this matter. Specifically, USX Defendants (a) conducted collection interviews to identify likely sources, (b) searched and collected electronically stored information (ESI) from non-custodial sources and 22 custodial sources, (c) reviewed over 285,000 documents or approximately 1.5 million pages, and (d) produced over 55,000 documents or 260,000 pages at a cost of over $2.1 million not including any fees billed by the case team as part of the discovery process. *See* Exhibit A, Declaration of John Tucker ¶ 3.[2] USX Defendants' effort even involved restoring emails from backups when it was discovered that the readily available email did not include a portion of the time period Plaintiffs had requested. Defendants have now advised Plaintiffs that their production is complete, but Plaintiffs simply want more.

Want, however, is not the applicable standard. Rather, at this stage of discovery, Plaintiffs have the burden of proving a specific, material deficiency in USX Defendants' production of documents to justify additional discovery. *See* Fed. R. Civ. P. 26(b)(1); *see also Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (upholding denial

---

[1] USX together with the Individual Defendants (Eric Fuller, Eric Peterson, Jason Grear, Max Fuller, and Lisa Quinn Pate) are referred to herein as the "USX Defendants."

[2] USX Defendants are filing simultaneously herewith a Notice of Filing Exhibits in Support of the Opposition that attaches copies of the referenced exhibits.

of motion to compel where "additional discovery would not outweigh the 'proportionality' concerns implicated by the delay and cost generated by continued discovery"); The Sedona Principles, *Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 118 (2018). Plaintiffs have failed to meet that burden, and their requests should be rejected for that reason alone.

In addition, Plaintiffs have failed to show relevancy, proportionality, or otherwise meet the burden for the additional discovery they seek: text messages, six custodians, and a Rule 30(b)(6) deposition on discovery about discovery.

***First***, as to text messages, USX Defendants have attached to the Notice of Filing as Exhibits B through R sworn declarations from the currently employed custodians except for one, Shane Weeks,[3] confirming what the custodians already advised during collection interviews – that they did not use text messages for substantive business purposes. These declarations establish that the text messages are not likely to contain information relevant to the two sentences in the registration statement or USX Defendants' defenses thereto, and Plaintiffs have not submitted anything meaningful to counter this evidence.

***Second***, as to the six additional custodians (the "Additional Custodians"), Plaintiffs have already received productions from the most relevant custodians in this matter. Any conceivable benefit from the production of the Additional Custodians is far outweighed by the substantial additional expense of approximately $285,000 that USX Defendants would incur collecting, reviewing, and producing documents for the Additional Custodians.

---

[3] Defendants will apply the agreed upon date range and search terms to Mr. Weeks's text messages and produce non-privileged texts that are responsive to Plaintiffs' document requests.

***Finally***, as to the deposition, Plaintiffs have failed to meet the standard required by this Court and courts in the Sixth Circuit to obtain a Rule 30(b)(6) deposition on discovery about discovery. Plaintiffs have shown no preservation lapse or production issue that calls into question USX Defendants' preservation and production efforts or that justifies a Rule 30(b)(6) deposition on these issues.

Based on the arguments outlined above and those developed below, the Court should deny Plaintiffs' motion to compel in its entirety.

## ARGUMENT

### I. PLAINTIFFS ARE NOT ENTITLED TO TEXT MESSAGES

Plaintiffs incorrectly suggest that, because text messages fall within the definition of ESI under Rule 34 of the Federal Rules of Civil Procedure, producing parties are required to image, collect, review and produce text messages from mobile devices in every matter. Mot. at 4. This suggestion runs counter to Rule 26(b)(1) of the Federal Rules of Civil Procedure, which sets forth the applicable standard for discovery – that information is discoverable only if it is likely to be relevant to the claims and defenses in a matter and is proportional to the needs of the case.

