# EXHIBIT 39

# KING & SPALDING

King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel: +1 415 318 1200
Fax: +1 415 318 1300
www.kslaw.com

Lisa Bugni
Direct Dial: +1 415 318 1234
Direct Fax: +1 415 318 1300
lbugni@kslaw.com

April 15, 2021

***By E-mail***

Hadiya Deshmukh, Esq.
Robbins Geller Rudman & Dowd LLP
1 Montgomery Street, Suite 1800
San Francisco, California 94104

      Re:    *Stein v. U.S. Xpress Enterprises, Inc., et al.*, Case No. 1:19-CV-00098 (E.D. Tenn.)

Dear Hadiya:

We write in response to your April 2, 2021 letter. We are always amenable to resolving amicably discovery disputes that pertain to discovery that is relevant to the claims and defenses in the case. Your letter, however, does not identify actual substantive deficiencies. In particular, your demands for additional categories of documents do not establish the relevance or responsiveness of the items sought.

This case is about (a) two alleged misstatements that Plaintiffs allege were misleading as misstatements and on an omission theory, and (b) USX Defendants'[1] defenses thereto. To date, we have reviewed the entire IPO data room without applying any search terms, applied the agreed upon search terms to the emails and custodial files of 20 custodians, searched for the relevant reports identified in the three corporate representative depositions that Plaintiffs took, and produced more than 27,000 documents, totaling more than 126,000 pages (exclusive of the native files for which Bates numbered single-page slip-sheets are provided) in response to your requests. And despite having already satisfied our obligation to conduct a reasonable search for responsive documents—per the parties' agreed upon search parameters—we have continued to confer with you in good faith and have collected and produced additional documents in response to your repeated requests. We will, of course, continue to confer with Plaintiffs in good faith, but we will not acquiesce to the suggestion that our productions are a result of any failure to comply with USX Defendants' discovery obligations.

---

[1] USX Defendants refers collectively to Defendants U.S. Xpress Enterprises, Inc., Eric Fuller, Eric Peterson, Jason Grear, Max Fuller, and Lisa Quinn Pate.

Discovery may be had of nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, and we are willing to consider any supplemental request that fits within the proper scope of discovery. We have offered to search additional custodial files and run additional search terms where appropriate. For example, we offered a resolution to discovery issues on March 18, 2021, that would have USX Defendants searching the emails and files of three additional custodians and adding certain search terms to be run across the entire dataset. Instead of responding to that request with agreement or a counter-proposal that included certain, relevant additional categories of documents, you sent a letter that, for the most part, complained about non-substantive issues and documents that had already been produced. USX Defendants' responses to Plaintiffs' issues are set forth below.

1.      **Process Improvement Documents**

USX Defendants confirm that any non-privileged surveys and reports of the type previously belonging to the Process Improvement function were treated as responsive. *See, e.g.*, USX0114140; USX0113875. As the produced documents show, the Company was in the process in February 2018 of retaining a third-party vendor to conduct a driver survey. We have not seen any indication that the vendor was retained and a survey completed prior to the end of our agreed relevant period.

2.      **Customer Codes**

As the produced documents show, USX did have customer-specific "bill to" codes. USX0032773. Both the customer name and the code are reflected in the document, enabling Plaintiffs to conduct further searches independently. USX Defendants do not believe further searches for such codes are warranted because we have not seen any instances where the codes are used without also referring to the customer name. As you know, we ran the customer names that you requested as a search term, so you have those responsive documents.

3.      **Rule 30(b)(6) Testimony Regarding Topics 15 and 16**

Plaintiffs contend that they "do not understand USX's refusal to produce a designee" to testify regarding Topics 15 and 16 of the November 23, 2020 Rule 30(b)(6) deposition notice. USX Defendants' objections and position with regard to Topics 15 and 16, however, have been clear and consistent from the outset. The fact that Plaintiffs served these topics on November 23, 2020, prior to any testimony or document productions by USX Defendants, confirms that these topics are an attempted fishing expedition into the process undertaken by counsel rather than an inquiry based upon actual evidence of a deficiency. To date, Plaintiffs have failed to identify any relevant data that USX Defendants failed to retain, as would be required to have any possible basis to seek such testimony, and have repeatedly failed to address the authorities cited in our objections to the 30(b)(6) notice and prior letters, which explain why Plaintiffs are not entitled to a deposition to conduct "discovery on discovery" in this case.

