UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

| | | |
|---|---|---|
| LEWIS STEIN, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:19-cv-00098-TRM-CHS |
| Plaintiffs, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) | Judge Travis R. McDonough<br>Magistrate Judge Christopher H. Steger |
| U.S. XPRESS ENTERPRISES, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO COMPEL THE USX DEFENDANTS TO PRODUCE TEXT MESSAGES AND
RELEVANT DOCUMENTS FROM SIX KEY PERCIPIENT WITNESSES AND
DESIGNATE A RULE 30(b)(6) WITNESS

**TABLE OF CONTENTS**

**Page**

I. Introduction ............................................................................................................1

II. The USX Defendants Should Be Ordered to Produce Probative Text Messages ................4

    A. USX Company-Provided Mobile Phones/Devices for Business Purposes Are Not Exempt from Discovery ...............................................................5

    B. Evidence Reveals USX Employees Used Smart Phones/Devices for Business Purposes and to Communicate About Issues Relevant to This Case ...............................................................................................................7

III. The Court Should Order USX to Produce Relevant Documents from Six Percipient Witnesses ...............................................................................................9

    A. The Percipient Witnesses Requested to Be Added as Custodians Have Information Central to Plaintiffs' Allegations .......................................................10

        1. Hammond and Gordonsville Load Planner Witnesses ..............................11

        2. Pricing Witnesses ........................................................................................13

IV. USX Should Be Compelled to Produce a Rule 30(b)(6) Designee on the Topics of Document Preservation, Collection and Production ...........................................................16

V. Conclusion ........................................................................................................20

4871-8748-0584.v1

# TABLE OF AUTHORITIES

**CASES**

*Aetna Inc. v. Blue Cross Blue Shield of Mich.*,
2014 WL 4145342 (E.D. Mich. Aug. 20, 2014)......................................................20

*Alter v. Rocky Point Sch. Dist.*,
2014 U.S. Dist. LEXIS 141020 (E.D.N.Y. Sept. 30, 2014).................................5, 7

*Benefield v. MStreet Ent., LLC*,
2016 U.S. Dist. LEXIS 11472 (M.D. Tenn. Feb. 1, 2016) ...............................4, 5, 9

*Brown v. Tellermate Holdings Ltd.*,
2015 U.S. Dist. LEXIS 105263 (S.D. Ohio Aug. 11, 2015)........................................8

*Burd v. Ford Motor Co.*,
2015 U.S. Dist. LEXIS 88518 (S.D. W. Va. July 8, 2015)......................................17

*Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*,
2016 WL 9687001 (M.D. Ala. Jan. 22, 2016) ........................................................20

*Doe v. D.C.*,
230 F.R.D. 47 (D.D.C. 2005).................................................................................16

*Fam. Wireless #1, LLC v. Auto. Techs., Inc.*,
2016 WL 2930887 (D. Conn. May 19, 2016)..........................................................12

*Flagg v. City of Detroit*,
252 F.R.D. 346 (E.D. Mich. 2008) .........................................................................1

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99, 105 (S.D.N.Y. 2013) ......................................................................10

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)................................................................................................2

*Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*,
2019 WL 11670621 (E.D. Tenn. Sept. 18, 2019)....................................................14

*In re Envision Healthcare Corp. Sec. Litig.*,
2020 WL 6750397 (M.D. Tenn. Nov. 16, 2020) ......................................3, 5, 10, 17

*In re Suboxone Antitrust Litig.*,
325 F.R.D. 551 (E.D. Pa. 2016).............................................................................11

*In re Toyota Motor Corp. Sec. Litig.*,
2012 WL 3791716 (C.D. Cal. Mar. 12, 2012).........................................................15

4871-8748-0584.v1

*Jobe v. ATR Mktg., Inc.*,
  1998 WL 252382 (E.D. La. May 15, 1998)...............................................................................17

*Lalumiere v. Willow Springs Care, Inc.*,
  2017 WL 6943148 (E.D. Wash. Sept. 18, 2017) ................................................................4, 5

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 1983069 (S.D. Ohio Apr. 27, 2020) ......................................................................19

*McMaster v. Kohl's Dep't Stores, Inc.*,
  2020 U.S. Dist. LEXIS 26505 (E.D. Mich. Feb. 15, 2020)................................................9, 19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)...............................................................................................................13

*R. B. v. Ford Motor Co.*,
  2006 WL 8444737 (N.D. Fla. Aug. 9, 2006)..........................................................................17

*Schnatter v. Papa John's Int'l Inc.*,
  2019 WL 194634 (Del. Ch. Ct. Jan. 15, 2019) .........................................................................5

*Sharma v. BMW of N. Am. LLC*,
  2016 U.S. Dist. LEXIS 34101 (N.D. Cal. Mar. 15, 2016)......................................................16

*Smilovits v. First Solar, Inc.*,
  2019 WL 6841736 (D. Ariz. Dec. 16, 2019) ..........................................................................10

*State Farm Mut. Auto. Ins. Co. v. Angelo*,
  2020 U.S. Dist. LEXIS 211341 (E.D. Mich. Nov. 12, 2020) ...................................................8

*Stinson v. City of N.Y.*,
  2016 WL 54684 (S.D.N.Y Jan. 5, 2016) ...............................................................................5, 7

*Union Home Mortg. Corp. v. Jenkins*,
  2021 U.S. Dist. LEXIS 54129 (N.D. Ohio Mar. 23, 2021) ...........................................5, 6, 7, 8

*United States v. Carell*,
  2011 WL 2078023 (M.D. Tenn. May 26, 2011).....................................................................10

