# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiffs,<br><br>v.<br><br>U.S. XPRESS ENTERPRISES, INC., *et al.*,<br><br>  Defendants. | Civil Action No. 1:19-cv-00098<br><br>Judge Travis R. McDonough<br>Magistrate Judge Christopher H. Steger |

## USX DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SUPPLEMENTAL INTERROGATORY RESPONSES

Dated: May 5, 2022

K. Stephen Powers (BPR # 007088)
Philip B. Whitaker, Jr. (BPR # 013999)
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
spowers@bakerdonelson.com
pwhitaker@bakerdonelson.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
rsolomon@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

*Counsel for USX Defendants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT .................................................................................................................... 3

I.     THE INTERROGATORIES ARE OVERBROAD, UNDULY BURDENSOME, AND
       DISPROPORTIONATE TO THE NEEDS OF THE CASE. .......................................... 3

II.    THE INTERROGATORIES IMPROPERLY SEEK USX DEFENDANTS' POSITIONS
       ON MATTERS THAT ARE THE SUBJECT OF EXPERT TESTIMONY BEFORE
       THE DISCLOSURE OF SUCH IS DUE. .................................................................. 14

III.   THE INTERROGATORIES ARE PREMATURE CONTENTION
       INTERROGATORIES. ......................................................................................... 16

CONCLUSION ............................................................................................................... 20

Case 1:19-cv-00098-TRM-CHS     Document 177     Filed 05/05/22     Page 2 of 25
PageID #: 4661

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Alfaro v. City of San Diego*,
No. 3:17-cv-0046-H-KSC, 2018 WL 4562240 (S.D. Cal. Sept. 21, 2018)......................... 19

*BB&T Corp. v. United States*,
233 F.R.D. 447 (M.D.N.C. 2006) .................................................................................... 15

*Eastwood v. United States*,
No. 2:06-CV-164, 2007 WL 9734140 (E.D. Tenn. Aug. 24, 2007) .................................. 11

*Fenner v. Operating Engineers Const. Indus. and Misc. Pension Fund (Local 66)*,
579 F.3d 401 (5th Cir. 2009)............................................................................................ 14

*Grae v. Corrections Corp. of Am., Inc.*,
No. 3:16-cv-02267, 2020 WL 6750806 (M.D. Tenn. Nov. 2, 2020).................................... 7

*Grynberg v. Total S.A.*,
No. 03-cv-01280-WYD-BNB, 2006 WL 1186836 (D. Colo. May 3, 2006).......................5, 6

*Haney v. Saldana*,
No. 1:04-cv-05935-AWI-SMS-PC, 2010 WL 3341939 (E.D. Cal. Aug. 24,
2010).................................................................................................................................. 11

*HCB Fin. Corp. v. Kennedy*,
No. 1:10CV559-HSO-JCG, 2016 WL 6216179 (S.D. Miss. Mar. 28, 2016).....................4, 7

*Hilt v. SFC, Inc.*,
170 F.R.D. 182 (D. Kan. 1997)..................................................................................5, 7, 19

*Hiskett v. Wal-Mart Stores, Inc.*,
180 F.R.D. 403 (D. Kan. 1998).................................................................................2, 7, 17

*Lawrence v. First Kansas Bank & Tr. Co.*,
169 F.R.D. 657 (D. Kan. 1996)...................................................................................1, 19

*Lillard v. Univ. of Louisville*,
No. 3:11-CV-554-JGH, 2014 WL 12725816 (W.D. Ky. Apr. 7, 2014)..........................1, 4, 7

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
No. 12-cv-3723 (RJS), 2015 WL 10550451 (S.D.N.Y. Nov. 25, 2015) ............................ 14

*Philips N. Am. LLC v. PKI Healthcare, Inc.*,
No. SACV 19-01765-JVS, 2020 WL 3031614 (C.D. Cal. Mar. 10, 2020).......................... 7

Case 1:19-cv-00098-TRM-CHS   Document 177   Filed 05/05/22   Page 3 of 25
PageID #: 4662

*Ross v. Abercrombie & Fitch Co.*,
  2010 WL 518169 (S.D. Ohio Feb. 4, 2010)........................................................................ 15

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005)........................................................................................... 14

*United States v. Life Care Centers of Am., Inc.*,
  No. 1:08-CV-251, 2016 WL 3198032 (E.D. Tenn. Mar. 24, 2016)................................16, 17

*In re Vivendi Universal, S.A., Sec. Litig.*,
  634 F. Supp. 2d 352 (S.D.N.Y. 2009)............................................................................... 2

*Wood v. Northwest Airlines, Inc.*,
  No. 2:09-CV-02317-BBD-dkv, 2010 WL 11598163 (W.D. Tenn. Mar. 16,
  2010)................................................................................................................................ 16

*Young v. Regis Corp.*,
  No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011)................................11, 15

## Other Authorities

Fed. R. Civ. P. 26................................................................................................2, 3, 17, 18

Fed. R. Civ. P. 33..............................................................................................*passim*

