# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Civil Action No. 1:19-cv-00098 |
| v. | Judge Travis R. McDonough<br>Magistrate Judge Christopher H. Steger |
| U.S. XPRESS ENTERPRISES, INC., *et al.*, | |
| Defendants. | |

## USX DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT THE COURT'S STAY OF EXECUTION AND ENFORCEMENT OF RULE 45 SUBPOENA ISSUED TO NON-PARTY WALMART, INC.

Dated: July 6, 2022

K. Stephen Powers (BPR # 007088)
Philip B. Whitaker, Jr. (BPR # 013999)
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
spowers@bakerdonelson.com
pwhitaker@bakerdonelson.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
rsolomon@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

*Counsel for USX Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

ARGUMENT .................................................................................................................... 5

I.     PLAINTIFFS' WALMART SUBPOENA IS UNDULY BURDENSOME. .......................... 6

II.    PLAINTIFFS' WALMART SUBPOENA IS DISPROPORTIONATE TO THE NEEDS OF THE CASE. ................................................................................................................ 10

CONCLUSION ................................................................................................................ 13

<u>**INTRODUCTION**</u>

With just over six weeks remaining for fact discovery in an action that has been pending for over three years, Plaintiffs ask the Court to lift a stay of enforcement so that they can obtain documents from a non-party, Walmart, Inc. ("Walmart"), before taking Walmart's deposition. *See* ECF 196 at 6 (contending it "would be manifestly unfair and prejudicial to preclude Plaintiffs from obtaining the necessary documents from Walmart *in advance of* that deposition") (emphasis added). Plaintiffs, however, fail to acknowledge the obvious—allowing enforcement of the broad subpoena for documents would necessarily require extending fact discovery yet again because Walmart could not feasibly produce the requested documents and prepare a corporate representative to testify in the time remaining. To be sure, Plaintiffs do not expressly ask the Court to extend discovery, perhaps because two months ago they said they would not do so:

> [W]e're not intending to move the fact discovery deadline. It's August of this year. We have no intention of moving it. **We're not going to come back and ask Your Honor to move it**.

ECF 182 at 9 (emphasis added). But it is clear that the discovery Plaintiffs seek, on top of the twenty depositions already being conducted during this time frame, could not be completed by August 11th. Plaintiffs' motion is thus, effectively, a motion to extend discovery in disguise.

In fact, Plaintiffs did not even take the Court up on its offer to expedite any discovery dispute so that this case can stay on track. *See id.* at 20 ("[I]f you guys run into discovery problems in this compressed period of time, you can contact my chambers, and I will address things on the fly."). They filed a typical motion, governed by the default timelines in the Local Rules, all but assuring that if the Court was to grant their request, it would also have to extend fact discovery.

Plaintiffs' delay in seeking this relief lacks justification. They have known about the two Walmart Dedicated accounts that USX started operating in the months leading up to the IPO—Gordonsville, VA and Hammond, LA—since at least January 2021, when these accounts were

discussed during the deposition of Justin Harness, who was one of USX's Rule 30(b)(6) representatives. The very excerpt from that deposition that Plaintiffs submitted with their motion reflects that reality. *See* ECF 194-3 at 81:21-82:1 ("Q. And which accounts do you recall are being mentioned in this earnings call? A. That was specifically related to the two new Walmart distributions startup—distribution center startups that I mentioned earlier. One started in February, one started in April."). Indeed, during a hearing in February of this year, Plaintiffs asserted that these Walmart locations were "the most relevant" to their case. *See* ECF 194-8 at 54 ("[T]he two Walmart locations that are, for lack of a better word, kind of most relevant to some of our claims in terms of the problems that the company was having getting dedicated drivers to those locations. That is the Gordonsville and Hamilton [sic] locations.").

