BARRETT JOHNSTON MARTIN
  & GARRISON, PLLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

*Local Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

*Class Counsel*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>          vs.<br><br>U.S. XPRESS ENTERPRISES, INC., et al.,<br><br>                              Defendants. | Civil Action No. 1:19-cv-00098-TRM-CHS<br><br>CLASS ACTION<br><br>Judge Travis R. McDonough<br>Magistrate Judge Christopher H. Steger |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION

4887-5708-4264.v1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................1

II. FACTUAL AND PROCEDURAL HISTORY .......................................................2

III. THE SETTLEMENT WARRANTS FINAL APPROVAL.................................3

    A. Legal Standards for Final Approval of Class Action Settlement.............................3

    B. The Rule 23 and Sixth Circuit Factors Support Approval.......................................4

        1. The Class Was Adequately Represented ........................................................4

        2. The Absence of Fraud or Collusion Favors Approval ...................................6

        3. The Relief Provided to the Class Is Adequate ...............................................7

            a. The Complexity, Expense and Likely Duration of the Litigation......................................................................................7

            b. The Likelihood of Success on the Merits .........................................8

        4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval ...................................................................11

        5. Class Counsel and Plaintiffs Endorse the Settlement .................................12

        6. The Reaction of the Class Supports Final Approval....................................12

        7. Public Interest Favors Approval of the Settlement......................................13

        8. Other Rule 23(e)(2) Factors Support Final Approval...................................13

IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................15

V. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS..........................................................................................15

VI. CONCLUSION..........................................................................................................17

4887-5708-4264.v1

**Page**

**CASES**

*Arledge v. Domino's Pizza, Inc.*,
2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ........................................................................6

*Armstrong v. Gallia Metro. Hous. Auth.*,
2001 WL 1842452 (S.D. Ohio Apr. 23, 2001) .....................................................................12

*Bartell v. LTF Club Operations Co.*,
2020 WL 7062834 (S.D. Ohio Aug. 7, 2020) ......................................................................10

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................................................12

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) .................................................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2015 WL 10714013 (5th Cir. Nov. 4, 2015) ..........................................................................9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .....................................................................14

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ...............................................................................................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .................................................................................................9

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ...............................................................................................4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
*aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................................9

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ........................................................................................13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ......................................................................8

*In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................................5, 7

4887-5708-4264.v1

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .......................................................15

*In re Packaged Ice Antitrust Litig.*,
322 F.R.D. 276 (E.D. Mich. 2017) ...........................................................................6

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015)..........................................................7

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2013)....................................................8, 12

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)......................................................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011),
*aff'd*, 838 F.3d 223 (2d Cir. 2016) ...........................................................................9

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005).......................................................................9

*Indiana State District Council of Laborers &*
*Hod Carriers Pension & Welfare Fund v. Omnicare*,
2019 WL 7483663 (E.D. Ky. June 27, 2019) .........................................................14

*IUE-CWA v. GMC*,
238 F.R.D. 583 (E.D. Mich. 2006) .........................................................................12

*Karpik v. Huntington Bancshares Inc.*,
2021 WL 757123 (S.D. Ohio Feb. 18, 2021).................................................6, 8, 12

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006),
*aff'd sub nom. Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ....................................................................................7

*New York State Tchrs.' Ret. Sys. v. GMC*,
315 F.R.D. 226, 236 (E.D. Mich. 2016),
*aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*,
2017 WL 6398014 (6th Cir. 2017) ...........................................................................4

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) .............................................................................8

4887-5708-4264.v1

Case 1:19-cv-00098-TRM-CHS   Document 227   Filed 06/05/23   Page 4 of 26
PageID #: 5496

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) ...................................................................................8, 12

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ......................................................................................9

*Robinson v. Shelby Cnty. Bd. of Educ.*,
  566 F.3d 642 (6th Cir. 2009) ..........................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................................13

*UAW v. GMC*,
  497 F.3d 615 (6th Cir. 2007) ...............................................................................3, 4, 5, 8

*Whitford v. First Nationwide Bank*,
  147 F.R.D. 135 (W.D. Ky. 1992)................................................................................4, 13

