BARRETT JOHNSTON MARTIN
  & GARRISON, PLLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)

*Local Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

*Class Counsel*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

| | |
|---|---|
| LEWIS STEIN, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. XPRESS ENTERPRISES, INC., et al., <br><br> Defendants. | Civil Action No. 1:19-cv-00098-TRM-CHS <br><br> <u>CLASS ACTION</u> <br><br> Judge Travis R. McDonough <br> Magistrate Judge Christopher H. Steger |

MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO
PLAINTIFFS PURSUANT TO 15 U.S.C. §77z-1(a)(4)

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II. AWARD OF ATTORNEYS' FEES......................................................................3

    A.   Class Counsel Are Entitled to a Fee from the Common Fund They Obtained.............................................................................................................3

    B.   The Court Should Award Attorneys' Fees Using the Percentage Approach...........4

    C.   The Requested Fee Award Is Within the Applicable Range of Percentage-of-the-Fund Awards ...........................................................................................6

    D.   The Fee Is Reasonable Under the Circumstances......................................................7

          1.   The Value of the Benefits Achieved...........................................................8

          2.   Public Policy Considerations .......................................................................9

          3.   The Contingent Nature of the Fee............................................................10

          4.   The Diligent Prosecution of the Litigation ..............................................12

          5.   The Complexity of the Litigation ..............................................................12

          6.   The Quality of Representation....................................................................13

    E.   Class Member Reaction..........................................................................................15

III. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................16

IV. PLAINTIFFS' AWARDS PURSUANT TO 15 U.S.C. §77z-1(a)(4) ARE REASONABLE .....................................................................................................18

V.  CONCLUSION.....................................................................................................19

4859-1419-8374.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...............................................................................................2

*Balestra v. ATBCOIN LLC*,
380 F. Supp. 3d 340 (S.D.N.Y. 2019).................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985).....................................................................................................4, 10

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988),
*aff'd*, 899 F.2d 21 (11th Cir. 1990)......................................................................................8

*Bessey v. Packerland Plainwell, Inc.*,
2007 WL 3173972 (W.D. Mich. Oct. 26, 2007)....................................................................7

*Blum v. Stenson*,
465 U.S. 886 (1984).......................................................................................................4, 6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..............................................................................................................3

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996),
*aff'd*, 102 F.3d 777 (6th Cir. 1996).....................................................................................6

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ...........................................................................................5

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885).............................................................................................................4

*Cosby v. KPMG LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ........................................................ *passim*

*Denney v. Phillips & Buttorff Corp.*,
331 F.2d 249 (6th Cir. 1964) ...............................................................................................7

*Dougherty v. Esperion Therapeutics, Inc.*,
2020 WL 6793326 (E.D. Mich. Nov. 19, 2020)..................................................................19

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) .................................................................................................5

4859-1419-8374.v1

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
2015 WL 13647397 (M.D. Tenn. Jan. 16, 2015).................................................................5, 19

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) .........................................................................................5

*Grae v. Corrections Corp. of America*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) .........................................................5, 6, 19

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ............................................................................................17

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).......................................................................................................8

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .....................................................................................11

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)...........................................................................................5

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................................................................14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).............................................................................................3

*In re Charter Commc'ns, Inc.*,
2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005).............................................16

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ........................................................................................10

*In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ............................................................................8, 15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ........................................................................14

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
2009 WL 1473975 (S.D. Ohio May 27, 2009) ............................................................12

*In re Nationwide Fin. Servs. Litig.*,
2009 WL 8747486 (S.D. Ohio Aug. 19, 2009).............................................................15

4859-1419-8374.v1

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010) ........................................................................11

*In re Prandin Direct Purchaser Antitrust Litig.*,
  2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ..........................................................7

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................................................................16

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .............................................................14

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ......................................................................................16

*In re Se. Milk Antitrust Litig.*,
  2013 WL 2155387 (E.D. Tenn. May 17, 2013) ...........................................5, 10, 11, 16

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 2946459 (E.D. Tenn. June 30, 2014) ................................................5, 6, 9

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) ..........................................................................................5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .......................................................................................5

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ......................................................................................................4

*Manners v. Am. Gen. Life Ins. Co.*,
  1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) .......................................................6

*Miller v. Woodmoor Corp.*,
  1978 WL 1146 (D. Colo. Sept. 28, 1978) ............................................................12, 13

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ......................................................................................................6

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) .......................................................................................7

4859-1419-8374.v1

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006),
*aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)............................................17, 18

*New York State Tchrs.' Ret. Sys. v. GMC*,
315 F.R.D. 226 (E.D. Mich. 2016),
*aff'd sub nom. Marro v. New York State Tchrs.*
2017 WL 6398014 (6th Cir. Nov. 27, 2017)................................................................4, 10, 12