USX Defendants engaged in a diligent process in this matter to determine whether text messages (and other sources of ESI and hard copy documents) were likely to contain information relevant to the claims and defenses at issue. They conducted collection interviews of the 18 currently employed custodians and named defendants wherein it was explained what information was likely to be relevant to the case. Thereafter, custodians were directly asked, among other things, whether any mobile devices that they used were likely to contain relevant information. In all cases except for one custodian, Shane Weeks, the custodians indicated that the mobile devices they used were not likely to contain text messages relevant to the issues in this lawsuit.

Based on the interviews, USX Defendants represented to Plaintiffs during meet and confer conferences that the custodians did not use text messages for substantive business communications and offered to provide declarations to Plaintiffs to this effect. Instead of waiting to receive the declarations, however, Plaintiffs filed their motion to compel. The declarations for all of the current employee custodians regarding the lack of use of text messaging for substantive business purposes are attached. *See* Exhibits B through R. These declarations show that there is no factual basis to expect that text messages from custodians' mobile devices are likely to contain unique relevant information and that text messages are therefore outside the scope of discovery.

Even though Plaintiffs did not wait to receive the declarations before filing their motion to compel, they argue in their motion that they are not required to take the word of the custodians. Mot. at 9. This is patently inconsistent with authorities that make clear that producing parties can rely on the good faith actions of their employees in the discovery process particularly when the process is properly supervised by outside counsel, which is the case here. The Sedona Conference, *Commentary on Legal Holds, Second Edition: The Trigger & The Process*, 20 SEDONA CONF. J. 341, 408 (2019) ("…in most cases, a careful combination of notification as described above, collection, and individual action should enable parties to rely on the good-faith actions of their employees.").

Plaintiffs further contend that even with supporting declarations, which USX Defendants have now provided, USX Defendants should still be required to collect, review and produce text messages from mobile devices for three reasons. Plaintiffs are wrong as to each reason provided.

First, Plaintiffs contend that the custodians must have relevant text messages because they sent emails from their Company email address containing a signature block that included their mobile device phone number or that indicated the custodian sent an email from his or her iPhone.

Mot. at 6. A custodian's use of his or her mobile device to send emails, even with a signature block that included a mobile phone number, or that said they were "Sent from an iPhone," shows only that a custodian may have received telephone calls on their mobile device or sent emails from their mobile device. It simply does not demonstrate that a custodian used the mobile device to send substantive text messages for work purposes.

Second, Plaintiffs contend that USX produced in another litigation more than 100 million text messages. Mot. at 6. The "text" messages produced in the other litigation are not text messages at all and they are not stored on truly mobile devices. They are satellite communications that USX's drivers sent using a communications device mounted and installed in the trucks. USX's drivers using a satellite communication through an on-board mobile device mounted in the cab does not demonstrate that the custodians at issue here used text messages from hand-held mobile devices to communicate on substantive business matters.

Finally, Plaintiffs contend that emails show substantive text messaging occurred. Mot. at 7. Plaintiffs cite four emails out of the over 55,000 documents produced in this matter, but none counters the declarations provided herewith or otherwise demonstrates that the invasive and expensive step of collecting and producing text messages should be ordered.

Exhibit 15 is an internal email at Morgan Stanley where an individual indicates that he "exchanged text msgs with Eric P" and he is "focused on getting this done." The email has zero indication of whether the text message was substantive. And the "this" referred to in the email is the "discretionary fee component" that Morgan Stanley was seeking for underwriting the IPO. The fees paid to the underwriters have zero relevance to the issue that remains in this case as to whether the two challenged sentences are false because USX was using OTR drivers to support dedicated accounts to the detriment of USX.

Exhibit 16 attaches a text message chain between Andrew Davis and Craig Fuller. Neither Mr. Davis nor Mr. Craig Fuller is a USX employee or a custodian in this case. The fact that they are exchanging text messages is not indicative of whether the custodians at issue used text messages to communicate substantively about USX.

Exhibit 17 is consistent with Eric Fuller's declaration (Ex. B) that he did not communicate substantively over text. It is clear that a request for an update was requested over text by Tracy Rosser at Walmart. Mr. Fuller sent the substantive response by email, not text. This confirms substantive communications occur over email, and not text. And, in any event, the response is about the impact of a hurricane on operations – something that is not at issue in the case.