Your April 2, 2021 letter proposes that "prior to seeking Court intervention [Plaintiffs] are willing to review USX's retention policies, as well as a declaration of a USX officer or

employee regarding [USX's litigation hold process and document retention, collection and production.]" (Letter at 2.) We have confirmed with the Company that USX does not have a written retention policy, so there are no policies to be produced. And, without revealing protected attorney work product or waiving the protections of the work product doctrine or our objections based on discovery about discovery, and in a good faith effort to further address Plaintiffs' inquiries, USX Defendants provide the following additional information regarding the document process. Among other things, USX Defendants:

- Engaged in lengthy negotiations with Plaintiff on the scope of discovery that is documented in USX Defendants' responses and the parties' subsequent meet and confer correspondence, so that it was clear what categories would and would not be produced relative to the scope of the requests (and text messages were not within the agreed scope, nor have Plaintiffs identified a basis to revisit that issue);
- Interviewed document custodians to identify responsive materials;
- Developed a review process that, consistent with standard best practices in e-discovery, involved (i) both a first and second line review, (ii) a separate privilege review for any potentially privileged documents, and (iii) a production quality control review;
- Appropriately developed a review protocol from (i) the Amended Complaint, (ii) the Motion to Dismiss Order, (iii) the USX Defendants' Responses and Objections to Plaintiffs' First Request for Production (the "Responses"), and (iv) the agreements reached by the parties in the meet and confer process;
- Instructed document reviewers to err on the side of responsiveness;
- Reviewed documents marked as non-responsive early in the review process to ensure guidance was being appropriately applied;
- Reviewed documents coded by each member of the review team to test the responsiveness calls, and conducted periodic quality checks throughout the review;
- Engaged in further document collection and review to identify and produce categories of documents sought by Plaintiffs following the Rule 30(b)(6) testimony; and
- Engaged in extensive meet and confer calls and written correspondence to negotiate in good faith with Plaintiffs regarding the data sources, search terms, custodian list, and scope of production.

This process involved substantial burden and expense for USX Defendants, and resulted in document productions that are proportionate to the needs of the case and address the subject matters agreed to in the Responses and the parties' subsequent meet and confer process. Plaintiffs also had the opportunity to depose multiple USX corporate representatives, who testified about many categories of documents and reports, and USX Defendants subsequently produced the relevant identified documents and reports. USX Defendants have satisfied their discovery obligations in their document production, and Plaintiffs have not identified any deficiencies in the document production or review process.

We hope the above description satisfies your request for information. To the extent it does not, we note that your request for testimony in the form of a declaration regarding document retention and collection is contrary to the law. The requested declaration and Topics 15 and 16 of the 30(b)(6) notice would require a witness to testify regarding protected attorney

work product and attorney-client privileged communications regarding the particular steps taken by USX Defendants and their counsel to meet USX Defendants' discovery obligations in this action. As set out in our prior correspondence, the Federal Rules of Civil Procedure do not permit parties to seek "discovery on discovery" absent specific evidence of a preservation or discovery failure or misconduct, none of which is present here. *See Moore v. Westgate Resorts, Ltd.*, No. 3:18-CV-410-DCLC-HBG, 2020 WL 7017740, at *6 (E.D. Tenn. Jan. 24, 2020) (granting defendants' protective order with regard to Rule 30(b)(6) topics constituting discovery about discovery), *objections overruled sub nom. Moore v. Westgate Resorts Ltd., L.P.*, No. 3:18-CV-00410-DCLC, 2020 WL 7020266 (E.D. Tenn. Nov. 20, 2020); *see also In re Ford Motor Co.,* 345 F.3d 1315, 1371 (11th Cir. 2003) (vacating order allowing discovery of certain databases where there was no factual finding of "some non-compliance with discovery rules by Ford"); *British Telecommunications PLC v. IAC*, 2020 WL 1043974, at *7 (D. Del. March 4, 2020) (granting protective order as to 30(b)(6) deposition topics "inquiring about efforts to locate, collect, organize and produce documents in response to discovery requests" because the complaints about the producing party's document production "were not sufficiently supported to justify the kind of discovery on discovery" sought); *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, No. 11-cv-03684, 2014 WL 1494517, at *4 (D.N.J. Apr. 16, 2014) (granting motion for protective order against deposition of IT witness where the moving party failed to show a "material deficiency," noting that the party's "alleged dissatisfaction with the results of [the] production" was at best "speculative and suggestive").