4871-8748-0584.v1

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Prodedure

Rule 26 ..................................................................................................................15, 16
Rule 26(a)(1)(A)(ii) ...............................................................................................4
Rule 26(b)(1) .......................................................................................................3, 16
Rule 26(b)(2)(C)(i) .................................................................................................15
Rule 30(b)(6) .......................................................................................................*passim*
Rule 33(d) .................................................................................................................4
Rule 34 .............................................................................................................1, 4, 7
Rule 34(a) .................................................................................................................4
Rule 34(a)(1) ...........................................................................................................4
Rule 34(b) .................................................................................................................4
Rule 45 .....................................................................................................................4

4871-8748-0584.v1

## I. Introduction

Plaintiffs seek an order from this Court compelling the USX Defendants to produce discovery they need for trial in this certified class action regarding misrepresentations made in connection with USX's $245 million public offering in June 2018. ¶¶3-4.[1] Despite Plaintiffs' efforts to resolve discovery issues without Court intervention, the latest being a meet and confer on November 30, 2021, the USX Defendants continue to refuse to produce three foundational pieces of discovery. As such, Plaintiffs respectfully seek an order from the Court compelling them to do so.

First, the USX Defendants' refusal to search for or produce relevant text or other messages sent using mobile phones is inexcusable, and relevant messages should be produced without delay. "[T]ext messages . . . fit comfortably within the scope of the materials that a party may request under Rule 34[.]" *Flagg v. City of Detroit*, 252 F.R.D. 346, 352-53 (E.D. Mich. 2008). To that end, Company mobile phones are inherently business related and not exempt from document retention, search and production. Here, it is apparent that USX provided and paid for Company phones for USX executives and key employees to use for business purposes as internal e-mails reflect "mobile" numbers on employee e-mail signature blocks. Contrary to USX's unsubstantiated protests, internal Company documents and testimony also confirm that USX employees used text messages for substantive business communications concerning topics directly relevant to this case. Indeed, it is

---

[1] "Plaintiffs" are Deirdre Terry, Charles Clowdis and Bryan Robbins. "Defendants" are U.S. Xpress Enterprises, Inc. ("USX" or the "Company"), Eric Fuller, Eric Peterson, Max Fuller, Jason Grear and Lisa Quinn Pate (collectively, "USX Defendants") and Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Wells Fargo Securities, LLC, Stephens, Inc., WR Securities LLC and Stifel Nicolaus I Company, Inc. (collectively, "Underwriter Defendants"). All "¶_" references are to Lead Plaintiff's Complaint for Violation of the Federal Securities Laws (ECF No. 57) ("Complaint"). All citations and footnotes are omitted and emphasis is added unless otherwise indicated. All "Ex. _" references are to the Declaration of Christopher M. Wood in Support of Plaintiffs' Motion to Compel the USX Defendants to Produce Text Messages and Relevant Documents from Six Key Percipient Witnesses and Designate a Rule 30(b)(6) Witness, filed concurrently herewith.

- 1 -

troubling that in an unrelated case USX produced 100 million text messages. Yet, here the Company flatly refuses to search for and produce any.

Second, Plaintiffs request that the Court order USX to add six USX percipient witnesses – four load managers directly assigned to work on two Walmart dedicated accounts directly tied to Plaintiffs' OTR cannibalization allegations, and two Pricing team leads responsible for the Walmart bidding strategy for those accounts – as custodians. At the time of the filing of USX's Offering Documents, USX had over 9,000 employees (including nearly 2,000 non-driver or maintenance employees), and has agreed thus far to search for and produce only 22 custodians (of which five are named defendants). USX's objection to Plaintiffs' narrow request for limited additional custodians appears to be based entirely on USX's attempt to have Plaintiffs bound by an original custodian list (prior to substantial document production) under the unsubstantiated guise of burden when Plaintiffs were initially unaware that USX's production would contain substantial deficiencies, including those related to USX's communications with Walmart regarding USX's services. The requested custodian files would undoubtedly contain probative information. The Company is strictly liable for any materially misleading misrepresentation or omission in USX's Offering Documents for its public offering for its negligence claims under §11. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) ("[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements"). Because Plaintiffs need not prove knowledge on behalf of USX's executives, it is precisely those employees who were in the day-to-day trenches who would be in possession of the true state of affairs regarding the difficulties USX was encountering that eventually led it to disclose that its Dedicated "division's results continue to be impacted by certain accounts' shipping patterns [*i.e.*, Walmart] performing differently than expected which was first experienced in the second quarter of 2018." ¶155; Ex. 1 at 81:21-82:24. The burden is on USX, which seeks to block the relevant information from being produced, to show its objections to production are valid, which it

has not done. *In re Envision Healthcare Corp. Sec. Litig.*, 2020 WL 6750397, at \*2 (M.D. Tenn. Nov. 16, 2020) ("'If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules.'"). In particular, USX cannot show that the request for production from these custodial files is unreasonably cumulative or duplicative because the production from USX to date contains a handful of communications made during short windows of time from these custodians that were captured in communications with other existing custodians. Fed. R. Civ. P. 26(b)(1) (listing the factors considered with regard to proportionality).

Finally, in light of USX's failure to provide text messages or even provide reasonable assurances that the messages have been preserved since this case was initially filed on March 8, 2019, the Company's late discovery of back-up tapes only after Plaintiffs identified production deficiencies and the Company's shifting and evasive explanations for evidentiary gaps even after the restoration of certain back-up tapes, USX should be ordered to sit for a Rule 30(b)(6) deposition to identify sources of relevant electronically stored information ("ESI"), describe USX's use of electronic devices and other means of communication, recount its preservation steps related to this action as well as delineate the nature and scope of the documents which it has retained and searched. USX's past assurances that it has made a fulsome document production have already been undermined and Plaintiffs should be entitled to sworn Rule 30(b)(6) testimony from a Company representative. Given the record in this case, a deposition is the most effective and reliable way to ensure that Plaintiffs have received all relevant information to which they are entitled. In securities class actions such as this one, Plaintiffs routinely take such depositions and USX's protests that it should not have to sit for deposition are particularly suspect given the production gaps and lack of a written formal retention policy. As such, the Company should be ordered to produce a corporate

representative on the topics of retention, preservation, collection and production of documents in this action forthwith.