## INTRODUCTION

Plaintiffs' Motion to Compel seeks supplemental responses to improper contention interrogatories that are overbroad, unduly burdensome, and effectively ask USX Defendants[1] to provide a narrative of their entire case, all before Plaintiffs have taken a single individual fact witness deposition. Plaintiffs contend they need the USX Defendants to provide these supplemental responses "[t]o protect Plaintiffs from a trial by ambush" and "so that Plaintiffs can properly and fairly prepare for trial." ECF 171 at 1, 2. USX Defendants, however, are not preventing Plaintiffs from obtaining any necessary discovery, and their suggestion to the contrary ignores reality. Although this case has been in discovery for nearly two years, to date Plaintiffs have not taken—***nor, as of the time of filing their motion, even requested***—any individual fact witness depositions. They have had, and continue to have, the opportunity to depose USX Defendants—and many others—to obtain relevant evidence to prepare for trial. But rather than review the approximate 60,000 documents USX Defendants have produced and proceed to take fact witness depositions, Plaintiffs seek to shift the burden of developing their case to USX Defendants. Plaintiffs' motion should be denied for at least three reasons.

***First***, the interrogatories on their face are overbroad, unduly burdensome, and disproportionate to the needs of the case. The bulk of these requests seek to require USX Defendants to sift through every scrap of paper produced in this case—and beyond—to identify "every fact," witness, and document supporting or concerning their affirmative defenses and the challenged statements at issue in this action. *See, e.g.*, ECF 171-3 at 4. These are quintessential "blockbuster interrogatories," which courts have regularly found to be improper. *See Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *7 (W.D. Ky. Apr. 7, 2014)

---

[1] "USX Defendants" refers to Defendants U.S. Xpress Enterprises, Inc. ("USX"), Eric Fuller, Eric Peterson, Jason Grear, Max Fuller, and Lisa Quinn Pate.

(finding that interrogatories were improper where they asked defendant "to identify each and every fact supporting the allegations of its answer and affirmative defenses"); *see also Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998) ("The court will generally find [interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' which supports identified allegations or defenses."). USX Defendants appropriately objected to these requests but nonetheless provided responses explaining the general bases of the defenses at issue. In light of the objectionable nature of the requests themselves, nothing more is required.

*Second*, many of the interrogatories seek information that is inherently the subject of expert testimony, including demanding that USX Defendants identify what caused the decline in USX's stock price on the days following the alleged corrective disclosure on November 1, 2018. *See* ECF 171-3 at 8. Determining the cause of a stock price decline "is generally the province of an expert," *In re Vivendi Universal, S.A., Sec. Litig.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009), and these interrogatories thus improperly seek to require USX Defendants to disclose their positions on these matters before expert disclosures are due, *see* ECF 149.

*Finally*, even setting aside those objections, Plaintiffs' motion should be denied because these interrogatories are premature. All but one of the interrogatories are contention interrogatories that, as noted, ask USX Defendants to identify all the evidence and other information concerning their affirmative defenses and the challenged statements. *See* ECF 171-3. Although Rule 33 allows for the issuance of contention interrogatories, it also provides that "the court may order that [such an] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). Thus, the interrogatories are premature. As required by Rule 26(a), USX Defendants have already disclosed the witnesses and other information they intend to rely upon for their defenses. What Plaintiffs seek now is not the mere

identification of information to further discovery, but rather for USX Defendants to marshal and disclose all of the facts, witnesses, and other information for their case, and thereby provide a narrative of USX Defendants' positions on these contested issues, before any individual fact witnesses (other than Plaintiffs) have been deposed or the parties have conducted the expert discovery necessary for these issues. Forcing USX Defendants to provide supplemental responses now would do nothing but burden them unnecessarily.

For these reasons, as more fully described below, USX Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.

## ARGUMENT

Plaintiffs' entire motion is premised on the contention that USX Defendants' interrogatory responses are inadequate because Rule 33 provides that "'[e]ach interrogatory must, *to the extent it is not objected to*, be answered separately and fully in writing under oath.'" ECF 171 at 1 (quoting Fed. R. Civ. P. 33). Plaintiffs then ignore the bolded language from Rule 33 and argue that USX Defendants were required to answer the interrogatories precisely as demanded. But USX Defendants objected to the interrogatories on a number of grounds, including that they (i) are overbroad, unduly burdensome, and disproportionate to the needs of the case, (ii) improperly seek the disclosure of information that is the subject of expert testimony before such is due; and (iii) are premature contention interrogatories. *See* ECF 171-3. As set forth below, those objections were entirely appropriate, as were the responses USX Defendants provided subject to their objections.

## I. THE INTERROGATORIES ARE OVERBROAD, UNDULY BURDENSOME, AND DISPROPORTIONATE TO THE NEEDS OF THE CASE.

The familiar standards governing the scope of interrogatories are set forth in Rules 33(a) and 26(b) of the Federal Rules of Civil Procedure. Under Rule 33(a), "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Rule 26(b), in turn, provides that

3

"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" when considering, among other things, "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." When evaluating discovery requests under these standards, "[c]ourts generally employ a balancing test and will weigh the burdensomeness to the responding party against the requesting party's need for and relevance of the information sought to be obtained." *Lillard*, 2014 WL 12725816, at \*6. The interrogatories at issue here go beyond the bounds of permissible discovery.