Despite asserting the importance of the two Walmart accounts, Plaintiffs waited until the eleventh hour to seek the Court's permission to obtain broad discovery from this non-party. The only justification for the delay Plaintiffs offer is that USX's last document production was on April 19, 2022. *See* ECF 196 at 4. But Plaintiffs fail to inform the Court that such production was made in response to follow up requests from Plaintiffs and had nothing to do with Walmart. The last time USX produced Walmart-related documents was back in November 2021. And prior to filing their current motion, Plaintiffs did not suggest that USX Defendants'[1] production of Walmart-related materials was deficient or that Plaintiffs needed to obtain additional documents from Walmart that could not be obtained from USX. They sat on those materials for eight months before raising this issue directly with the Court.

---

[1] "USX Defendants" refers collectively to U.S. Xpress Enterprises, Inc. ("USX"), Eric Fuller, Eric Peterson, Max Fuller, Jason Grear, and Lisa Quinn Pate.

The motion is not only untimely, but it lacks a valid basis. It is unduly burdensome to force a non-party to go through the entire process of identifying, collecting, reviewing, and producing documents (including, apparently, text messages) in a matter of weeks. And, in any event, the discovery Plaintiffs seek is not proportionate to the needs of this case, considering the extensive amount of information—including the relevant contracts and communications—that Plaintiffs already have from USX Defendants' productions. Accordingly, USX Defendants respectfully request that the Court deny Plaintiffs' motion.

**BACKGROUND**

The Walmart subpoena that Plaintiffs seek to enforce was initially served nearly two years ago. At the outset of discovery, and before even receiving any documents from USX Defendants, Plaintiffs served Rule 45 subpoenas on ten of USX's largest customers, including Walmart, Home Depot, Dollar General, and many others. The subpoenas demanded documents from a broad list of twenty categories, including all documents and communications relating to the customers' contracts with USX. USX Defendants moved to quash the subpoenas for a number of reasons, including because they were unduly burdensome and that it was unnecessary to force USX's customers to collect and produce documents without Plaintiffs even determining whether the relevant information could be obtained from USX itself. ECF 112. The Court denied USX Defendants' motion to quash but stayed enforcement of the subpoenas. ECF 120. In doing so, the Court expressed its concern for duplicative discovery, noting that "Plaintiffs may well discover that USX has in its possession much—if not all—of the information being sought through the subpoenas served upon USX's customers." *Id.* at 3. The Court then ordered the parties to submit a joint status report "regarding their efforts to resolve their discovery disputes and the degree to

3

which information sought by Plaintiffs through the non-party subpoenas is or is not obtainable from USX." *Id.* at 4.

The parties subsequently proceeded through the discovery process and, on January 8, 2021, provided their joint update to the Court. ECF 132. The parties' status report noted that on January 6—just two days before the submission—the parties reached an agreement requiring USX to produce its contracts with the ten subpoenaed customers and include as search terms the names and email domains of all ten customers. *Id.* at 4. Recognizing that it would take additional time to collect, review, and produce the requested customer documents, USX Defendants asked that the Court maintain the stay on the Rule 45 subpoenas for the time being. Plaintiffs, on the other hand, were unwilling to wait to review USX Defendants' productions for potential overlap with their customer subpoenas and requested, instead, an immediate lifting of the stay. *Id.* at 2-3.

On February 3, 2021, the Court entered an order extending the stay of the non-party subpoenas. ECF 133. Recognizing that the parties did not reach an agreement on search terms until January 6, 2021, the Court noted that more time was needed "for USX to conduct a comprehensive search." *Id.* at 2. The Court further indicated that the goal of the extension was to allow the parties to "identify the universe of relevant/responsive information in the possession of USX to avoid the unnecessary burden and expense of soliciting that same information via subpoenas from ten non-party customers of USX located in a variety of jurisdictions across the United States." *Id.* The Court ordered another joint status report due by April 23, 2021.

Later in February 2021, USX Defendants began their rolling productions in accordance with the search protocol the parties negotiated, including producing the requested customer contracts and relevant communications. By the time of the parties' April 23rd joint status report, USX Defendants had produced approximately 2,200 documents related to Amazon, 3,300

4

documents related to Dollar General, 3,300 documents related to Dollar Tree, 2,900 documents related to Federal Express, 3,600 documents related to Home Depot, 3,000 documents related to Kroger, 4,500 documents related to Proctor & Gamble, 500 documents related to Target, 3,200 documents related to Tractor Supply, and, notably, *8,400* documents related to Walmart. ECF 138.