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ..........................................................................................5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77z-1(a)(4) .................................................................................................................1, 14
  §77z-1(a)(7) ......................................................................................................................16

Federal Rules of Civil Procedure
  Rule 23 ...........................................................................................................3, 4, 16, 17
  Rule 23(a).........................................................................................................................17
  Rule 23(b)(3).....................................................................................................................17
  Rule 23(c)(2)(B)......................................................................................................15, 16, 17
  Rule 23(e).......................................................................................................................1, 3
  Rule 23(e)(1)(B)................................................................................................................15
  Rule 23(e)(2) ..................................................................................................................3, 13
  Rule 23(e)(2)(A) .................................................................................................................4
  Rule 23(e)(2)(B)..................................................................................................................6
  Rule 23(e)(2)(C)..................................................................................................................7
  Rule 23(e)(2)(C)(ii)...........................................................................................................13
  Rule 23(e)(2)(C)(iii)..........................................................................................................13
  Rule 23(e)(2)(C)(iv)...........................................................................................................13
  Rule 23(e)(2)(D) ...............................................................................................................13
  Rule 23(e)(3)........................................................................................................................3

4887-5708-4264.v1

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements: 2022 Review and Analysis*
(Cornerstone Research 2023)...................................................................................................10

4887-5708-4264.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Representatives Deirdre Terry, Charles Clowdis, and Bryan Robbins (collectively, "Plaintiffs") respectfully submit this memorandum in support of their motion for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I.      INTRODUCTION

Plaintiffs, through their counsel, have obtained a $13 million cash settlement for the benefit of the Class in exchange for the dismissal and full release of all claims brought against Defendants in this Litigation.  As described below and in the Wood Declaration, submitted herewith, Settlement was reached after more than two years of hard-fought discovery that brought the parties to the brink of filing motions for summary judgment and motions to exclude the opinions of certain experts. Considering the numerous risks presented by those motions, as well as any trial, the Settlement is a very good result because it provides a significant and certain recovery for the Class.  Indeed, the Settlement is almost twice the median class action settlement in 2022 for cases bringing Securities Act claims.

Plaintiffs' decision to settle was well-informed by extensive investigation, vigorous discovery efforts, zealous litigation by experienced counsel, and arm's-length settlement negotiations supervised by an experienced mediator.  *See generally* Wood Decl.  While Plaintiffs believe that their claims had merit and that they would prevail at trial, they also recognize that had the Litigation continued, they faced substantial risks to obtaining a recovery for the Class, let alone a recovery greater than that afforded by the Settlement.  Specifically, in addition to the inherent risks

---

[1]      Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated March 27, 2023 (the "Stipulation") (ECF 221) or in the accompanying Declaration of Christopher M. Wood in Support of: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) (the "Wood Declaration" or "Wood Decl.").  Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

related to establishing Defendants' liability, when the Settlement was reached, it was the eve of the deadline for the parties to file their motions for summary judgment and motions to exclude expert testimony, and thus there was the risk that the Court through its rulings could substantially narrow, or even dismiss, Plaintiffs' claims.

In light of these considerations, Plaintiffs and Class Counsel believe that the $13 million Settlement is eminently fair, reasonable, adequate, satisfies the standards of approval under Federal Rule of Civil Procedure ("Rule") 23, and provides a very favorable result for the Class. The reaction of the Class thus far also supports the Settlement. As discussed below, Class Members have been notified of the Settlement in accordance with the Preliminary Approval Order[2] and, to date, not a single Class Member has filed an objection. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to potential Class Members. This Plan was prepared in consultation with Plaintiffs' damages expert and governs how claims will be calculated and, ultimately, how the Net Settlement Fund will be equitably distributed to Authorized Claimants. No objections have been filed to this straightforward method of allocation.

## II.       FACTUAL AND PROCEDURAL HISTORY

The Wood Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Class Counsel's efforts on behalf of the Class; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.

---

[2]    *See generally* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), submitted herewith.

## III. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Legal Standards for Final Approval of Class Action Settlement

Rule 23 requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is well settled within the Sixth Circuit that "federal policy favor[s] settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007). "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

On December 1, 2018, amendments to Rule 23(e)(2) went into effect that provide the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure. The Court considered these

factors in connection with its consideration of preliminary approval of the Settlement and found that each had been met. *See* ECF 222.