*Pergament v. Kaiser-Frazer Corp.*,
224 F.2d 80 (6th Cir. 1955) ............................................................................................7

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ........................................................................................5

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
732 F. App'x 543 (9th Cir. 2018) ...................................................................................11

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) ........................................................................................7

*Rawlings v. Prudential-Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) ......................................................................................5, 7, 8

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)....................................................................................16

*Schuh v. HCA Holdings, Inc.*,
2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016)...............................................................5

*Smillie v. Park Chem. Co.*,
710 F.2d 271 (6th Cir. 1983) ..........................................................................................7

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161 (1939).......................................................................................................4

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993).........................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................4, 10

4859-1419-8374.vl

*Thacker v. Chesapeake Appalachia, L.L.C.*,
    695 F. Supp. 2d 521 (E.D. Ky. 2010),
    *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ...................................................................................................5

*Trustees v. Greenough*,
    105 U.S. 527 (1881)...............................................................................................................3, 4

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013).....................................................................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................................................5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77z-1(a)(4) ........................................................................................................................1, 18
    §77z-1(a)(6) ...............................................................................................................................4

## SECONDARY AUTHORITIES

Stefan Boettrich & Svetlana Starykh, *Recent Trends
    in Securities Class Action Litigation: 2017 Full-Year Review*
    (NERA Jan. 29, 2018)...............................................................................................................11

4859-1419-8374.v1

Class Counsel respectfully submit this memorandum in support of their motion for an award of attorneys' fees and expenses, and for awards to Plaintiffs pursuant to 15 U.S.C. §77z-1(a)(4) in connection with their representation of the Class.

## I.   INTRODUCTION

After years of hard-fought litigation, and following lengthy mediation efforts, Plaintiffs and Class Counsel have succeeded in obtaining a $13 million cash recovery for the benefit of the Class.[1] This substantial and definite recovery was achieved through the skill, hard work, and persistent advocacy of Class Counsel, who now respectfully move this Court for an award of attorneys' fees in the amount of one-third of the Settlement Amount and litigation expenses of $1,368,163.51, plus interest earned on both amounts.

The requested fee award is within the range of percentages awarded in class actions in this District, in this Circuit, and across the country, and is warranted in light of the excellent result obtained for the Class under the circumstances.

The fee award is also reasonable in light of the significant risks involved in bringing and prosecuting the Litigation on behalf of the Class and the extensive effort of counsel in obtaining this result. The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires plaintiffs to "thread the eye of a needle made smaller and smaller

---

[1]   Submitted herewith in support of approval of the proposed Settlement is the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Brief"). The Court is also respectfully referred to the accompanying Declaration of Christopher M. Wood in Support of: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Wood Decl.") for a more detailed history of the Litigation, the extensive efforts of Class Counsel, and the factors bearing on the reasonableness of the requested award of attorneys' fees and expenses. All terms capitalized herein are defined in the Stipulation of Settlement dated March 27, 2023 (the "Stipulation") (ECF 221), unless otherwise indicated. Unless otherwise noted, all emphasis in quotations is added and citations and footnotes are omitted.

4859-1419-8374.v1

over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

In addition to the significant risks in prosecuting the Litigation under the PSLRA, the skill and effort required to achieve the Settlement was substantial. Class Counsel marshaled considerable resources and committed substantial amounts of time and expense to prosecuting the Litigation. As set forth in the Wood Declaration, the Settlement was not achieved until Class Counsel: (1) researched and drafted Lead Plaintiff's Complaint for Violation of the Federal Securities Laws (the "Complaint") with the assistance of an independent private investigator retained to identify and interview percipient witnesses; (2) opposed Defendants' motions to dismiss; (3) retained an economic consultant to assist with class certification and obtained class certification; (4) completed years of fact discovery, including reviewing and analyzing more than 480,000 pages of documents produced by Defendants and third parties, and taking numerous fact depositions; (5) filed or responded to six discovery motions; (6) retained experts in the fields of disclosure standards and due diligence, and economics and damages, who prepared opening and rebuttal reports; (7) completed expert discovery, including taking Defendants' three experts' depositions and defending Plaintiffs' two experts' depositions; (8) engaged in settlement negotiations with Defendants, assisted by a nationally-recognized, experienced mediator; and (9) assessed the risks of prevailing at summary judgment and trial. *See generally* Wood Decl.