Exhibit 18 regards a profit-sharing message to full time office and shop employees at USX. Putting aside the fact that an internal profit-sharing message to employees is largely irrelevant, the exhibit likewise validates that substantive communications occur over email. Indeed, the email circulates a draft of the message for comment and editing by email, not text.

Plaintiffs' motion simply does not provide a basis sufficient to justify the collection, review and production of text messages from the custodians' mobile devices. Accordingly, the Court should deny Plaintiffs' motion to compel text messages sent using mobile devices. [4]

---

[4] Further, as to four of the current employee custodians (Ms. Bonneau, Mr. Graham, Ms. Ellison, and Mr. Kibler), they used personal mobile devices with Ms. Ellison using a personal device for a large part of the discovery period. Because these custodians did not use company-issued devices, there is an additional reason not to order production from their personal devices. *Halabu Holdings, LLC v. Old National Bancorp.*, 20-10427, 2020 WL 12676263, at *1-2 (E.D. Mich. June 9, 2020) ("The rule that Halabu Holdings argues for—that information on an employee's personal device may be compelled by way of a document request directed to the employer without any further indicia of control over the device by the employer—finds no support in any case brought to the Court's attention. And for good reason.")

## II.    PLAINTIFFS ARE NOT ENTITLED TO ADDITIONAL CUSTODIANS

Despite the late stage of document discovery in this case with USX Defendants having already completed their document productions from 22 custodians and other sources within the Company, Plaintiffs now seek to compel the production of documents from the Additional Custodians. These Additional Custodians include (i) two pricing employees whom Plaintiffs erroneously contend were "responsible for the Walmart bidding strategy for those accounts" (the "Pricing Custodians") and (ii) four former employees who worked as load managers on site at the two Walmart locations in question (the "Load Planner Custodians"). Mot. at 2.

In an attempt to justify the Additional Custodians, Plaintiffs devote much attention to extraneous facts such as the number of people employed by USX, and the number of custodians used in other unrelated cases. Mot. at 10. But those are not the standards by which Plaintiffs' motion must be evaluated. Rather, as a threshold matter, discovery must be "relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).[5] Plaintiffs hypothesize that these custodians "are more than likely to have evidence that goes to the crux of Plaintiffs' allegations" (Mot. at 10), but, as explained below, Plaintiffs' supposition is belied by the facts USX Defendants establish with supporting declarations. The Additional Custodians are not relevant.

And, even if relevance were somehow established, the question then becomes whether the requested discovery is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see also Sugg v. Virtusa*, 18-8036, 2020 WL 6585872 (D.N.J. Nov. 10, 2020) (denying request to add two custodians where plaintiff already had access to the custodians with the most relevant emails on

---

[5] Even the case law cited by Plaintiffs rejects a request for additional custodians where the party seeking the discovery fails to establish the relevance. *In re Envision Healthcare Corp. Sec. Litig.*, 3:17-cv-01112, 2020 WL 6750397, at *5 (M.D. Tenn. Nov. 16, 2020) ("Having examined the referenced exhibits, the Court agrees [that the] cited exhibits do not establish that Mr. Harvey may possess relevant ESI.")

the topics at issue). As explained below, any conceivable benefit of producing the Additional Custodians is far outweighed by the associated burden and expense. The USX Defendants should not be required to produce ESI for the Additional Custodians.

### A. The Additional Custodians Are Not Relevant

#### i. The Pricing Custodians

Plaintiffs seek to add Catherine Stephas, a former USX pricing director, and Julie Van de Kamp, a current employee who was the Vice President of Pricing during the relevant time period. Plaintiffs' assertion that the Pricing Custodians are relevant is premised on the notion that Ms. Stephas and Ms. Van de Kamp were "responsible for overseeing the preparation and execution of bids for the two Walmart dedicated accounts" in Gordonsville, VA, and Hammond, LA, (Mot. at 11) and "responsible for the Walmart bidding strategy for those accounts" (Mot. at 2).