Plaintiffs have not made the threshold showing of preservation deficiencies, as they must, to obtain the discovery they seek. *See The Sedona Principles*, 19 Sedona Conf. J. at 118 (discovery about discovery is disfavored "unless a specific deficiency is shown."). Although you have sent a series of letters requesting production of additional categories of documents, you have not identified a single document that USX Defendants failed to preserve. Plaintiffs are not entitled to a declaration or Rule 30(b)(6) deposition on USX's preservation, collection or production practices. *See Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative*, No. 15-6480, at *3-4 (E.D. Pa. June 29, 2020) ("If judges were to grant motions to compel based entirely on litigants' suspicions that an adversary was withholding discovery, courts would likely find themselves constantly refereeing document production"); *Ford Motor Co. v. Edgewood Props.*, 257 F.R.D. 418, 427-428 (D.N.J. May 19, 2009) (similar). Accordingly, based on the collective authorities we have cited, including authorities from this District, and the complete absence of any showing of a proper basis for such inquiry, USX Defendants do not agree to make a representative available to testify on Topics 15 and 16, or to provide testimony through a declaration on such topics.

### 4.       Text Messages

Plaintiffs' initial basis for seeking text messages was the testimony of Justin Harness. That testimony, however, did not establish that the referenced text messages were either substantive or relevant to the remaining claims or defenses in this action. Nonetheless, USX Defendants took additional steps to confirm with Mr. Harness that he did not use text messages for any substantive work communications and then made inquiries with each additional custodian, likewise confirming that they did not use text messages for any substantive work

communications. Thus, USX Defendants conducted a reasonable search involving individualized inquiries, which did not reveal any basis to conclude that the custodians' text messages contain information relevant to any remaining claims or defenses. Plaintiffs have not identified any evidence to the contrary and have no basis for seeking further discovery of text messages in this matter or second-guessing USX Defendants' inquiries. Collection and searching of text messages was not contemplated or agreed to as part of the ESI protocol negotiated by the parties; are irrelevant; and would be both disproportionate to the needs of the case and an invasion of the individual custodians' privacy. USX Defendants have satisfied their obligations, and do not agree that any further steps are required with regard to text messages.

**5.      Additional Categories of Documents**

Plaintiffs also assert that "USX also has no credible excuse for not searching for the relevant documents the parties have agreed would be responsive." But you do not identify a single relevant document that we agreed to search for that has not been produced. Indeed, some of the categories of documents Plaintiffs seek are documents that USX Defendants objected to in the Responses and have never subsequently agreed to produce.

For example, Plaintiffs assert that "USX Defendants have produced no voicemails, audio recordings or videos" but provide no information as to which requests such items would be responsive or what basis Plaintiffs have to believe relevant, responsive voicemails, audio recordings or videos may exist. USX Defendants are not aware of any such items responsive to Plaintiffs' requests.

Plaintiffs likewise complain about the purported absence of calendars and other similar documents. USX Defendants, however, objected and never agreed to produce calendars in their entirety. *See, e.g.*, USX Response and Objections to Request Nos. 28, 54. It is also clear you have not reviewed the document production to date because we actually produced relevant calendars and meeting invites and notes. *See, e.g.*, USX0033219 (calendar of road show events); USX0109188, USX0114432 (sample electronic calendar/meeting notice); USX00038747, USX0104737 (sample meeting notes).

Plaintiffs complain about the absence of "ramp-up" plans, but simultaneously acknowledge that USX ultimately produced a ramp-up plan document for Gordonsville. Moreover, a simple search of the documents produced indicates that approximately 150 documents referencing ramp up efforts were included in the productions. Nonetheless, as part of a global resolution outlined below, USX Defendants will agree to run additional searches for the terms "ramp-up," "ramp up," or "rampup" across the custodial and network data collected from USX Defendants.

In an effort to resolve the dispute as to USX Defendants' document production, we reiterate our proposal, as expanded above. To resolve all issues with USX Defendants' document production, we will (a) search the emails and custodial files of Lori Casteel, Michael Graham, and Gregory McQuagge consistent with the previously agreed protocol as modified with the additional terms below, (b) search all custodians' data for the e-mail domains for Solebury Trout

April 15, 2021
Page 6

and Solebury Capital, and (c) search all custodians' data for "ramp-up," "ramp up," or "rampup." Please let us know if this is acceptable to Plaintiffs or if you would like a call to discuss.

Very truly yours,

Lisa R. Bugni

cc:     Counsel of Record