For these reasons and those set forth below, Plaintiffs' motion should be granted.

## II. The USX Defendants Should Be Ordered to Produce Probative Text Messages

On August 19, 2020 and July 30, 2021, Plaintiffs served the USX Defendants with requests for production of documents. Despite the fact that text messages clearly fall within the purview of Rule 34(a)(1)[2] and the requests served on the USX Defendants for documents clearly specified that the term "Correspondence" includes "any letter, memorandum, note, e-mail, facsimile, ***text message***, instant message, internet message board posting, or any other writing containing a communication from one Person or Persons to another,"[3] the USX Defendants refuse to search for and produce responsive text messages. If the Federal Rules and the document requests themselves were not clear enough, the Parties' Stipulated Document Production Protocol specifically included Mobile Phones as a document source.[4] *See* ECF No. 124 at 5.

---

[2] *See* Fed. R. Civ. P. 34(a)(1) (permitting discovery of "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained"); Fed. R. Civ. P. 34 advisory committee's note on 2006 amendments ("Rule 34(a)(1) is expansive and includes ***any*** type of information that is stored electronically."); *Lalumiere v. Willow Springs Care, Inc.*, 2017 WL 6943148, at *2 (E.D. Wash. Sept. 18, 2017) ("Rule 34 includes electronically stored information, such as text messages and emails."); *see also* Magistrate Judge Steger's Model Scheduling Order ("[I]t is expected the parties will comply with all applicable rules of civil procedure relating to electronic discovery, including Rules 26(a)(1)(A)(ii), 33(d), 34(a) and (b), and 45.").

[3] *See* ECF No. 112-1 at 3-4 (Plaintiffs' First Set Of Requests For Production Of Documents to the USX Defendants (definitions of "Document" and "Correspondence" include text messages)).

[4] Further, document preservation extends to relevant documents regardless of where they are kept. *See Benefield v. MStreet Ent., LLC*, 2016 U.S. Dist. LEXIS 11472, at *21-*22 (M.D. Tenn. Feb. 1, 2016) (that cell phones were private or not the primary means of communication does not excuse them from preservation).

- 4 -

The USX Defendants' excuse for the failure to produce responsive documents from USX mobile phones amounts to unsubstantiated protests that text messages were not used for "substantive" business purposes. That excuse, however, rings hollow given that: (i) it appears that key USX executives and employees used business-issued smart phones/devices giving the Company no basis to differentiate collecting text messages as opposed to e-mail messages or other document sources; and (ii) evidence USX has produced demonstrates that texts were used for business purposes, including business directly related to the allegations in this case by named Defendants.[5]

Moreover, it is the USX Defendants' burden to show why otherwise relevant business communications – here, in the form of text messages – are unduly burdensome to produce or otherwise non-discoverable. *See Envision*, 2020 WL 6750397, at \*2-\*3. They cannot meet that burden.

### A. USX Company-Provided Mobile Phones/Devices for Business Purposes Are Not Exempt from Discovery

Where a company issues mobile or smart phones for business-related purposes, there is no excuse for not preserving, searching and producing relevant information from those devices. *See Lalumiere*, 2017 WL 6943148, at \*2 (company controls employees' text messages from company phones and must produce responsive texts); *Stinson v. City of N.Y.*, 2016 WL 54684, at \*5 (S.D.N.Y Jan. 5, 2016) (police officers' city-issued smartphones subject to same preservation obligations as

---

[5] Even if they were not USX-issued smart phones, that still is no excuse not to preserve and produce relevant documents. *See, e.g.*, *Union Home Mortg. Corp. v. Jenkins*, 2021 U.S. Dist. LEXIS 54129, at \*29 (N.D. Ohio Mar. 23, 2021) (requiring "employees to search for and provide for production all relevant emails and text messages in their personal email and cell phone accounts which are responsive"); *Schnatter v. Papa John's Int'l Inc.*, 2019 WL 194634, at \*16 (Del. Ch. Ct. Jan. 15, 2019) (directors, CEO and general counsel "should expect to provide [probative] information" from personal devices when used for business); *Benefield*, 2016 U.S. Dist. LEXIS 11472, at \*21-\*22 (that cell phones were private or not the primary means of communication does not excuse them from preservation); *Alter v. Rocky Point Sch. Dist.*, 2014 U.S. Dist. LEXIS 141020, at \*26 (E.D.N.Y. Sept. 30, 2014) ("information should have been preserved on whatever devices contained the information (*e.g.*, laptops, cellphones, and any personal digital devices capable of ESI storage")).

4871-8748-0584.v1

other ESI; text messages should have been preserved); *see also Union*, 2021 U.S. Dist. LEXIS 54129, at *28-*29 (devices used for business purposes are discoverable).

Here, there is every indication that Company mobile phones were used by USX employees and executives, warranting an order that they should be searched and relevant documents produced. Plaintiffs have repeatedly asked whether USX paid for the mobile phone plans of its employees it has agreed are relevant custodians for purposes of discovery, most recently asking USX's counsel to clarify the issue on November 30, 2021 and in a follow-up communication on December 6, 2021. USX's silence is deafening and highly suspect given that many USX executives and employees include their mobile numbers on their Company signature block in Company e-mails. *See, e.g.*, Exs. 2-9, 11-13.

```
Eric Fuller | U.S. Xpress Enterprises, Inc.
CEO
4080 Jenkins Road | Chattanooga, TN 37421
Office: 423 510 6500
Cell 423 240 5878
efuller@usxpress.com<mailto:efuller@usxpress.com> | www.usxpress.com<http://www.usxpress.com/>
```

Ex. 2.