**Interrogatory No. 1.** Plaintiffs' first interrogatory is directed at USX Defendants' Seventh Affirmative Defense, which states that:

> Plaintiffs' purported claims and those of the putative class for control person liability are barred because the Individual Defendants at all times acted in good faith and had no knowledge of, or reasonable grounds to believe that, any alleged statement or omission made by any person over whom they allegedly exercised control was false or misleading.

ECF 96 at 43. Plaintiffs' Interrogatory No. 1 demands USX Defendants to "identify any and all documents, facts, persons relied upon, or other grounds for th[is] defense . . . ." ECF 171-3 at 4. This is exactly the type of "blockbuster interrogatory" that is regularly found improper. *See HCB Fin. Corp. v. Kennedy*, No. 1:10CV559-HSO-JCG, 2016 WL 6216179, \*2 (S.D. Miss. Mar. 28, 2016) ("[C]ourts have held that unnecessarily broad interrogatories, or 'blockbuster' interrogatories, which require a party to state every fact supporting all of its allegations, as well as identify each person with knowledge of each fact and all documents supporting each count are impermissible."); *Lillard*, 2014 WL 12725816, at \*7 (holding the practice of issuing "'blockbuster interrogatories that require a responding party to identify each and every fact supporting the allegations of its answer and affirmative defenses while identifying every person having

knowledge of those facts and all documents supporting them . . . [has] understandably [been] met with concern by the courts"); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186-87 (D. Kan. 1997) ("Indiscriminate use of blockbuster interrogatories . . . do not comport with the just, speedy, and inexpensive determination of the action.").

The court's ruling in *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836 (D. Colo. May 3, 2006), provides a good example. Similar to this case, plaintiffs there served interrogatories demanding, with respect to each asserted defense, that defendants "(a) state all material facts upon which you base [the defense]," "(b) state the names, addresses, and telephone numbers of all material persons who have knowledge of those facts; and (c) identify all material documents and other tangible things which support your [affirmative defense]." *Id*. at \*6. When moving to compel defendants to respond to these interrogatories, plaintiffs argued that the requests were "designed to 'narrow and define the issues for trial, provide specification regarding the evidence which will be tendered in support of a given position and thereby enable the propounding party to determine the proof required to rebut the respondent's position." *Id*. Here, Plaintiffs make the same arguments that their requests are "targeted" and intended to "promot[e] fairness and efficiency." *See* ECF 171 at 1, 3. The *Grynberg* court saw right through plaintiffs' assertions, appropriately recognizing, in language equally applicable here: "A more broad interrogatory is difficult to imagine. I do not see how a response to Interrogatory No. 2 would narrow anything." *Grynberg*, 2006 WL 1186836, at \*6. The court then found that the request was "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts" and denied the motion to compel further responses. *Id*.

The same result is appropriate here. Indeed, Plaintiffs' Interrogatory No. 1 is arguably broader than that in *Grynberg*, as it is not even limited to seeking identification of the "material"

information concerning this defense. Instead, it demands identification of "any and all documents, facts, persons relied upon, or other grounds for the defense." ECF 171-3 at 4. And the breadth of that Seventh Affirmative Defense underscores the burden of this request. Plaintiffs have sued USX Defendants for allegedly violating the federal securities laws by issuing a Registration Statement that contained false or misleading statements of material fact. *See* ECF 57. This defense—that the Individual Defendants acted in good faith at all relevant times and had no reason to believe that the Registration Statement was false or misleading as to any material fact—broadly encompasses all manner of the Individual Defendants' work relating to the IPO (and the allegedly misleading statements contained in the Registration Statement). As in *Grynberg*, it is difficult to imagine a broader interrogatory.

Moreover, it is not as if USX Defendants provided Plaintiffs no response to this request. Despite Interrogatory No. 1 being improper on its face, USX Defendants nonetheless provided a general explanation of the bases of their Seventh Affirmative Defense, stating:

> Subject to and without waiving their objections, USX Defendants state that the Individual Defendants, at all times relevant to the Action, acted in good faith in performing their respective roles for USX, including with respect to preparing, reviewing, or evaluating USX's Offering Materials for the IPO. Among other things, the Individual Defendants reviewed multiple drafts of the Offering Materials and discussed the contents thereof with various USX personnel and third parties involved in the preparation and review of such materials, including outside counsel and investment bankers. Based on, among other things, their review of the Offering Materials, their knowledge of USX's operations, and their communications concerning the Offering Materials and/or USX operations, the Individual Defendants did not believe, and had no reasonable grounds to believe, that the Offering Materials contained any false or misleading statement of fact or omitted any material fact that was required to be stated therein.