USX Defendants continued to produce a significant amount of documents in response to Plaintiffs' requests for production, substantially completing their production on October 8, 2021. In all, USX Defendants produced over 10,000 documents pertaining to Walmart, including 2,276 communications containing the Walmart.com email domain (3,892 documents when including "families"). And these produced documents span the entire time period that the parties agreed to use for USX Defendants' document productions: October 1, 2017 to January 1, 2019.

After USX Defendants produced their privilege log on November 12, 2021, Plaintiffs requested certain additional documents. Among other things, Plaintiffs requested additional board materials, documents for certain USX load planners, and the text messages of several custodians. Plaintiffs did not, however, suggest that the Walmart materials produced by USX Defendants were in any way inadequate. Nor did Plaintiffs contend that they needed to have the stay lifted to seek documents from Walmart that they had not obtained from USX Defendants. Instead, Plaintiffs waited until June 13, 2022—shortly before filing their current motion—to ask USX Defendants to consent to lifting the stay. USX Defendants did not agree to doing so and, for the reasons discussed below, Plaintiffs' request to have the stay lifted should be denied.

**ARGUMENT**

This Court originally stayed Plaintiffs' non-party subpoenas pursuant to Federal Rule of Civil Procedure 26(b)(2)(C), which requires a court to limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

5

convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." The Court did so out of a concern for increased litigation costs, duplicative discovery, and the potential burdens placed upon compliance courts and non-parties. Those same concerns still apply—and are even heightened—when it comes to Plaintiffs' Walmart subpoena. It would create significant burden and expense on Walmart, a non-party, to comply with broad discovery requests on an extremely short timetable. Further, the vast array of documents Plaintiffs received from USX Defendants regarding Walmart make it doubtful that any material benefit would be obtained from allowing enforcement of the subpoena, which makes Plaintiffs' request disproportionate to the needs of this case.

## I. PLAINTIFFS' WALMART SUBPOENA IS UNDULY BURDENSOME.

Although Plaintiffs contend that "USX has not set forth any facts to support the conclusion that Walmart . . . would suffer any undue burden in responding to the subpoena," ECF 196 at 12, that burden is obvious from the face of Plaintiffs' request. They want Walmart to conduct an extensive search of electronically stored information, including text messages, and produce virtually everything concerning Walmart's business relationship with USX. *See id.* at 8-9 (listing the nine expansive categories of documents Plaintiffs seek from Walmart).[2] And they are demanding to obtain that information before conducting Walmart's Rule 30(b)(6) deposition, for which they served notice on June 9, 2022. Plaintiffs are therefore asking that a non-party be forced to go through the entire process of identifying, collecting, reviewing, and producing documents in less than four weeks. That is an undue burden, particularly for a non-party. *See Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2019 WL 2266800, at *1 (E.D. Mich. May 28, 2019)

---

[2] Plaintiffs suggest that they are "narrowing" their subpoena to these nine categories, *see* ECF 196 at 8-9, but these categories are still incredibly broad, seeking (among other things) everything about the contracts with Walmart or the "level and quality of service provided to Walmart by USX." *See id.*

("[T]he fact of nonparty status [also] may be considered by the court in weighing the burdens imposed."); *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 521 (W.D. Tenn. 1999) ("[A nonparty] is entitled to consideration of its nonparty status as one factor in the analysis of the burdens imposed upon it by compliance with [a] subpoena.").