To evaluate the substantive fairness of the settlement, courts in the Sixth Circuit have considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

These factors should not be applied in a formalistic fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Courts "'judge the fairness of a proposed compromise,'" "'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" as opposed to deciding the merits of the case or resolving unsettled legal questions. *Id.* at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Likewise, "[t]he district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. 2017).

**B.      The Rule 23 and Sixth Circuit Factors Support Approval**

**1.      The Class Was Adequately Represented**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." The Sixth Circuit looks at two criteria to determine

- 4 -

whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

These requirements have easily been met here. Plaintiffs' claims are typical of and co-extensive with the claims of the Class, and they have no antagonistic interests with respect to the Class as a whole. Indeed, in certifying the Class following adversarial briefing, this Court previously recognized that Plaintiffs were adequate class representatives because they were "driven by the same factual underpinnings as the Securities Act claims of the proposed class" and they "possess common interests with the class and have already expended personal time and energy pursuing this litigation." ECF 134 at 10 and 12. Since then, Plaintiffs have amply demonstrated that they have an interest in obtaining the largest possible recovery in this Litigation, as do the other absent Class Members. *See In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*, 248 F.R.D. 483, 494 (E.D. Mich. 2008) (Plaintiffs "do not have any interests that are antagonistic to those of the Class and the record reflects that they have pursued this litigation and the settlement negotiations vigorously, sharing the common goal of maximizing recovery."). Additionally, as detailed in their declarations, Plaintiffs were involved in each stage of the Litigation and worked closely with Class Counsel to achieve the best possible result for the Class. *See* Declarations of Deirdre Terry ("Terry Decl."), Charles Clowdis ("Clowdis Decl."), and Bryan K. Robbins ("Robbins Decl."), submitted herewith.

Class Counsel have also adequately represented the Class. Class Counsel is highly experienced in securities litigation, with a long and successful track record representing investors in cases in courts throughout the country. *See* Wood Decl. As detailed in the Wood Declaration, given the amount of work done, Class Counsel had a strong appreciation of the strengths and weaknesses of the case before agreeing to the Settlement, and believe it is in the best interest of the Class. *See*

- 5 -

Wood Decl., ¶¶11-12. Accordingly, this factor is easily satisfied and warrants final approval. *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "***was willing to, and indeed did, commit substantial 'resources . . . to represent[ ] the class***'").

### 2. The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval. "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 291 (E.D. Mich. 2017); *see also Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021). "Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery." *Id.*

Here, the proposed Settlement was reached after more than four years of litigation, with both sides vigorously advocating their respective positions. Indeed, the Settlement was reached only after arm's-length negotiations facilitated by David M. Murphy of Phillips ADR. Wood Decl., ¶10. The Settlement negotiations were extensive, and included the exchange of mediation briefs, an in-person mediation session on November 16, 2021, and further discussions thereafter through Mr. Murphy. *Id.* After further evaluation of the strengths and weaknesses of the case following discovery and the exchange of expert opinions, the parties agreed to settle on the eve of the parties' filing summary judgment and *Daubert* motions. *Id.* As such, the Settlement warrants approval given that the "'participation of an independent mediator . . . [which] virtually insures that the negotiations were conducted at arm's length and without collusion.'" *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

4887-5708-4264.v1

### 3. The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors. This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense and likely duration of the litigation; and (ii) the likelihood of success on the merits. Each of these factors supports approval.

#### a. The Complexity, Expense and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *Delphi*, 248 F.R.D. at 497. Most class actions are "'inherently complex'" and "'[s]ettlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015). Indeed, courts have consistently recognized that "'[s]ecurities class actions are often "difficult and . . . uncertain."'" *See, e.g.*, *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves complex issues relating to falsity, materiality, due diligence, causation, and damages. Whether the Offering Materials for USX's IPO contained material misrepresentations and omissions was a hotly contested issue, as was whether USX's stock price decline after the November 1, 2018 disclosure of the Company's operational problems was due to factors unrelated to the alleged misrepresentations and omissions. Additionally, even if Plaintiffs were able to prevail on the merits of their claims, the parties strongly disagreed about the amount of damages Class Members were entitled to recover. Each of these issues required consideration of complex issues and voluminous evidence, often entailing the opinions of experts, who provided

reports and deposition testimony. The complexity of these issues made victory at summary judgment or trial far from assured.