Class Counsel undertook the representation of the Class on a contingent fee basis, and no payment has been made to them to date for their services or for the substantial litigation expenses they have incurred on behalf of the Class. Class Counsel firmly believe that the Settlement is the result of their diligent and effective advocacy, as well as their reputations as firms that will not waver in their dedication to the interests of class members, and that are committed to zealously prosecuting a meritorious case through trial and subsequent appeals. In litigation asserting claims

- 2 -

based on complex legal and factual issues that were vigorously opposed by highly skilled and experienced defense counsel, Class Counsel succeeded in securing a very favorable result for the Class. Significantly, the fee and expense request is supported by Plaintiffs. *See* Declaration of Deirdre Terry ("Terry Decl."), ¶9, Declaration of Charles Clowdis ("Clowdis Decl."), ¶6, and Declaration of Bryan K. Robbins ("Robbins Decl."), ¶6, filed herewith. Plaintiffs were actively involved in the Litigation, including producing discovery and providing deposition testimony, as well as during settlement discussions. Terry Decl., ¶¶6-7, Clowdis Decl., ¶4, Robbins Decl., ¶4. Because of this involvement, now, at the end of the case, Plaintiffs are in a unique position to evaluate this multi-million dollar result and assess whether the fee request is fair, reasonable, and should be awarded. As the Third Circuit held in *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001), "courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel."

As discussed herein, and for the reasons detailed in the Settlement Brief and the Wood Declaration, the requested fee is fair and reasonable when considered under applicable Sixth Circuit standards and is within the range of awards in class actions approved by courts in this Circuit and nationwide. Moreover, the requested expenses and charges are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation. No objections to these requests have been received by Class Counsel.

## II. AWARD OF ATTORNEYS' FEES

### A. Class Counsel Are Entitled to a Fee from the Common Fund They Obtained

This Settlement has created a common fund. The Supreme Court has long recognized the "common fund" exception to the general rule that litigants bear their own attorneys' fees. *Trustees v. Greenough*, 105 U.S. 527 (1881). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980):

- 3 -

[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have small claims. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 n.4 (2013). This is particularly applicable to claims brought under the federal securities laws, as the Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).[2]

### B. The Court Should Award Attorneys' Fees Using the Percentage Approach

Class Counsel's efforts have resulted in the creation of a $13 million common fund. Courts favor awarding fees from a common fund based on "a percentage of the fund bestowed on the class." *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Greenough*, 105 U.S. at 532; *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939). Congress followed the Supreme Court's lead and endorsed the efficacy of the percentage-of-the-fund approach to fee awards in the context of common fund PSLRA cases. *See* 15 U.S.C. §77z-1(a)(6); *New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) ("[B]ecause the PSLRA refers to an award of attorneys' fees and expenses in relation to 'a reasonable percentage of the amount of any damages . . . actually paid to the class,' the Court concludes that the percentage-of-the-fund approach is the better method for calculating Lead

---

[2]  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (noting that the Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions").

4859-1419-8374.v1

Counsel's fee award."), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

District courts in this Circuit overwhelmingly apply the percentage method, endorsed by the Sixth Circuit in *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993), in awarding fees in common fund cases,[3] recognizing that "the percentage-of-the-fund approach more accurately reflects the result achieved [and] . . . has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *Skelaxin*, 2014 WL 2946459, at *1.[4] The percentage-of-the-fund method also "affords the Court greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have done, while also

---

[3]     *Cosby v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022) (finding the percentage-of-the-fund approach "the preferred method where, as here, 'a substantial common fund has been established for the benefit of class members through the efforts of class counsel'"); *Jackson County Emps. Ret. Sys. v. Ghosn*, No. 3:18-cv-01368, ECF 267 at ¶3 (M.D. Tenn. Oct. 7, 2022) (Ex. 1) (using "'percentage-of-recovery'" to award class counsel fees in §10b-5 case); *Grae v. Corrections Corp. of America*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021); *Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564, ECF 265 at ¶3 (M.D. Tenn. Sept. 21, 2018) (same) (Ex. 2); *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (same); *North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, No. 3:11-cv-00595, ECF 143 at ¶3 (M.D. Tenn. May 12, 2014) (same) (Ex. 3); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, ECF 103 at ¶3 (M.D. Tenn. Oct. 31, 2012) (same) (Ex. 4); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("The percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

[4]     The Sixth Circuit is not alone in its adoption of the percentage approach.  *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

4859-1419-8374.v1

protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996).