As established by the Declarations of Ms. Van de Kamp and Justin Harness, the President of Dedicated at USX, that is not correct. *See* Exhibit S, Declaration of Julie Van de Kamp; Exhibit T, Declaration of Justin Harness. As to Ms. Stephas, she had no involvement whatsoever. Her job responsibilities in late 2017 and early 2018 included **OTR** pricing, but she was not responsible for Dedicated pricing or bidding (including for Gordonsville and Hammond). Ex. S, ¶ 4. As to both of the Pricing Custodians, Ms. Van de Kamp attests that neither she nor Ms. Stephas was responsible for overseeing the preparation and execution of bids for the Walmart account's Gordonsville, VA, and Hammond, LA, locations. Ex. S, ¶ 5. Because Walmart was an existing USX customer, the USX employees responsible for that were Michael Graham, Justin Harness and Paul Bowman. Ex. S, ¶ 5. Messrs. Graham, Harness and Bowman are agreed custodians for whom

USX already has produced the responsive, non-privileged documents pursuant to the search protocol agreed to by the parties.[6]

The declarations of Ms. Van de Kamp and Mr. Harness establish the Pricing Custodians are not relevant. The exhibits Plaintiffs cite do not support a different conclusion. In particular, Plaintiffs cite to Exhibits 29 through 32 of their Motion. But none of those exhibits establishes the relevance of the Pricing Custodians to Plaintiffs' stated basis for seeking their documents, *i.e.*, responsibility for the Dedicated bids for the Walmart Gordonsville and Hammond locations (Mot. at 2, 11).

Exhibit 29 sets forth non-customer specific recommendations for a Dedicated RFP, and, thus, contrary to Plaintiffs' assertion, is not "illustrative" of anything relevant to the challenged statements.[7]

Exhibit 30 is a January 4, 2018, email from Ms. Stephas with a subject line of "WalMart 2018 Prebid Meeting Summary," and Exhibit 31 is the attachment to that email. Plaintiffs erroneously assume that this email and attachment demonstrate that Ms. Stephas would likely have relevant documentation regarding the Dedicated bids for the Walmart Gordonsville and Hammond locations.[8] As Ms. Van de Kamp explains, however, the bidding referenced in Ms. Stephas's email

___

[6] Mr. Graham did report to Ms. Van de Kamp on a dotted-line reporting basis. Ex. S, ¶ 6. As such, Ms. Van de Kamp acknowledges that she may have received some of Mr. Graham's work product for the Gordonsville and Hammond bids, but she attests that she would not have been actively involved because the bids were for an existing customer. *Id.*

[7] Exhibit 29 also copies Mr. Bowman and Mr. Graham, consistent with Ms. Van de Kamp's belief, to the best of her knowledge, that any potentially responsive documents she might have would be duplicative of documentation in the possession of Messrs. Graham, Harness or Bowman. Ex. S, ¶ 6.

[8] Plaintiffs make this erroneous assumption despite the fact that other documentation produced by USX Defendants showed that the Gordonsville and Hammond (sometimes referred to as Robert, LA) bids were submitted (and awarded) in late 2017, not early 2018. *See, e.g.,* USX0196495, USX0220155, USX018947.

- 9 -

was for inbound shipments to Walmart from its suppliers and involved USX's OTR division, **<u>not</u>** the Dedicated division. Ex. S, ¶ 7. Thus, Exhibits 30 and 31 merely confirm Ms. Van de Kamp's testimony that Ms. Stephas's job responsibilities in late 2017 and early 2018 involved OTR pricing, not Dedicated.

Exhibit 32 relates to an entirely different USX customer – P&G. Thus, it has nothing to do with Plaintiffs' stated basis for seeking the Pricing Custodians, which is their purported involvement in the Walmart Dedicated account locations.