Evidence produced also demonstrates that mobile/smart phones were routinely used by USX employees because e-mails reflect that they were sent using an "iPhone." *See, e.g.*, Ex. 5 (e-mail dated June 10, 2018 from Eric Fuller "Sent from my iPhone"); Ex. 6 (e-mail dated May 14, 2018 from Eric Peterson "Sent from my iPhone"). Nor is there any plausible explanation for the fact that USX produced more than 100 million text messages in another federal lawsuit and yet refuses to produce any relevant texts here. Supplemental Declaration of Justin Swidler in Support of Plaintiff's Motion for Partial Summary Judgment; Ex. 14 at 2 (referencing production of text messages sent between USX drivers and fleet managers for a period of approximately 2015 to 2018).

Because Company mobile/smart phones are explicitly within the Defendant-Company's "possession, custody, or control" under Rule 34, any relevant information existing on such devices

does not receive a special carve-out from collection, preservation and production. Fed. R. Civ. P. 34; *see Union*, 2021 U.S. Dist. LEXIS 54129, at *28-*29; *Stinson*, 2016 WL 54684, at *4-*5. As such, USX should be required to produce relevant information from Company smart phones.

**B.** **Evidence Reveals USX Employees Used Smart Phones/Devices for Business Purposes and to Communicate About Issues Relevant to This Case**

Rule 30(b)(6) testimony from USX's corporate designee, as well as documents produced by both USX and the Underwriter Defendants, confirm that probative business-related conversations occurred using text messages, providing an additional reason to compel the search for and production of relevant messages. *See Union*, 2021 U.S. Dist. LEXIS 54129, at *28 ("'generally the plaintiff must show that personal devices were used for business purposes'"); *see also Alter*, 2014 U.S. Dist. LEXIS 141020, at *25-*26 ("ESI does not consist solely of e-mail production"). Not only were the texts business related, but there also exist numerous examples of Defendants texting about issues central to this case:

- A June 11, 2018 e-mail in which an underwriter confirmed that he had a text message exchange with Defendant and USX Chief Financial Officer Eric Peterson regarding a pricing meeting related to the public offering. *See* Ex. 15 ("*I exchanged text msgs with Eric P* after the update call, and they are focused on getting this done.").

- A June 6, 2018 e-mail sent by Defendant and CEO Eric Fuller to underwriters, Defendant Eric Peterson and custodian Brian Baubach forwarding from his iPhone a screenshot of a text conversation between an analyst at T. Rowe Price and Eric Fuller's brother Craig Fuller (who is a freight industry specialist and CEO of media company Freight Waves) regarding the analyst's views on how USX should price its public offering. *See* Ex. 16 .

- A September 17, 2018 e-mail revealing that Defendant and CEO Eric Fuller received Walmart communications via text. *See* Ex. 17 .

- An October 18, 2018 e-mail reflecting that Defendant, Director and Chief Administrative Officer Lisa Pate, had a conversation with "Eric" (presumably Defendant CFO Peterson) over text message about the Company's performance and inability to meet its internal targets for utilization and seated truck counts – "*When I was texting Eric last night* he mentioned including lower than planned utilization along with the lower than planned seated . . . ." *See* Ex. 18 .

These examples are consistent with USX corporate designee Justin Harness's testimony that USX employees communicated with each other via text message. Ex. 1 at 31:7-16.

Because the Company used text messages in its business communications, and those communications concern topics relevant to this case, the USX Defendants should have preserved, searched for and produced responsive documents months ago. *See Union*, 2021 U.S. Dist. LEXIS 54129, at *29 (requiring search and production of relevant text messages); *State Farm Mut. Auto. Ins. Co. v. Angelo*, 2020 U.S. Dist. LEXIS 211341, at *3-*4 (E.D. Mich. Nov. 12, 2020) ("text messages are business communications that could demonstrate whether or not [USX] Defendants coordinated among themselves and others to solicit potential clients, [and engage in other culpable conduct]").

USX will likely quibble that after Plaintiffs raised the issue of text messages with USX Defendants in January 2021, following the Rule 30(b)(6) deposition at which Justin Harness sat as a corporate representative, it "confirmed with Mr. Harness that, in fact, he did not use text messages for any substantive work communications. USX confirmed the same with each of the additional custodians."[6] ECF No. 138 at 17. Plaintiffs, however, are not required to take the word of the proverbial fox guarding the henhouse, particularly when evidence points to a very different conclusion. Indeed, Plaintiffs are not obligated to simply accept Defendants' word that all relevant communications have been produced. *See Brown v. Tellermate Holdings Ltd.*, 2015 U.S. Dist. LEXIS 105263, at *23 (S.D. Ohio Aug. 11, 2015) ("In responding to discovery requests . . . 'trial counsel must exercise some degree of oversight to ensure that their client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court.'"). Thus, even had USX submitted sworn affidavits regarding the use of text messages by USX employees

---

[6] Mr. Harness, having reviewed and signed his deposition transcript on March 2, 2021, declined to make these corrections to his testimony. Ex. 19. It is also unclear if the USX Defendants' representation also includes former employee custodians.

4871-8748-0584.v1

eight months ago as invited by the Court, given USX's production related to the use of text messages for business purposes, it is likely Plaintiffs would have sought depositions regarding those sworn statements because the evidence would contradict those sworn statements.[7]  Regardless, USX has not provided any such sworn declarations, further providing reason to compel the search for and production of relevant text messages.  *See McMaster v. Kohl's Dep't Stores, Inc.*, 2020 U.S. Dist. LEXIS 26505, at *4-*5 (E.D. Mich. Feb. 15, 2020) ("If a responding party indicates that it does not have certain documents . . . it is appropriate to require the Defendant to produce a declaration under oath, signed by the person or persons conducting the search for requested material, and stating in detail what was done to locate the documents.").