ECF 171-3 at 5. This response adequately explains the general bases of the Seventh Affirmative Defense. And, even the case law Plaintiffs cite acknowledges the response is sufficient. *See* ECF 171 at 5 ("A defendant 'must be able to ***generally explain*** the factual basis for each . . . affirmative defense . . . .'") (citation omitted; emphasis in original). USX Defendants simply are not required

6

to incur an extensive burden identifying every single document, fact, and person that supports or relates to this defense. *See Hiskett*, 180 F.R.D. at 405; *Lillard*, 2014 WL 12725816, at *7; *Hilt*, 170 F.R.D. at 186-87; *HCB Fin. Corp.*, 2016 WL 6216179, at *2 (citing other cases denying motions to compel responses to blockbuster interrogatories); *Philips N. Am. LLC v. PKI Healthcare, Inc.*, No. SACV 19-01765-JVS, 2020 WL 3031614, at *2 (C.D. Cal. Mar. 10, 2020) (collecting cases finding blockbuster interrogatories to be unduly burdensome and improper).[2]

**Interrogatory Nos. 2, 5**. Following the same pattern as their first request, Interrogatory Nos. 2 and 5 ask USX Defendants to identify all of the information supporting their Thirteenth and Twenty-Fourth Affirmative Defenses, which state the following:

> Thirteenth Defense: Plaintiffs and the putative class are not entitled to any recovery on their asserted claims because the information they allege to have been omitted or misstated was, in fact, accurately disclosed in the Registration Statement and other public filings, otherwise publicly available, or widely known to the market and the investing community.

> Twenty Fourth Defense: To the extent that the USX Defendants failed to disclose material information, which USX Defendants deny, the "truth-on-the-market" doctrine precludes Plaintiffs' claims because the information at issue was made available to the market by other sources.

---

[2] Plaintiffs' reliance on *Grae v. Corrections Corp. of Am., Inc.*, No. 3:16-cv-02267, 2020 WL 6750806 (M.D. Tenn. Nov. 2, 2020) for the argument that more detail was required is unavailing. That case did not involve the type of blockbuster interrogatories at issue here, and the court even acknowledged that "[c]ourts have stricken contention interrogatories which asked a party to describe 'all facts' that supported various allegations of the complaint, finding that to elicit a detailed narrative is an improper use of contention interrogatories." *Id.* at *2 (internal quotation and citation omitted).

Moreover, the only specific concern Plaintiffs identify for Interrogatory No. 1 is supposedly not knowing whether USX Defendants intend to rely on an "advice from 'outside counsel'" defense, given the reference to counsel included in the list of persons with whom USX Defendants communicated on these issues. ECF 171 at 4. USX Defendants, however, are not relying on an advice of counsel defense in this case.

ECF 96 at 44, 46. These interrogatories demand that USX Defendants disclose the "source(s), date(s) and/or publication(s)" that disclosed, publicly revealed, or made the allegedly omitted information widely known. *See* ECF 171-3 at 5, 9.

Although these requests, on their face, do not appear as improper as Interrogatory No. 1, the nature of USX Defendants' defenses, which they described in their responses, demonstrates the burden these requests seek to impose. As a reminder, the only claims that remain in this case challenge two discrete statements from the Registration Statement, both of which Plaintiffs contend were false or misleading because, at the time of the IPO, USX allegedly was suffering from a shortage of drivers in its Dedicated division and thus was being forced to shift drivers from its Over-the-Road ("OTR") division to support Dedicated accounts, purportedly at a negative financial impact to USX's overall operations. *See* ECF 91 at 33-34, 38-39. As USX Defendants explained in their responses to Interrogatory Nos. 2 and 5, there is no basis to Plaintiffs' claims because the Registration Statement adequately cautioned investors as to the risks of investing in USX's business, including those risks due to the industry shortage of drivers, and, in any event, the practice of using OTR Drivers to support Dedicated accounts is common industry knowledge. Specifically, USX Defendants stated the following in response to these interrogatories:

> Subject to and without waiving their objections, USX Defendants state that, contrary to Plaintiffs' allegations, the Offering Materials did not contain any false or misleading statement of material fact, nor did they omit to disclose any material fact that was required to be disclosed therein. The Offering Materials accurately disclosed, among other things, the risks of investing in USX and challenges to USX's operations, including the industry shortage of qualified drivers. Moreover, the mere fact that, at times, USX would "shift" drivers from its Over-the-Road ("OTR") Division to support certain of its Dedicated accounts was not a material fact that rendered the Offering Materials materially misleading in any respect. As even Plaintiff Charles Clowdis acknowledged, it is a common practice in the trucking industry to shift OTR drivers to support Dedicated accounts when necessary, particularly in times of increased demand or decreased supply of qualified drivers. *See* Clowdis Dep. at 104:4-17. It is also common sense. If USX needed drivers to support its Dedicated customers, and had OTR drivers available

> to provide such support, of course USX would use the resources available to it in an effort to meet its customers' needs, to the best of USX's ability.
>
> Moreover, while discovery is still ongoing, the documents produced to date already confirm that the fact that USX at times used OTR drivers to support dedicated accounts was within the public domain (in addition to being common practice and common sense). This included, among other things, disclosures in pre-marketing and roadshow meetings concerning the IPO. *See, e.g.*, MS0010530; ML0009994; ML0023493; ML0010024. It was also apparent from other public disclosures, such as USX's August 2, 2018 press release concerning its earnings for the second quarter of 2018, and numerous analyst reports. *See* USX0176449; *see also* USX0031976 (BAML analyst noting "[t]ruck capacity moved to dedicated to meet customer[] needs"); USX0031968 (J.P. Morgan analyst noting that USX's "[o]ver-the-road trucking supported dedicated during the quarter"); USX0031947 (Stephens analyst noting that "a couple of Dedicated contracts [were] causing utilization pressures/network disruptions").