Plaintiffs make little effort to justify the burden their subpoena would impose on Walmart, beyond noting that Walmart is "a multi-billion-dollar company," ECF 196 at 7. But the fact that Walmart is a large successful corporation does not mean it would be any less affected by Plaintiffs' unreasonable demands or that it is not entitled to the same considerations and protections the Court would afford to other non-party businesses. Within a matter of four weeks, Walmart likely would be required to (1) draft responses and objections to Plaintiffs' subpoena; (2) negotiate the scope of Plaintiffs' requests; (3) identify, collect, and review hundreds, if not thousands, of documents for potential responsiveness; (4) conduct its own privilege review; and (5) collect and image the phones of an unknown number of employees to comply with Plaintiffs' demand for text messages. All of this likely would require the involvement and expense of an e-discovery vendor and, of course, legal counsel.

Plaintiffs' motion also assumes (perhaps incorrectly) that Walmart will cooperate with the non-party subpoena. Given the timing and breadth of Plaintiffs' subpoena, paired with the accompanying request for employee text messages, Walmart will likely move to quash the subpoena or file for a protective order. If so, the ensuing tangential litigation could drag on for quite some time, imposing an additional burden and expense on Walmart and others, including the compliance court. Plaintiffs simply cannot justify waiting until now to file this motion, and thus forcing either (i) a non-party to comply with an absurdly burdensome schedule, or (ii) an extension of the fact discovery deadline that the Court has indicated will not be moved and that Plaintiffs

have represented they would not seek to move. *See* ECF 182 at 14 ("[M]y job is to get you guys to the finish line and make sure you get all your discovery done by the discovery deadline . . ."); *id.* (Mr. Wood: "And as I said, Your Honor, we have - - we don't - - **we're not going to ask the Court to extend the deadline.**") (emphasis added).

The primary reason Plaintiffs contend they need discovery from Walmart is to obtain information concerning the two new Walmart Dedicated accounts that USX started shortly before the IPO—the Hammond (also called Robert), LA account, which began operating in February 2018, and the Gordonsville, VA account, which began operating in May, just one month before the IPO. *See* Weeks Dep. at 68:20-69:23; *id* at Ex. 28 (USX0234467-234470). Although Plaintiffs paint USX's use of OTR drivers to support these accounts as a "spectacular failure," *see* ECF 196 at 5, the reality is the opposite of that notion. The two accounts were brand new Dedicated accounts that USX had never operated before and that they won as part of a bid in 2017. *See* Weeks Dep. at 64:3-22. Because they were new accounts, it was always expected to take time for USX to hire drivers at these new locations, especially considering the undisputed "industrywide driver shortage" occurring at the time, *see* ECF 196 at 10. As was anticipated, USX temporarily used drivers from its other operations, including OTR and other Dedicated accounts, to help support these new accounts during the transition. *See id.* 113:11-115:3; *id* at Ex. 28 (USX0234467-234470). Far from a "spectacular failure," this was the normal course of operations and customer service. *See id.* at 55:13-15, 221:20-227:19. USX has, in fact, maintained these Walmart accounts to this day.

But, more importantly for purposes of this motion, Plaintiffs have known about the significance of these new accounts since no later than January 2021. On January 14, 2021, Plaintiffs took the deposition of Mr. Harness, USX's President of Dedicated Operations, who was

serving as USX's Rule 30(b)(6) representative. During his deposition, Mr. Harness explained that, in part, USX needed OTR drivers to support the two new Walmart Dedicated accounts on a temporary basis while USX worked to hire Dedicated drivers to staff the new accounts. *See* USX (Harness) Dep. at 74:11-75:17; 81:14-82:1. He also specifically identified the two new accounts. *Id.* 82:18-24. ("Q. You mentioned that there were -- earlier that there were two locations with respect to Walmart that had some new business. Where were those buildings located? A. Robert Louisiana, and Gordonsville, Virginia.").