This Litigation settled shortly before the parties' motions for summary judgment and to exclude experts were due. This Settlement thus avoids the risks of unfavorable rulings at summary judgment and/or with respect to experts, a lengthy and uncertain trial, and the certain appeal by the non-prevailing party.[3] "As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement." *See GMC*, 315 F.R.D. at 236.

### b. The Likelihood of Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik*, 2021 WL 757123, at \*5 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). In other words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the Settlement. *UAW*, 497 F.3d at 631.

Plaintiffs believe that the evidence establishes that: the Offering Materials for USX's IPO contained materially false or misleading statements and omissions relating to the Company's ability to expand its driver force and its capacity to meet existing driver commitments (Wood Decl., ¶13),

---

[3]    *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at \*5 (E.D. Tenn. May 17, 2013) ("[T]he likelihood of an appeal was great . . . [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at \*4 (W.D. Ky. Aug. 23, 2010) ("Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief. In contrast, the settlement provides recovery without delay.").

4887-5708-4264.v1

and that as a result of these misrepresentations and omissions, Plaintiffs and the Class suffered

damages from their purchases of Class A common stock pursuant to and/or traceable to the Offering

Materials. *Id*., ¶31. Nevertheless, Plaintiffs are also cognizant of the fact that there was no

guarantee that they would prevail at trial. Indeed, "[p]recedent is replete with situations in which

attorneys representing a class have devoted substantial resources in terms of time and advanced costs

yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & ERISA

Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[4]

Here, as detailed in the Wood Declaration, there were numerous potential defenses available

to Defendants that could reduce, or preclude entirely, any recovery by the Class. Throughout this

Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability,

wrongdoing, or damages whatsoever. Defendants have maintained that the evidence would have

established at summary judgment (or trial) that their statements were not materially false or

misleading because truck driver shortages were disclosed in the Offering Materials, and that the

practice of OTR cannibalization was a common industry practice. Wood Decl., ¶92. Defendants

further maintained that USX had already disclosed the negative information months before the stock

price decline following USX's disclosures on November 1, 2018, and therefore, those negative

---

[4]    *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating
$2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on
limited issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on
loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting
firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d
512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and
modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223
(2d Cir. 2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25,
2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial
motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688
F.3d 713 (11th Cir. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2015 WL 10714013, at *3
(5th Cir. Nov. 4, 2015) (granting a "third interlocutory appeal in a [securities] case that has remained
in the class certification stage for thirteen years," with two successive appeals to the U.S. Supreme
Court).

4887-5708-4264.v1

disclosures were not new information and Defendants would prevail by demonstrating negative causation. *Id.*, ¶93.[5]

Class Counsel was fully informed of the strengths and weaknesses of Plaintiffs' case, including the many complicated and nuanced legal and economic issues that would have to be resolved in Plaintiffs' favor in order to achieve a successful result. In short, continued litigation would be hard fought, and expensive, and a positive result was far from assured. *See Bartell v. LTF Club Operations Co.*, 2020 WL 7062834, at *4 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiff's claims creates substantial risk to the Class. When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").

Despite these risks, Plaintiffs obtained a very favorable recovery. The Settlement is almost twice the median and average class action settlement in 2022 for cases bringing Securities Act claims. *See, e.g.*, *Securities Class Action Settlements: 2022 Review and Analysis*, at 7 (Cornerstone Research 2023), *available at* https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (showing the median and average settlement in cases bringing Securities Act claims in 2022 was $7 million). Indeed, courts in this Circuit have routinely approved settlements with similar or smaller recoveries. *See, e.g.*, *GMC*, 315 F.R.D. at 237-38 (compiling cases approving settlements representing as little as 3.8% of total damages). Accordingly, the proposed Settlement is a very good result for the Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

---

[5] In addition to the motions for summary judgment that the parties were to file had they not agreed to settle the Litigation, cross motions to exclude experts were also due to be filed. Wood Decl., ¶89. And had the Litigation proceeded to trial, the parties anticipated a battle of the experts on the disputed issues. *Id.*, ¶93. Each side had retained experts who were expected to offer opposing testimony about causation and damages, as well as the industry standards on disclosures and due diligence relating to the Underwriter Defendants' due diligence defense. *Id.*, ¶¶83-87. There is no guarantee that the jury would accept Plaintiffs' experts' testimony over Defendants'.