> C.    The Requested Fee Award Is Within the Applicable Range of
>        Percentage-of-the-Fund Awards

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of one-third of the recovery. *Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

The fee requested here is "'certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit,' and is appropriate given the excellent result Co-Lead Counsel achieved notwithstanding substantial risk." *Cosby v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022) (awarding one-third of $35 million settlement); *Skelaxin*, 2014 WL 2946459, at *5 ("The Court finds that the requested counsel fee of one third [of $73 million recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."). *Jackson County Emps.*, ECF 267 at ¶3 (Ex. 1) (awarding one-third of $36 million settlement, plus expenses); *Grae*, 2021 WL 5234966, at *1 (awarding one-third of $56 million settlement, plus expenses); *BancorpSouth*, ECF 265 at ¶3 (Ex. 2); *Morse v. McWhorter*, No. 3:97-0370, slip op. at 1 (M.D. Tenn. Mar. 12, 2004) (awarding a 33-1/3% fee, plus expenses) (Ex. 5); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999) ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%."); *In re Sirrom Cap. Corp. Sec. Litig.*, No. 3-98-0643, slip op. at 6 (M.D. Tenn. Feb. 4, 2000) (awarding

- 6 -

33-1/3% of $15 million settlement) (Ex. 6); *Skeete v. Republic Schs. Nashville*, No. 3:16-cv-00043, ECF 112 at ¶14 (M.D. Tenn. Feb. 26, 2018) (Ex. 7) (ECF 105, 112) (approving one-third fee).[5]

### D. The Fee Is Reasonable Under the Circumstances

The touchstone of an appropriate fee award in common fund cases is whether the award is reasonable under the circumstances. *See Rawlings*, 9 F.3d at 517. The Sixth Circuit grants a district court "'considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court.'" *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). In determining the reasonableness of attorneys' fees, the Sixth Circuit over the years has identified several relevant factors that District Courts "[o]ften, but by no means invariably," consider. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). These have included "the complexity of the legal questions involved, the results accomplished, the professional standing of [counsel], and the professional standing of [defendants'] lawyers," the effort expended, and the public policy aspect of the case. *Denney v. Phillips & Buttorff Corp.*, 331 F.2d 249, 251 (6th Cir. 1964); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). Courts also consider "'[t]he extent and nature of the services; the labor, time and trouble involved; the results achieved; the character and importance of the matter in hand; the value of the property or the amount of money involved; the learning, skill and experience exercised; whether the fee is absolute or contingent; and the ability to pay.'" *Pergament v. Kaiser-Frazer Corp.*, 224 F.2d 80, 83 (6th Cir. 1955). Application of the factors articulated by the Sixth Circuit support the requested fee award here.

---

[5]    *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (awarding one-third of common fund as attorneys' fees); *Fushi Copperweld*, ECF 143 at ¶3 (awarding 33-1/3% of settlement in §10b-5 case) (Ex. 3); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding one-third of common fund and noting that "'[e]mpirical studies show that . . . fee awards in class actions average around one-third of the recovery'").

### 1. The Value of the Benefits Achieved

Class Counsel have secured a recovery that provides for a substantial (and definite) cash payment of $13 million. Courts have consistently recognized that in making a fee award the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).[6] This outstanding Settlement was achieved as a direct result of the skill, effort, and tenacity of Class Counsel in prosecuting the Litigation. There is no question Class Counsel overcame numerous obstacles and took significant risks in obtaining this highly favorable result for the Class.

While Class Counsel believe Plaintiffs' claims have substantial merit, if litigation were to proceed to trial there is nonetheless a significant risk that the Class could recover less than the amount of the Settlement or nothing at all.

Defendants consistently maintained that Plaintiffs could not establish liability and/or damages, and challenged, or intended to challenge, virtually every factual and legal issue in the Litigation in an effort to defeat Plaintiffs' claims. *See generally* Wood Declaration.

More specifically, Defendants argued, and were expected to continue to argue, that: (a) the Offering Materials were not misleading because they adequately disclosed the Company's driver retention problems; (b) the practice of OTR cannibalization was a common practice in the industry, and investors were aware that this was occurring at the Company; and (c) the OTR cannibalization did not materially negatively impact the Company's operations at the time of the IPO. Wood Decl., ¶14. Plaintiffs also faced risks in proving falsity as a result of the limited statements that remained in the case following the Court's motion to dismiss ruling. *Id.*, ¶37. At trial, Defendants likely would isolate the two specific statements upheld by the Court to narrow the issue of falsity and

---

[6] *Rawlings*, 9 F.3d at 516 (a percentage of the fund will compensate counsel for the result achieved); *In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

- 8 -

would seek to prevent Plaintiffs from making any reference to any other alleged misrepresentations for purposes of providing the jury with the proper context in which to evaluate the misleading nature of the Offering Materials. *Id*., ¶14. If Defendants were successful, the Court or jury may not have found the specific statements upheld by the Court materially false or misleading.