In short, Plaintiffs' contentions regarding the relevance of Ms. Stephas and Ms. Van de Kamp are not grounded in fact, and the motion to compel should be denied. *See, e.g.*, *Handloser v. HCL America, Inc.*, 19-cv-01242, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (denying request to add custodians where plaintiffs' showing on relevance was "remarkably thin" and "the Court cannot discern why plaintiffs expect to discover information from these custodians that differs from discovery they have already obtained from the others").[9]

### ii. The Load Planner Custodians

Plaintiffs argue that the Load Planner Custodians' documents would be relevant because they were assigned to the Gordonsville and Hammond distribution centers, and thus had visibility into driver capacity and OTR support at those locations. Mot at 12. Plaintiffs' contention is contradicted by Mr. Harness's declaration.

---

[9] Even if one assumed for the sake of argument that Ms. Van de Kamp's role as Mr. Graham's supervisor was sufficient to establish relevance, case law confirms that the burden and expense of searching her records outweighs any unique benefit that might come from them. *See Sugg*, 2020 WL 6585872, at *2 (denying request for two additional custodians where plaintiffs already had access to the most relevant custodians).

Mr. Harness, who served as USX's Senior Vice President, Dedicated Operations, from October 2014 to October 2018, had significant involvement in the bidding for and oversight of the operations for the Walmart account's Gordonsville, VA, and Hammond, LA, locations. Ex. T, ¶¶ 1, 3. Although the Load Planner Custodians may have worked at Walmart locations, they would not have been involved in decisions regarding assessment of overall demand for drivers or the need for or availability of temporary OTR support for their locations. *Id.*, ¶ 5. Decisions regarding driver availability and capacity and temporary OTR support would merely have been relayed to them as such decision-making did not involve them. *Id.* Instead, such decision-making likely would have involved Mr. Harness, Shane Weeks, and/or Steven Phillips (*id.*), all of whom are custodians whose responsive, non-privileged documents have been produced to Plaintiffs.

The Load Planner Custodians' lack of involvement in the decision-making process for use of OTR support of Dedicated renders their custodial documents irrelevant.

**B.      Production of Documents from the Additional Custodians Would Not Be Proportional to the Needs of the Case**

Even if Plaintiffs could establish relevance of the Additional Custodians, the burden and expense to USX in collecting, searching, reviewing, and producing responsive, non-privileged documents would be significant. In connection with discovery in this matter, the parties agreed that USX would collect, search, review, and produce documents from 22 current and former employees, in addition to collecting documents from certain other non-custodian sources, in response to Plaintiffs' Requests for Production of Documents. Ex. A, ¶ 2. This involved data collection, data processing, data hosting, searching, document review, document production, and the preparation of privilege logs. *Id.* Some of these tasks were performed by King & Spalding and others were performed by USX's retained e-discovery technology company, Epiq.

USX has incurred more than $2.1 million in legal fees and expenses[10] associated with e-discovery services in this matter, covering pre-review collection and data analysis tasks; document review and production, including privilege logs; and technology. *Id.* ¶ 3. The pre-review tasks included conducting custodian interviews, coordinating data collections and transfers, executing search terms, and setting up the document review process. *Id.* The associated legal fees with these tasks are more than $82,000, or approximately $3,700 per custodian. *Id.*

The attorneys working on the document review and production have billed more than $1.97 million for the first pass review, quality control review, project management, and the preparation of privilege logs. *Id.* The per custodian legal fees to date for these tasks are approximately $89,000. *Id.* Finally, USX has also incurred nearly $75,000 in technology charges for ingesting, processing, hosting, and producing the data collected from these 22 custodians. *Id.* The per custodian technology charges are approximately $3,400. *Id.* Cumulatively, the average per custodian cost is at least $95,000. *Id.* ¶ 4.

The Additional Custodians have, on average, approximately 5.01 GB per custodian of email data stored in USX's email archive. *Id.* ¶ 5. On a per custodian basis, the email archive volume for each Additional Custodian is approximately half of the volume collected from each of the 22 custodians (prior to including email data available from backups).[11] *Id.* If the Additional Custodians were added, King & Spalding would follow the same process outlined above. Based on the 5GB average email size of the Additional Custodians, and assuming the volume to be collected from backups is approximately half the size, the average estimated total per custodian

---

[10] The $2.1 million in legal fees and expenses is for e-discovery services only and does not include any attorneys' fees billed by the case team.