Further, courts do not countenance unsupported claims that text messages are unlikely to contain relevant information where examples are presented that belie those claims, such as the case here.  *See, e.g.*, *Benefield*, 2016 U.S. Dist. LEXIS 11472, at *22-*23 ("[D]efendants' argument that text messages are unlikely to contain relevant information is equally unsupported and belied . . . by the business-related communications found in the very small number of Martino Messages already produced in full.  Accordingly . . . defendants should have preserved these messages[.]").

In sum, the USX Defendants have no basis to withhold probative Company information from mobile devices and should be ordered to produce responsive documents from these devices forthwith.

**III.    The Court Should Order USX to Produce Relevant Documents from Six Percipient Witnesses**

Plaintiffs respectfully request the Court order USX to add, as document custodians, six highly relevant USX employees (the "Percipient Witnesses") with first-hand knowledge of events

---

[7]    During the May 24, 2021 status conference, this Court agreed that Plaintiffs need not take Defendants' word that they did not communicate via text messages and the Court suggested that Defendants should provide, at minimum, affidavits representing as much.

4871-8748-0584.v1

relevant to the claims and defenses in this litigation. While USX hides behind unsubstantiated burden and proportionality claims to block this discovery, it cannot meet its burden to establish that adding the Percipient Witnesses as custodians is disproportionate to the case. *Envision*, 2020 WL 6750397, at \*2 (citing *United States v. Carell*, 2011 WL 2078023, at \*2 (M.D. Tenn. May 26, 2011)).

Indeed, USX's refusal to add these witnesses is highly unreasonable given the likelihood that these witnesses have probative information and that the request for six additional custodians (28 total, including five named defendants) is very conservative given USX's 9,000 employees (of which 2,000 are non-driver office employees) and consistent with other cases.[8] This refusal appears to be based on the erroneous assumption by USX that once an initial list of custodians is agreed upon, other relevant custodians should be excluded based on routine burdens related to the production of discovery. To the contrary, additional custodians are routinely added as part of the discovery process and should be added here. *Envision*, 2020 WL 6750397, at \*9. Furthermore, Plaintiffs' request is particularly warranted because USX has recently admitted the existence of months-long gaps in certain custodians' ESI – even after factoring in USX's restoration of backup tapes. ECF No. 138 at 7; ECF No. 146 at 1-2.

**A.      The Percipient Witnesses Requested to Be Added as Custodians Have Information Central to Plaintiffs' Allegations**

Because the six Percipient Witnesses Plaintiffs seek to add as custodians are more than likely to have evidence that goes to the crux of Plaintiffs' allegations, USX has no excuse not to produce the probative information in the possession of those custodians. *See In re Suboxone Antitrust Litig.*,

---

[8]      Courts regularly find custodians in excess of 30 as proportional in securities class actions. *See Envision*, 2020 WL 6750397, at \*9 (ordering defendants to add 22 additional custodians to the 41 prior custodians); *Smilovits v. First Solar, Inc.*, 2019 WL 6841736, at \*2 (D. Ariz. Dec. 16, 2019) (40 custodians); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 105 (S.D.N.Y. 2013) (authorizing a total of 61 custodians).

4871-8748-0584.v1

325 F.R.D. 551, 558 (E.D. Pa. 2016) (finding evidence is proportional when it is "relevant to factual issues at the heart" of plaintiffs' claim). Here, Plaintiffs' allegations involve claims that USX's "driver first" efforts to improve the hiring and retention of drivers were unsuccessful and that USX misrepresented that it was "'prioritizing growth in dedicated contract services'" and had "'a sufficient number of drivers' to meet shipper demand." *See* ECF No. 91 at 31, 33, 38. These witnesses have firsthand knowledge relevant to these allegations.

The Percipient Witnesses are: (a) four of USX's approximately 40 Load Planner employees who were directly assigned to two Walmart dedicated accounts that USX blamed for its underperformance, Shannon Bigner and Aquanis Johnson at Hammond, and Michael Cowen and Rebecca Lofton at Gordonsville; and (b) two of USX's Pricing team leads responsible for overseeing the preparation and execution of bids for the two Walmart dedicated accounts, Julie Van de Kamp (VP of Pricing between September 2016 and October 2019) and Catherine ("Cat") Stephas (former Director of Pricing). Given the Percipient Witnesses' involvement with the two struggling Walmart accounts that USX blamed for its disappointing results, these witnesses are likely to possess highly relevant information in their ESI.

### 1. Hammond and Gordonsville Load Planner Witnesses

Deposition testimony establishes that USX employed Load Planners to "match truck[s] to load assignments everyday while making . . . the best decisions to maximize utility and maximize service for [USX's] customers." Ex. 1at 21:25-22:12; Ex. 20 (12/8/18 e-mail from Bigner addressing driver issues). Company documents further confirm that Load Planners were the first line of defense for addressing driver shortages as they were expected to "Create capacity," "Load/shift excess capacity to over-booked markets," "Review rates," and "Coordinate with CSR on loads we may miss." Ex. 21 at 409; Ex. 22 (Johnson attempting to create capacity). Load Planners also had customer and driver facing roles "servicing customer requirements for delivery and pickup times and

meeting the needs of drivers." Ex. 23; Ex. 24 (11/13/18 Johnson e-mail communicating Hammond capacity to Walmart). These employees thus had day-to-day visibility into both customer demand and driver availability, reports of which are largely absent from the production, except for November and December 2018. *See, e.g.*, Ex. 25 (Cowen); Ex. 26 (Lofton); Ex. 27 (Bigner); Ex. 22 (Johnson).