ECF 171-3 at 6-7, 9.

Plaintiffs' only apparent gripe with respect to USX Defendants' response is the use of "among other things." *See* ECF 171 at 10 n.6 (claiming that the "sole substantive defect is the use of 'among other things'"). USX Defendants used that term twice in this response: once to reflect that the Registration Statement accurately disclosed other information not contained in the response, and once to reflect that USX Defendants are not purporting to provide a comprehensive list of all publicly available information reflecting the common industry practice of using OTR drivers to support Dedicated accounts. That is not a "defect" in the responses. It is entirely appropriate to provide examples of the referenced documents.

In any event, there is nothing to compel at this point. To the extent that USX Defendants identify other specific public documents or information they (or their experts) will rely upon to show that this information is within the public domain, USX Defendants will produce those documents and information (either as part of fact or expert discovery) and can supplement their responses, if necessary, at that time.

**Interrogatory No. 3.** This interrogatory is directed at USX Defendants' Nineteenth Affirmative Defense, which states:

> Plaintiffs' purported claims and those of the putative class are barred in whole or in part because the damages allegedly suffered (which USX Defendants contend there are none) are the proximate result of affirmative and/or independent actions of one or more third persons or parties over whom USX Defendants had no control and for whom USX Defendants are not liable.

ECF 96 at 45. Plaintiffs demand that USX Defendants "identify each referenced 'affirmative and/or independent action[],' and the 'one or more third persons or parties over whom USX Defendants had no control' responsible for such 'affirmative and/or independent actions.'" ECF 171-3 at 7. Here, again, there is nothing for the Court to compel.

After appropriately objecting to the overbreadth and burden of this request, USX Defendants explained the bases of this affirmative defense, stating:

> Subject to and without waiving their objections, USX Defendants state that, as an initial matter, no Plaintiff or class member was damaged due to any alleged wrongdoing in this Action. USX's Offering Materials were not materially false or misleading and thus no Plaintiff or putative class member could have been damaged based on Plaintiffs' allegations, which are unfounded. Beyond that, to the extent that any Plaintiff or class member suffered a loss from an investment in USX common stock, such loss was not due to any wrongdoing of Defendants and thus must have resulted either from no wrongdoing at all or as a result of affirmative and/or independent actions of one or more third persons or parties over whom USX Defendants had no control and for whom USX Defendants are not liable.

ECF 171-3 at 8. At this point, it is not clear what else Plaintiffs want in response to this interrogatory. USX Defendants' position is that they did not violate the federal securities laws, that no Plaintiff or class member could therefore have been damaged due to the alleged wrongful conduct, and that to the extent any Plaintiff or class member suffered a loss on its USX investment, it was not due to any wrongdoing by the USX Defendants. USX Defendants cannot provide more in response to this interrogatory without either (i) prematurely having to disclose expert testimony concerning the cause of USX's stock price decline following the alleged corrective disclosure on

November 1, 2018, or (ii) perhaps individually evaluating each class member's investment in USX stock, neither of which is required. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055, at \*1 (N.D. Cal. May 19, 2011) (denying motion to compel answers to contention interrogatories that were the subject of expert testimony and noting that defendant "should be given the opportunity to develop its expert testimony on the timeline decided by the parties and the Court"); *Eastwood v. United States*, No. 2:06-CV-164, 2007 WL 9734140, at \*3 (E.D. Tenn. Aug. 24, 2007) (denying motion to compel where contention interrogatories were "broad in the extreme" and to answer them would be unduly burdensome).

**Interrogatory No. 6**. Although not directed at USX Defendants' affirmative defenses, Plaintiffs' Interrogatory No. 6 is equally objectionable. That inquiry demands USX Defendants to:

> Identify the individuals, including their employer (if not USX) and title, with duties and responsibilities related to drafting, reviewing and approving the risk disclosures in the Company's IPO Registration Statement. To the extent that such individuals identified were not involved in all of the risk disclosures in the Company's IPO Registration Statement, identify which portions of the risk disclosures such persons were involved in.

ECF 171-3 at 10. The Risk Disclosures section of USX's Registration Statement spanned more than twenty-five pages and encompassed a wide variety of risks relating to USX's business—many of which have nothing to do with the claims remaining in this case. *See* ECF 72-5 at 21-47. And, it is not as if this section was separately drafted and circulated, independent of the larger Registration Statement. Rather, it was encompassed in the same draft document that was circulated amongst a broad group of USX and third-party personnel in the months leading up to the IPO—any of whom could be said to have been involved in "drafting, reviewing, and approving the risk disclosures." USX Defendants could not determine which of these individuals were specifically involved in drafting, reviewing, or approving the Risk Disclosures without inquiring of each of them. That would require the type of extensive search not contemplated by Rule 33. *See Haney v.*

11

*Saldana*, No. 1:04-cv-05935-AWI-SMS-PC, 2010 WL 3341939, at *3 (E.D. Cal. Aug. 24, 2010) ("A responding party is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made.").