Then, after Mr. Harness's deposition, USX Defendants proceeded with producing thousands of documents in response to Plaintiffs' requests for production. This included producing the contracts for these Walmart accounts,[3] communications with Walmart concerning these accounts,[4] and internal USX communications reflecting the number of OTR drivers used to support these accounts throughout the agreed time period.[5] USX Defendants completed their production of those materials in November 2021. If Plaintiffs believed that USX Defendants' document productions were inadequate in this regard, or if they needed additional Walmart materials beyond those that were produced, they should have raised the issues then. Plaintiffs instead accepted those materials without contesting their adequacy and ill-advisedly waited eight months to seek a lift of

---

[3] *See, e.g.*, USX0001090-1107; USX0072821-72822; USX0073598-73599; USX0072823-72824; USX0074676-74677. Given the confidentiality of some of these materials, USX Defendants are not attaching the cited documents as exhibits but can provide them to the Court if necessary to resolve this motion.

[4] *See, e.g.*, USX0187955-187957; USX0235490-235491; USX0076873; USX0094702-94703; USX0076702-76703; USX0094761-94762; USX0076801-76802; USX0094818-94819; USX0094849; USX0125451.

[5] *See, e.g.*, USX0233676-233677; USX0233698-233700; USX0233720-233723; USX0168848-168849; USX0233830-233832; USX0234424-234425; USX0235250-235254; USX0233867-233870; USX0234385; USX0234728-234729; USX0235059-235060.

9

the enforcement stay near the end of fact discovery. For those reasons, and the compounding undue burden Plaintiffs' delay would impose on a non-party, Plaintiffs' motion should be denied.

## II.     PLAINTIFFS' WALMART SUBPOENA IS DISPROPORTIONATE TO THE NEEDS OF THE CASE.

In addition to the untimeliness, the motion should be denied because Plaintiffs do not need documents from Walmart, and thus the burden of their subpoena vastly outweighs any likely benefit, making it disproportionate to the needs of the case. As noted above, USX Defendants have already produced thousands of documents related to Walmart. They produced the Dedicated contracts with Walmart, including for these two new accounts, and used the Walmart email domain as a search term to identify any relevant communications involving Walmart and any of the 20+ custodians used for USX's collection. That protocol resulted in USX Defendants producing more than 10,000 documents concerning Walmart, including more than 2,000 emails with Walmart. Plaintiffs make two arguments as to why, despite this vast amount of information in their custody, they still need to burden Walmart for more documents. Neither argument justifies the relief Plaintiffs seek.

***First***, Plaintiffs suggest that USX Defendants' production might be inadequate based on speculation that other relevant documents involving Walmart may have been "lost or withheld." *See* ECF 196 at 2. But the only specific document Plaintiffs identify in this regard is Walmart's initial request for proposal relating to its re-bid of the entire Walmart dedicated business (not just USX accounts) that occurred in 2017. *See id.* It would not be surprising, however, for Walmart's initial request to be absent from USX Defendants' productions because, contrary to Plaintiffs' assertion, that request for proposal took place prior to the October 2017 start date the parties agreed to use for USX Defendants' document productions. *See* USX0092115 (indicating that the Walmart RFP process began in the summer of 2017). In any event, Plaintiffs have the initial request from

10

Walmart. Although the request for proposal pre-dated October 2017, an excel spreadsheet from Walmart with the details for the request was re-circulated to one of the USX custodians in 2018— and Plaintiffs have that document. *See* USX0092115; USX0092116. Plaintiffs also have numerous other materials relating to USX's Walmart bid, which contain the information Plaintiffs assert they need from Walmart (*see* ECF 196 at 8-9), including the assumptions used for the bid (*e.g.*, length of haul, average number of stops, utilization, etc.), the agreed rates and terms of the contracts, and the correspondence concerning USX's negotiation of these bids with Walmart.[6] *See e.g.,* USX0189228; USX0189229-189255; USX0196495; USX0189256; USX0236451, USX0190950; USX0190951; USX0189218; USX0189219; USX0220155; USX0189220; USX0189222; USX0189223; USX0189224; USX0189225.