### 4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *Id.* at 236. Here, Class Counsel undoubtedly had a thorough understanding of the strengths and weaknesses of Plaintiffs' claims. During the Litigation, Class Counsel had, among other things:

- researched and drafted the Complaint;

- opposed Defendants' motions to dismiss;

- obtained class certification;

- completed nearly two years of fact discovery, including reviewing and analyzing more than 480,000 pages of documentary evidence produced by Defendants and numerous third parties and taking 24 fact depositions;

- filed more than a half-dozen discovery motions, including motions related to Defendants' interrogatory responses, the production of Defendants' text messages, and Defendants' communication with outside counsel who provided advice during the preparation of the Offering Materials;

- completed trial expert discovery, including taking three depositions of Defendants' designated trial experts and defending Plaintiffs' two trial experts;

- substantially prepared an affirmative motion for partial summary judgment and a motion to exclude at least one of Defendants' proffered experts;

- engaged in settlement negotiations with a well-respected mediator; and

- assessed the risks of prevailing on Plaintiffs' claims at trial, the amount of damages to be awarded and the Class's ability to collect on any judgment awarded.

Wood Decl., ¶5.

There can be no question that by the time the Settlement was reached, Plaintiffs and Class Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *GMC*, 315 F.R.D. at 237, and reached the well-informed decision to enter into this Settlement. Accordingly, this factor supports approval of the Settlement.

### 5. Class Counsel and Plaintiffs Endorse the Settlement

In assessing the fairness of a proposed settlement, courts consider counsel's endorsement of the settlement, which "is entitled to significant deference." *Id.* at 238; *accord IUE-CWA v. GMC*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'"). This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of Plaintiffs' case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, as a result of the settlement evaluation process, Class Counsel carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of continued litigation. Based on these considerations, Class Counsel concluded that the Settlement is not only fair and reasonable but is a favorable result for the Class. Wood Decl., ¶¶12-18; *Karpik*, 2021 WL 757123, at *6. Likewise, Plaintiffs approve the Settlement. *See* Terry Decl., ¶9, Clowdis Decl., ¶5, Robbins Decl., ¶5. "Their support also favors approval." *Karpik*, 2021 WL 757123, at *6. Accordingly, this factor supports final approval.

### 6. The Reaction of the Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class. *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *6. Here, as detailed *infra*, Section V, as of June 2, 2023, the Claims Administrator has disseminated over 14,870 Notices to potential Class Members.

To date not one Class Member has objected to any aspect of the Settlement.[6] Thus, this factor favors approval of the Settlement.

### 7. Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'" *GMC*, 315 F.R.D. at 241-42. As discussed herein, the Settlement provides $13 million in cash, plus interest. The Settlement puts an end to this four-year-old litigation, which, absent settlement would have continued in this Court and in the Sixth Circuit. Thus, the Settlement also furthers public policy by conserving judicial resources. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8. Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class members' claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), & (iv); Fed. R. Civ. P. 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

***First***, the method for processing Class Members' claims and distributing relief to eligible claimants are well-established, effective procedures for processing claims submitted by potential

---

[6] As set forth in the Notice, the deadline to provide counsel with objections is June 19, 2023.

4887-5708-4264.v1

Class Members and efficiently distributing the Net Settlement Fund. Here, the Court-appointed Claims Administrator will review and process the claims under the guidance of Class Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the proposed Plan of Allocation), *see infra* Section IV. *See, e.g.*, *GMC*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).