Plaintiffs also faced risks establishing that their damages were caused by Defendants' misrepresentations and proving the amount of damages. Defendants asserted a negative causation defense contending that Plaintiffs are not entitled to damages. *Id*., ¶15. Defendants argued that Plaintiffs' alleged damages were caused by something other than the decline of USX's stock price as a result of the alleged misrepresentations in the Offering Materials. *Id*. Defendants provided expert testimony opining that the alleged misrepresentations could not have caused the stock to decline because the Company had already disclosed driver shortage issues and its practice of OTR cannibalization to the public. *Id*. Plaintiffs anticipated a hotly contested battle of the experts on these issues. It is impossible to predict the outcome of such a battle.

Further, there was significant risk regarding the amount of damages that Plaintiffs should be awarded should they prevail on their claims. *Id*., ¶16. Plaintiffs' and Defendants' experts had vastly different opinions regarding the amount of damages. There was significant uncertainty as to which expert's opinion would carry the day before a jury.

Faced with these substantial risks, and with a keen recognition of the delay and costs to the Class that would be involved in overcoming these risks, Class Counsel achieved a highly favorable settlement on behalf of the Class, fully justifying a fee award "within the range of fees ordinarily awarded" in this District and Circuit. *Skelaxin*, 2014 WL 2946459, at *1.

### 2. Public Policy Considerations

The Supreme Court has emphasized that private securities actions such as this one provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement

- 9 -

to [SEC] action.'" *Bateman*, 472 U.S. at 310; *Tellabs*, 551 U.S. at 313. Adequate compensation to encourage attorneys to assume the risk of litigation is in the public interest. *Cosby*, 2022 WL 4129703, at *2. Without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute to a favorable conclusion complex, risky, and expensive class actions such as this one. *GMC*, 315 F.R.D. at 244 ("The federal securities laws are remedial in nature and adequate compensation is necessary to encourage attorneys to assume the risk of litigating private lawsuits to protect investors.").

Without the willingness of Class Counsel to assume the risks associated with litigation such as this one, members of the Class may not have recovered anything. Society benefits from strong advocacy on behalf of investors, and public policy favors the granting of reasonable fee and expense applications such as this one. *See Tellabs*, 551 U.S. at 313 (the Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions"); *Se. Milk*, 2013 WL 2155387, at *5 (Attorney fee awards "are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties.").

### 3. The Contingent Nature of the Fee

Class Counsel undertook the Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave counsel uncompensated. Wood Decl., ¶¶117-121. This risk encompasses not only the risk of zero payment but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992).

Unlike counsel for Defendants, who are typically paid an hourly rate and reimbursed for their out-of-pocket expenses on a regular basis, and thereby assumed no risk of non-payment, Class Counsel have not been compensated for any of their time or expenses since litigation of this case began over four years ago. Courts have consistently and rightly recognized that the risk of receiving

little or no recovery is a major factor in considering an award of attorneys' fees. *See Se. Milk*, 2013 WL 2155387, at *5 ("This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee.").

While high-stakes complex class actions are inherently difficult to prosecute, the PSLRA's mandatory discovery stay make securities class actions especially arduous. According to data from NERA Economic Consulting, motions to dismiss are granted, either in whole or in part, in 75% of all securities class actions, sometimes years after a case is filed.[7] Even when cases proceed past a motion to dismiss, the risk of no recovery is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) (summary judgment granted in favor of defendants in securities fraud action after seven years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (summary judgment granted in favor of defendants after eight years of litigation and after plaintiffs' counsel incurred over $6 million in expenses and worked over 100,000 hours), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. For example, in *BankAtlantic*, the Eleventh Circuit upheld a lower court's decision overturning a jury verdict in favor of the lead plaintiff on the issue of loss causation. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). The contingent nature of the representation supports the reasonable fee sought here.

---

[7]    Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*, at 19 (NERA Jan. 29, 2018), available at nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf.

### 4. The Diligent Prosecution of the Litigation

As discussed in more detail in the Wood Declaration, the Litigation was highly contentious and involved disputes as to practically all elements of the case. In order to obtain the $13 million recovery on behalf of the Class, Class Counsel: (1) researched and drafted the Complaint with the assistance of an independent private investigator retained to identify and interview percipient witnesses; (2) opposed Defendants' motions to dismiss; (3) retained an economic consultant to assist with class certification and obtained class certification; (4) completed years of fact discovery, including reviewing and analyzing more than 480,000 pages of documents produced by Defendants and third parties, and taking numerous fact depositions; (5) filed or responded to six discovery motions; (6) retained experts in the fields of disclosure standards and due diligence, and economics and damages, who prepared opening and rebuttal reports; (7) completed expert discovery, including taking Defendants' three experts' depositions and defending Plaintiffs' two experts' depositions; (8) engaged in settlement negotiations with Defendants, assisted by a nationally-recognized, experienced mediator; and (9) assessed the risks of prevailing at summary judgment and trial. *See generally* Wood Decl.