[11] USX's backup vendor has advised that it cannot provide the volume of email from backups for the Additional Custodians without incurring the expense of restoring the backups.

cost of e-discovery services that USX will incur would be at least $47,500. *Id.* ¶ 6. Accordingly, if required to complete these same tasks for the Additional Custodians, the additional costs to USX would be approximately $285,000, and the estimated total costs for e-discovery services for the 22 custodians and the Additional Custodians would exceed at least $2.35 million.

In sharp contrast to the substantial burden involved, Plaintiffs offer nothing more than mere speculation as to what might be obtained in those documents (Mot. at 12-13).[12] Examining similar contentions, the *Sugg* court rejected a request for two additional custodians, reasoning as follows:

> The individuals Virtusa has already agreed to include as custodians are the top employees in each of the departments with the most relevant knowledge about [the] issues. Virtusa has also agreed to include many of their direct reports and subordinates. As a result, Plaintiff will have access to the most relevant custodians and the custodians with the most relevant emails on the topics at issue in this lawsuit. . . . Plaintiff has not demonstrated that either Canekeratne or Dhir has any unique knowledge beyond whatever the global heads and top executives may possess. Plaintiff's argument that either Canekeratne or Dhir may have discussed Plaintiff in an email in which none of the other 32 custodians are copied, and that email is responsive to one of the document requests at issue is unpersuasive.

2020 WL 6585872, at *2. As true for the plaintiff in *Sugg*, Plaintiffs here already have access to (and have received the productions from) the most relevant custodians – Messrs. Harness, Weeks, Bowman, McBride and Phillips, among others – and nothing in the motion changes that assessment.

Plaintiffs' motion does not provide a basis sufficient to justify the substantial additional expense USX Defendants would incur collecting, reviewing, and producing documents for the Additional Custodians. USX conducted more than a sufficient search to locate potentially

---

[12] Plaintiffs cite Exhibits 22, 25, 26 and 27 as the types of correspondence from the Load Planners that are purportedly absent from the USX Defendants' productions. The motion fails, however, to acknowledge that Plaintiffs already received voluminous amounts of load planning correspondence from the existing custodians. *See, e.g.,* USX0010950; USX0235305; USX0224672; USX0061081.

responsive documents, including restoring backup tapes, and has produced documents addressing all of the topics touched on in the motion. Accordingly, the Court should deny Plaintiffs' requests for production of materials from the Additional Custodians.

## III.   PLAINTIFFS ARE NOT ENTITLED TO A RULE 30(b)(6) DEPOSITION ON DISCOVERY ABOUT DISCOVERY

Before USX Defendants even began their document production in earnest, Plaintiffs served their Rule 30(b)(6) notice on November 23, 2020, seeking a corporate representative to testify on discovery about discovery. Plaintiffs now contend that they need this testimony based on the documents produced, but that argument is belied by the fact that the notice requesting the testimony was served before document production began.

In any event, courts in the Sixth Circuit do not permit parties to seek "discovery about discovery" unless there is reason to distrust the responding party's diligence or the producing party's efforts to comply with proper discovery requests are reasonably drawn into question. *Moore v. Westgate Resorts, Ltd.*, No. 3:18-DV-410, 2020 WL 7017740, at *6 (E.D. Tenn. Jan. 24, 2020) (finding a Rule 30(b)(6) deposition on discovery about discovery was not appropriate because the course of discovery has not put the location and manner of the ESI data at issue); *Edwards v. Scripps Media, Inc.,* 331 F.R.D. 116, 125 (E.D. Mich. 2019) (discovery about discovery not permitted and particularly not appropriate when a producing party takes the position it has fully responded); The Sedona Principles, 19 SEDONA CONF. J. at 123 ("[A]s a general matter, neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere "speculation") of a material failure by the responding party to meet its obligations.").