The Hammond and Gordonsville Load Planners' custodial documents, in particular, are relevant to Plaintiffs' allegations that at the time of the IPO, USX did not have "'a sufficient number of drivers' to meet shipper demand" and that USX was not able to "[s]trategically expand [its] fleet." *See* ECF No. 91 at 31, 38. Because they were assigned to the specific Walmart distribution centers at which USX's driver issues were most pronounced, the Load Planners were direct witnesses to the driver capacity issues and the resulting OTR support that arose when the Hammond and Gordonsville dedicated accounts opened in early 2018. Load Planners were thus likely the first employees in line to recognize that there were not enough drivers to match to Walmart dedicated loads, and their documents will provide first-hand commentary on Company directives to match Walmart loads to OTR drivers cannibalized from higher margin jobs and related measures to mitigate USX's lack of capacity. *See, e.g.*, *Fam. Wireless #1, LLC v. Auto. Techs., Inc.*, 2016 WL 2930887, at *3 (D. Conn. May 19, 2016) ("[W]hile not issuing directives, lower-level employees may discuss execution of policies amongst themselves and with third parties other than their superiors. These communications may be particularly revealing."). For example, the Load Planner Witnesses would be incentivized to justify their underperformance to USX's employees and customers by highlighting the driver supply issues, the need to conscript OTR drivers for dedicated lanes and their efforts to address the resulting OTR driver complaints. *See* Ex. 28 (7/16/18 Cowen e-mail explaining why an OTR driver was moving to competitor).

Further, the Load Planner Witnesses likely have Company-specific details of USX's driver shortage concealed by USX's Offering Documents, such as the origins, magnitude, and persistence

- 12 -

of the Walmart dedicated account staffing issues, the failed mitigation efforts of USX to find drivers to meet existing customer demand either through recruitment, retention or OTR support, and the overall adverse impacts on USX's operations and operating ratio. Here, these lower-level custodians are likely to provide highly relevant material, as information does not always rise to the attention of the most senior employees in stratified organizations. As this is a §11 case, the Load Planners' materials are also highly probative because Plaintiffs need not show that information rendering USX's Offering Documents false and misleading was known by USX executives to establish liability. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 179 (2015) (a "buyer need not prove . . . that the [issuer] acted with any intent to deceive or defraud").

### 2. Pricing Witnesses

The addition of two Pricing Witnesses as document custodians – Van de Kamp and Stephas – is an extremely narrow request, and their addition is necessary to fill the pre-January 2018 documentation gaps relating to the preparation and analysis of the late 2017 or early 2018 bids for the Hammond and Gordonsville dedicated accounts. *See, e.g.*, Ex. 29 (an example of Van de Kamp's bid materials from 2018). The Pricing Witnesses helped develop the "internal bid strategy for Walmart" and then executed the bids by "[t]ranslat[ing] feedback into customer strategy," and "[r]eview[ing] and rates, commitments and accessorials." Ex. 30; Ex. 31 at 700. The analysis of raw inputs, such as driver supply, prevailing driver wages and industrywide economic data, to calculate rates incorporated into the bids will shed light on whether USX's internal driver wage and price estimates used to meet or modify bid assumptions and later efforts to renegotiate rates in 2018 were at levels below what was necessary "to attract [a] sufficient number of drivers" to meet then-existing shipper demand. ECF No. 91 at 37-38; *see* Ex. 32 (illustrative 1/22/2018 Van de Kamp e-mail reporting that USX needed rate increases for a P&G bid). The Pricing Witnesses are thus

targeted to allow Plaintiffs to assess the Walmart and other dedicated bids[9] and establish whether, and to what extent, Defendants anticipated that the dedicated driver shortage issues would "put the Company's dedicated accounts in jeopardy" and render illusory any "prioritiz[ation of] growth in dedicated contract services" touted in the Offering Documents. ECF No. 91 at 45; *see* Ex. 33 at 241.

Information produced from the Pricing Witnesses' ESI, for example, will provide insight into whether USX's bids (and driver wage assumptions) for Walmart were facially unrealistic, and whether there were serious risks that the rates offered to Walmart were insufficient to hire drivers to meet Walmart's commitment requirements without negatively impacting USX's operating ratio. The Pricing Witnesses' materials are thus highly relevant to assessing the ultimate issue in this case – that, prior to the public offering, USX could not deliver on its promises stated in the Offering Documents because of negative adverse information that was not disclosed in the Offering Documents, including information that USX did not and could not employ sufficient drivers (*i.e.*, could not pay competitive wages to attract and retain sufficient drivers) to service its accounts, let alone expand its fleet.

In addition, the requested materials from the Pricing Witnesses must be produced because they are also relevant to testing certain Defendants' factual defense that they mistakenly assumed they could demand steep rate increases from Walmart without any reasonable justification. *See* Ex. 1 at 52:1-53:5; *see also Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, 2019 WL 11670621, at *4 (E.D. Tenn. Sept. 18, 2019) (rejecting defendant's request to "prohibit discovery on its asserted, yet unproven, affirmative defense"); *see also In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *12 (C.D. Cal. Mar. 12, 2012) (finding plaintiff entitled to document discovery "in order to test" defendants' factual defenses).

---

[9]     The two Walmart accounts are not the only relevant dedicated accounts, as other dedicated accounts were put in jeopardy. *E.g.*, Ex. 9 (Target and Hobby Lobby threatening to "remove [USX] from the business" due to issues identified prior to the June 15, 2018 IPO).

USX's sole attack on relevance is based on a myopic view of relevance inconsistent with Rule 26 of the Federal Rules of Civil Procedure – that the Pricing Witnesses, Van de Kamp and Stephas, did not directly prepare the Walmart bids – and is meritless as documents confirm they oversaw the Walmart bid strategy and bid execution. Ex. 30 (Stephas e-mail to Van de Kamp and others regarding "internal bid strategy for Walmart"). Indeed, missing from USX's production and likely found in these custodial files are the "analysis of various factors such as company costs, customer profile, and other logistical and operational considerations"[10] behind those rate assumptions. This analysis is relevant to demonstrating that the Offering Documents' statement that USX employed sufficient numbers of drivers for its existing business was misleading because it failed to disclose that it did not bid its dedicated accounts with rates that would allow for growth in dedicated contract services.