Moreover, Plaintiffs have equal access to the non-privileged drafting history of the Registration Statement. The non-privileged exchanges of the draft Registration Statement are contained in USX's productions. And, although unnecessary in light of their equal access to this information, USX Defendants incurred the expense to review those drafts and provided Plaintiffs a list of the individuals who were involved in that process. *See* ECF 171-3.[3] Plaintiffs cannot force USX Defendants to interview each of these individuals to determine whether they were, in fact, involved in drafting, reviewing, or approving the specific risk disclosures, as opposed to the Registration Statement in general.

**Interrogatory No. 7**. In this interrogatory, Plaintiffs demand USX Defendants to "[i]dentify all documents, persons and communications you relied upon" for one of the two remaining challenged statements in this case; specifically, the caution in the Registration Statement that:

> If we are unable to continue to attract and retain a sufficient number of drivers, we could be forced to, among other things, continue to adjust our compensation packages or operate with fewer tractors and face difficulty meeting shipper demands, either of which could materially adversely affect our growth and profitability.

ECF 171-3 at 11. USX Defendants appropriately objected to the overbroad and unduly burdensome nature of this request, which is akin to the blockbuster interrogatories discussed above. But they still answered it:

---

[3] Plaintiffs can identify these individuals from the document productions just as easily as USX Defendants can, undermining their claim that they need USX Defendants to identify these individuals and their "titles, duties or responsibilities," *see* ECF 171 at 8.

12

> Subject to and without waiving their objections, USX Defendants state that they do not believe they relied upon any particular document, person, or communication for purposes of the referenced risk disclosure. Rather, this was a well known risk to USX and virtually any other trucking company in the industry given the industry-wide shortage of drivers. The Individual Defendants were well aware that this was a risk to USX's business from their own knowledge of the Company's operations. This risk was also common knowledge in the industry and publicly known. And it was common sense. A trucking company needs drivers to meet its customers' needs. If any trucking company is unable to attract and retain a sufficient number of drivers to meets its needs, it could obviously impact the company's operations. Consistent with the common and well-known nature of this risk, USX's document productions indicate that this risk disclosure was included in early drafts of the Offering Materials. *See, e.g.*, USX0164233, USX0154778, USX0155023, USX0155367, USX0164508, USX0155987, USX0156211.

ECF 171-3.

Again, it is not clear what else Plaintiffs want for this response. In their motion, they assert "[t]his response is ambiguous because it references a belief without providing any factual bases underlying such belief." ECF 171 at 4. But, Plaintiffs cite no authority for their apparent position that a party cannot reference its "belief" in something without providing the "factual bases underlying such belief." Nor does that make any sense. USX Defendants' answer is not ambiguous. Each of them was aware that this was a risk to USX's business—or to that of any business in the trucking industry.[4] As best they can recall, the Individual Defendants did not rely on any particular document or individual for this statement in the Registration Statement. There is no particular document or person to identify, and thus nothing to compel.

---

[4] It is not clear why Plaintiffs refer to driver shortages as being merely a "potential risk" to USX's business. *See* ECF 171 at 11 (claiming that "the core premise of USX Defendants' affirmative defenses here unavoidably invokes state of mind issues (*e.g.*, a good faith belief that a driver shortage was only a potential risk rather than an ongoing business reality)."). The Registration Statement unambiguously disclosed that the trucking industry was, as of the IPO, suffering from a shortage of qualified drivers, not that this was a mere potential risk in the future. *See, e.g.*, ECF 72-5 at 22-23 ("[W]e ***experience substantial difficulty*** in attracting and retaining sufficient numbers of qualified drivers. . . Our industry is subject to a shortage of qualified drivers. . . . A shortage of qualified drivers and intense competition for drivers from other trucking companies ***will create difficulties*** in maintaining or increasing the number of our drivers and may restrain our ability to engage independent contractors.") (emphasis added).

**II.** **THE INTERROGATORIES IMPROPERLY SEEK USX DEFENDANTS' POSITIONS ON MATTERS THAT ARE THE SUBJECT OF EXPERT TESTIMONY BEFORE THE DISCLOSURE OF SUCH IS DUE.**

Five of the seven interrogatories are further improper because they effectively seek the disclosure of expert testimony before such is due under the Court's scheduling order.