Beyond this one document that falls outside of the agreed time period (and that Plaintiffs already have), Plaintiffs do nothing more than present high level metrics on the number of emails produced by month to suggest that something relevant could be missing from USX's documents that justifies the burden on Walmart. *See* ECF 196 at 5. That high level analysis does not show the likely absence of any relevant documents. And, contrary to Plaintiffs' suggestion, USX Defendants produced Walmart communications for the entire agreed time period. The very documents Plaintiffs submitted with their motion show that they have correspondence between USX and Walmart dating back to 2017. Given that USX used the Walmart email domain as a search term, there is no reason to believe that if the agreed custodians had relevant communications with

---

[6] The testimony Plaintiffs cite about their being "substantial 'back and forth'" between USX and Walmart concerning the bidding process also does not show a deficiency. Mr. Weeks did not testify that the back and forth would always be via email, rather than in person or via telephone. In any event, Plaintiffs have both correspondence with Walmart about the bids and internal correspondence reflecting the in-person and telephone meetings. *See e.g.*, USX0220155; USX0189303-189304; USX0149075; USX0189073-189074; USX0197165; USX0197166; USX0190938-190939; USX0190940; USX0189301-189302; USX0185487.

Walmart during this time period, Plaintiffs would not already have those documents. Indeed, Plaintiffs **do have** those materials and have been using them throughout the depositions in this case. Plaintiffs' speculation that something must be missing from USX Defendants' productions is nothing more than that—and it does not justify the burden they seek to impose on a non-party.

**Second**, Plaintiffs argue that they need internal Walmart documents because they are purportedly "necessary to assess the extent to which Walmart had already been negatively impacted by USX's driver shortages" as of the IPO. *See* ECF 196 at 9-10. But they have the analysis backwards. The question of whether the alleged misstatements in this case were or were not material would be based on the impact on USX, not on Walmart. Plaintiffs simply do not need internal Walmart communications for the case. They already have the documentation reflecting the number of OTR drivers USX used to support its Dedicated accounts during virtually every day of the relevant time period. *See, e.g.*, USX0233676-233677; USX0233698-233700; USX0233720-233723; USX0168848-168849; USX0233830-233832; USX0234424-234425; USX0235250-235254; USX0233867-233870; USX0234385; USX0234728-234729; USX0235059-235060. They also have the Dedicated contracts and the financial information showing USX's performance during the relevant time period. *See, e.g.*, USX0001090-1107; USX0072821-72822; USX0073598-73599; USX0072823-72824; USX0074676-74677; USX0170487-170488; USX0140552-140553; USX0170499-170500; USX0170605-170606. If Plaintiffs could prove their case, it would be from the documents that were available to USX Defendants as of the time of the IPO. USX Defendants could not have formed a belief about any of the Walmart Dedicated accounts, USX's ability to service those accounts, the Registration Statement, or any other relevant issue based on internal Walmart documents to which USX Defendants were not privy. *See Coronel v. Quanta Cap. Holdings Ltd.*, 2009 WL 174656, at *13 (S.D.N.Y. 2009) (Section 11 of the

Securities Act requires Plaintiffs to prove that "the Company knew or had reason to believe, at the time the Prospectus and Registration Statement were filed, that [a] statement was untrue."). The reality is not that Plaintiffs need more Walmart documents "to fairly try the case," ECF 196 at 16, but rather that Plaintiffs have no case at all. Nothing in Walmart's possession could change that outcome.

## CONCLUSION

For the foregoing reasons, USX Defendants respectfully request that the Court deny Plaintiffs' motion to lift the stay of enforcement on the Walmart subpoena.

Dated: July 6, 2022

Respectfully submitted,

/s/ *K. Stephen Powers*

K. Stephen Powers (BPR # 007088)
Philip B. Whitaker, Jr. (BPR # 013999)
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
Tel: (423) 209-4182
spowers@bakerdonelson.com
pwhitaker@bakerdonelson.com

Jessica P. Corley (*pro hac vice*)
Lisa R. Bugni (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
Logan R. Hobson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
jpcorley@kslaw.com
lbugni@kslaw.com
rsolomon@kslaw.com
bkeel@kslaw.com
lhobson@kslaw.com

*Counsel for USX Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2022, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ *K. Stephen Powers*
K. Stephen Powers

14