**Second**, as discussed in the accompanying fee and expense memorandum, Class Counsel are applying for an award of one-third of the common fund fee award as compensation for the services they rendered on behalf of the Class, as well as payment of litigation costs and expenses.[7] The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a one-third award is consistent with attorneys' fee percentages that courts have approved in similar cases. *See, e.g.*, *Indiana State District Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc., et al.*, 2019 WL 7483663, at *1 (E.D. Ky. June 27, 2019) (awarding 33% of a $20 million recovery).[8] Notably, approval of the requested fees is separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees. *See* Stipulation, ECF 221, ¶6.4.

**Third**, the Parties entered into a confidential agreement establishing conditions under which USX Defendants may terminate the Settlement if a certain threshold of Class Members exclude themselves. Stipulation, ECF 221, ¶7.3. This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement. *See Erica P.*

---

[7] The requested expense amounts include expenses incurred in connection with the State Action which, pursuant to the Stipulation of Settlement, will be dismissed in connection the Settlement. *See* Stranch Decl., Barrack Decl., and GPM Decl.; Stipulation, ¶4.5.

[8] Additional jurisprudence supporting this award is included in the Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4), submitted herewith.

- 14 -

*John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

**Fourth**, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of the Plan of Allocation requires that it is fair, reasonable, and adequate. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011). """"Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."""" *Id.*

Here, the proposed Plan of Allocation, which was developed in consultation with Plaintiffs' damages expert, is fair, reasonable and adequate. The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their recognized loss. Wood Decl., ¶¶106-108. The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the Securities Act. Moreover, the Plan of Allocation was disclosed in the Notice mailed to potential Class Members and nominees and, to date, there have been no objections to the Plan of Allocation. *See* Murray Decl., Ex. A. Thus, the Plan of Allocation is fair and reasonable.

## V. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. §77z-1(a)(7). A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). The notice program utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated over 14,870 copies of the Notice and Proof of Claim and Release via First-Class Mail to potential Class Members and nominees. *See* Murray Decl., ¶¶4-11, submitted herewith. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *Business Wire*. *Id.*, ¶12. In addition, the previously-established dedicated toll-free telephone number and website were updated to assist potential Class Members with inquiries regarding the Litigation, the Settlement, and the claims process. *Id.*, ¶¶13-14.

The Notice provides Class Members, among other things, (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional information about the Litigation, by contacting Class Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §77z-1(a)(7). The Notice

- 16 -

also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. A.

Plaintiffs and their counsel have satisfied all of the elements of the notice plan approved by the Court. *See generally* Murray Decl. Accordingly, the notice program implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GMC*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at \*3 (E.D. Tenn. Apr. 30, 2014) (finding that dissemination of notice by first class mail and posting on a hosted website satisfied the requirements of Rule 23).

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) approve the Settlement as fair, reasonable, and adequate; and (ii) approve the Plan of Allocation as fair and reasonable pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

DATED:  June 5, 2023                    Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
CHRISTOPHER M. WOOD, #032977


                              s/ Christopher M. Wood
                         ─────────────────────────────
                         CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
WILLOW E. RADCLIFFE (*pro hac vice*)
HADIYA K. DESHMUKH (*pro hac vice*)
SNEHEE KHANDESHI (*pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
hdeshmukh@rgrdlaw.com
skhandeshi@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (*pro hac vice*)
KEVIN S. SCIARANI (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ksciarani@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS (*pro hac vice*)
ANDREW E. LENCYK (*pro hac vice*)
DAVID C. JAYNES (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: 203/992-4523
212/363-7171 (fax)
shopkins@zlk.com
alencyk@zlk.com
djaynes@zlk.com

*Class Counsel*

- 18 -

BARRETT JOHNSTON MARTIN
   & GARRISON, PLLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com

*Local Counsel*

BRAGAR EAGEL & SQUIRE, P.C.
LAWRENCE P. EAGEL (*pro hac vice*)
MARION C. PASSMORE (*pro hac vice*)
810 Seventh Avenue, Suite 620
New York, NY  10019
Telephone:  212/308-5858
212/214-0506 (fax)
eagel@bespc.com
passmore@bespc.com

*Additional Counsel for Plaintiffs Charles Clowdis
and Bryan K. Robbins*

- 19 -

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 5, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses of the CM/ECF participants in this case.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com