The Settlement was achieved only by Class Counsel's tenacious advocacy and diligent prosecution. The significant resources devoted by Class Counsel reflect the effort required to bring this difficult Litigation to a successful conclusion and warrants approval of the requested fee.

### 5. The Complexity of the Litigation

The complexity of the issues is a significant factor to be considered in making a fee award. Courts have long recognized that securities class actions present inherently complex and novel issues. *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2009 WL 1473975, at *4 (S.D. Ohio May 27, 2009); *GMC*, 315 F.R.D. at 244. As Judge Finesilver noted four decades ago in *Miller v. Woodmoor Corp.*, 1978 WL 1146 (D. Colo. Sept. 28, 1978):

- 12 -

The benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty of the case. . . .

Despite years of litigation, the area of securities law has gained little predictability. There are few "routine" or "simple" securities actions. Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities law in such a way as to follow the spirit of the law while adapting to new situations which arise. Indeed, many facets of securities law have taken drastically new directions during the pendency of this action. . . .

The complexity of a case is compounded when it is certified as a class action. . . . Management of the case, in and of itself, is a monumental task for counsel and the Court.

*Id.* at *4.

Judge Finesilver's comments ring even more true today. Despite the fact that Plaintiffs believe they have uncovered sufficient evidence to sustain a jury verdict in Plaintiffs' favor, Defendants believe they have countering evidence to defend each of Plaintiffs' claims.

The complexity of proving and recovering full damages here cannot be overstated. If Defendants' negative causation defense was successful, that could have eliminated or significantly reduced the amount of damages recoverable by the Class. *Id.*, ¶93. Thus, risks concerning the establishment of damages subjected the Class to a reduced recovery. *Id.*

These legal and factual complexities required skill and resources to deal with efficiently, and made the case more difficult and unpredictable, as an inherently uncertain "battle of the experts" would undoubtedly affect the outcome of the upcoming trial. These complexities support the requested award.

### 6. The Quality of Representation

Class Counsel include locally and nationally known leaders in the fields of securities class actions and complex litigation. Robbins Geller served as sole lead counsel in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. H-01-3624 (S.D. Tex.), in which it secured the largest recovery ever obtained in a shareholder class action. Specifically, commenting on counsel's "clearly

4859-1419-8374.v1

superlative litigating and negotiating skills" and the firm's "outstanding reputation, experience, and success in securities litigation nationwide," the court in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008), stated, "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *Id*. at 789-90, 797. Robbins Geller served as sole lead counsel in *In re Cardinal Health Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio), obtaining the then-largest securities settlement in the Sixth Circuit. In approving the requested attorneys' fees, the court noted that "[t]he quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007). Robbins Geller also served as sole lead counsel in *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.), obtaining a $215 million recovery on behalf of the class – the largest securities class action recovery ever in Tennessee.

Levi & Korsinsky has represented investor classes throughout the country and in this Circuit, resulting in the recovery of hundreds of millions of dollars for shareholders. *See E-Trade Fin. Corp. Sec. Litig.*, No. 07-cv-8538 (S.D.N.Y. 2012) ($79 million recovery for the shareholder class); *In re U.S. Steel Consolidated Cases*, No. 17-579 (W.D. Pa. Mar. 21, 2023) (recovering $40 million for the class); *Rougier v. Applied Optoelectronics, Inc., et al.*, No. 17-cv-2399 (S.D. Tex. 2020) ($15.5 million); *In re Illumina, Inc. Sec. Litig.*, No. 3:16-cv-03044 (S.D. Cal. 2021) ($13.85 million); *In re Prothena Corp. plc Sec. Litig.*, No. 1:18-cv-06425 (S.D.N.Y. 2019) ($15.75 million); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ("[Levi & Korsinsky] have demonstrated that they are skilled in this area of the law and therefore adequate to represent the Settlement Class."); *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 363 (S.D.N.Y. 2019) ("I find that the attorneys at Levi & Korsinsky have substantial experience in successfully prosecuting complex securities class actions and that Levi & Korsinsky is well qualified to serve as lead counsel in the instant case."); *Forman v. Meridian Bioscience Inc.*, No. 1:17-cv-00774 (S.D. Ohio); *Teoh v.*

- 14 -

*Ferrantino*, No. 356627 (Cir. Ct. for Montgomery Cnty., MD 2012) ("I think you've done a superb job and I really appreciate the way this case was handled.").