Here, contrary to Plaintiffs' claim that the ESI topics identified in the Notice of Deposition are narrowly-tailored, Plaintiffs are seeking an extensive, far reaching Rule 30(b)(6) deposition on all aspects of Defendants' retention policies, all of Defendants' preservation steps with respect to hard copy and ESI, and all of Defendants' collection and production efforts. Courts in the Sixth Circuit, including this Court, recognize that inquiring into extensive topics on ESI issues at a Rule 30(b)(6) deposition may not be proportional to the needs of the case. *Moore*, 2020 WL 7017740, at *6; *Edwards,* 331 F.R.D. at 125 ("[T]he discovery-about-discovery and preservation topics are irrelevant and not important to resolve the case, and the burden of requiring defendant to prepare a witness to testify about these matters outweighs the likely benefit.").

Moreover, Plaintiffs have not provided any evidence, as they must, of an alleged preservation lapse to justify a deposition on USX Defendants' preservation steps. A Rule 30(b)(6) deposition about retention policies and procedures as well as litigation holds placed in a case is simply not permitted unless there is an issue of spoliation. *Moore*, 2020 WL 7017740, at *6; *Edwards,* 331 F.R.D. at 125; *see also Counts v. Gen. Motors, LLC*, No. 16-cv-12541 (E.D. Mich. Sept. 13, 2019), ECF 264 ("I just don't find any foundation in the law for agreeing that someone should hold a deposition to inquire about the discovery process."). USX Defendants' argument that text messages should not be produced in this matter because they are not likely to be relevant does not somehow establish a preservation lapse to justify a Rule 30(b)(6) deposition. And, to be clear, simply claiming that a mobile device was not preserved without more is not sufficient to establish a basis for a Rule 30(b)(6) deposition on preservation issues. *Edwards,* 331 F.R.D. at 125.

Similarly, Plaintiffs' arguments that Defendants' production does not contain a sufficient volume of emails with Walmart during a four-month period from October 2017 to January 2018

or relevant emails from custodian Michael Graham for a three-month period from October 2017 to December 2017 are mere speculation that such communications ever existed. And, perhaps more importantly, the referenced time period was ***well before this lawsuit was filed in April 2019***. As such, Plaintiffs have not provided any evidence that USX Defendants have violated their duty to preserve or their discovery obligations with respect to any of these allegedly missing documents. Additionally, Plaintiffs have not provided any evidence that USX Defendants' efforts to comply with discovery requests are reasonably drawn into question. Thus, Plaintiffs have not established a sufficient basis to require Defendants to incur the burden to prepare a witness to testify about record retention, preservation or collection and production issues in a Rule 30(b)(6) deposition.

The cases Plaintiffs cite for the purported proposition that "discovery on discovery" in the form of a Rule 30(b)(6) deposition is "routine" and does not require a showing of a preservation lapse or production failure are unavailing because they were all decided by courts outside the Sixth Circuit and directly conflict with the Sixth Circuit cases on this exact issue. Many of them also pre-date the December 1, 2006 amendments to the Federal Rules of Civil Procedure that addressed electronically-stored information and are also distinguishable on that ground. *In re Envision Healthcare Corp.,* 2020 WL 6750397, concerns a motion to compel substantive discovery; it does not discuss discovery about discovery or Rule 30(b)(6) depositions and does not support Plaintiffs' argument.

For all of the above reasons, the Court should deny Plaintiffs' request for a Rule 30(b)(6) deposition on record retention, preservation, collection and production issues.

**CONCLUSION**

For the foregoing reasons, USX Defendants respectfully request that the Court deny Plaintiffs' motion to compel.

Dated: January 19, 2022

Respectfully submitted,

/s/ *K. Stephen Powers*
K. Stephen Powers (BPR # 007088)
Philip B. Whitaker, Jr. (BPR # 013999)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
spowers@bakerdonelson.com
pwhitaker@bakerdonelson.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

*Counsel for USX Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 19th day of January, 2022, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ *K. Stephen Powers*
K. Stephen Powers