During the meet-and-confer process, USX claimed that the Percipient Witnesses' documents are "unreasonably cumulative or duplicative"; but its assertion is at odds with the existing production deficiencies. Fed. R. Civ. P. 26(b)(2)(C)(i). For example, only two e-mails sent by the Load Planner Witnesses have been produced from the critical period leading up to the IPO, depriving Plaintiffs of the initial reports on problems with USX's accounts in early 2018. Similarly, a mere 12 e-mails sent by Van de Kamp and Stephas[11] (and no documents from existing custodian Michael Graham, the Director of Dedicated Pricing) have been produced dated prior to January 2018, the time period

---

[10] USX's job posting for a lower level "Pricing Analyst" confirms that the Pricing Custodians oversaw employees who "obtain information needed and calculate rates for pricing of lanes and/or accounts for new and existing lanes and/or accounts," "evaluate new and existing pricing rates through analysis of various factors such as company costs, customer profile, and other logistical and operational considerations," and "[r]espond to bids, pricing requests, and customer RFPs in a timely fashion." Ex. 34.

[11] Van de Kamp and Stephas received a handful of e-mails during this time period, but the internal pricing team communications have not been produced.

during which the Walmart bids were being prepared.  These gaps in production provide an additional reason to compel production from the proposed Percipient Witnesses.

In sum, Plaintiffs' narrow request for the production of documents from six additional Percipient Witnesses who were in a position to have information that goes to the heart of this case should be granted.

**IV.    USX Should Be Compelled to Produce a Rule 30(b)(6) Designee on the Topics of Document Preservation, Collection and Production**

Parties engaged in complex litigation, such as this case, routinely notice Rule 30(b)(6) depositions to aid in the efficient identification of documentary sources and to allow requesting parties to understand the scope of which documents were retained or not.  *See Sharma v. BMW of N. Am. LLC*, 2016 U.S. Dist. LEXIS 34101, at \*10 (N.D. Cal. Mar. 15, 2016) (Such "information is relevant.  The document retention policies may help Plaintiffs determine the universe of responsive documents and evaluate any gaps in document production."); *Doe v. D.C.*, 230 F.R.D. 47, 56 (D.D.C. 2005) ("Rule 26(b)(1) may be construed to allow for discovery of document production policies and procedures"); Fed. R. Civ. P. 26(b)(1) advisory's committee note to 2015 amendment ("Discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples [of discovery].").  Here, despite Plaintiffs' continued identification of production deficiencies, USX refuses to name a witness to testify to a properly noticed Rule 30(b)(6) deposition[12] on the retention, preservation, collection and production

---

[12]  On November 23, 2020, Plaintiffs noticed a deposition of USX pursuant to Fed. R. Civ. P. 30(b)(6).  Plaintiffs' notice included the two topics at issue, Topic Nos. 15 and 16, which sought USX to designate a witness to testify to:

- USX's document retention policies and all steps undertaken by USX to preserve documents and electronic data related to this action, including the preservation of hard-copy documents, files and hard drives of current and former employees or officers and directors, without limitation as to time; and

4871-8748-0584.v1

of documents in this case **unless** Plaintiffs set forth evidence of wrongful spoliation. There is no basis for USX's distinction between spoliated and non-spoliated materials as parties are, as a general matter, entitled to know "[i]f the documents [that] once existed and do not exist any longer [were] destroyed in the normal course of implementation of a document retention policy." *R. B. v. Ford Motor Co.*, 2006 WL 8444737, at *1 (N.D. Fla. Aug. 9, 2006); *see Envision*, 2020 WL 6750397, at *4 ("there is no controlling authority for the proposition that Plaintiffs must provide 'evidence that [Defendants'] narrowed search is defective or otherwise inconsistent with the Federal Rules of Civil Procedure'") (alteration in original); *Burd v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 88518, at *34-*35 (S.D. W. Va. July 8, 2015) ("discovery of document retention and disposition policies is not contingent upon a claim of spoliation or proof of discovery abuses, and may be accomplished through a Rule 30(b)(6) witness"); *see also Jobe v. ATR Mktg., Inc.*, 1998 WL 252382, at *4 (E.D. La. May 15, 1998) ("[i]f plaintiff wants detailed information as to what happened to documents he believes once existed in a verified form he can read to a jury, he must ask questions to witnesses at depositions").

Plaintiffs are entitled to a Rule 30(b)(6) document retention and collection deposition to clarify the scope of the already identified (and unidentified) gaps in Defendants' production, such as USX Defendants' recent representation that they "ha[d] not identified **any** email for [certain] custodians" during certain relevant time periods identified by Plaintiff (*e.g.*, from October 2017 to December 2017 for Michael Graham). Ex. 35. This concession flies in the face of Defendants' prior representations that all relevant non-party customers' communications will be found in USX's ESI (ECF No. 112 at 11 (arguing "any relevant information relating to USX's business with these customers could be obtained from USX itself")), and necessitates that reasonable sources of back-up

---

- USX's efforts to collect and produce documents in this action, including from the "data room used during the IPO process" as described in the USX Defendants' Initial Disclosures, without limitation as to time.

4871-8748-0584.v1

Case 1:19-cv-00098-TRM-CHS    Document 162    Filed 02/03/22    Page 22 of 28
PageID #: 4332

materials be identified and searched (*i.e.*, back-up tapes, text messages and SharePoint archives) to supplement the already identified months-long gaps or deficiencies in custodians' ESI. Given the weight of authority permitting document retention depositions and the reasons identified above, Plaintiffs have more than sufficiently justified this deposition to determine whether they have received all relevant information to which they are entitled.