This is most apparent with respect to Interrogatory No. 4, which asks USX Defendants to identify what caused its stock price to decline following the alleged corrective disclosure on November 1, 2018. *See* ECF 171-3 at 8. As courts have regularly recognized in securities cases, "the testimony of an expert—along with some kind of analytical research or event study—is required to show loss causation," *i.e.*, required to show what caused a stock price to decline and whether it was due to the revelation of the alleged "truth." *Fenner v. Operating Engineers Const. Indus. and Misc. Pension Fund (Local 66)*, 579 F.3d 401, 409 (5th Cir. 2009). "Many variables have the potential to and do affect a stock price—the daily market average; national, local and industry-specific economic news; competitors' activities; and on and on. The overall volatility of the stock price and the speed of its reaction to company news may also be significant." *Unger v. Amedisys Inc.*, 401 F.3d 316, 325 (5th Cir. 2005). Thus "[d]emonstrating that market reactions are caused by company press releases should not [] be an exercise in *post hoc*, *propter hoc logic*," but rather through expert testimony, often including "the utility of statistical event analysis." *Id.*

Because determining the cause of a stock decline is a matter for expert testimony, it would serve no purpose to compel USX Defendants to offer their personal opinions as to such causes. That is why courts have correctly denied motions to compel responses to contention interrogatories seeking a party's position as to what caused a stock price decline. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-cv-3723 (RJS), 2015 WL 10550451, at *1 (S.D.N.Y. Nov. 25, 2015) (denying motion to compel response to contention interrogatories on cause of stock price decline, stating, "evidence concerning loss causation will require the extensive use of

experts" and it would not be practical "to require contention interrogatories prior to the completion of fact discovery, which could result in piecemeal expert submissions based on an incomplete factual record"). Courts have followed the same practice in rejecting contention interrogatories outside the securities context where the interrogatories effectively sought disclosure of a matter that would be the subject of later expert disclosures. *See Ross v. Abercrombie & Fitch Co.*, 2010 WL 518169, at *1 (S.D. Ohio Feb. 4, 2010) ("Having contention interrogatories answered on those issues [that require expert testimony] now rather than later (or at all, depending on how comprehensive the expert reports will be) would not seem to be a productive enterprise."); *BB&T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006) ("The Court agrees with defendant that when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery."); *accord Young*, 2011 WL 9558055, at *1.

The Court should follow that precedent here and deny Plaintiffs' Motion to Compel supplemental responses to the contention interrogatories that will be the subject of expert disclosures. That includes Interrogatory Nos. 4 (the cause of the stock price decline), 1 (no reasonable grounds to believe that the Registration Statement contained false or misleading statements of material fact); 2 (common industry knowledge of allegedly omitted information); 3 (cause of any alleged damages); and 5 (the existence of publicly available information concerning the allegedly omitted information). Contrary to their suggestion, Plaintiffs will not be "unfairly hamstrung" by waiting for expert discovery on these issues. *See* ECF 171 at 7. They will have an opportunity to conduct expert discovery and to respond to USX Defendants' expert reports on these issues. Moreover, as to Interrogatory No. 4, the only information that could have led to a

15

decline in USX's stock price would be publicly available information—to which Plaintiffs and their experts have equal access.

## III. THE INTERROGATORIES ARE PREMATURE CONTENTION INTERROGATORIES.

Finally, even if the Court looks past the objections discussed above, it should defer requiring USX Defendants to provide any supplemental interrogatory responses at this time because the requests are premature. With the exception of Interrogatory No. 6 (which is discussed in Section I, above), all of the interrogatories in question are contention interrogatories, in that they ask USX Defendants to identify "all facts or evidence upon which [they] base[]" certain contentions. *See Wood v. Northwest Airlines, Inc.*, No. 2:09-CV-02317-BBD-dkv, 2010 WL 11598163, at \*4 (W.D. Tenn. Mar. 16, 2010); *see also* ECF 171-3. Plaintiffs acknowledge as much in their motion. *See* ECF 171 at 1 (claiming that "USX Defendants' incomplete, vague and open-ended responses frustrate the fundamental purpose of contention interrogatories"); *id.* at 2-3 ("Plaintiffs are entitled to use contention interrogatories to 'clarify the basis for or scope of [its] adversary's legal claims'"). Rule 33 does not prohibit the use of contention interrogatories, but they "are not intended to be used," as Plaintiffs seek to use them here, "to elicit a narrative response of the opposing party's entire case." *United States v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2016 WL 3198032, at \*1 (E.D. Tenn. Mar. 24, 2016).

Rule 33 also expressly acknowledges that contention interrogatories, although permitted under the rules, are not always appropriate before discovery is completed. On this point, the Advisory Committee notes provide that:

> [s]ince interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer. Likewise, the court may delay determination until pretrial conference, if it believes that the dispute is best resolved in the presence of the judge.

Fed. R. Civ. P. 33, Adv. Cmt. Note, Subdivision (b). The Advisory Committee notes further recognize that part of the reason for deferring an answer to contention interrogatories is that "[t]he general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof." *Id.* (citing *McElroy v. United Air Lines, Inc.*, 21 F.R.D. 100 (W.D. Mo. 1957); *Pressley v. Boehlke*, 33 F.R.D. 316, 317 (W.D.N.C. 1963)). In other words, responding to an interrogatory by explaining a party's basis for contentions would not prevent that party from offering other evidence at trial to support those contentions. *See id.* As a result, forcing parties to undergo significant burden to provide all of the facts or other information in support of their claims or defenses before discovery is completed would merely waste the parties' time and resources, while doing little to nothing to clarify or narrow the claims or defenses at issue.