But the quality of representation here is best demonstrated by the amount of the Settlement. Class Counsel used their considerable skill, experience, and reputations for tenacity to negotiate a highly favorable result for the Class that eliminates the substantial delay and risk associated with trial and inevitable appeal.

The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel. *See Delphi*, 248 F.R.D. at 504 ("The ability of [Class] Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."). Defendants were represented by extremely capable attorneys from King & Spalding LLP, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., O'Melveny & Myers LLP, and Miller & Martin, PLLC, with reputations for vigorous advocacy in the defense of complex civil cases. As detailed in the Wood Declaration, Defendants' Counsel asserted an arsenal of arguments and litigation strategies in an attempt to obtain the dismissal of this case and to minimize their clients' exposure. The ability of Class Counsel to obtain a favorable result for the Class in the face of such formidable opposition further evidences the quality of their work.

### E.     Class Member Reaction

"The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at \*14 (S.D. Ohio Aug. 19, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense

award.").[8]  Over 14,870 individual notices have been mailed to potential Class Members and nominees, and a summary notice was published in *The Wall Street Journal* and over the *Business Wire*.  Murray Decl., ¶12.  To date, there have been no objections to the fee request.[9]  Even a small number of objections by class members is evidence that the requested fee is fair.  *See, e.g.*, *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (noting that the lack of objections is "strong evidence of the propriety and acceptability" of fee request).

There can be no dispute that all of the factors discussed above weigh in favor of the requested fee award.

## III.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel also request payment of litigation expenses and charges of $1,368,163.51.[10] *Se. Milk*, 2013 WL 2155387, at *8 ("'Expense awards are customary when litigants have created a common settlement fund for the benefit of a class.'"); *see* accompanying Declaration of Christopher M. Wood Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Litigation Expenses ("RGRD Decl."), Declaration of Shannon L. Hopkins Filed on Behalf of Levi & Korsinsky, LLP in Support of Application for Award of Litigation Expenses ("Levi & Korsinsky Decl."), Declaration of Jerry E. Martin Filed on Behalf of Barrett Johnston Martin &

---

[8]  *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (absence of objections supports award of requested fee); *In re Charter Commc'ns, Inc.*, 2005 U.S. Dist. LEXIS 14772, at *59 (E.D. Mo. June 30, 2005) (small number of objections from institutional investors supported approval of fee request).

[9]  As set forth in the Notice, the deadline to provide counsel with objections is June 19, 2023.  *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), Ex. A.

[10]  The requested expense amounts include expenses incurred by plaintiffs' counsel in the State Action which, pursuant to the Stipulation of Settlement, will be resolved in connection the Settlement.  *See* Stranch Decl., Barrack Decl., and GPM Decl.; Stipulation, ¶4.5.

- 16 -

Garrison, PLLC in Support of Application for Award of Litigation Expenses ("Barrett Johnston Decl."), Declaration of Lawrence P. Eagel Filed on Behalf of Bragar Eagel & Squire, P.C. in Support of Application for Award of Litigation Expenses ("Bragar Eagel Decl."), Declaration of J. Gerard Stranch, IV Filed on Behalf of Stranch, Jennings & Garvey, PLLC (Formerly Known as Branstetter, Stranch & Jennings, PLLC) in Support of Application for Award of Litigation Expenses ("Stranch Decl."), Declaration of Stephen R. Basser Filed on Behalf of Barrack, Rodos & Bacine in Support of Application for an Award of Litigation Expenses ("Barrack Decl."), Declaration of Ex Kano S. Sams II Filed on Behalf of Glancy Prongay & Murray LLP in Support of Application for an Award of Litigation Expenses ("GPM Decl."), attesting to the accuracy of Counsel's expenses. The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[11] The categories of expenses for which counsel seek payment here are precisely the type of expenses routinely charged in similar cases and, therefore, are properly awarded from the common fund. *See Cosby*, 2022 WL 4129703, at *3 (Counsel "'is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses.'").

A significant component of counsel's expenses are the costs of investigators, experts, and consultants. In light of the PSLRA discovery stay, the use of investigators to gather detailed fact-specific information from percipient witnesses in order to plead complaints that will survive motions

---

[11] *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *see also New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'"), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

4859-1419-8374.v1

to dismiss is frequently a necessity.  The retention of these investigators, experts and consultants with significant experience in the trucking industry, due diligence with respect to public offerings, and economic analysis and damages in securities class actions was essential to understanding the relevant issues.  *See* RGRD Decl., ¶5(f); Levi & Korsinsky Decl., ¶5(d).