Topic Nos. 15 and 16 of Plaintiffs' Rule 30(b)(6) Deposition Notice are narrowly tailored to encompass the document retention and preservation of documents and electronic data (such as text messages and back-up tapes) and collection related to this action, and are appropriate for discovery especially as the Court instructed the parties to avoid duplicative discovery efforts. To do so, Plaintiffs have sought to confirm if the customer facing documents are in fact duplicative of what would be produced in response to the customer subpoenas. In response to USX's objections, Plaintiffs proffered several inquiries to USX, asking it to confirm that documents and ESI for certain sources (including sources cited by the 30(b)(6) witnesses) were retained and being searched for relevant information. USX Defendants steadfastly opposed any inquiry and claimed – despite the rapidly approaching fact discovery cutoff – Plaintiffs should simply "wait and see," leaving Plaintiffs to guess as to what has not been provided or searched. But even after USX's back-up tapes were restored, Plaintiffs have identified: (i) months-long gaps in the ESI of certain custodians; (ii) categories of "live" documents which should have otherwise been produced from central document servers such as SharePoint (*see, e.g.*, Ex. 36 ); (iii) Defendants' failure to collect relevant business related text messages; and (iv) a lack of communications to or from e-mail domains of USX's biggest customer, Walmart.[13] Defendants' recent shift in tone indicating that the existence of

---

[13] Plaintiffs have identified less than 30 e-mails to or from Walmart domains in October 2017 through January 2018, the time in which the two primary Walmart accounts at issue in this litigation were being bid. In contrast, in November 2018 through December 2018, USX produced about 650 e-mails from Walmart domains, but suggested that it is "not particularly surprising" that the other customer communications were not retained. *See* Ex. 35.

- 18 -

months-long gaps in custodians' ESI "is not particularly surprising" makes it clear that critical, but undefined deficiencies exist in Defendants' production. Ex. 35. Plaintiffs are entitled to depositions to understand the "adequacy and scope of document production" such as the parameters of these deficiencies. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 1983069, at *5 (S.D. Ohio Apr. 27, 2020).

It is clear that a Rule 30(b)(6) deposition at this juncture is the most effective means by which Plaintiffs can obtain information to remedy these production deficiencies, in particular because there is no written document retention policy to review. Plaintiffs have already attempted to informally obtain this information and requested that that USX produce its retention policies and a declaration of a USX officer or employee regarding: (i) steps taken by USX to preserve documents related to this action, including electronic documents (including instant messaging and text messages), voicemails and hard-copy documents; (ii) the identification of the systems used at USX and central files of USX (including shared files); (iii) the identification of the USX electronic devices provided to USX employees, officers and agents (*e.g.*, tablets, phones, laptops) and steps taken to preserve and produce documents from these files (including instant messages and texts) and when; and (iv) the recipients of and subject matter covered by any litigation hold letters or notices in relation to this action and when they were issued. This kind of information is routinely provided in litigation. *See, e.g.*, *McMaster*, 2020 U.S. Dist. LEXIS 26505, at *4-*5 ("If a responding party indicates that it does not have certain documents . . . it is appropriate to require the Defendant to produce a declaration under oath, signed by the person or persons conducting the search for requested material, and stating in detail what was done to locate the documents."); *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, 2016 WL 9687001, at *4 (M.D. Ala. Jan. 22, 2016) (requiring party to produce "'names and titles of the persons notified of the litigation holds and the dates of such notifications'" via "'sworn affidavit'"). To date, Defendants have only

identified a bullet point list of generic steps purportedly taken in the action, claimed that no written document retention policies at the Company exist and refused to provide a sworn declaration from a USX officer or employee on the matter. *See Aetna Inc. v. Blue Cross Blue Shield of Mich.*, 2014 WL 4145342, at \*1, \*6 (E.D. Mich. Aug. 20, 2014) (ordering a document production process Rule 30(b)(6) deposition when the movant identified gaps in production and the opposing party had "refused to respond to [a] request regarding the parameters of its document productions").

Moreover, the USX Defendants continue to withhold basic non-privileged information regarding: (i) when any litigation holds were issued; (ii) the recipients of any such litigation holds; (iii) the nature and scope of the litigation holds; and (iv) what steps the USX Defendants or their counsel have undertaken to guard against spoliation. The lack of any formal written retention policy coupled with USX Defendants' denials have only served to heighten Plaintiffs' counsel's concerns over potential gaps in USX's document retention efforts and the adequacy of USX Defendants' collection and production.

## V. Conclusion

Plaintiffs respectfully request this Court order USX Defendants to: (1) search for and produce responsive text messages; (2) add the Load Planner and Pricing Percipient Witnesses as custodians; and (3) prepare one or more designees to testify to Plaintiffs' Rule 30(b)(6) deposition Topic Nos. 15 and 16.

DATED: December 29, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD, #032977

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

- 20 -

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
WILLOW E. RADCLIFFE (*pro hac vice*)
HADIYA K. DESHMUKH (*pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
KEVIN S. SCIARANI (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ksciarani@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JACK REISE
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT  06905
Telephone:  203/363-7500
866/367-6510 (fax)
shopkins@zlk.com

*Co-Lead Counsel for Lead Plaintiff*

- 21 -

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com

*Local Counsel*

BRAGAR EAGEL & SQUIRE, P.C.
W. SCOTT HOLLEMAN (*pro hac vice*)
MARION C. PASSMORE (*pro hac vice*)
810 Seventh Avenue, Suite 620
New York, NY  10019
Telephone:  646/860-9449
212/214-0506 (fax)
holleman@bespc.com
passmore@bespc.com

*Additional Counsel for Plaintiffs Charles Clowdis
and Bryan K. Robbins*

- 22 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 29, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of the CM/ECF participants in this case.

<div style="margin-left: 50%;">

s/ Christopher M. Wood

CHRISTOPHER M. WOOD
ROBBINS GELLER RUDMAN
   & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
E-mail:  CWood@rgrdlaw.com

</div>