As described in detail above, the interrogatories ask USX Defendants to identify all of the facts, witnesses, and other information supporting or concerning their affirmative defenses or the challenged statements at issue. *See* ECF 171-3. Given the broad scope of those defenses, particularly USX Defendants' Seventh Affirmative Defense that the Individual Defendants acted in good faith, these interrogatories effectively, and improperly, seek to require USX Defendants to provide a detailed narrative of their entire case. *See Life Care Centers*, 2016 WL 3198032, at *1.

Contrary to Plaintiffs' contention, they do not need detailed responses to these contention interrogatories "to prevent surprise at trial," ECF 171 at 1, or to "fairly test these theories while fact discovery is still ongoing," *id.* at 3. As required by Rule 26(a), USX Defendants have described the witnesses and information they may use to respond to Plaintiffs' claims or to support their defenses. *See* Fed. R. Civ. P. 26(a); *see also Hiskett*, 180 F.R.D. at 405 (providing that interrogatories should not "duplicate initial disclosures" by seeking identification of the witnesses

or information a party may rely upon to support its claims or defenses). If USX Defendants identify other individuals or documents they intend to rely upon, they will supplement those disclosures pursuant to Rule 26(e). In addition, Plaintiffs have in their possession 56,083 documents (totaling 260,807 pages) that USX Defendants produced in response to Plaintiffs' requests for production. That includes the non-privileged communications concerning the drafting of the Registration Statement for USX's IPO, and much more. And per the parties' agreement, Plaintiffs will have the opportunity to depose an additional twenty-four (24) witnesses for a total of twenty-five (25) depositions to gather evidence or to "test" USX Defendants' defenses.

At this point, however, Plaintiffs have not pursued those options. They have taken only one deposition—a Rule 30(b)(6) deposition of USX. At the time of filing their motion, they had not even requested any others.[5] And, even in that one instance, despite USX designating a Rule 30(b)(6) witness to testify to some of the matters that are the subject of these interrogatories, Plaintiffs elected not to pursue that evidence. Specifically, USX designated a Rule 30(b)(6) representative to testify as to USX's November 1, 2018 press release, which is the disclosure that Plaintiffs alleged revealed the truth of the alleged misstatements, *see* ECF 57 ¶¶ 154-163. Plaintiffs, however, chose not to ask USX's corporate representative about that press release. Yet now Plaintiffs surprisingly claim they must know USX's position as to what caused its stock price decline "in the days following the Company's November 1, 2018 press release and earnings conference call" **before** Plaintiffs proceed with further discovery. *See* ECF 171-3 at 8.

Plaintiffs' current position is not credible. They seek to use these interrogatories not for the permissible purpose of identifying information necessary to prepare for trial, but rather to force

---

[5] More than a week after filing their motion, Plaintiffs served their first notice to take an individual fact witness deposition.

USX Defendants to do Plaintiffs' work for them by sifting through all of the documents produced in this case, and any potentially relevant public information, and then providing Plaintiffs with a narrative of USX Defendants' case. That is improper under the Federal Rules of Civil Procedure, and Plaintiffs' Motion to Compel should be denied accordingly. *See Lawrence v. First Kansas Bank & Tr. Co.*, 169 F.R.D. 657, 661 (D. Kan. 1996) (denying motion to compel supplemental responses where interrogatories "literally request[ed] defendant to provide not simply the principal or material facts, but 'all' facts upon which defendant relies," along with "identify[ing] every document and person which supports each such denial"); *Alfaro v. City of San Diego*, No. 3:17-cv-0046-H-KSC, 2018 WL 4562240, at *2 (S.D. Cal. Sept. 21, 2018) (same where defendant explained the bases of its contentions in interrogatory responses and was not required to identify all facts it would rely upon).

Forcing USX Defendants to respond in detail to each of these interrogatories now would do nothing but waste their time and resources. At some point, Plaintiffs are going to proceed with their twenty-four remaining depositions, and will no doubt inquire as to the basis of these defenses with the Individual Defendants. Plaintiffs are not going to forego those depositions if they obtain detailed responses to these interrogatories now. *See Hilt v. SFC Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) ("In many instances depositions, rather than interrogatories, will better serve the purpose of obtaining detailed facts. Arguably depositions are more expensive than interrogatories. Experience suggests, however, that litigants seldom reduce the volume of depositions upon receiving large amounts of information from interrogatories."). Thus, granting their motion would merely add to the substantial discovery burden USX Defendants have already incurred in this case, with no corresponding benefit.

**CONCLUSION**

For the foregoing reasons, USX Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.

Dated: May 5, 2022

Respectfully submitted,

/s/ *K. Stephen Powers*

K. Stephen Powers (BPR # 007088)
Philip B. Whitaker, Jr. (BPR # 013999)
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
spowers@bakerdonelson.com
pwhitaker@bakerdonelson.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
rsolomon@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

*Counsel for USX Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of May, 2022, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ *K. Stephen Powers*
K. Stephen Powers