Class Counsel also incurred the costs of electronic legal research.  It is standard practice for attorneys to use these services to assist them in researching legal and factual issues.  Other expenses and charges that were necessarily incurred in the prosecution of the Litigation include expenses for document management, mediation fees, photocopying, filing and witness fees, transcripts, travel, and document retrieval.  Because these were all necessary expenses incurred by counsel, they should be paid from the Settlement Fund.  These expenses are described in detail in the accompanying declarations of counsel.  *See generally* RGRD Decl., Levi & Korsinsky Decl., Barrett Johnston Decl., Bragar Eagel Decl., Stranch Decl., Barrack Decl., and GPM Decl.

## IV.     PLAINTIFFS' AWARDS PURSUANT TO 15 U.S.C. §77z-1(a)(4) ARE REASONABLE

Finally, Plaintiffs respectfully suggest that the time and expenses that they directly and reasonably incurred for their services to the Class in connection with this Litigation should be reimbursed, as provided for by the PSLRA.  *See* 15 U.S.C. §77z-1(a)(4) (class representatives may recover the "reasonable costs and expenses (including lost wages) directly relating to the representation of the class"); *see New Eng. Health Care*, 234 F.R.D. at 635 ("'Courts . . . routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages[.]'").  The Notice advised that Plaintiffs may seek reimbursement up to $35,000 in the aggregate for the costs and expenses directly related to their representation of the Class.  *See* Murray Decl., Ex. A. at 8.

Plaintiffs' declarations support their requests to compensate them for time incurred in their roles as Class Representatives.  *See* Terry Decl., ¶8, Clowdis Decl., ¶8, and Robbins Decl., ¶8.

- 18 -

Numerous courts have approved similar awards to reimburse class representatives for their time and efforts on behalf of a class. *Cosby*, 2022 WL 4129703, at *3 (awarding plaintiff awards of $25,000, $10,000 and $10,000); *Grae*, 2021 WL 5234966, at *1 (awarding $17,525 to lead plaintiff); *Dougherty v. Esperion Therapeutics, Inc.*, No. 2:16-cv-10089-AJT-RSW, ECF 228 at 4 (E.D. Mich. Aug. 24, 2021) (awarding $7,500 to each plaintiff); *Garden City Emps.' Ret. Sys.*, 2015 WL 13647397, at *1 (awarding lead plaintiff more than $20,000 for payment of its time spent and costs incurred in representing the class).

As set forth in their declarations, Plaintiffs actively prosecuted this Litigation by regularly communicating with Class Counsel, responding to Defendants' discovery requests, preparing for and providing deposition testimony, reviewing documents filed in the case, and discussing settlement strategy with Class Counsel. Terry Decl., ¶¶6-7, Clowdis Decl., ¶4, Robbins Decl., ¶4. *See Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 6793326, at *8 (E.D. Mich. Nov. 19, 2020) ("Lead Plaintiffs have 'vigorously prosecute[d] the interests of the class[.]'"). Accordingly, Plaintiffs' requested reimbursement awards are reasonable and justified under the PSLRA.

## V. CONCLUSION

Counsel obtained an excellent result for the Class. Therefore, for all of the foregoing reasons, Class Counsel respectfully request that the Court approve their motion for an award of attorneys' fees and expenses, and awards to Plaintiffs in connection with their representation of the Class.

DATED: June 5, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
CHRISTOPHER M. WOOD, #032977

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

- 19 -

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
WILLOW E. RADCLIFFE (*pro hac vice*)
HADIYA K. DESHMUKH (*pro hac vice*)
SNEHEE KHANDESHI (*pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
hdeshmukh@rgrdlaw.com
skhandeshi@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (*pro hac vice*)
KEVIN S. SCIARANI (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ksciarani@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com

- 20 -

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS (*pro hac vice*)
ANDREW E. LENCYK (*pro hac vice*)
DAVID C. JAYNES (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT  06905
Telephone:  203/992-4523
212/363-7171 (fax)
shopkins@zlk.com
alencyk@zlk.com
djaynes@zlk.com

*Class Counsel*

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
DAVID GARRISON, #24968
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com

*Local Counsel*
BRAGAR EAGEL & SQUIRE, P.C.
LAWRENCE P. EAGEL (*pro hac vice*)
MARION C. PASSMORE (*pro hac vice*)
810 Seventh Avenue, Suite 620
New York, NY  10019
Telephone:  212/308-5858
212/214-0506 (fax)
eagel@bepsc.com
passmore@bespc.com

*Additional Counsel for Plaintiffs Charles Clowdis
and Bryan K. Robbins*

- 21 -

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 5, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses of the CM/ECF participants in this case.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com